# EXHIBIT 1

UNITED WASTE SERVICES, INC. AND SUBSIDARIES
PO BOX 1168
HEBRON, OH 43025

COMMODORE BANK-MILLERSPORT
1710† LANCASTER ST
P O BOX 188
MILLERSPORT, OH 43046

COPY

| Loan Number | 07-12943-01 |
| Date | 01-27-2005 |
| Maturity Date | 01-27-2011 |
| Loan Amount | $92,612.00 |
| Renewal Of | |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __NINETY TWO THOUSAND SIX HUNDRED__
__TWELVE AND NO/100_____ Dollars $ 92,612.00

☒ **Single Advance:** I will receive all of this principal sum on __01-27-2005_____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __01-27-2005_____ at the rate of __5.250__% per year
until __01-28-2005__.

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be __EQUAL TO_____ the following index rate: __THE BASE RATE ON CORPORATE LOANS POSTED BY AT__
__LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE__
__NEAREST 0.125__

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as __EVERY DAY BEGINNING 01-28-2005__
A change in the interest rate will take effect __ON THE FIRST DAY OF THE FOLLOWING MONTH__

☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than __11.250__% or less than
__5.250__%. The rate may not change more than __2.000__% each __DAY__

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.        ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __ACTUAL/365_____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to __18.00 PER CENT__

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5.000% OF THE LATE AMOUNT__

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: __$100.00 APPLICATION FEE. $12.00 UCC FILING FEE_____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 72 MONTHLY PAYMENTS OF $1,502.20 BEGINNING 02-27-2005. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS
MAY CHANGE.

**ADDITIONAL TERMS:**

☐ **SECURITY:** This note is separately secured by (describe separate
document by type and date):

_This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note._

**PURPOSE:** The purpose of this loan is __PURCHASE POWER SCREEN__

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2). I have received a copy on today's date.

IN THIS NOTICE "YOU" MEANS THE BORROWER.

**WARNING:** BY SIGNING THIS PAPER YOU GIVE UP
YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU
DO NOT PAY ON TIME A COURT JUDGMENT MAY BE
TAKEN AGAINST YOU WITHOUT YOUR PRIOR
KNOWLEDGE AND THE POWERS OF A COURT CAN BE
USED TO COLLECT FROM YOU REGARDLESS OF ANY
CLAIMS YOU MAY HAVE AGAINST THE CREDITOR
WHETHER FOR RETURNED GOODS, FAULTY GOODS,
FAILURE ON HIS PART TO COMPLY WITH THE
AGREEMENT, OR ANY OTHER CAUSE.

Signature for Lender

_Patricia A. Noteman_
PATRICIA A. NOTEMAN, BRANCH MANAGER

UNITED WASTE SERVICES, INC. AND SUBSIDARIES

_United Waste Services, Inc. and Subsidaries_
SHAWNA L MARTIN
_Shawna L Martin_

JEFF DANFORD-PRESIDENT

UNIVERSAL NOTE

**DEFINITIONS:** As used on page 1, "☒" mean ⌐ terms t.... apply to this loan, "I," "me" or "my" means Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note together referred to as "us." "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Ohio will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advance at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, then repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise on any other loan or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued interest and other charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed herein, I authorize any attorney to appear in a court of record and confess judgment, without process, against me, in favor of you, for any sum unpaid and due on this note, together with costs of suit.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| UNITED WASTE SERVICES, INC. AND SUBSIDIARIES | COMMODORE BANK-MILLERSPORT |
| PO BOX 1168 | 12101 LANCASTER ST |
| HEBRON, OH 43025 | P O BOX 188 |
| | MILLERSPORT, OH 43046 |
| | 31-4264680 |

Type: ☐ individual  ☐ partnership  ☒ corporation  ☐ _____
State of organization/registration  (if applicable)  OH
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 01-27-2005

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☒ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):
LOAN # 212943

☐ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all products and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and claims (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

CHIEFTON 400 POWER SCREEN
SERIAL # 6904731

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| WASTE SERVICES, INC. AND SUBSIDIARIES | COMMODORE BANK-MILLERSPORT |
| *United Waste Services, Inc. And Subsidaries* | *Patricia A. Noteman* |
| SHAWNA L. MARTIN | PATRICIA A. NOTEMAN |
| *Shawna L Martin* | BRANCH MANAGER |

©2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligation of any other Debtor. Secured Party may sue each Debtor individually, or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, lease, license, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until it is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement. If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

**Note, Disclosure, and Security Agreement**

| Lender | Borrower | |
|---|---|---|
| COMMODORE BANK-MILLERSPORT | UNITED WASTE SERVICES, INC AND SUBSIDARIES | Loan Number 02-12948-CL |
| 12101 LANCASTER ST | PO BOX 1188 | Loan Date 07-23-2005 |
| P O BOX 188 | HEBRON, OH 43025 | Maturity Date 03-01-2015 |
| MILLERSPORT, OH 43046 | | Loan Amount 70,112.00 |
| | ☐ Refer to the attached addendum for additional Borrowers and their signatures. | Renewal of _____ |

### Truth-in-Lending Disclosures

| Annual Percentage Rate The cost of my credit as a yearly rate. | Finance Charge The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid when I have made all scheduled payments. |
|---|---|---|---|
| 5.537 % | $ 21,404.06 | $ 70,012.00 | $ 91,416.06 |

My Payment Schedule Will Be:

| Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 119 | $ 761.82 | MONTHLY BEGINNING 04-01-2005 | |
| 1 | $ 759.48 | ON 03-01-2015 | "e" means an estimate. |
| | $ | | |
| | $ | | |

**Demand.** ☒ This note has a demand feature. ☐ This note is payable on demand and all disclosures are based on an assumed maturity of one year.

**Variable Rate.**
☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☒ The annual percentage rate may increase during the term of this transaction if
THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE INCREASES. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125

ANY INCREASE WILL TAKE THE FORM OF AN INCREASE IN THE AMOUNT OF EACH PAYMENT AND THE AMOUNT DUE AT MATURITY. IF THE RATE INCREASES BY 1.000% ON 04-01-2005, THE AMOUNT OF EACH PAYMENT WILL INCREASE TO $796.82, AND THE AMOUNT DUE AT MATURITY WILL INCREASE TO $796.82. THE RATE WILL NOT INCREASE MORE OFTEN THAN ONCE EVERY 1 MONTH. THE RATE MAY NOT INCREASE MORE THAN 2.000% EVERY 1 MONTH. THE RATE WILL NOT GO ABOVE 11.500%.

**Prepayment.** If I pay off this note early, I ☐ may ☒ will not have to pay a penalty.
☒ If I pay off this note early, I ☐ may ☒ will not be entitled to a refund of part of the finance charge.
☒ **Late Charge.** If a payment is late (more than 10 days after due) I will be charged 5.000% OF THE LATE AMOUNT

**Security.** I am giving a security interest in:
☐ the goods or property being purchased.
☐ collateral securing other loans with you may also secure this loan.
☐ (brief description of other property)

**Filing Fees.** $ 12.00
**Non-filing Insurance.** $ _____
☐ **Required Deposit.** The annual percentage rate does not take into account my required deposit.
☒ **Assumption.** Someone buying the property securing this obligation cannot assume the remainder of the obligation on the original terms.
**Contract Documents.** I can see my contract documents for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Promissory Note

**Promise to Pay.** For value received, I promise to pay to you, or your order, at your address above, the principal sum of $ 70,112.00 plus interest from 07-23-2005 at the rate of 5.500 % per year until 04-01-2005.
Interest accrues on a ACTUAL/365 basis. I agree to pay late charges in accordance with the provisions shown in the Truth-in-Lending Disclosures. The purpose of this loan is _____

☒ **Variable Rate.** The rate above may then change so as always to be EQUAL TO the following index rate:
THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125

The interest rate may not change more than 2.009% each MONTH. The annual interest rate in effect on this note will not at any time be more than 11.500% or less than 5.500%. The interest rate in effect on this note may change (as often as) EVERY MONTH (assuming there is a change in the base rate) and an increase in the interest rate will cause an increase in ☒ the amount of each scheduled payment. ☐ the amount due at maturity. ☐ the number of payments.

**Payment.** I will pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 119 MONTHLY PAYMENTS OF $761.82 BEGINNING 04-01-2005 AND 1 BALLOON PAYMENT OF $759.48 ON 03-01-2015. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE AFTER THE 1ST PAYMENT AND EVERY PAYMENT THEREAFTER. THE FINAL PAYMENT MAY ALSO CHANGE.

**Post-Maturity Interest.** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ Interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☒ **Additional Charges.** I also agree to pay the following additional fee(s): ☐ A nonrefundable Origination Fee of $ _____ ☒ An additional ☐ refundable ☒ nonrefundable _____ Fee of $ 100.00 . These fees will be ☐ paid in cash. ☐ paid pro rata over the loan term. ☒ withheld from the loan proceeds. (If withheld from the proceeds, the amount is included in the principal sum.)

☐ **Returned Payment Fee.** I agree to pay a service charge of $ _____ for each payment (check or automatic payment) returned unpaid.

Express™ Variable/Simple Interest Note, Disclosure, and Security Agreement
© 2002 Bankers Systems, Inc., St. Cloud, MN Form NDsS-VSI-OH 6/1/2002                                              Consu

☐ Other Terms.

☐ Prepayment Charge. I agree to pay a prepayment penalty of

_____

_____

## Itemization of Amount Financed

| | | |
|---|---|---|
| Amount given to me directly | $ | 70,000.00 |
| Amount paid on my (loan) account | $ | |
| TO LENDER | | 100.00 |
| Amount paid to others on my behalf (You may retain or receive a portion of these amounts.) | | |
| To insurance companies | $ | |
| To public officials | $ | 12.00 |
| _____ | $ | |
| _____ | $ | |
| _____ | $ | |
| (less) Prepaid Finance Charge(s) | $ | 100.00 |
| Amount Financed | $ | 70,012.00 |

## Security Agreement

Security. To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below:

2003 977 CATERPILLAR LOADER SERIAL # 11K3797

☐ All Debts. The Property will also serve as collateral for all present and future debts.

☐ Other Security. This Loan Agreement is secured by

## Additional Terms of the Promissory Note

Definitions. As used in this Loan Agreement, ☒ indicates terms that apply to this Loan Agreement. *Loan Agreement* refers to this Promissory Note, Security Agreement, and Truth in Lending Disclosures, and any extensions, renewals, modifications, and substitutions of this Loan Agreement. *Loan* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction, such as applications, security agreements, disclosures, or notes, and this Loan Agreement. *Security Agreement* refers to the security agreement contained within this Loan Agreement. *Secured Debts* refers to all sums advanced to you under the terms of the Loan Agreement, and all present and future debts (if the All Debts subsection of the Security Agreement has been checked). The pronouns *I, me* and *my* refer to each Borrower signing this Loan Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. *You* and *your* refer to the Lender and its successors and assigns.

Payments. Unless otherwise provided in the Other Terms section, each payment I make on this Loan Agreement will be applied first to any charges I owe other than principal and interest, then to interest that is due, and finally to principal that is due. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. The actual amount of my final payment will depend on the interest rates (if variable) and my payment record.

Interest. Interest will accrue on the unpaid principal balance until paid in full. For interest calculation, the accrual method will determine the number of days in a year. If Variable Rate is checked, I will pay interest at the rates in effect from time to time. Decreases in the interest rate for this Loan Agreement will have the opposite effect on payments that increases would have. The interest rate(s) and other changes on this Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, you will refund an amount necessary to comply with the law. Changes in the index between scheduled changes in the interest rate will not affect the interest rate.

Index. If you and I have agreed that the interest rate on _____ Loan Agreement will be variable and will be related to an index, then the index you select will function only as a tool for setting the rate on this Loan Agreement. You do not guaranty, by selecting any index, that the interest rate on this Loan Agreement will be the same rate you charge on any other loan or class of loans you make to me or any other borrower. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

Post-Maturity Interest. Interest will accrue on the principal balance remaining unpaid after final maturity at the rate specified in this Loan Agreement. For purposes of this section, final maturity occurs on any of the following dates:

- If this Loan Agreement is payable on demand, on the date you make demand for payment.
- If this Loan Agreement is payable on demand with alternate payment date(s), on the date you make demand for payment or on the final alternate payment date, whichever is earlier.
- On the date of the last scheduled payment of principal.
- On the date you accelerate the due date of this Loan Agreement (demand immediate payment).

Prepayment. I may prepay this Loan Agreement in whole or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

Commissions. I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

Warranties and Representations. I have the power and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or my property, or to which I am a party. I own all of the Property, unless otherwise agreed and disclosed to you in writing. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. The Property has not been and will not be used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

Default. Subject to any limitations in the Real Estate or Residence Security section, I will be in default if any of the following occur:

- I fail to make a payment when due.
- I fail to perform any condition or keep any promise of this or any agreement I have made with you.

Remedies. Subject to any limitations in the Real Estate or Residence Security section, after I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

- Make all or any part of the amount owing by the terms of this Loan Agreement due.
- Use any and all remedies you have under state or federal law, or in any instrument securing this Loan Agreement.
- Make a claim for any and all insurance benefits or refunds that may be available on my default.
- Set off any amount due and payable under the terms of this Loan Agreement against my right to receive money from you, unless prohibited by law.
- Make amounts advanced on my behalf due and add those amounts to the balance owing under the terms of this Loan Agreement.
- Require me to gather the Property and make it available to you in a reasonable fashion (unless prohibited by law); keep or dispose of the Property as provided by law; apply the proceeds to your expenses of collection and enforcement and then to the Secured Debts; and, unless prohibited by law, and following any required notice of disposition, hold me liable for any deficiency if what you receive from the sale does not satisfy the Secured Debts.

By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

Real Estate or Residence Security. If this Loan Agreement is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by this Loan Agreement.

Waivers. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice to accelerate, and notice of dishonor. You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. You may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner. You may release, substitute, or impair any Property securing this Loan Agreement.

Collection Expenses and Attorneys' Fees. On or after Default, to the extent permitted by law, I agree to pay all reasonable expenses of collection, enforcement, or protection of your rights and remedies under this Loan Agreement. Expenses include (unless prohibited by law) reasonable attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the rate provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted you, if any. To the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**General Provision.** This Loan Agreement is governed by the laws of Ohio, the United [States] of America, and to the extent required, by the laws of the jurisdiction [where] the Property is located. If two or more Borrowers sign this Loan Agreement, we are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of our agreement. No modification of this Loan Agreement is effective unless made in writing and signed by me and you. The duties and benefits of this Loan Agreement will bind and benefit the successors and assigns of me and you. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will be enforceable.

Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to my last known address. Notice to one party will be deemed to be notice to all parties. Where a notice is required, I agree that 10 days prior written notice will be reasonable notice to me under the Uniform Commercial Code or other applicable state law.

I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. My name and address are my exact legal name and my principal residence. I will provide you with at least 30 days notice prior to changing my name or principal residence.

I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.

## Additional Terms of the Security Agreement

**Generally.** Property means any collateral described in this Loan Agreement in which I have an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property. Property includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.

If the All Debts subsection is checked, the Property also secures all present and future debts, even if this Loan Agreement is not referenced in the debt instrument, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. Nothing in this Loan Agreement is a commitment to make future loans or advances. This Loan Agreement will not secure any debt for which you fail to give any required notice of the right of rescission (i.e., right to cancel), or any debt for which a non-possessory, non-purchase money security interest is created in household goods in connection with a consumer loan, as those terms are defined by federal law governing unfair and deceptive credit practices.

**Purchase Money Security Interest.** If this is a purchase money loan (the loan proceeds are used to purchase the collateral), I authorize you, at your option, to disburse the loan proceeds directly to the seller of the Property. The portion of the Property purchased with loan proceeds will remain subject to your purchase money security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Security Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, then payments will be applied in the order you select. No security interest will be terminated by application of this formula.

**Waivers.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith. I waive all rights I have now or in the future to a homestead or personal property exemption in the Property.

**Assumptions.** Someone buying the Property cannot assume the obligation. You may declare the entire balance of the Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property.

**Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I agree to comply with, facilitate, and otherwise assist you in connection with perfecting your security interest under the Uniform Commercial Code.

**Duties Toward Property.** I will protect the Property and your interest against any competing claim. Except as otherwise provided in this Loan Agreement, I will keep the Property in my possession at the address indicated in this Loan Agreement. I will keep the Property in good repair and use it only for personal, family, or household purposes. I will immediately inform you of any loss or damage to the Property. You have the right of reasonable access to inspect the Property.

I will keep books, records, and accounts about the Property and my assets in general, to which I will allow you reasonable access. I will pay all taxes and assessments levied or assessed against me or the Property. I will not sell, lease, license, or otherwise transfer or encumber the Property without your prior written consent. You do not authorize any sale or other disposition of the Property. Any sale or disposition you do not authorize will violate your rights.

If I pledge the Property to you (deliver the Property into your, or your designated third party's possession or control), I will, upon receipt, deliver any proceeds and products of the Property to you. I will provide you with any notices, documents, financial statements, reports, and other information relating to the Property I receive as the owner of the Property.

**Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Security Agreement. I may provide the required insurance through an existing policy of insurance that I own, or control, or through a policy that I buy. I have free choice in the selection of an insurance company, subject to applicable law. I will maintain this insurance in the amounts you require and have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. If the insurance proceeds do not cover the amounts I owe you, I will pay the difference. You may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If you acquire the Property in damaged condition, my rights to any insurance policies and proceeds will pass to you to the extent of the Secured Debts. I will immediately notify you of cancellation or termination of insurance.

---

I am requir[ed] to maintain insurance on the Property to protect your interest. I [agree] to maintain the required insurance, or fail to provide you with evidence of insurance, I understand and agree to the following.

- You may (but are not required to) place insurance on the Property to protect your interest, which will not cover my equity in the Property.
- The insurance you provide may be written by a company other than one I would choose and may be written at a higher rate than I could obtain if I purchased the insurance.
- I will pay for the costs of any Property insurance you provide.

**Authority to Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property and your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement, you are authorized, after providing me with any required notice and opportunity to perform, to perform the duties or cause them to be performed and add the costs of performance to the Secured Debts. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and taking any action to obtain or preserve the benefits and rights of the Property. Your authority to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Security Agreement. If you come into actual or constructive possession of the Property, you will preserve and protect the Property to the extent required by law. Your duty of care with respect to the Property will be satisfied if you exercise reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

## Third Party Agreement

For the exceptions of the provisions within this enclosure, I, me or my means the person signing below and you means the Lender identified in this Loan Agreement.

I agree to give you a security interest in the Property that is described in the Security Agreement section. I agree to the terms of this Loan Agreement, but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the Secured Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this Loan Agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.

I have received a completed copy of this Loan Agreement.

X_____

Attach FTC "Preservation of Consumer Claims and Defenses"
Notice if Applicable.

## Insurance

**Credit Insurance.** Credit life, credit accident and sickness (disability), and any other insurance coverage quoted below, are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will quote it for me (if I qualify for coverage). You are quoting below ONLY the coverages I have chosen to purchase.

| Credit Life | | |
|---|---|---|
| ☐ Single ☐ Joint ☒ None | Premium | $_____ |
| | Term | _____ |

| Credit Disability | | |
|---|---|---|
| ☐ Single ☐ Joint ☒ None | Premium | $_____ |
| | Term | _____ |

| | | |
|---|---|---|
| | Premium | $_____ |
| ☐ Single ☐ Joint ☐ None | Term | _____ |

**Signature.** My signature below means I want (only) the insurance coverage(s) quoted above. If "None" is checked, I have declined the coverage you offered.

X_____DOB_____
X_____DOB_____
X_____DOB_____

☐ **Single Interest Insurance.** I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____
for _____ of coverage.

☒ **Property Insurance.** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay $_____ for
_____ of coverage.

---

## Federal Sale of Insurance Disclosure

*Product refers to any insurance product or annuity I purchase from you. With regard to any Product I purchase from you, the following apply.*

- The Product is not a deposit account or other obligation of any depository institution or any affiliate of any depository institution.
- The Product is not guaranteed or insured by any depository institution or any affiliate of any depository institution.

  The Product is not insured by the Federal Deposit Insurance Corporation (FDIC).

- The Product, except in the case of Federal Flood Insurance or Federal Crop Insurance, is not insured by any federal government agency.

- ☐ If this box is checked, there is investment risk associated with the Product, including the possible loss of value.

By signing, I acknowledge that I have received a copy of this disclosure on today's date. Unless these disclosures are provided electronically or I have purchased the Product by mail, I also acknowledge that you have provided these disclosures to me orally.

X_____ Date_____

X_____ Date_____

X_____ Date_____

## NOTICE TO COSIGNER

You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

## Signatures

By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement on today's date.

Cosigners. See Notice to Cosigner above before signing.

X_~~Shawna L. Martin~~_____
SHAWNA MARTIN

X_____

X_____

(Optional)
Signed ~~Patricia Holtman~~_____ For Lender
Title BRANCH MANAGER

UNITED WASTE SERVICES, INC. AND SUBSIDARIES
PO BOX 1168
HEBRON, OH 43025

COMMODORE BANK-MILLERSPORT
12101 LANCASTER ST
P O BOX 188
MILLERSPORT, OH 43046

Loan Number 02-16032-01
Date 03-15-2005
Maturity Date 04-01-2020
Loan Amount $ 385,112.00
Renewal Of

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of THREE HUNDRED EIGHTY FIVE THOUSAND ONE HUNDRED TWELVE AND 00/100 Dollars $ 385,112.00

☒ Single Advance: I will receive all of this principal sum on 03-15-2005 . No additional advances are contemplated under this note.

☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
   I will receive the amount of $ _____ and future principal advances are contemplated.
   Conditions: The conditions for future advances are _____

   ☐ Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
      all other conditions and expires on _____
   ☐ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from 03-15-2005 at the rate of 5.500 % per year until 04-01-2005.

☒ Variable Rate: This rate may then change as stated below.
   ☒ Index Rate: The future rate will be EQUAL TO the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125
   ☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
   ☒ Frequency and Timing: The rate on this note may change as often as EVERY MONTH BEGINNING 04-01-2005
      A change in the interest rate will take effect ON THE FIRST DAY OF THE FOLLOWING MONTH
   ☒ Limitations: During the term of this loan, the applicable annual interest rate will not be more than 11.500 % or less than 5.500 %. The rate may not change more than 2.000 % each MONTH

   Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
   ☒ The amount of each scheduled payment will change.        ☐ The amount of the final payment will change.
   ☐

ACCRUAL METHOD: Interest will be calculated on a ACTUAL/365 basis.

POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
   ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
   ☒ at a rate equal to 18.000 PER CENT PER ANNUM
   ☒ LATE CHARGE: If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000 % OF THE LATE AMOUNT

☒ ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: $100.00 APPLICATION FEE, 112.00 UCC FILING FEE.

PAYMENTS: I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 180 MONTHLY PAYMENTS OF $3,155.58 BEGINNING 05-01-2005. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE.

ADDITIONAL TERMS:

☐ SECURITY: This note is separately secured by (describe separate document by type and date):

This section is for our internal use. Failure to list a separate security document does not mean the document will not secure this note.)

PURPOSE: The purpose of this loan is PURCHASE CRUSHER

SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

IN THIS NOTICE "YOU" MEANS THE BORROWER.

**WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.**

For Lender

E ALLEN

FF OANFORD-PRESIDENT

UNITED WASTE SERVICES, INC. AND SUBSIDARIES

SHAWNA L MARTIN

GEORGE M. RILEY

UNIVERSAL NOTE

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Ohio will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. provision of this agreement cannot be enforced according to its this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal balance at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

☐ **E ADVANCE LOANS:** If this is a single advance loan, you and I that you will make only one advance of principal. However, you add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

☐ **MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, then repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESI    CE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep any property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other legal action. If you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed herein, I authorize any attorney to appear in a court of record and confess judgment, without process, against me, in favor of you, for any sum unpaid and due on this note, together with costs of suit.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH |
|---|---|---|---|---|---|---|---|
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| UNITED WASTE SERVICES, INC. AND SUBSIDARIES<br>PO BOX 1168<br>HEBRON, OH 43025 | COMMODORE BANK-MILLERSPORT<br>12101 LANCASTER ST<br>P O BOX 188<br>MILLERSPORT, OH 43046 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) OH _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 03-15-2005 _____.

SECURED DEBTS. This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ Specific Debts. The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☐ All Debts. All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

SECURITY INTEREST. To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original collateral for the payment or performance of the Property; "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

PROPERTY DESCRIPTION. The Property is described as follows:

☐ Accounts and Other Rights to Payment: All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ Inventory: All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ Instruments and Chattel Paper: All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ General Intangibles: All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ Documents: All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ Farm Products and Supplies: All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ Government Payments and Programs: All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ Investment Property: All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ Deposit Accounts: All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ Specific Property Description: The Property includes, but is not limited by, the following (if required, provide real estate description):

JUMBO EAGLE 1200 CRUSHER
SERIAL # 10821

USE OF PROPERTY. The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

SIGNATURES. Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| UNITED WASTE SERVICES, INC. AND SUBSIDARIES | COMMODORE BANK-MILLERSPORT |
| *Shawna L. Martin* | *[signature]* |
| SHAWNA L. MARTIN | JOE ALLEN |
| *[signature]* | |
| GEORGE M. RILEY | |

© 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

**GENERAL PROVISIONS.** Each Debtor's obligation under this Agreement are independent of the obligation of any Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes consistent with page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Secured Party will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts, at Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

If Debtor pledges the Property to Secured Party (delivers the Property into possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

## AGREEMENT TO PROVIDE INSURANCE

**DATE AND PARTIES.** The date of this Agreement to Provide Insurance (Agreement) is 01-27-2005 _____. The parties and their addresses are:

OWNER: UNITED WASTE SERVICES, INC. AND SUBSIDIARIES
PO BOX 1168
HEBRON, OH 43025

SECURED PARTY: COMMODORE BANK-MILLERSPORT
12101 LANCASTER ST
P O BOX 188
MILLERSPORT, OH 43046

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I", "me" and "my" refer to each person or entity signing this Agreement as Owner.

**1. LOAN, LEASE, OR CONTRACT DESCRIPTION (Loan).**
   A. Date:        01-27-2005
   B. Loan Number:   02-12943-CL
   C. Loan Amount:    92,612.00
   D. Additional Information:

**2. AGREEMENT TO PROVIDE INSURANCE.** As part of my Loan, I agree to do all of the following (in addition to any requirements specified in the Loan documents).
   A. I will insure the Property as listed and with the coverages shown in the COVERAGES section.
   B. I will have you named on the policy, with the status listed under the STATUS section.
   C. I will arrange for the insurance company to notify you that the policy is in effect and your status has been noted.
   D. I will pay for this insurance, including any fee for this endorsement.
   E. I will keep the insurance in effect until the Property is no longer subject to your security interest. (I understand that the Property may secure debts in addition to any listed in the LOAN DESCRIPTION section.)

**3. DESCRIPTION OF PROPERTY.** The Property subject to this Agreement is described as follows.

CHIEFTON 400 POWER SCREEN
SERIAL # 6904231

**4. COVERAGES.** I agree to insure the Property according to the following described risks, amount of coverage, and maximum deductible allowed.
   ☐ If checked, all coverages will be for the full replacement value of the Property.

| | | | | | | |
|---|---|---|---|---|---|---|
| Homeowner's Coverage: | ☐ H.O. | ☐ Other (Describe) _____ | | | | |
| Insurable Value: | | Deductible: | | | | |
| Automobile Coverages: | ☐ Fire | ☐ Theft | ☐ Collision | ☐ Comprehensive | ☐ Liability | ☐ Other _____ |
| Insurable Value: | | Deductible: | | Minimum limits: | | |
| Property Coverage: | ☐ Fire | ☐ Theft | ☐ Collision | ☐ Comprehensive | ☐ Liability | ☐ Other _____ |
| Insurable Value: | | Deductible: | | | | |

**5. STATUS.** Your status shall be listed on the insurance policy as follows.
   ☐ Lienholder    ☐ Certificate Holder    ☐ Additional Insured    ☐ Mortgagee    ☒ Other LIENHOLDER AND OR LOSS PAYEE
   California Real Property: Hazard insurance exceeding the replacement value of the improvements on the property is not required as a condition of this loan.

**6. ADDITIONAL TERMS.**

**7. INSURANCE COMPANY.** The insurance policy covering the Property and the insurance company issuing the policy are as follows.
   A. Policy Number: _____ Effective From _____ To _____
   B. Insurance Company Name, Address, and Phone Number:

**8. INSURANCE AGENCY AND AGENT.** The insurance agency through which I have purchased, or intend to purchase, the required insurance is as follows.
   A. Agent Name: _____
   B. Agency Name, Address, and Phone Number:

**9. SIGNATURES.**

SIGNATURES FOR OWNER(S) AND AUTHORIZATION TO INSURANCE AGENT AND COMPANY. By signing below, I agree to the terms contained in this Agreement and acknowledge receipt of a copy of this Agreement. I request the listed insurance company and agency to provide the indicated coverage and list you on the policy with the indicated status. I also request the insurance company or its authorized agent to immediately confirm that the policy is in effect by signing this form and forwarding a copy of the policy to you.

UNITED WASTE SERVICES, INC. AND SUBSIDIARIES

X United Waste Services, Inc And Subsidaries    Date 1/27/05
  SHAWN L. MARTIN

X Shawna L. Martin      Date

SIGNATURE FOR SECURED PARTY AND REQUEST FOR CONFIRMATION. Upon receipt of this Agreement, the insurance company or agency named above is requested to confirm the policy coverages shown above.

PVX Patricia A. Noteman      Date
  PATRICIA A. NOTEMAN, BRANCH MANAGER

SIGNATURE FOR INSURANCE COMPANY AND CONFIRMATION. By signing below, Insurance Company confirms the existence of the insurance coverages agreed to be provided by our insured and that you will be notified not less than 10 days before cancellation.

Insurance Company _____

By X _____      Date

Please return to Secured Party at the address listed in the DATE AND PARTIES section.

## AGREEMENT TO PROVIDE INSURANCE

**DATE AND PARTIES.** The date of this Agreement to Provide Insurance (Agreement) is 03-15-2005 _____. The parties and their addresses are:

**OWNER:** UNITED WASTE SERVICES, INC. AND SUBSIDARIES
PO BOX 1168
HEBRON, OH 43025

**SECURED PARTY:** COMMODORE BANK-MILLERSPORT
12101 LANCASTER ST
P O BOX 188
MILLERSPORT, OH 43046

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Owner.

**1. LOAN, LEASE, OR CONTRACT DESCRIPTION (Loan).**
A. Date: 03-15-2005
B. Loan Number: 02-16032-CL
C. Loan Amount: 385,000.00
D. Additional Information:

**2. AGREEMENT TO PROVIDE INSURANCE.** As part of my Loan, I agree to do all of the following (in addition to any requirements specified in the Loan documents):
A. I will insure the Property as listed and with the coverages shown in the COVERAGES section.
B. I will have you named on the policy, with the status listed under the STATUS section.
C. I will arrange for the insurance company to notify you that the policy is in effect and your status has been noted.
D. I will pay for this insurance, including any fee for this endorsement.
E. I will keep the insurance in effect until the Property is no longer subject to your security interest. (I understand that the Property may secure debts in addition to any listed in the LOAN DESCRIPTION section.)

**3. DESCRIPTION OF PROPERTY.** The Property subject to this Agreement is described as follows.

JUMBO EAGLE 1200 CRUSHER
SERIAL # 10821

**4. COVERAGES.** I agree to insure the Property according to the following described risks, amount of coverage, and maximum deductible allowed.
☒ If checked, all coverages will be for the full replacement value of the Property.

| | | | | | |
|---|---|---|---|---|---|
| Homeowner's Coverage: | ☐ H.O. | ☐ Other (Describe) _____ | | | |
| Insurable Value: | | Deductible: | | | |
| Automobile Coverages: | ☐ Fire | ☐ Theft | ☐ Collision | ☐ Comprehensive | ☐ Liability | ☐ Other _____ |
| Insurable Value: | | Deductible: | | Minimum limits: | |
| Property Coverage: | ☐ Fire | ☐ Theft | ☐ Collision | ☐ Comprehensive | ☐ Liability | ☐ Other _____ |
| Insurable Value: | | Deductible: | | | |

**5. STATUS.** Your status shall be listed on the insurance policy as follows.
☐ Lienholder  ☐ Certificate Holder  ☐ Additional Insured  ☐ Mortgagee  ☒ Other LEINHOLDER AND OR LOSS PAYEE

[California Real Property: Hazard insurance exceeding the replacement value of the improvements on the property is not required as a condition of this loan.]

**6. ADDITIONAL TERMS.**

**7. INSURANCE COMPANY.** The insurance policy covering the Property and the insurance company issuing the policy are as follows.
A. Policy Number: _____ Effective From _____ To _____
B. Insurance Company Name, Address, and Phone Number:

**8. INSURANCE AGENCY AND AGENT.** The insurance agency through which I have purchased, or intend to purchase, the required insurance is as follows.
A. Agent Name: _____
B. Agency Name, Address, and Phone Number:

**9. SIGNATURES.**

**SIGNATURES FOR OWNER(S) AND AUTHORIZATION TO INSURANCE AGENT AND COMPANY.** By signing below, I agree to the terms contained in this Agreement and acknowledge receipt of a copy of this Agreement. I request the listed insurance company and agency to provide the indicated coverage and list you on the policy with the indicated status. I also request the insurance company or its authorized agent to immediately confirm that the policy is in effect by signing this form and forwarding a copy of the policy to you.

UNITED WASTE SERVICES, INC. AND SUBSIDARIES

X _Shawna L. Martin_
SHAWNA L. MARTIN                    Date _____

X _____
GEORGE M. RILEY                     Date _____

**SIGNATURE FOR SECURED PARTY AND REQUEST FOR CONFIRMATION.** Upon receipt of this Agreement, the insurance company or agency named above is requested to confirm the policy coverages shown above.

By X _____
JOE ALLEN                           Date _____

**SIGNATURE FOR INSURANCE COMPANY AND CONFIRMATION.** By signing below, Insurance Company confirms the existence of the insurance coverages agreed to be provided by our insured and that you will be notified not less than 10 days before cancellation.

Insurance Company _____

By X _____                   Date _____

Please return to Secured Party at the address listed in the DATE AND PARTIES section.

Experta                             © 1998 Bankers Systems, Inc., St. Cloud, MN Form API-GEN 6/12/2000

# EXHIBIT 2

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is being executed on this ___ day of December, 2006, by Commodore Bank ("Commodore Bank") on the one hand, and United Waste Services, Inc. ("United Waste"), George Michael Riley ("Mike Riley"), Palm Beach Property Associates, LLC ("Palm Beach"), Anthony F. Riley ("Anthony Riley"), American Aggregates Corp., U.S.A. ("American Aggregates"), Ireland Equipment Co., Corp. USA ("Ireland Equipment"), Fitzgerald Sanitation, Jiffy-Jon Portable Toilets ("Jiffy-Jon"), Continental Industries, Inc. ("Continental Industries"), R&F Company of Lansing ("R&F"), and Eagle Industries of Columbus ("Eagle Industries;" collectively "Defendants"), on the other, under the following circumstances:

WHEREAS, United Waste executed and delivered to Commodore Bank a promissory note with a principle amount of $92,612.00 on January 27, 2005 (the "First Note"), a promissory note with the principle amount of $70,112.00 on February 23, 2005 (the "Second Note"), a promissory note with the principle amount of $385,112.00 on March 15, 2005 (the "Third Note," collectively the "Loans");

WHEREAS, Commodore Bank commenced litigation against United Waste, Palm Beach, Mike Riley, and Anthony Riley relative to the notes on May 2, 2005 in the Licking County Court of Common Pleas, which is styled *Commodore Bank v. United Waste Services, Inc., et al.*, Case No. 05CV0562TMM (the "Litigation");

WHEREAS, United Waste and Mike Riley asserted Counterclaims against Commodore Bank;

WHEREAS, Commodore Bank filed a Motion with the Court for Leave to Amend its Complaint on March 9, 2006, which was granted by the Court on June 7, 2006, and

Commodore Bank accordingly filed its First Amended Complaint on June 16, 2006, asserting additional claims against United Waste, Palm Beach, Mike Riley, and Anthony Riley, and adding as defendants American Aggregates, Ireland Equipment, Fitzgerald Sanitation, Jiffy-Jon, Continental Industries, R&F, Eagle Industries, and Sweet-P Relief Stations;

WHEREAS Defendants deny and continue to deny any and all claims asserted against them in the Litigation and Commodore Bank denies and continues to deny any and all counterclaims asserted against it in the Litigation;

WHEREAS, Commodore Bank and the Defendants now desire to reach a complete and final resolution of any and all differences, claims, and allegations that exist or that may exist between them, including, but in no way limited to, the differences, claims, and allegations asserted in the Litigation; and

NOW, THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

1.    Contemporaneous with the execution of this Agreement, Defendants agree to cause Commodore Bank to receive a deed for the real property at 257 Cornell Rd., Hebron, Ohio 43025 (the "Cornell Rd. Property") in substantially the form attached hereto as Exhibit A. Said deed shall grant Commodore Bank ownership of the Cornell Rd. Property free and clear of any liens and encumbrances.    Defendants agree to cooperate fully with Commodore Bank in having the deed recorded with the Licking County, Ohio Recorder.

2.    Contemporaneous with the execution of the Agreement, Defendants shall deliver to Commodore Bank a Promissory Note in substantially the form attached hereto as Exhibit A in the principal amount of $ 367,000 (the "Settlement Note").  This principal

amount represents the outstanding accrued interest and principal on the Loans, as well as costs and attorneys fees incurred by Commodore Bank in connection with this Litigation, less $263,000.00, which represents the parties' agreed-upon value of the Cornell Rd. Property transferred to Commodore Bank pursuant to paragraph 1 above.

3.    Within 7 days of the execution of this Agreement, Defendants shall request that the Licking County Sheriff's Department cause the estimated $90,000 in cash seized by the Sheriff's Department from Mike Riley (the "Cash") to be transferred to Commodore Bank. Defendants agree to cooperate fully with Commodore Bank, and to undertake all reasonable efforts, to cause the Licking County Sheriff to transfer the Cash to Commodore Bank.  If and when transfer of the Cash to Commodore Bank has been completed, Commodore Bank shall credit the amount of the Cash received from the Licking County Sheriff against the outstanding principal balance on the Settlement Note.

4.    Contemporaneous with the execution of the Settlement Note, Defendants shall transfer to Commodore Bank title to the equipment and vehicles listed on the attached Exhibit B (the "Equipment") free and clear of any liens or encumbrances.

5.    To the extent Mike Riley or any entity controlled by Mike Riley (a "Riley Entity") desires to use any of the Equipment, Commodore Bank agrees to lease the Equipment to Mike Riley or a Riley Entity pursuant to a lease agreement in substantially the form attached hereto as Exhibit C. All payments made under any lease of the Equipment shall be credited to the monthly payments required under the settlement note and against the principal balance of the Settlement Note. However, the making of any lease payments for less than the total monthly amount due does not excuse Defendants from making the full monthly payments required under the Settlement Note.

6.      Any Equipment listed on attached Exhibit B shall be insured by, maintained and stored at the expense of Mike Riley or a Riley Entity during the duration of the settlement note at a location that is promptly disclosed to Commodore Bank, and Commodore shall have the right to inspect said Equipment upon 48 hours notice. None of the equipment listed on attached Exhibit B may be operated or utilized by Mike Riley or any other person or entity without first having secured a lease agreement executed by Commodore Bank.

7.      In the event that Mike Riley or a Riley Entity breaches this Agreement, the Settlement Note, any lease agreement executed pursuant to paragraph 5 above, or any other agreement with Commodore Bank, in addition to any rights it may have under any statute or the common law or any other agreement, Commodore Bank shall have the right to terminate any lease agreement for the Equipment, take possession of and sell the equipment, applying any proceeds to any outstanding balance on the Settlement Note, and reinstitute any and all claims it had asserted or could have asserted in case no. 05CV0562 TMM..

8.      Within 30 days following final payment and discharge of the Settlement Note, Defendants shall have the option to purchase any or all of the Equipment at a price of $1.00 per piece of equipment.

9.      In exchange for the above-mentioned covenants undertaken by the parties, and as a material inducement to enter into this Agreement, Commodore Bank and Defendants, through their counsel, shall file a Stipulated Entry of Dismissal in substantially the form attached hereto as Exhibit D dismissing, without prejudice, all claims asserted by

Commodore Bank against Defendants and all counterclaims asserted by United Waste and Mike Riley against Commodore Bank in the Litigation.

10.     Within thirty days of payment of the outstanding balance on the Settlement Note by Defendants, Commodore Bank and Defendants shall file a Revised Stipulated Entry of Dismissal in substantially the form attached hereto as Exhibit E dismissing, with prejudice, all claims asserted by Commodore Bank against Defendants and all counterclaims asserted by United Waste and Mike Riley against Commodore Bank in the Litigation.

11.     Beginning on the date of any filing of the Revised Stipulated Entry of Dismissal referenced in paragraph 12 above, Defendants shall release, waive, discharge, and covenant not to sue Commodore Bank, as well as its successors, assigns, shareholders, directors, officers, employees (both current and former), insurers, attorneys, and agents from any and all claims, causes of action, damages, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, judgments, executions, claims, and demands which Defendants might have or assert against Commodore Bank of any nature whatsoever, now existing as of the date of this Agreement, known or unknown, absolute or contingent, including, but not limited to, all claims in any way relating to or arising out of the Litigation.

12.     Beginning on the date of any filing of the Revised Stipulated Entry of Dismissal referenced in paragraph 12 above, Commodore Bank shall release, waive, discharge, and covenant not to sue Defendants, as well as their successors, assigns, shareholders, directors, officers, employees (both current and former), insurers, attorneys, and agents from any and all claims, causes of action, damages, suits, debts, sums of

money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, judgments, executions, claims, and demands which Commodore Bank might have or assert against Defendants of any nature whatsoever, now existing as of the date of this Agreement, known or unknown, absolute or contingent, including, but not limited to all claims in any way relating to or arising out of the Litigation.

13.    This Agreement shall be binding on the undersigned parties and their respective successors and assigns. Each of the undersigned signatories warrants that he or she has full authority to enter into this Agreement and, by his or her signature, to bind the party on whose behalf he or she has signed, and its or his respective successors and assigns, to the terms of this Agreement.

14.    Each party shall bear all of the fees, costs, and expenses that they may have incurred, including attorneys' fees, in connection with the Litigation, this Agreement, or the settlement it represents.

15.    The parties acknowledge and agree that this Agreement and any actions taken or statements made in connection with this Agreement do not constitute, and should not be understood as constituting, an acknowledgement, evidence, or an admission of any fact or liability, whether in the Litigation, under any agreement which exists or may exist by and between the parties and/or any third parties, or under any law or statute or the common law.

16.    The terms of this Agreement shall be maintained as confidential and shall not be divulged to third parties. The existence of this Agreement, in and of itself, is not confidential, and the parties may relate that any dispute previously existing between them has been settled by negotiation. The parties may disclose the terms of this Agreement as

needed to their professional advisors (including but not limited to banking professionals, attorneys, and accountants). Either party may disclose the terms of this Agreement, to the extent reasonably necessary, if required to do so by a court of competent jurisdiction or by a duly authorized arbitrator of any dispute, if required in order to comply with a subpoena (or similar process) or with a discovery request in litigation (such as a document request, an interrogatory, a request for admission, or a deposition question) provided that the other party is, to the extent possible, promptly notified to thereby allow that party to oppose such process or request, if so desired.

18.     Any notice, demand, or written communication required by this Agreement to be sent to Defendants shall be sent by mail to:

Any notice, demand, or written communication required by this Agreement to be sent to the Defendants shall be sent by mail to:

      Jeffrey Danford
      President and CEO
      Commodore Bank
      100 East Main Street
      P.O. Box 460
      Somerset, OH 43783-0460

Either party may change the above addresses by notifying the other as provided above.

19.     The parties represent and acknowledge that, in executing this Agreement, they did not rely and have not relied upon any representations or statements made by the other parties to this Agreement or by their agents, representatives, or attorneys with respect to the subject matter, basis, or effect of this Agreement.  If the facts with respect to this

Agreement as executed are found to be other than or different from the facts in that regard now believed to be true, the parties expressly agree, accept, and assume the risk of the possible difference in the facts and agree that this Agreement shall be and remain effective notwithstanding such difference.

20.     The parties acknowledge that they have read this Agreement in its entirety and have thoroughly discussed all aspects of it with their attorneys, who represented them throughout the negotiations regarding this Agreement and that this Agreement with all of its provisions is made freely, voluntarily, and with full knowledge and understanding of its content.

21.     This Agreement, the interpretation thereof, and any claims arising out of or relating to this Agreement or the subject matter thereof shall be governed by the laws of the State of Ohio.

22.     This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements and understandings, whether oral or written, among the parties pertaining to the subject matter hereof.  Further, this Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto, or their successors and assigns.  If any part of this Agreement shall be deemed invalid or unenforceable, all remaining parts shall remain binding and in full force and effect.

23.     This Agreement may be executed in multiple counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto, intending to be bound hereby, cause this Settlement Agreement to be duly executed as set forth below.

**Commodore Bank**

By _____

Its _____

_____
~~George Michael Riley~~

_____
~~Anthony F. Riley~~

**United Waste Services, Inc.**

By _____

Its _____

**Palm Beach Property Associates, LLC**

By _____

Its _____

**American Aggregates Corporation, U.S.A.**

By _____

Its _____

**Ireland Equipment Co. Corp. U.S.A.**

By

Its

**Fitzgerald Sanitation**

By

Its

**Jiffy-Jon Portable Toilets**

By

Its

**Continental Industries, Inc.**

By

Its

**R&F Company of Lansing**

By

Its

**Eagle Industries of Columbus**

By

Its

1324078v1