# In The Matter Of:

*COMMODORE BANK v.*

*GEORGE MICHAEL RILEY, SR.*

---

*GEORGE MICHAEL RILEY, SR.*

*September 20, 2013*

---

*NEARY REPORTING SERVICES, LLC*

*228 Kinsey Road*

*Xenia, Ohio  45385*

*Phone (937) 402-0081 \*\*\*\*\*\**

*nearyreportingservices@yahoo.com*

Original File 092013gr.txt

**Min-U-Script® with Word Index**

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

**Page 1**

1                UNITED STATES BANKRUPTCY COURT
2                SOUTHERN DISTRICT OF OHIO
3                     EASTERN DIVISION
4    IN RE:
5    GEORGE MICHAEL RILEY, SR.    CASE NO. 12-60636
            Debtor
6    ------------------------------------------
7    COMMODORE BANK
            Plaintiff
8    -vs-
                         ADVERSARY PROCEEDING NO.
9                        13-ap-02094
10   GEORGE MICHAEL RILEY, SR.,
            Defendant
11   ------------------------------------------
12        Deposition of GEORGE MICHAEL RILEY, SR.,
13   the Defendant herein, taken by the Plaintiff
14   as upon cross examination and pursuant to the
15   applicable Rules of Civil Procedure as to the
16   time and place and stipulations hereinafter
17   set forth, at the offices of Dinsmore & Shohl,
18   191 W. Nationwide Boulevard, Suite 300,
19   Columbus, Ohio, at 1:31 p.m. on Friday,
20   September 20, 2013, before Heather M.
21   Byrne-Lunsford a Professional Court Reporter
22   and notary public within and for the State of
23   Ohio.
24              *   *   *   *   *   *
25

---

**Page 3**

1    APPEARANCES:
2    ON BEHALF OF PLAINTIFF
3    Gary E. Becker, Esq.
        Attorney at Law
4    Dinsmore & Shohl
        255 E. Fifth Street
5    Suite 1900
        Cincinnati, Ohio 45202
6
7    ON BEHALF OF GEORGE MICHAEL RILEY, SR.
8    Robin L. Morrison, Esq.
        Attorney at Law
9    Zacks Law Group
        The E. Building
10   33 S. James Road
        3rd Floor
11   Columbus, Ohio 43213
12
13   ON BEHALF OF DEFENDANT GEORGE MICHAEL RILEY,
     SR.
14   Michael T. Gunner, Esq.
        Attorney at Law
15   Law Office of Michael Gunner
        3535 Fishinger Boulevard
16   Suite 200
        Hilliard, Ohio 43026
17
18   ALSO PRESENT
19   Mr. Kasey M. Brock
20
21        *   *   *   *   *   *
22
23
24
25

---

**Page 2**

1              QUICK REFERENCE INDEX
2    WITNESS: GEORGE MICHAEL RILEY, SR.
3    APPEARANCES: PAGE 3
4
5            DX  CX  RDX  RCX
6    BY: MR. BECKER    -  4  -  -
7
8              EXHIBITS
9        MARKED              PAGE
10   PLF'S: 8         58
11   PLF'S: 9         95
12   PLF'S: 10        117
13   PLF'S: 11        124
14
15
16
17         *  *  *  *  *
18
19
20
21
22
23
24
25

---

**Page 4**

1    WHEREUPON:
2         GEORGE MICHAEL RILEY, SR.,
3    of lawful age, the Defendant herein, being
4    first duly sworn as hereinafter certified, was
5    examined and deposed as follows:
6              CROSS EXAMINATION
7    BY MR. BECKER:
8    Q.  Mr. Riley, good afternoon.  We
9    previously met.  Could you go ahead and give
10   us your full name and spell the last name for
11   the court reporter, please?
12   A.  George M. Riley.  R-I-L-E-Y.
13   Q.  Do you go by Senior?
14   A.  I do.
15   Q.  And your date of birth?
16   A.  8/14/63.
17   Q.  And your current address?
18   A.  594 Moull Street, Newark, Ohio.
19   Q.  And you've been residing at that
20   location for how long?
21   A.  A couple of years.
22   Q.  And do you own or rent that
23   property?
24   A.  Rent.
25   Q.  And who is the lease assigned to?

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 5

1  Who is the person that signed the lease?
2  A.  I don't know.
3  Q.  Well --
4  A.  I don't know.
5  Q.  Do you have a lease?
6  A.  I don't know if there's a lease to
7  it or not.
8  Q.  Well, how did you come to be living
9  in that apartment?
10  A.  What do you mean how did I become?
11  Q.  Well, normally people that own
12  property won't let you live there unless you
13  come to some agreement on how you're going to
14  pay and how long you're going to stay there.
15  A.  I don't know the gentleman's name
16  that I give the rent to.  You asked if there
17  was a lease.
18  Q.  Yes.
19  A.  I said I didn't know.  So I don't
20  know.
21  Q.  Well, how did you -- so I followed
22  that up with the question of how did you come
23  to live there.  Did you reach an agreement
24  with someone and that's an oral agreement or
25  do you have a written agreement?

---

Page 6

1  A.  I don't have a written agreement, to
2  my knowledge.  I don't have one.
3  Q.  When you first moved there, who were
4  you living with?
5  A.  Kate.
6  Q.  Your wife?
7  A.  Yes.
8  Q.  Did she rent the apartment or did
9  you rent it?
10  A.  She's the one that located it.
11  Q.  Okay.  And who do you live there now
12  with?
13  A.  Myself.
14  Q.  No one else?
15  A.  No.
16  Q.  How long has that been the case?
17  A.  I'm not for sure of the time.
18  Q.  Well, a week?  A month?  Six months?
19  A year?
20  A.  I don't know the exact time.
21  Q.  I didn't ask for an exact.  I'm
22  asking you how long have you been living by
23  yourself.  Has it been a matter of weeks?
24  Months?
25  A.  Months.

---

Page 7

1  Q.  More than six?
2  A.  Yes.
3  Q.  Has anyone else lived with you
4  during that six-month period?
5  A.  No.
6  MR. BECKER: Ms. Jindra?
7  MS. MORRISON: Well, it's Mrs.
8  Morrison.
9  MR. BECKER: I'm sorry.  In what
10  capacity is she here?
11  MS. MORRISON: I'm here
12  representing our corporate representative of
13  Ohio Rock which is Mike Riley.
14  MR. BECKER: I have no objection
15  to you staying while we're asking questions
16  regarding that, but I will object to you
17  staying after that.
18  MS. MORRISON: I'm sorry, say
19  that again.
20  MR. BECKER: I have no objection
21  to you being present while I question the
22  witness as the representative of Ohio Rock,
23  but after that I have an objection to you
24  continuing to be here because you don't
25  represent this gentleman and this isn't a

---

Page 8

1  public deposition.
2  So I will ask my questions of
3  Ohio Rock early on and you can be here for
4  that and then we will ask you to leave.
5  BY MR. BECKER:
6  Q.  My understanding, sir, is that you
7  are here to testify in two capacities.  One as
8  a designated representative of Ohio Rock who
9  Ms. Jindra represents.  I'm sorry, that's all
10  I had you by.
11  MS. MORRISON: You can call me
12  Ms. Jindra or Mrs. Morrison.
13  BY MR. BECKER:
14  Q.  Mrs. Morrison represents Ohio Rock,
15  and you've been designated by Ohio Rock to
16  testify about certain matters on their behalf.
17  You've also been noticed for deposition in
18  your personal capacity as Mr. Riley as the
19  person who filed bankruptcy.
20  So you have personal counsel, and
21  he's certainly entitled to be here for all of
22  it.  But Ohio Rock is only representing Ohio
23  Rock.  And if I'm asking questions of Ohio
24  Rock that you've been designated to answer by,
25  I have no objections to her being here for

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 9

1 that.
2       All right. You were telling me
3 that you've been living at the Moull Street
4 address in Newark for at least the last six
5 months by yourself. And I think my final
6 question was nobody else has lived with you
7 during that six-month period?
8   A.  Correct.
9   Q.  All right. Let's move to the Ohio
10 Rock questions, then, so counsel will be
11 present for those. We previously marked as
12 Exhibit 1 the Amended Notice of Deposition
13 which contained an Exhibit A which Ohio Rock
14 was to provide a witness --
15       MR. GUNNER: No, that's 7. There
16 you go.
17 BY MR. BECKER:
18   Q.  Ohio Rock was noticed to provide the
19 person most knowledgeable at Ohio Rock
20 Industries, Limited, relative to items that we
21 listed on Exhibit A, and you'll see on that
22 Exhibit 1 Exhibit A attachment that is about
23 13 categories.
24       And Ohio Rock has designated you
25 to testify on their behalf relative to items

Page 10

1 1, 3, 4, 8, 9, 10, 11, 12, and 13. And to the
2 extent you have knowledge of 2, 5, 6, and 7.
3       MR. GUNNER: I just want to point
4 out before he begins, he can't read or write
5 very well. He does not even have an eighth
6 grade education. So I'd like the record to
7 reflect that he has not read this exhibit.
8       MR. BECKER: I'm assuming that he
9 has discussed it with either you or Ohio
10 Rock's counsel, so he knows what he's supposed
11 to be testifying here to today. And I'll
12 certainly understand and make sure that when I
13 ask the questions, I don't rely on his ability
14 to read items. I'll try to be cognizant of
15 that and make sure I enunciate exactly what I
16 want him to respond to.
17 BY MR. BECKER:
18   Q.  First of all when did you first have
19 any involvement with Ohio Rock?
20   A.  I don't know the dates.
21   Q.  Well, was it weeks ago? Months ago?
22 Years ago?
23   A.  I don't know the exact dates or even
24 close to it.
25   Q.  Again, was it more than a week ago?

Page 11

1   A.  Yes.
2   Q.  Was it more than a month ago?
3   A.  Yes.
4   Q.  Was it more than six months ago?
5   A.  Yes.
6   Q.  Was it more than a year ago?
7   A.  I don't know.
8   Q.  Okay. How did you first become
9 involved?
10   A.  I don't understand your question.
11   Q.  How did you first have any contact
12 with Ohio Rock?
13   A.  What do you mean by contact?
14   Q.  How did you even know they existed?
15   A.  I still don't understand your
16 question.
17       MR. BECKER: Counsel, would you
18 like to have an off-the-record conversation
19 with your client?
20       MR. GUNNER: Pardon?
21       MR. BECKER: Would you like to
22 have an off-the-record conversation with your
23 client?
24       MR. GUNNER: No. I think you
25 need to rephrase your question as far as that

Page 12

1 goes. He's going to acknowledge that he
2 managed Ohio Rock as far as that goes.
3 BY MR. BECKER:
4   Q.  When did you first start managing
5 Ohio Rock?
6   A.  I don't know the exact dates.
7   Q.  More than a month ago?
8   A.  Yes.
9   Q.  More than a year ago?
10   A.  I don't know if it was more than a
11 year ago.
12   Q.  Who contacted you to manage Ohio
13 Rock?
14   A.  I don't even remember.
15   Q.  Well, who do you report to?
16   A.  What do you mean?
17   Q.  Who's your boss?
18   A.  I don't understand what you're
19 saying.
20       MR. BECKER: Counsel?
21       MR. GUNNER: Do you have a boss
22 at Ohio Rock? You are the boss, right?
23 You're the manager of the company?
24       THE WITNESS: I assume.
25       MR. GUNNER: He's asking you if

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 13

1  you have anybody that's in charge of you at
2  Ohio Rock that you know of.
3       THE WITNESS: I don't know.
4  BY MR. BECKER:
5     Q.  Well, who makes the decisions about
6  what happens at Ohio Rock?
7     A.  What do you mean decisions?  There's
8  a lot, there could be a lot of different
9  decisions.  Your decision wouldn't be the same
10 as mine.
11    Q.  Any decision.
12    A.  Depends on what it is.
13    Q.  Who else besides you makes any
14 decisions for Ohio Rock?
15    A.  I don't know.  I can't answer that
16 question.
17    Q.  What do you do for Ohio Rock on a
18 day-to-day basis?
19    A.  It's not on a day-to-day basis.
20    Q.  What do you do?
21    A.  Depends.
22    Q.  Tell me.  Anything.  What do you do?
23    A.  I don't know.  What are you
24 referring to?
25    Q.  Anything.  Anything that you do on

Page 14

1  behalf of Ohio Rock as the manager of Ohio
2  Rock, which your counsel and Ohio Rock as
3  counsel indicated you're the manager.  So what
4  do you do?
5     A.  Tear a building down.
6     Q.  Okay.  And who tells you to tear
7  what buildings down?
8     A.  I don't know.  I can't answer that
9  question.
10    Q.  Well, does somebody at Ohio Rock
11 tell you that they want to tear a specific
12 building down and you go do it?  Or do you
13 decide that I'm going to tear down a certain
14 building for Ohio Rock and then go do it?
15    A.  It depends.
16    Q.  Well, tell me the different things
17 it depends on and tell me what you do.
18    A.  If I was tearing a house down for
19 you, you'd tell me what you'd want done.
20    Q.  Well, what I'm trying to figure out,
21 sir, is if there's somebody else at Ohio Rock
22 that tells you which houses you're going to
23 tear down or whether you make that decision.
24    A.  I don't know how to answer that.  If
25 I don't want to do it, I'm not doing it.

Page 15

1     Q.  So nobody tells you what to do.  If
2  you decide you're going to tear a building
3  down, you work with whoever wants the building
4  torn down, you make the arrangements.  And if
5  you come to an agreement, then you do it.
6  Nobody tells you which ones you're going to
7  tear down, right?
8     A.  Somewhat.
9     Q.  What's wrong about that?
10    A.  Well, it depends.
11    Q.  What's it depend on?
12    A.  Every case could be different.
13    Q.  Tell me every case you've torn a
14 building down and we'll go through them one at
15 a time.
16    A.  I don't remember them all.
17    Q.  Tell me the last one.
18    A.  It was a house.
19    Q.  Where?
20    A.  I don't even remember.  It's been a
21 while.  I don't remember.
22    Q.  Where was it?
23    A.  I don't remember.
24    Q.  When was it?
25    A.  I don't remember.

Page 16

1     Q.  Was it a week ago?
2     A.  It was longer than a week ago.
3     Q.  A month ago?
4     A.  I think it may have been longer than
5  that.
6     Q.  Three months?
7     A.  I don't know.
8     Q.  What records do you have of that
9  job?
10    A.  I don't know if there is any.  I
11 don't know.  I don't have it.
12    Q.  Well, who keeps the records for Ohio
13 Rock?
14    A.  I turn them in.
15    Q.  To who?
16    A.  To Mark.
17    Q.  Mark who?
18    A.  Dunn.
19    Q.  Okay.  What records did you give to
20 Mr. Dunn?
21    A.  Whatever he would want.
22    Q.  Well, I need some examples.
23    A.  Checks.
24    Q.  That you get paid for for the job?
25    A.  No.  The checking account from the

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 17

1  bank.
2  Q.  Okay.  Which bank?
3  A.  I don't remember what bank it is.
4  Q.  Whose account is it?
5  A.  What do you mean?
6  Q.  Whose account?  Is it your personal
7  account or is it somebody else's account?
8  A.  I don't know whose account it is.
9  Q.  Where do you get the records from
10 that you give to Mr. Dunn?
11 A.  I said record.  You asked me about a
12 deal.
13 Q.  Yes.
14 A.  I mean, this is what you do.  You
15 turn things around to make it where I don't
16 understand.
17 Q.  That's not my intention.  I was --
18 A.  I said record.  You didn't say
19 records.  He asked me -- whatever we had, I
20 gave him what they consisted of.  I don't
21 know.  I can't read.
22 Q.  We started this conversation by the
23 last job that you could remember doing and I
24 asked you what records you had and you said
25 you gave them to Mr. Dunn.

Page 18

1  A.  I was thinking of the record that he
2  wanted if -- whatever I had to contain of Ohio
3  Rock.  He said needed to go to the law office.
4  Q.  Well, let's talk about the last
5  house you did because that's different.  The
6  last house that you tore down, that you don't
7  remember when it was, but it was more than
8  three months ago, perhaps?
9  A.  Or less.
10 Q.  Or less.  More than a week ago but
11 maybe less than three months?
12 A.  Okay.
13 Q.  What did you do with the records
14 that you had from that job?
15 A.  I don't even know.
16 Q.  Well, what records did you have from
17 that job?
18 A.  I don't know.  That's what I said
19 before.
20 Q.  How did you get the job?
21 A.  I don't remember.
22     MR. BECKER:  Counsel, you've
23 produced this witness as being the most
24 knowledgeable person about these topics for
25 Ohio Rock and he doesn't appear to know

Page 19

1  anything.  Would you like to inform me as to
2  why we haven't been provided with a witness
3  from Ohio Rock that knows the answers to these
4  questions?
5      MS. MORRISON:  Mr. Riley is the
6  best representative of Ohio Rock.  He's the
7  manager of the company.
8      MR. BECKER:  Well --
9      MS. MORRISON:  There are no other
10 employees, as far as I'm concerned.  I know
11 that issues as to ownership were testified to
12 in this morning's deposition.  But as far as
13 the operations of anything Ohio Rock does,
14 sporadic as that may be, is Mr. Riley.
15     MR. BECKER:  Did you have any
16 conversations with Mr. Riley to prepare him
17 for this deposition?
18     MS. MORRISON:  I don't have to
19 answer that.
20     MR. BECKER:  Well, the rules
21 require that the person most knowledgeable who
22 is offered and proposed to testify on behalf
23 of the entity is to be made familiar with the
24 topics that he's supposed to discuss and to be
25 prepared to answer the questions that he's

Page 20

1  being offered as the most knowledgeable person
2  on.  I'm just trying to determine whether that
3  was done in this case.
4      MS. MORRISON:  The rule speaks
5  for itself.  I'm not getting deposed right
6  now.  I don't have to offer any explanation as
7  to that.
8  BY MR. BECKER:
9  Q.  Mr. Riley, who handles the corporate
10 bank accounts for Ohio Rock?
11 A.  I don't know.
12 Q.  Do you?
13 A.  I don't understand what you're
14 saying.
15 Q.  Do you have the ability to write a
16 check for Ohio Rock?
17 A.  Help me understand what you're
18 trying to say.
19 Q.  Well, if Ohio Rock wants to use a
20 check to purchase anything or to pay for
21 anything, do you have the ability to sign that
22 check for Ohio Rock?
23 A.  Yes.
24 Q.  Okay.  Who gave you that authority?
25 A.  I don't remember.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 21

1    Q. When were you given the authority to
2    write checks for Ohio Rock?
3    A. I don't remember.
4    Q. Who do you report to?
5    A. Nobody.
6    Q. So you are Ohio Rock, right?
7    A. Absolutely not.
8    Q. Well, who is?
9    A. Not me. I don't own it.
10   Q. Well, who do you report to? If you
11   don't --
12   A. That's up to them.
13   Q. Who? Who's them?
14   A. Ohio Rock.
15   Q. Well, who is Ohio Rock?
16   A. Your guess is as good as mine.
17   Q. So you don't know anybody that is
18   the owner of Ohio Rock?
19   A. I can honestly tell you I don't know
20   the owners of Ohio Rock.
21   Q. Are there any other employees of
22   Ohio Rock other than you?
23   A. I can't answer that.
24   Q. You don't know of any other
25   employees?

---

Page 22

1    A. I don't know that.
2    Q. You're the manager.
3    A. What' that got to do with the
4    employees?
5    Q. Do you manage any employees?
6    A. I manage myself.
7    Q. You're the only employee?
8    A. I don't know. I can't answer that.
9    Q. Do you provide any paychecks to
10   anybody as Ohio Rock?
11   A. Help me understand that.
12   Q. Do you pay anybody for doing work
13   for Ohio Rock?
14   A. A truck driver or something.
15   Q. Are they employees?
16   A. I don't know what you consider an
17   employee. You need to help me with what you
18   consider an employee is. If somebody cuts
19   your grass, is that their employee?
20   Q. Other than truck drivers, who else
21   do you pay as Ohio Rock manager?
22   A. I don't understand your question.
23   Q. Who do you pay that does any work
24   for Ohio Rock, if anybody, or do you do it
25   all?

---

Page 23

1    A. I still don't understand your
2    question.
3    Q. What don't you understand?
4    A. Just like I said, you go from
5    employees then you said do this. I asked you
6    a question. If somebody comes and cuts your
7    grass, does that mean you're an employee? And
8    you didn't answer my question.
9    Q. I'm not here to answer your
10   questions, sir.
11   A. Okay. My answer to you is I don't
12   know.
13   Q. During the -- on the last house that
14   you tore down for Ohio Rock, who else did work
15   on that besides yourself?
16   A. I don't remember.
17   Q. Was there anybody else?
18   A. I don't remember.
19   Q. Does Ohio Rock, in addition to
20   having a bank account that you don't know
21   where it's at, do they have any credit cards?
22   A. I don't know.
23   Q. Well, do you have any credit cards?
24   A. Again, I don't remember.
25   Q. Do you have your wallet with you

---

Page 24

1    today?
2    A. I do not.
3    Q. Learned your lesson from the last
4    time, did you?
5    A. What are you trying to say? Insult
6    me?
7    Q. No. The last time I asked you to
8    pull out your wallet, you had it with you and
9    you provided me with documents that you had in
10   it. So today you didn't bring it?
11   A. Documents of what?
12   Q. In your wallet.
13   A. What was in my wallet?
14   Q. The last time? I don't recall. Do
15   you have your wallet with you today, sir?
16   A. I do not have my wallet. You made a
17   statement that I had a document in my wallet.
18   Please share to the court what was in my
19   wallet, the document.
20   Q. Is it your position in your
21   statement under oath today that you have no
22   credit cards that you use either yourself or
23   for Ohio Rock?
24   A. Excuse me?
25   Q. You have no credit cards that you

---

**Page 25**

1  use for either yourself or for Ohio Rock.  Is
2  that your testimony?
3      A.  I don't understand what you're
4  saying.
5          MR. GUNNER:  He has his own
6  credit cards, you're saying, or Ohio Rock
7  credit cards?
8          MR. BECKER:  I'm asking for
9  either one.  Let's break it down and try to
10 make it easier.
11 BY MR. BECKER:
12     Q.  Do you have a credit card that you
13 use to charge Ohio Rock's account?
14     A.  I don't understand what he's saying,
15 charge.
16         MR. GUNNER:  He's asking if you
17 have any credit cards at all.
18         THE WITNESS:  You mean like a
19 debit card or a charge card?
20         MR. GUNNER:  Charge card or debit
21 card.
22         THE WITNESS:  There was a debit
23 card.
24 BY MR. BECKER:
25     Q.  Was it an Ohio Rock debit card or

**Page 26**

1  your own personal?
2      A.  Ohio Rock.
3      Q.  And what bank was it through?
4      A.  I don't know.
5      Q.  Who has the records from that?
6      A.  I don't know.
7      Q.  Where do the bank records from Ohio
8  Rock get mailed to?
9      A.  I don't know.  I don't know.  If you
10 have the answer, help me, because I don't
11 know.
12     Q.  Who has access to P.O. Box 135 in
13 Etna, Ohio?
14     A.  I do.
15     Q.  I'm sorry?
16     A.  I do.
17     Q.  What is that?
18     A.  It's a post office.
19     Q.  Okay.  And that's where the bank
20 records go.  So who else has access to that
21 bank box, to the post office box?
22     A.  I don't know.
23     Q.  Does anybody?
24     A.  I don't know.
25     Q.  You said you do.  Does anybody else?

**Page 27**

1      A.  Kate.
2      Q.  Your ex-wife?
3      A.  Yes.
4      Q.  You're not divorced yet, correct?
5      A.  I don't know.  What do you mean?
6      Q.  There's not been a final resolution
7  to your divorce action, correct?
8      A.  I don't believe that's true.  I
9  don't know.
10         MR. GUNNER:  She moved to Florida
11 so --
12 BY MR. BECKER:
13     Q.  So you are the only person --
14     A.  She knows because -- I'll tell you
15 later.
16     Q.  You're the only person who has
17 access to the P.O. Box at Etna, Ohio?
18     A.  I can't answer that because I don't
19 know.
20     Q.  Who opened the P.O. Box?
21     A.  I don't know that, either.
22     Q.  How did you get access to it?
23     A.  I don't remember.
24     Q.  What do you do with the mail that
25 comes to that P.O. Box?

**Page 28**

1      A.  Pick it up.
2      Q.  And when there are records for Ohio
3  Rock in that P.O. Box, what do you do?
4      A.  Put them in a box.
5      Q.  Where is that box?
6      A.  I don't know.
7      Q.  Well, have you been asked to produce
8  Ohio Rock records in this case?
9      A.  Me?
10     Q.  Yes, sir.
11     A.  I don't know.
12     Q.  Did counsel ask you to produce the
13 Ohio Rock records?
14     A.  I just gave them what I had.
15     Q.  What did they ask you to produce?
16     A.  Whatever I had.
17     Q.  You gave them whatever you had?
18     A.  Yes.
19     Q.  Where are the records from Ohio Rock
20 bank accounts since May of 2013?
21     A.  I have no idea.
22     Q.  Are they going to some location
23 other than the P.O. Box 135 in Etna, Ohio?
24     A.  I don't know.
25     Q.  Are you still writing checks for

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 29

1  Ohio Rock?
2      A.  Nope.
3      Q.  When is the last time you wrote a
4  check for Ohio Rock?
5      A.  I don't know.
6      Q.  Well, was it a week ago?
7      A.  I don't know.
8      Q.  Which account did you last write a
9  check for Ohio Rock?
10     A.  I don't know that, either.
11     Q.  Do you still have any checks from
12  Ohio Rock that you can write?  A checkbook?
13     A.  I don't know where it is if we do.
14     Q.  How do you transact business for
15  Ohio Rock as the manager of Ohio Rock?
16     A.  I don't understand what you're
17  saying.
18     Q.  If Ohio Rock needs to purchase
19  supplies, how do you do that?
20     A.  I -- the person whoever wants the
21  work done buys them, would have to.  I don't
22  know.
23          MR. GUNNER:  I guess he's asking
24  you, since May are you still writing checks
25  for Ohio Rock or purchasing things for Ohio

Page 30

1  Rock?
2          THE WITNESS:  May of when?
3          MR. GUNNER:  2013.  That's what
4  he's asking you.
5          THE WITNESS:  I don't remember.
6  I don't know.
7  BY MR. BECKER:
8      Q.  Well, have you torn anything down
9  for Ohio Rock since May of 2013, May of this
10  year?
11     A.  I don't know.
12     Q.  What do you do with the money that
13  you get paid for the work that you did for
14  Ohio Rock?
15     A.  Excuse me?
16     Q.  When you tear houses or buildings
17  down for Ohio Rock, people pay you to do that,
18  right?
19     A.  Yes.
20     Q.  What do you do with the money?
21     A.  Goes into that account.
22     Q.  And where do you deposit that?
23     A.  At the bank.
24     Q.  Which bank?
25     A.  I don't remember.

Page 31

1      Q.  When is the last time you made a
2  deposit on behalf of Ohio Rock?
3      A.  I don't remember.
4      Q.  Was it last week?
5      A.  No.
6      Q.  Last month?
7      A.  I don't know when it was.
8      Q.  When is the last time you did any
9  work for anyone?
10     A.  Is this on Ohio Rock's behalf or my
11  personal?
12     Q.  Either one.
13     A.  I don't understand what you're
14  saying, then.
15     Q.  Well, sir, when is the last time you
16  did any work for anyone?
17          MS. MORRISON:  Objection.  We're
18  here as to Ohio Rock only.  Whatever Mr. Riley
19  does aside from Ohio Rock is not relevant at
20  this time.  Mike, only answer as to Ohio Rock.
21  BY MR. BECKER:
22     Q.  We'll come back to that one later in
23  the deposition, I guess.  All right.  So when
24  is the last time you did any work for Ohio
25  Rock?

Page 32

1      A.  I don't remember.
2      Q.  Where do you get the money to pay
3  the individuals who work for Ohio Rock other
4  than yourself?
5      A.  I don't understand your question.
6  That's a question you asked before about
7  employees.  I don't understand what you're
8  saying.
9      Q.  Do you have anybody else that does
10  work on the houses or buildings that you
11  demolish on behalf of Ohio Rock?
12     A.  I don't understand what you mean.
13     Q.  What don't you understand about the
14  question?
15     A.  I don't understand -- your questions
16  to somebody else's answer is not the same with
17  you.  Like you said, you seen something in my
18  wallet that was there, which is clearly a lie.
19  As well as me owing you any more money is a
20  lie.
21     Q.  The last building that you
22  demolished for Ohio Rock, were you the only
23  person that did any work on the building?
24     A.  I don't remember.
25     Q.  If anybody else was there, how did

COMMODORE BANK v.                                          GEORGE MICHAEL RILEY, SR.
GEORGE MICHAEL RILEY, SR.                                        September 20, 2013

---

Page 33

1  you pay them?
2     A.  I don't know.  I don't remember.
3     Q.  How did you get paid?
4     A.  How did I get paid?
5     Q.  Yes, sir.
6     A.  Depending on the circumstances.
7     Q.  On the last house you did --
8     A.  I don't remember.  I've been telling
9  you I don't remember.
10    Q.  Well, how did you typically get paid
11 for work that you did for Ohio Rock?
12    A.  I don't understand what you mean by
13 paid because I never got a paycheck.
14    Q.  Well, then what did you get?  Cash?
15    A.  No.  Never -- if I needed something,
16 I would get it.
17    Q.  How would you get it?
18    A.  I would write a check.
19    Q.  Okay.  So would you write a check to
20 yourself for money?
21    A.  No.
22    Q.  How would you get compensated it?
23 How did you get money in exchange for the work
24 you were doing?
25    A.  I -- it really wasn't money.

---

Page 34

1     Q.  What did you get?
2     A.  A check.  If I needed to pay for
3  something, I'd take the check, they'd fill it
4  out and I would sign it.
5     Q.  Who would fill it out?
6     A.  Whoever I needed to give it to.
7     Q.  Who?
8     A.  Whoever.
9         MR. GUNNER:  I think what he's
10 saying is he doesn't know how to write checks.
11 He'd have a payee fill the information out.
12        THE WITNESS:  I'd go to the
13 counter, and he knows this, and they'd fill it
14 out and I would sign it.
15 BY MR. BECKER:
16    Q.  All right.  So how would you get
17 money for yourself to live on?
18    A.  I just told you.
19    Q.  I don't think you did.  You told me
20 you didn't get any cash and if you needed
21 something, you used a check.
22    A.  Correct.
23    Q.  How did you get money to live on?
24    A.  I just told you.
25    Q.  You would just write an Ohio Rock

---

Page 35

1  check?
2     A.  That's correct.
3     Q.  Okay.  So you used Ohio Rock to
4  support yourself?
5     A.  I don't understand what you're
6  saying.
7     Q.  If anything that you need, that you
8  need to pay for, you would use Ohio Rock's
9  check as to --
10    A.  Not only Ohio Rock.
11    Q.  Who else?
12    A.  If I did something for myself, I
13 hauled scrap or whatever, I kept that money.
14 That was mine.
15    Q.  I understand.  So when it was Ohio
16 Rock that you did the work for, though, you
17 would just put that into Ohio Rock's account.
18 And if you needed to use money for something,
19 you would just write a check out of Ohio
20 Rock's account to buy what you needed?
21    A.  Depends on what it was.
22    Q.  Well, you tell me.
23    A.  I don't remember.  I mean, this has
24 been -- I don't know.  I don't know what
25 you're trying to say.

---

Page 36

1     Q.  Do you have the authority to conduct
2  business on behalf of Ohio Rock?
3     A.  I don't know.
4     Q.  Well, are you the manager of Ohio
5  Rock?
6     A.  What do you -- what is your
7  determination of manager?  What is your
8  termination of manager.
9     Q.  I'm using the term that your Ohio
10 Rock's witness this morning, Mr. Dunn, used.
11 He said you were the manager of Ohio Rock.
12    A.  Okay.
13    Q.  I'm trying to determine whether
14 that's true.
15    A.  If Mr. Dunn said that -- what is
16 your determination of it?
17    Q.  He wouldn't give me a definition so
18 I have no idea.
19    A.  I don't know, either.
20    Q.  So you don't know what your capacity
21 is for Ohio Rock?  You don't know what role
22 you have with them?
23    A.  What's your determination of a
24 manager?
25    Q.  I'm not going to answer your

---

COMMODORE BANK v.  
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.  
September 20, 2013

---

Page 37

1  question, sir.
2  A.  Okay.
3  Q.  What do you do for Ohio Rock?
4  A.  I already told you.
5  Q.  You haven't.  What do you do on a
6  day-to-day basis for Ohio Rock?
7  A.  It's not a day-to-day basis.
8  Q.  Whenever you do anything for Ohio
9  Rock, what do you do?
10  A.  Circumstances could be different.
11  Q.  Give me any circumstance.
12  A.  Go look at cutting a tree down.
13  Q.  I assume for somebody else?
14  A.  Excuse me?
15  Q.  For somebody else.  They want a tree
16  taken down, so they hire you to do it?
17  A.  You said Ohio Rock then you go to
18  me.  I don't know what you're trying to say.
19  One minute it's Ohio Rock, the next minute
20  it's me.
21  Q.  We're talking about Ohio Rock.  They
22  have to talk to somebody and you are the
23  manager of Ohio Rock, right?
24  A.  Okay.
25  Q.  So --

---

Page 38

1  A.  If you say so.
2  Q.  If somebody wants Ohio Rock to take,
3  in your example, a tree down, they would give
4  you direction on how, which tree to take down,
5  right?
6  A.  Uh-huh.
7  Q.  You would have the authority to
8  agree to that or not agree to it?
9  A.  Or give them a price.
10  Q.  Sure.  You would say okay, if you
11  want that tree down, Ohio Rock will charge you
12  a thousand dollars, let's say.  Is that how
13  the transaction would go?
14  A.  We would determine a cost.
15  Q.  And you had the ability to agree on
16  the cost, right?
17  A.  I had that ability.
18  Q.  And once you agreed on a price, who
19  would do the work?
20  A.  Me.
21  Q.  Okay.  Anybody else?
22  A.  I don't know.  Depends.
23  Q.  Well, we're talking about a tree
24  being taken down now.
25  A.  I'm not talking about any cutting.

---

Page 39

1  I'm just giving you an example.
2  Q.  Have you ever done that for Ohio
3  Rock, take a tree down?
4  A.  I don't even remember.  I don't
5  know.
6  Q.  Well, give me an example of
7  something you do.
8  A.  I don't know examples because, you
9  know, you say Ohio Rock then you say me.  Then
10  you say this, then you say that.  So have I
11  ever cut a tree down myself personally, all by
12  myself?  Yes.
13  Q.  For Ohio Rock?
14  A.  I don't remember.
15  Q.  Give me an example of work that you
16  have done for Ohio Rock and we'll use that as
17  our example.
18  A.  Residential house.
19  Q.  Okay.  Tell me more.  What about it?
20  A.  That's it.  Demolition.
21  Q.  You're going to demolish a
22  residential house.  So again, you would, as a
23  representative of Ohio Rock, you had the
24  ability to agree to a price for that that you
25  were going to charge the person who owned the

---

Page 40

1  residence, right?
2  A.  Uh-huh.
3  Q.  All right.  Once you agreed on the
4  price, who did the work?
5  A.  Me.
6  Q.  By yourself?
7  A.  More than likely.
8  Q.  I'm trying to --
9  A.  I don't remember.  I mean, I have to
10  say more than likely.
11  Q.  If there was anybody else, how were
12  they paid?
13  A.  Maybe the owner.  I don't know.
14  Q.  How were you paid?
15  A.  I explained that to you five minutes
16  ago.
17  Q.  In this example, this specific
18  example.
19  A.  It's the same thing I told you.  If
20  there was something I needed, I wrote a check.
21  Q.  Out of Ohio Rock's account?
22  A.  Out of Ohio Rock's account.  Same
23  answer.
24  Q.  Was there any restrictions on how
25  much you could write for things that you

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

**Page 41**

1  needed yourself out of Ohio Rock's account?
2    A.  There may have been.  I didn't know
3  if there was.
4    Q.  So you're not aware of any
5  restrictions?
6    A.  I don't know.
7    Q.  Did anybody ever tell you you
8  couldn't write check that you cashed for Ohio
9  Rock?
10    A.  What do you mean?
11    Q.  Have you ever written a check on
12  Ohio Rock's account for anything that you were
13  then told by somebody that you can't use Ohio
14  Rock's checking account to buy those types of
15  things?
16    A.  What would be those type of things?
17    Q.  I'm trying to ask you, has that ever
18  happened?
19    A.  I don't think so.
20    Q.  So all of the checks you wrote for
21  Ohio Rock, nobody has ever told you that you
22  can't use Ohio Rock's account for those
23  purposes?
24    A.  That's correct.
25    Q.  Okay.  When you were finished with

---

**Page 42**

1  the demolition of this residence, the example
2  we're talking about, the person that you
3  agreed to on the price, whoever owned the
4  residence, where would they, or how would they
5  pay you?  Did they give you a check?
6    A.  Yes.
7    Q.  What would you do with that check?
8    A.  Deposit it.
9    Q.  Into the Ohio Rock account?
10    A.  Yes.
11    Q.  Then you got the Ohio Rock monthly
12  statements from that checking account to the
13  P.O. Box in Etna, Ohio, right?
14    A.  If that's where they came to.
15    Q.  Okay.  Did you have to report to
16  anyone about the fact that you had finished a
17  job for Ohio Rock, in your example?
18    A.  Report to who?
19    Q.  Anybody.
20    A.  Such as?
21    Q.  I don't know.
22    A.  I don't, either.
23    Q.  Whoever is Ohio Rock.
24    A.  You tell me.  I don't know what
25  you're saying.

---

**Page 43**

1    Q.  Well, go back to your example, okay?
2    A.  You said did I report to somebody.
3  Who do I need to report to?
4    Q.  I'm trying to figure that out.
5  Let's take it a piece at a time.  You
6  demolished this residence.  You had agreed on
7  a price.  You did the work.  The homeowner
8  gives you a check and you told me you deposit
9  it into Ohio Rock's account, right?
10    A.  Uh-huh.
11    Q.  Did you have to then tell somebody?
12    A.  Who?
13    Q.  Anybody at Ohio Rock that I finished
14  this job and the money is in the account.
15    A.  Who?
16    Q.  Anybody.
17    A.  Who?  I don't understand what you
18  mean.
19    Q.  I'm assuming by your answer you
20  don't ever tell anybody that.  You just do it.
21  And since you're Ohio Rock, you move on to the
22  next job.
23    A.  I'm not Ohio Rock.
24    Q.  Then who is?
25    A.  Ask Ohio Rock.

---

**Page 44**

1    Q.  You're here as their designee.
2  You're the one supposed to tell me that.
3    A.  I'm supposed to tell you what?
4    Q.  Who owns Ohio Rock and who runs it.
5    A.  I don't know who the owner is, so
6  you got the wrong person.
7    Q.  Who do you report to?
8    A.  I don't know.
9    Q.  Anybody?
10    A.  Depends on the circumstances.
11    Q.  Give me any circumstances where --
12    A.  If I tear your house down, I guess I
13  report to you.
14    Q.  No.  Anybody at Ohio Rock.
15    A.  I don't understand what he's saying.
16    Q.  What assets does Ohio Rock currently
17  have?
18    A.  How would I know?
19    Q.  Because you've been designated by
20  Ohio Rock as the person most knowledgeable
21  about that question.
22    A.  I can't answer that question.
23    Q.  What liabilities does Ohio Rock
24  currently have?  Do they owe anything?
25    A.  I don't know that, either.

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 45

1    Q.  What's the net worth of Ohio Rock?
2    A.  How would I know that?
3    Q.  Because you've been designated as
4  the person most knowledgeable by Ohio Rock to
5  testify as to that question.
6    A.  I can't answer that question.  I
7  don't know the answer.
8    Q.  Okay.  Have any assets of Ohio Rock
9  been distributed since April of 2011?
10    A.  I don't know what you mean.
11    Q.  Well, has anything Ohio Rock once
12  owned either been sold or given away?
13    A.  I don't know.
14    Q.  Have you done that for Ohio Rock?
15    A.  I don't know.
16    Q.  What business has Ohio Rock
17  transacted since April of 2011?
18    A.  I don't know.
19    Q.  What authority does Ohio Rock
20  Industries have to transact business in states
21  other than Ohio?
22    A.  What do you mean?
23    Q.  Can Ohio Rock do work in states
24  other than Ohio?
25    A.  You'd have to ask them.

---

Page 46

1    Q.  Have you done any work for Ohio Rock
2  in any states other than Ohio?
3    A.  I don't remember.
4    Q.  Have you done any work for Ohio Rock
5  in West Virginia?
6    A.  I don't remember.
7    Q.  Who has the authority to access
8  funds on behalf of Ohio Rock Industries?
9    A.  I don't know.
10    Q.  Who is the person authorized to
11  prepare and sign tax records on behalf of Ohio
12  Rock Industries?
13    A.  I don't know.
14    Q.  Have you ever filed a tax return for
15  Ohio Rock Industries in either the State of
16  Ohio or the federal government?
17    A.  Why would I do that?
18    Q.  Just asking whether you have.
19    A.  Excuse me?
20    Q.  I'm just asking whether you have or
21  you haven't.
22    A.  That's not my responsibility.
23    Q.  So you have not?
24    A.  I can't answer that question.  It's
25  not my responsibility.

---

Page 47

1    Q.  Well, you can answer the question of
2  whether you have or you haven't.  So have you
3  ever filed a tax return on behalf of Ohio
4  Rock?
5    A.  I have not.
6    Q.  Have you ever sent anyone the Ohio
7  Rock Industries, Limited, Operating Agreement
8  or any amendments to the Operating Agreement?
9    A.  Operating Agreement?
10    Q.  Yes, sir.
11    A.  What is an Operating Agreement?
12    Q.  If you look at the pile which is in
13  front of you, your ounce counsel there --
14    A.  I can't read.  There's no sense in
15  me looking at it.
16    Q.  He can look at it and tell me
17  whether he's seen it before.
18    A.  They all look the same to me.
19        MR. GUNNER:  Do you want me to
20  show them to him one by one?
21        MR. BECKER:  Just show him
22  Exhibit 3 to start.
23        MR. GUNNER:  Exhibit 3, you said?
24        MR. BECKER:  Yes, sir.  It should
25  be this one.  The Ohio Rock Industries

---

Page 48

1  Operating Agreement.  It should look like
2  this.
3        MR. GUNNER:  He wants you to look
4  at that and see if you've ever seen that
5  before.
6        THE WITNESS:  I never made this.
7  BY MR. BECKER:
8    Q.  I didn't ask if you made it.  Have
9  you ever seen it before?
10    A.  I don't believe so.
11    Q.  Have you ever sent it to anybody
12  else on behalf of Ohio Rock?
13    A.  Have I ever did what?
14    Q.  Sent it to anybody.  E-mailed it to
15  them or mailed it to them, a copy of it?
16    A.  I don't know.
17    Q.  So you might have?
18    A.  I don't know.
19    Q.  Well, has anybody ever asked you for
20  records indicating who owns Ohio Rock and
21  you've sent them documents?
22    A.  I don't remember.
23        MR. BECKER:  Counsel, could you
24  show him what was marked as Exhibit 6, which
25  is this one?  It's the First Amendment to the

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 49

1 Operating Agreement.
2 THE WITNESS: I don't know what
3 that is.
4 MR. GUNNER: Just take a look at
5 it. He wants you to take a look to see if
6 you've ever seen it before.
7 THE WITNESS: I didn't make this,
8 either.
9 BY MR. BECKER:
10 Q. I didn't ask if you made it. I'm
11 asking if you've ever seen it.
12 A. I don't remember.
13 Q. Have you ever sent it to anybody
14 either by e-mail or in regular mail?
15 A. Who would want this?
16 Q. If anybody has ever asked you who
17 owns Ohio Rock, have you ever sent them
18 documents?
19 A. I don't know.
20 MR. BECKER: Well, this document,
21 Exhibit 6, on the third page, Counsel --
22 MR. GUNNER: Look at the third
23 page there. That one right there.
24 THE WITNESS: That ain't me.
25 BY MR. BECKER:

---

Page 50

1 Q. That indicates you're the owner
2 of Ohio Rock Industries.
3 A. That's not my signature.
4 MR. GUNNER: He's not talking
5 about that. He's talking about the third
6 page. It says your name there that you're the
7 owner.
8 THE WITNESS: That's not true,
9 either.
10 BY MR. BECKER:
11 Q. You've never told anybody that
12 you're the owner of Ohio Rock?
13 A. Not that I remember.
14 Q. On the second page there's a
15 signature --
16 A. That is not my signature.
17 Q. Do you recognize whose it is?
18 A. No.
19 Q. Okay. Do you operate a computer?
20 A. What's your capacity of operating a
21 computer?
22 Q. Do you have a computer?
23 A. I do.
24 Q. Is it a laptop or is it stationary
25 to your house?

---

Page 51

1 A. It's like hers.
2 Q. So it's one you can carry around?
3 MS. MORRISON: Objection.
4 Mr. Riley, I want you to answer questions only
5 as to Ohio Rock. If you have used a computer
6 for Ohio Rock and if that is discussed, you
7 can talk about that. Anytime you use a
8 computer for your own personal capacity or any
9 other work, you do not have to answer that.
10 THE WITNESS: Thank you.
11 MR. BECKER: Just laying
12 foundation, Counsel. He can't tell if he's
13 operated one for Ohio Rock until he tells me
14 whether he's got one or not.
15 BY MR. BECKER:
16 Q. So you can use a laptop, right,
17 computer?
18 A. Depends on the capacity.
19 Q. Can you send e-mails?
20 A. What do you mean can I send an
21 e-mail?
22 Q. If you've got a computer, do you
23 know how to send an e-mail to someone if you
24 know their e-mail address?
25 A. I have a way to click and forward.

---

Page 52

1 Q. And have you used that ability to
2 click and forward on your computer for Ohio
3 Rock?
4 A. I don't know.
5 MR. BECKER: Can you show him
6 Exhibit 7, Counsel?
7 BY MR. BECKER:
8 Q. This is an exhibit we identified, or
9 we utilized this morning during the deposition
10 of Mr. Dunn. In the middle of that --
11 Counsel, if you can show him so I don't have
12 to come across -- there's an e-mail address
13 for mriley@ohiorockindustries.com and to
14 mrileysr@ohiorockindustries.com.
15 Is that your e-mail address? If
16 somebody wants to send you an e-mail, is that
17 where they send it?
18 A. I always thought it was mriley.
19 Q. Which is the first of the two?
20 A. If that's what you say.
21 MR. BECKER: Well, Counsel, could
22 you show him where I'm talking about, please?
23 MR. GUNNER: He's talking about
24 that right there. It says mriley.
25 THE WITNESS: I have an e-mail

---

COMMODORE BANK v.

GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 53

1  address that says that, yes.
2  BY MR. BECKER:
3  Q.  Do you have an e-mail address other
4  than the ohiorockindustries.com address?
5  A.  Apparently.
6  Q.  Mrileysr?
7  A.  That's what it says.
8  Q.  So both of those go to you?
9  A.  I don't know.
10  Q.  This document indicates that you got
11  an e-mail from Marcus Dunn that you then
12  forwarded to James Harris and Pam Anderson at
13  Harris Real Estate.  Is that what you did?
14  A.  I can't answer that question.
15  Q.  Why not?
16  A.  Because you said that's what I did.
17  I don't know if I did that.
18  Q.  Well, I'm asking you to look at the
19  document.
20  A.  I don't remember -- I don't know
21  what these documents are.
22  Q.  Well, this document would indicate
23  that you forwarded Ohio Rock documents on to
24  jhre@msn.com, and that is James Harris Real
25  Estate.  Did you forward e-mails on your

---

Page 54

1  computer for Ohio Rock that you received from
2  Marcus Dunn to James Harris Real Estate on or
3  about October 11th, 2012?
4  A.  I don't remember.
5  Q.  You don't deny that you did, you
6  just don't remember?
7  A.  I don't know.
8  Q.  I'm just trying to clarify.  You
9  don't deny it, you just don't remember?
10  A.  I'm denying because I don't know.
11  Q.  Did you ever talk to anybody at
12  Harris Real Estate?
13  A.  Yes.
14  Q.  About Ohio Rock?
15  A.  Yes.
16  Q.  What did you talk about?
17  A.  You said about Ohio Rock.
18  Q.  About Ohio Rock.  We're trying to
19  limit our questions right now about what you
20  did for Ohio Rock.  So have you ever talked to
21  anybody at Harris Real Estate about Ohio Rock
22  business?
23  A.  Have you ever talked about me to Jim
24  Harris?
25  Q.  I don't have to answer your

---

Page 55

1  questions, sir.
2  A.  I don't remember.
3  Q.  You don't deny it?
4  A.  I don't remember.
5  Q.  I'm trying to clarify whether you
6  are denying it or you don't remember it.
7  A.  I just don't remember.
8  Q.  If they say you did talk to them and
9  sent them documents, you're not going to deny
10  it?
11  A.  I'm not going to admit it.  I don't
12  know if I did or didn't.
13  Q.  Did you do any work on behalf of
14  Ohio Rock for James Harris Real Estate?
15  A.  Define your question, please.
16  Q.  Did you ever do any work on behalf
17  of Ohio Rock with James Harris Real Estate?
18  Did they ever hire you or did you ever hire
19  them for Ohio Rock?
20  A.  I don't remember.
21  Q.  So you're not denying that you did,
22  you just don't remember?
23  A.  I don't remember.  Is there a
24  difference between denying and remembering?
25  Q.  Yes, sir.

---

Page 56

1  A.  Can you tell me what it is?
2  Q.  If you tell me you don't remember,
3  then it's possible you did and it's possible
4  you didn't, you just don't remember.  But if
5  you tell me you never did, then you're denying
6  you ever did.
7  A.  I said I didn't remember.
8  Q.  Thank you.
9  A.  So don't remember means I'm not for
10  sure, right?
11  Q.  Yes, sir.
12  A.  Okay.
13  Q.  So your answer is you don't
14  remember?
15  A.  That's my answer.
16  Q.  Okay.  Did you ever do any work for
17  Ohio Rock at 50 Shady Street, Wheeling, West
18  Virginia?
19  A.  I don't know what the addresses are.
20  Q.  Well, did you ever do any work for
21  Ohio Rock in Wheeling, West Virginia?
22  A.  Yes.
23  Q.  Okay.  In September of 2012 did you
24  then attempt on behalf of Ohio Rock to
25  purchase 50 Shady Street in Wheeling, West

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 57

1  Virginia?
2      A.  I don't know the address.
3      Q.  Did you attempt on behalf of Ohio
4  Rock to purchase a piece of real estate in
5  Wheeling, West Virginia, on behalf of Ohio
6  Rock?
7      A.  Yes.
8      Q.  Okay.  Who were you dealing with to
9  try to make that purchase?  Were you dealing
10  directly with the owner of the property or did
11  you deal with a real estate group?
12      A.  It was a real estate group.
13      Q.  You dealt with Harris Real Estate
14  Group, right?
15      A.  If Pam and Jim are together.
16      Q.  Pam Anderson?
17      A.  I don't know her last name.
18      Q.  But you dealt with a Pam?
19      A.  Uh-huh.
20      Q.  And Jim Anderson, Anderson Real
21  Estate -- or I'm sorry, at Harris Real Estate?
22      A.  I don't know.
23      Q.  You dealt with -- Pam was the one
24  you remember dealing with?
25      A.  That's who I spoke with.

---

Page 58

1      Q.  Okay.  Did you send Pam -- I'm
2  sorry.  Did you e-mail documents to Pam when
3  she requested them concerning Ohio Rock and
4  who they were?
5      A.  I don't remember.
6      Q.  Okay.  If she says you did, you're
7  not going to deny that, are you?
8      A.  I can't until I understand what it
9  is.  I don't know.
10      Q.  Well, did you ever e-mail Pam offers
11  to purchase the property at 50 Shady Street in
12  Wheeling, West Virginia?
13      A.  I can't answer that.  I don't know.
14  You're asking me to answer something that I
15  don't know.
16          (Plaintiff's Exhibit 8 was marked
17  for identification.)
18  BY MR. BECKER:
19      Q.  Sir, the court reporter has marked
20  as Exhibit 8, package of documents that I've
21  also given a copy to your counsel so he can
22  assist you.  They have numbers at the bottom.
23  Can you read the numbers or not?
24      A.  Yes.  I see it, Number 8.
25      Q.  So they start with GMR 021 and they

---

Page 59

1  run through GMR 127.  So at the bottom right,
2  when I'm looking at a specific document, I'm
3  going to give you that number at the bottom to
4  help you find it.  Are you with me?  Do you
5  understand?
6          MR. GUNNER:  He's talking about
7  the page numbers down here, the lower right-
8  hand corner.
9          THE WITNESS:  Okay.
10  BY MR. BECKER:
11      Q.  I'll give you a number if I'm
12  looking at a specific page.  All right?
13      A.  Okay.
14      Q.  Let's look at the second page of the
15  package, which is 022.  All right?  That's an
16  e-mail, a copy of an e-mail from, it starts
17  with a note from Pam Anderson at Harris Real
18  Estate to Kate Riley.  I need you to keep
19  those in front of you.
20      A.  I want her to see those, too.
21          MR. GUNNER:  Keep those there.
22  She can share mine.
23  BY MR. BECKER:
24      Q.  All right.  It says that there were
25  two demos completed by Ohio Rock, one at 1133

---

Page 60

1  Fort Henry Avenue, Wheeling, West Virginia,
2  26003, and 50 Shady Street, Wheeling, West
3  Virginia.  Did you do the demos for Ohio Rock
4  at those two addresses?
5      A.  Yes.
6      Q.  Okay.  Did you work with Pam
7  Anderson in order to get those jobs?
8      A.  I don't remember.
9      Q.  Okay.  Did Pam Anderson's office pay
10  you for that work or did somebody else pay
11  you?
12      A.  I don't remember.
13      Q.  Whoever paid you for that work, you
14  put in the Ohio Rock account as you told me
15  earlier, right?
16      A.  {Witness nods his head.}
17          MR. GUNNER:  You have to answer
18  yes or no.
19          THE WITNESS:  Yes.
20  BY MR. BECKER:
21      Q.  Were you paid by check or by cash?
22      A.  Check.
23      Q.  And then --
24      A.  I assume.
25      Q.  Were the checks made out to Mike

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 61

1  Riley or were they made out to Ohio Rock?
2     A.  Ohio Rock.
3     Q.  If you look at the next page, which
4  is 023 at the bottom, the title of that
5  document is Counter Offer.  It's dated
6  September 25th, 2012.  It indicates that the
7  buyer is Ohio Rock Industries, Limited, and it
8  is an offer to purchase for $4,000.
9          Did you attempt to purchase,
10 according to what this document indicates, on
11 behalf of Ohio Rock the residence at 50 Shady
12 Street in Wheeling, West Virginia?
13    A.  I don't remember the address.
14    Q.  Do remember you attempted to
15 purchase a piece of property in Wheeling, West
16 Virginia, through Pam Anderson's office?
17         MR. GUNNER: When you say you,
18 you need to clarify that.
19         MR. BECKER: I'm sorry?
20         MR. GUNNER: When you say you,
21 are you clarifying --
22 BY MR. BECKER:
23    Q.  You on behalf of Ohio Rock attempted
24 to make that purchase, right?
25    A.  On behalf of Ohio Rock.

Page 62

1     Q.  Yes.
2     A.  On behalf of Ohio Rock.
3     Q.  Correct.
4     A.  On behalf of Ohio Rock.
5     Q.  Did you send a thousand dollars as
6  earnest money to try to go forward with that
7  purchase?  The counter offer indicates that
8  buyer is to deposit earnest money in the
9  amount of a thousand dollars in the listing
10 agent's escrow account.
11         I'm just asking if that's what
12 you did.  Did you send a thousand dollars to
13 Pam Anderson to hold and secure the offer that
14 Ohio Rock was making to purchase --
15         MR. GUNNER: Just for
16 clarification purposes, anytime you use the
17 term you, are we use assuming you mean Ohio
18 Rock?
19         MR. BECKER: You on behalf of
20 Ohio Rock.  I'm assuming he's the one doing it
21 but --
22         MR. GUNNER: I just want to
23 clarify that he personally sent them a
24 thousand dollars or did Ohio Rock send them a
25 thousand dollars.

Page 63

1  BY MR. BECKER:
2     Q.  I'll try to be specific.  Did Ohio
3  Rock through you write a check for a thousand
4  dollars as earnest money, and then did you on
5  behalf of Ohio Rock send that to Ms. Anderson?
6     A.  I don't remember.
7     Q.  So you don't deny it, you just don't
8  remember?
9     A.  I don't remember.
10    Q.  Okay.  If you look at page 025,
11 which should be the next one -- you're on 024.
12 Go one more, there are some signatures on page
13 025.  It's the third page of this purchase
14 Counter Offer.
15         The printed name is Mike Riley,
16 Ohio Rock, and then there's a signature to the
17 right of that.
18         MR. BECKER: Counsel, can you
19 show him what I'm talking about?
20         MR. GUNNER: He's asking about
21 that signature right there.
22 BY MR. BECKER:
23    Q.  Is that your signature?
24    A.  It is.
25    Q.  Okay.  Did you fill out the other

Page 64

1  portions of this page where it says the date
2  and Mike Riley Ohio Rock, or did somebody else
3  do that for you?
4     A.  I don't know if Pam did it or I did
5  it.  I don't know.
6     Q.  But it's your signature?
7     A.  That is my signature.
8     Q.  And is that the phone number for
9  Ohio Rock that's listed?
10    A.  That's my number.
11    Q.  You being Mike Riley's number?
12    A.  Where?
13    Q.  Underneath your signature.
14    A.  That is my cell phone number.
15    Q.  Okay.  That's your cell phone?
16    A.  Uh-huh.
17    Q.  Who pays the cell phone bill, you or
18 Ohio Rock?
19    A.  It would depend.
20    Q.  What would it depend on?
21    A.  Sometimes I paid it as Mike Riley.
22 Sometimes Ohio Rock paid it.
23    Q.  Who would make the decisions to
24 which would make the payment?  You?
25    A.  I don't know.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 65

1    Q.  Well, you paid the bill, right?
2  You, Mike Riley, paid the bill for the cell
3  phone. Is it in your name or is it in Ohio
4  Rock's name?
5    A.  It's in my name.
6    Q.  So you are responsible for paying
7  that bill to the phone company? They send you
8  a bill and you pay it, right?
9    A.  Yes.
10   Q.  And you make the decision of whether
11 you're going to pay all or portions of a bill
12 with an Ohio Rock check or with your own
13 personal --
14   A.  I don't understand what you're
15 saying.
16   Q.  When you get the bill -- you get it
17 monthly?
18   A.  Yes.
19   Q.  All right. Does it come to that
20 Etna address?
21   A.  Yes.
22   Q.  The P.O. Box?
23   A.  Uh-huh.
24   Q.  So when the bill comes from the
25 phone company -- which phone service do you

---

Page 66

1  use?
2    A.  I don't remember.
3    Q.  Do you still have it?
4    A.  Yes.
5    Q.  What service do you use? Is it
6  Verizon? Is it something else?
7    A.  I don't know.
8    Q.  You don't know what phone service
9  you have?
10   A.  Could be Verizon. I don't know.
11   Q.  All right. So when a bill comes, it
12 has to be paid. You told me that sometimes it
13 depends on whether Ohio Rock pays the bill or
14 if you pay the bill, Mike Riley.
15       I'm trying to ask who makes that
16 decision as to which account it's going to
17 come out of?
18   A.  I make the decision for Mike Riley.
19   Q.  Who makes the decision for Ohio
20 Rock?
21   A.  I don't know.
22   Q.  Well, if you write a check from an
23 Ohio Rock account to pay your cell phone bill,
24 do you have to ask somebody for permission or
25 do you just get to decide to do that on your

---

Page 67

1  own?
2    A.  I did it on my own.
3    Q.  That's one of those bills you've
4  done in the past and nobody has ever told you
5  not to do it, right?
6    A.  Yes.
7        MR. BECKER: Counsel, if you can
8  direct him to pages 036 and 037. There's a
9  signature on 037 I want him to look at.
10       MR. GUNNER: That's 36. That's
11 37 there.
12       MR. BECKER:
13   Q.  It's a two-page document as your
14 counsel has shown you. 036 is the first page
15 which says it's a James Harris Real Estate
16 General Policy on Agency, and it finishes on
17 the second page, which is GMR 037.
18       There's a date at the bottom
19 where it was signed by Pam Anderson on one
20 side as agent and then there's a client
21 signature line next it dated 8/24/12. I need
22 to know whether that's your signature.
23   A.  That is my signature.
24       MR. BECKER: Okay. Thank you.
25 Counsel, if you can direct him to 042 and 043.

---

Page 68

1        MR. GUNNER: That's 42 and 43.
2  BY MR. BECKER:
3    Q.  All right. This is a two-page
4  document. There is a check on the second
5  page, if you would look at that. Do you have
6  that in front of you there? Okay. Is that
7  your signature on the Ohio Rock Industries,
8  Limited check 18286?
9    A.  I believe so.
10   Q.  And it's for a thousand dollars,
11 correct?
12   A.  Yes.
13   Q.  And it's made out to Jim Harris, is
14 it not?
15   A.  Yes.
16   Q.  In the for line where you're
17 describing why you're writing that check, it
18 says 50 Shady, does it not?
19   A.  If that's what it says.
20       MR. GUNNER: Can you read it?
21 Did you write that on the check? Can you read
22 what that says?
23       THE WITNESS: I don't know if I
24 filled that out.
25       MR. GUNNER: Okay.

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 69

1     THE WITNESS: Pam may have.
2  BY MR. BECKER:
3     Q.  Does that help refresh your
4  recollection that you were attempting to buy
5  50 Shady?
6     A.  I as Ohio Rock or I as Mike Riley?
7     Q.  You as Ohio Rock.  You were trying
8  to figure out whether -- you told me you
9  didn't remember the address.  I told you it
10 was 50 Shady Street.
11     I'm showing you now a check for a
12 thousand dollars earnest money that appears to
13 be for 50 Shady Street.
14     A.  Okay.
15     Q.  So does that help you remember what
16 the address was you were trying to buy for
17 Ohio Rock?
18     A.  Yes.
19     Q.  You would have sent these documents
20 to Pam at her request, right?  The check and
21 the first page is a PNC banking statement for
22 Ohio Rock showing there was a little over
23 $40,000 in that checking account at the time,
24 right?
25     MR. GUNNER: Are you asking him

---

Page 70

1  whether he sent the statement to Pam or
2  whether the account shows a $40,000 balance.
3     MR. BECKER: Good point.
4  BY MR. BECKER:
5     Q.  First of all, did you send these
6  documents to Pam Anderson, the check and the
7  banking statement that's attached to it?
8     A.  I don't know.  I don't remember.
9     Q.  Well, she was wanting earnest money
10 for the purchase that you were trying to make
11 for Ohio Rock on that property and --
12     A.  So I probably sent the check.
13     Q.  Okay.
14     MR. GUNNER: He's asking also did
15 you send --
16  BY MR. BECKER:
17     Q.  Did you send the banking statement
18 for Ohio Rock's account showing that it had in
19 it in August of 2012 $40999.20?
20     A.  I don't know.  I don't remember.
21     MR. BECKER: The next document is
22 a series of documents.  Counsel, if you'd show
23 him 44 through 48.
24     MR. GUNNER: He's talking about
25 that one.  There's 44, 45, 46, 47, 48.

---

Page 71

1  BY MR. BECKER:
2     Q.  Those are documents concerning the
3  establishment of Ohio Rock Industries,
4  Limited, as an Ohio entity.  My question is,
5  did you send this package of documents to Pam
6  Anderson or did somebody else do that for you?
7     A.  I think Pam may have got them
8  herself somehow.
9     Q.  So you didn't mail them to her or
10 e-mail them to her?
11     A.  I don't remember.  I don't know.
12     Q.  It's possible you did, you just
13 don't remember?
14     A.  I don't remember.  I think Pam may
15 have got them herself.
16     MR. BECKER: The next document,
17 Counsel, is 049 and 050.
18     MR. GUNNER: This is 49 and 50.
19     MR. BECKER: Actually, 51 as
20 well.
21     MR. GUNNER: Okay.
22     MR. BECKER: And 52, that series.
23  BY MR. BECKER:
24     Q.  Okay.  The first document is copy of
25 a letter from Zacks Law Group, LLC, dated

---

Page 72

1  October 3rd, 2012.  It's signed by someone and
2  underneath that signature is Marcus D. Dunn.
3  Do you see that?
4     MR. GUNNER: He's talking about
5  this letterhead here.
6     THE WITNESS: Okay.  If that's
7  what you say.
8  BY MR. BECKER:
9     Q.  Did you sign that document?
10     A.  I didn't sign this.
11     Q.  Okay.
12     MR. GUNNER: That's what he's
13 asking you.
14  BY MR. BECKER:
15     Q.  Did you sign -- you didn't sign this
16 document, right?
17     A.  I don't believe so.  It's not my
18 signature.
19     Q.  Okay.  Did you send this document to
20 Ms. Anderson or did somebody else on behalf of
21 Ohio Rock?
22     A.  I don't know.
23     Q.  You don't recall one way or the
24 other?
25     A.  I don't remember.

---

COMMODORE BANK v.                                                    GEORGE MICHAEL RILEY, SR.
GEORGE MICHAEL RILEY, SR.                                           September 20, 2013

Page 73

1    Q.  So it's possible you did?
2    A.  I don't remember.
3    Q.  Okay.  The next page indicates that
4    Stacia Johnson is the secretary for Ohio Rock
5    Industries, Limited.  Who is Stacia Johnson?
6         MR. GUNNER: He wants to know who
7    that is.  Do you know a Stacia Johnson?
8    That's what he's asking you.
9         THE WITNESS: She helped.
10   BY MR. BECKER:
11   Q.  Who is she?
12   A.  A lady that helped.
13   Q.  Helped what?
14   A.  Whatever needs to be done.
15   Q.  And how did you come to know
16   Ms. Johnson?
17   A.  I don't even remember.
18   Q.  And did you give her the letterhead
19   that this is on?  Was this a piece of paper
20   that Ohio Rock used to transact business?  It
21   says Ohio Rock at the top.
22   A.  I don't know.
23   Q.  Is that her signature?
24   A.  I can't answer that.  I'm not Stella
25   or whatever her name is.

Page 74

1    Q.  Okay.  The document says that George
2    M. Riley is an authorized signer for any and
3    all documents for Ohio Rock Industries,
4    Limited.  Was that accurate when that was
5    stated?
6    A.  I thought you said that's what Mark
7    said.
8    Q.  He did.  Now this is another
9    document which Stacia Johnson, who says she's
10   the secretary of Ohio Rock Industries,
11   Limited, who says the same thing and she's
12   addressing it to whom it may concern.
13   A.  Okay.
14   Q.  Was that accurate?
15   A.  If that's what they said.
16   Q.  Okay.  And how was Stacia Johnson
17   paid for her work for Ohio Rock?
18   A.  She had to write a check.
19   Q.  Out of Ohio Rock's account?
20   A.  Yes.
21   Q.  To herself?
22   A.  Yes.
23   Q.  How long did she work for Ohio Rock?
24   A.  I don't even know.
25   Q.  Weeks? Months? Years?

Page 75

1    A.  Maybe a month.
2    Q.  When?
3    A.  I don't remember.
4    Q.  Last year?  Year before?
5    A.  I don't remember.
6    Q.  Was she working for Ohio Rock during
7    the period of time that Ohio Rock was
8    attempting to purchase the real estate in West
9    Virginia?
10   A.  I'd have to assume.
11   Q.  Okay.  Did you send this piece of
12   paper to Pam Anderson as part of the attempt
13   to purchase for Ohio Rock the residence, or
14   the property in West Virginia?
15   A.  I don't remember.
16   Q.  You don't deny it, you just don't
17   remember it?
18   A.  I don't remember.
19   Q.  Where is Stacia Johnson now?
20   A.  I don't know.
21   Q.  Does she still work for Ohio Rock?
22   A.  I don't think so.
23   Q.  When is the last time you did any
24   work with her on behalf of Ohio Rock?
25   A.  I don't remember.

Page 76

1    Q.  You don't know where she's at now?
2    A.  I don't.
3    Q.  The next page is -- actually, it's
4    two pages.  It's similar to the pages I showed
5    you earlier where there was e-mail traffic
6    indicating that Mr. Dunn had sent you, mriley
7    and mrileysr@ohiorockindustries.com documents
8    that according to this were forwarded to Pam
9    Anderson and to her employer at the Harris
10   Real Estate Company.
11        Does this refresh your
12   recollection that that's what you did?  You
13   forwarded documents?
14   A.  No, it does not refresh it because I
15   don't remember this.
16   Q.  You don't deny it, you just still
17   don't remember it?
18   A.  I don't remember.
19   Q.  But you don't deny it?  Sir?  You
20   don't deny forwarding documents that got from
21   Marcus Dunn --
22   A.  I don't remember.
23   Q.  I know.
24   A.  Period.  Period.  I don't remember.
25   Q.  Do you deny it?

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 77

1    A.  I don't remember.
2    Q.  The next documents are the documents
3  I showed you earlier for Ohio Rock Industries,
4  Limited, the First Amendment to the Operating
5  Agreement and then also the original Operating
6  Agreement.  The e-mail following, or I'm sorry
7  the document following those is 077.
8       MR. BECKER: Counsel, if you'd
9  show him 077.
10      MR. GUNNER: That's what he's
11  talking about.
12  BY MR. BECKER:
13   Q.  That letter is -- I'm sorry, that
14  document, 077, at the top there is an e-mail
15  from Mike Riley, the e-mail address being
16  mriley@ohiorockindustries.com, you told me
17  earlier that was your e-mail, correct?  That's
18  the e-mail address you used for Ohio Rock,
19  right?  You need to answer yes or no.
20   A.  Yes.
21   Q.  Okay.  And it indicates that you
22  e-mailed to Pam Anderson at panderson@hre --
23  Harris Real Estate -- @att.net on October
24  11th, 2012, you copied yourself at
25  ohiorockindustries.com --

---

Page 78

1    A.  I copied what?
2    Q.  You sent the same copy of that
3  e-mail that you were going to send to Pam
4  Anderson back to yourself and the subject was
5  50 Shady, forward.  And it was in response to
6  REO Repair Coordinator --
7       MR. GUNNER: He's talking about
8  this up there.
9       THE WITNESS: There's more stuff
10  on this page.
11  BY MR. BECKER:
12   Q.  I understand.
13   A.  Okay.  So break it down because
14  you're saying things --
15   Q.  I'm trying to.
16   A.  Start from the top and let's work
17  from the top down so I understand.
18   Q.  All right.  The very top it says
19  print.
20   A.  Okay.
21   Q.  So Pam Anderson or somebody in her
22  office printed this document out.
23   A.  Okay.
24   Q.  It was from, on the from line, Mike
25  Riley, open paren,

---

Page 79

1  mriley@ohiorockindustries.com, which you told
2  me is your e-mail address for Ohio Rock,
3  right?
4    A.  Okay.
5    Q.  It was sent to
6  panderson.hre@att.net.  It's dated October
7  11th, 2012.  It was also copied -- when you
8  sent it to Ms. Anderson, you also copied your
9  own e-mail address, and the subject was 50
10  Shady, forward.  Actually, forward colon 50
11  Shady.
12      So according to this beginning --
13  and you told me to go a step at a time and I'm
14  trying -- the beginning there it looks to me
15  like you're sending an e-mail to Pam Anderson
16  and the topic is you're forwarding documents
17  relative to 50 Shady, which is the real estate
18  in West Virginia in that period of time.  Does
19  that all sound right?
20   A.  If that's what you say.
21   Q.  That's what the document says.  You
22  told me you didn't remember, and I'm trying to
23  see if this helps you remember that that's
24  what you did.
25   A.  That's what I did?

---

Page 80

1    Q.  Yes.  You forwarded some documents
2  to Pam Anderson on October 11th.
3    A.  I don't know if I did or not.
4    Q.  Well, this document indicates you
5  did.  Are you denying it or are you saying --
6    A.  I don't remember.
7    Q.  So you're not denying it.  If Ms.
8  Anderson says --
9    A.  I'm not admitting it.  I'm saying I
10  don't know.
11   Q.  I understand.  If Ms. Anderson says
12  she got these documents from you, you're not
13  going to deny that then, right?
14   A.  I can't answer that.
15   Q.  All right.  The e-mail below that,
16  the we just talked about, indicates that the
17  agent buyer has 24 hours to return the
18  following documents.  And those are listed as
19  trust documents for both trusts, the Operating
20  Agreement showing owners of the company for
21  both states Ohio and West Virginia.
22      Did you send that documentation
23  that was being requested to Ms. Anderson?
24   A.  I don't know.
25   Q.  Isn't that why you forwarded the

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 81

1   documents from your attorney showing the
2   Operating Agreement?
3       A.   What are you accusing me of?  What
4   are you saying I did?
5       Q.   I'm saying that the seller of the
6   property that Ohio Rock was trying to buy in
7   West Virginia provided you information that
8   they needed documentation on who the owner was
9   of Ohio Rock, and you then requested that
10  information from your lawyer, Mr. Dunn, who
11  sent it to you by e-mail and you forwarded
12  that then to Ms. Anderson.
13      A.   I don't know if I did that.
14      Q.   You don't deny it, you just don't
15  remember?
16      A.   I don't remember.
17      Q.   Okay.  If you look at page 78 --
18  counsel, if you can help him -- that e-mail in
19  the middle was sent from yuge.bi, B as in boy,
20  @wellsfargo.com.  It was sent to Ms. Anderson
21  at jhre@msn.com, somebody at Wells Fargo, and
22  to mriley@ohiorockindustries.com.
23          Do you see your e-mail address in
24  that chain?
25          MR. BECKER:  Counsel, if you can

Page 82

1   help him.
2           THE WITNESS:  Okay.
3   BY MR. BECKER:
4       Q.   It's concerning -- first of all,
5   it's dated October 10th, 2012.  The subject is
6   50 Shady Street with an identification number
7   next to it.  So they're talking about the same
8   piece of real estate that we've been talking
9   about in West Virginia.  Are you with me?
10      A.   I'm listening.
11      Q.   According to the e-mail this -- I
12  don't know how to pronounce it, Yuge Bi is the
13  only way I can say it, Y-U-G-E space B-I,
14  says, just wanted to give a heads-up to you
15  guys.  I just spoke with Mike, he informed me
16  that he wanted to change the owner's name of
17  the subject property.
18          He previous used his company,
19  Ohio Rock, as the name, but he informed a
20  moment ago to me that he wanted to use a
21  personal name as the owner of the property.  I
22  have advised Mike to contact you, J.B., on
23  this so you guys can work the issue out.
24  Thank you.
25          So during the attempt by Ohio

Page 83

1   Rock to purchase the property in West Virginia
2   at 50 Shady Street, initially you were trying
3   to do it on behalf of Ohio Rock.  Did you then
4   later decide to try to buy it personally as
5   opposed to Ohio Rock?
6       A.   I don't remember.
7       Q.   Again, you don't deny it, you just
8   don't remember?
9       A.   I don't remember.
10      Q.   Okay.  And then the next document --
11      A.   But set the record straight.  Where
12  he said he spoke and informed his whatever you
13  said that he said that I owned a company or
14  something, I don't own a company and nor did I
15  tell him I owned that company.
16          MR. BECKER:  Okay.  The next
17  page, 79, Counsel, if you would help him.
18          MR. GUNNER:  You've got it.
19  BY MR. BECKER:
20      Q.   It's an e-mail from Ms. Anderson
21  back to Yuge.Bi.  Again, the subject is 50
22  Shady Street with the identification number on
23  it.  And Ms. Anderson is saying to Yuge,
24  please find attached the buyer signed contract
25  changing the buyer's name from his business

Page 84

1   name to his personal name.  I have uploaded a
2   copy of the contract for the asset manager.
3   Thank you, Pam Anderson.
4           So the next document --
5       A.   Can we go off the record for one
6   second?  Can I talk to you for a second?
7           MS. MORRISON:  Sure.
8           MR. BECKER:  No problem.
9           (WHEREUPON, a recess was taken.)
10          MR. BECKER:  Counsel, before we
11  go on with the questioning, I just need to
12  make sure I understand the relationships here
13  so I don't invade an attorney-client
14  privilege.  That's not my intent.
15          You had a conversation with the
16  witness outside the office.  You are here
17  representing Ohio Rock.  Is it your position
18  that Mr. Riley is an employee or agent of Ohio
19  Rock that would allow that conversation to be
20  privileged?
21          MS. MORRISON:  I'm sorry.  What
22  was the question?
23          MR. BECKER:  My question is, are
24  you taking the position that Mr. Riley is an
25  agent or an employee of -- strike that.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 85

1  Is it your position that
2  Mr. Riley is employed by Ohio Rock such that
3  you can have a conversation as the counsel for
4  Ohio Rock with Mr. Riley and it be privileged?
5  MS. MORRISON: Yes. My
6  understanding is any conversation with
7  Mr. Riley is privileged on behalf of Ohio Rock
8  because Mr. Riley is an agent of Ohio Rock.
9  MR. BECKER: Okay.
10  BY MR. BECKER:
11  Q. Mr. Riley, when we took the break,
12  we were having a conversation based on the
13  documents which seem to indicate that you were
14  initially attempting on behalf of Ohio Rock to
15  purchase some real estate at 50 Shady in West
16  Virginia and that there was some discussion
17  that you had then changed and were going to
18  try to buy that property in your own personal
19  capacity and you asked to take a break and had
20  your conversations with counsel.
21  Can you provide me with the
22  answer to the question? Did you attempt to in
23  October of 2012 purchase the property in West
24  Virginia at 50 Shady personally as opposed to
25  on behalf of Ohio Rock?

Page 86

1  A. I don't understand what you're
2  saying.
3  Q. Well, do you deny that the documents
4  indicate that you attempted to purchase the
5  property at 50 Shady in West Virginia in your
6  own personal name as opposed to the name of
7  Ohio Rock?
8  A. That is correct.
9  Q. You deny it?
10  A. I do not deny.
11  Q. You don't deny it, you just don't
12  remember it?
13  A. I didn't say that, either.
14  Q. What are you saying?
15  A. You said -- are you talking on
16  behalf of Ohio Rock or are you talking on
17  behalf of myself?
18  Q. Yeah.
19  A. What's yeah?
20  Q. Let's try to break it down. We'll
21  start over, okay?
22  A. Okay.
23  Q. Did you try and buy the property at
24  50 Shady in West Virginia first on behalf of
25  Ohio Rock?

Page 87

1  A. I did.
2  Q. Did you later try and buy the same
3  property in your own personal name?
4  A. Pam told me it needed to go into my
5  name.
6  Q. So that's what you did?
7  A. That's what I did.
8  Q. Okay. So you then did try to put it
9  in your own personal name and tried to make
10  the purchase?
11  A. Advised by the realtor.
12  Q. Okay. So then you sent some
13  documents to her, one of which would be --
14  Counsel, if you could show him -- GMR 96.
15  I'll be looking for a signature identification
16  is all. You've got 96 there, sir?
17  Okay. 96 is a Purchase Agreement
18  Inspection Rider/Waiver for the property that
19  we've been discussing. It's dated October
20  5th, 2012. It says that Wells Fargo is the
21  seller and that George Michael Riley, Senior,
22  is the buyer. There's some handwriting at the
23  top of that page. Is that your handwriting or
24  someone else's?
25  A. It's someone else's.

Page 88

1  Q. There's a signature at the bottom
2  underneath the category that says Waiver of
3  Right to Inspection. It's dated November 6th,
4  2012. There's a buyer line with an X and a
5  signature. Is that your signature on the
6  buyer line?
7  A. Yes.
8  MR. BECKER: Okay. If you'd turn
9  next, Counsel, to GMR 106.
10  BY MR. BECKER:
11  Q. Okay. 106, sir, is another printout
12  of an e-mail transaction. The from line says
13  it's Pam Anderson at her e-mail address. The
14  to line is mriley@ohiorockindustries.com. So
15  it's going to your Ohio Rock e-mail address,
16  right? The second line there.
17  A. If that's what you say.
18  Q. Can you recognize that as your
19  e-mail address? You previously indicated it
20  was.
21  A. Yes.
22  Q. It's dated October 1st, 2012 and the
23  subject is 50 Shady, the same piece of real
24  estate we've been discussing. I'm going to
25  read you the text and your counsel can correct

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 89

1  me if I'm wrong.
2        It says, hi, Mike.  We need some
3  sort of notarized letter that states you are
4  able to sign on behalf of Ohio Rock
5  Industries, period.  We will need Marcus
6  Dunn's date of birth and home address.  Thank,
7  you Pam Anderson.  That's what the document
8  says.
9        If you then look at GMR 103, 104,
10  and 105.  The date of this document in the
11  middle is from Marcus Dunn dated October 3rd,
12  2012, so two days after the one that Pam
13  Anderson sent to you saying she needed a
14  notarized letter.
15       This one is dated two days later.
16  It's from Marcus Dunn to
17  mriley@ohiorockindustries.com.  It says,
18  here's the letter, Mike.  Then above that is a
19  forward of the letter --
20       MR. GUNNER:  You need to look at
21  that document.
22  BY MR. BECKER:
23  Q.   103.  That letter that you got from
24  Marcus Dunn you're forwarding, according to
25  this, to James Harris Real Estate.  So

Page 90

1  jhre@msn.com.  Do you see that?
2  A.   I see it but I don't understand it.
3  Q.   Well, it appears from these
4  documents that Ms. Anderson on October 1st
5  told you that you needed a notarized letter
6  that states you're able to sign.
7  A.   No.  She told me she needed to know
8  who the owners was.  And I didn't know who
9  they was.  And I called to get -- I don't know
10  who the owners were or was.
11  Q.   Who did you call?
12  A.   I called Mark.
13  Q.   Marcus Dunn?
14  A.   And she said, Mike, I need to know
15  who the owners are so we can do the title.
16  Q.   Right.
17  A.   She said, without that we can't do
18  it.  Put it in your name.
19  Q.   Okay.
20  A.   And that's what I did.  I did what
21  Pam told me to do.
22  Q.   But what I'm trying to confirm --
23  A.   That's what happened.
24  Q.   I understand.
25  A.   So all this other stuff I don't

Page 91

1  understand.
2  Q.   You can either tell me you deny it
3  or you don't remember it, but we're going to
4  go through it.
5  A.   Okay.
6  Q.   The e-mail of October 1st that we
7  started with --
8  A.   I don't understand this kind of
9  stuff.  Just to let you know again, I don't
10  understand it.  I don't understand what you
11  mean by forward this and this, so you
12  understand.
13  Q.   Well, you told me earlier in the
14  deposition, Mr. Riley, that with your
15  computer, your laptop, you knew how to forward
16  e-mails.
17  A.   Right.  And Pam helped me.
18  Q.   That's all we're doing here.
19  A.   Okay.
20  Q.   What I'm trying to say to you is
21  that there's e-mail traffic from Pam Anderson
22  to you saying we need a notarized letter that
23  says you're able to sign on behalf of Ohio
24  Rock.
25  A.   Okay.

Page 92

1  Q.   There's then an e-mail from Marcus
2  Dunn to you saying here's the letter.  If you
3  look, attached to that at page 105 is a letter
4  from Marcus Dunn, Zacks Law Group, stating
5  that as legal counsel for Ohio Rock
6  Industries, Limited, the purpose of that
7  letter is confirm that George Michael Riley is
8  the authorized representative of Ohio Rock.
9        Then the e-mail goes on to
10  indicate you forwarded the letter you got from
11  Marcus Dunn.
12  A.   It came from my computer.  It
13  doesn't mean I did it.
14  Q.   Well, somebody forwarded it from
15  your computer to --
16  A.   Right.  Maybe.  I don't know.  I can
17  only go by what you tell me.
18  Q.   What I want to know is whether you
19  remember doing it, first of all.  Do you
20  remember forwarding the letter that you got
21  from Marcus Dunn?
22  A.   I don't.
23  Q.   Okay.  Now the second question is,
24  do you deny that you did?
25  A.   I don't deny it.  I don't remember

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 93

1  it.
2  Q. That's what I wanted to know. Thank
3  you.
4      All right. Did either you or
5  Ohio Rock ever purchase the property at 50
6  Shade in West Virginia?
7  A. I don't understand what you're
8  saying.
9  Q. We just spent about the last hour or
10  so going through documents where first Ohio
11  Rock and then you personally were trying to
12  buy a piece of property in West Virginia at 50
13  Shady, right?
14  A. Yes.
15  Q. My question now is, did you
16  personally or did Ohio Rock ever end up buying
17  the property or did you not?
18  A. Does any of the documents say that?
19  Q. I'm just asking you, sir.
20  A. I don't, I don't have that answer.
21  Q. So has Ohio Rock through you
22  purchased real estate?
23  A. No. Tried to or --
24  Q. No. Actually purchased it. Become
25  the owner. So the answer is no?

---

Page 94

1  A. It's no.
2  Q. Have you personally bought any
3  property in the last two years?
4  A. I was unable.
5  Q. So you tried. But my question is,
6  did you actually ever purchase any property?
7  A. I was unable.
8  Q. Were there other situations other
9  than the ones we've just been talking about at
10  50 Shady where you tried to purchase property
11  for Ohio Rock?
12  A. No.
13  Q. This is the only one you ever tried
14  to buy for Ohio Rock?
15  A. Yes.
16  Q. And what about for yourself
17  personally? Have you attempted to buy any
18  real estate in the last two years?
19  A. No.
20      MS. MORRISON: Objection.
21  Relevancy. This is as to Ohio Rock only not
22  as to whether Mr. Riley purchased any
23  personally. You don't have to answer.
24      THE WITNESS: Thank you.
25  BY MR. BECKER:

---

Page 95

1  Q. Did Ohio Rock have a storage
2  facility through U-Haul?
3  A. I don't know.
4  Q. Did you ever make any agreements
5  with U-Haul for a self-storage unit on behalf
6  of Ohio Rock?
7  A. I don't remember.
8      (Plaintiff's Exhibit 9 was marked
9  for identification.)
10  BY MR. BECKER:
11  Q. Sir, I've handed you and your
12  counsel separately a pack of documents that
13  start -- again, we've got these numbers down
14  at the bottom right that tell you pages. So
15  they start with GMR 001 and they run through
16  GMR 020.
17      So we'll do the same type of
18  thing. When I want you to go to a page
19  number, that's the number I'm referring to.
20  Are you with me? Do you understand?
21  A. Yeah. Go ahead.
22  Q. All right. So the document at the
23  top of the first page there indicates that the
24  customer is Michael Riley, Senior, with an
25  address of T111 Riley Road in Barton, Ohio.

---

Page 96

1  That's your parents' address, is it not?
2  A. I believe.
3  Q. Okay. And does that help refresh
4  your recollection that either you or Ohio Rock
5  had a U-Haul self --
6  A. Is there anything on here that says
7  Ohio Rock?
8  Q. If you go to --
9      MR. GUNNER: What's your dad's
10  name?
11      THE WITNESS: Anthony.
12      MR. GUNNER: Okay.
13  BY MR. BECKER:
14  Q. Are you saying that this was an
15  agreement that you had personally and not
16  through Ohio Rock?
17  A. I don't know. I'm asking you if
18  there's anything on here of Ohio Rock's.
19  Q. I don't have to answer the question,
20  sir. You're supposed to answer them.
21      Do you have -- if you look at
22  page 4, 004, you were providing U-Haul Moving
23  & Storage of Newark, Ohio under their storage
24  rental agreement an e-mail address of
25  mriley@ohiorockindustries.com. That's your

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 97

1   e-mail address, correct?
2       A.   Yes.
3       Q.   Is that your signature at the bottom
4   of the page?
5       A.   It doesn't look like it.
6       Q.   So you deny that you signed this?
7       A.   You asked me if that was my
8   signature.  I said that doesn't look like it.
9       Q.   I'm asking you now is that?
10      A.   I don't know.  It doesn't look like
11  the way I sign my name.
12          MS. MORRISON: I just want to
13  state for the record that the documents we
14  just went over, Bates stamped 001, 004 to
15  Exhibit 9, considering the fact that Mr. Riley
16  does not really know how to read very well, I
17  have seen no indication that any of these
18  documents state anything about Ohio Rock that
19  I've seen, other than the e-mail address used,
20  mriley@ohiorockindustries.com.
21          Aside from that I don't see any
22  indication that Ohio Rock is part of any of
23  these documents.  I just wanted to state that.
24  BY MR. BECKER:
25      Q.   So my question then, sir, is you

Page 98

1   used the Ohio Rock e-mail address.  I'm trying
2   to determine whether there was a storage unit
3   that you rented on behalf of Ohio Rock or if
4   this is a storage unit you rented on behalf of
5   you personally.
6       A.   Or it could have been my wife went
7   and rented it for her personal belongings.  I
8   don't know.
9       Q.   The purpose of that initial question
10  is only so that we know whether we should talk
11  to you about these documents as Ohio Rock or
12  whether we should talk to you as you
13  personally.  If it's Ohio Rock, then we'll
14  proceed.
15          MR. GUNNER: I'm going to object.
16  I don't think it's been established that he
17  had a storage --
18          MR. BECKER: Well, I'm trying to
19  figure that out.  I'm trying to figure out
20  whose storage unit it was.
21          MR. GUNNER: Maybe ask him that
22  question, if he had a storage unit.
23          MR. BECKER: I asked him and he
24  told me he didn't remember.
25          THE WITNESS: Okay.  I don't know

Page 99

1   if my, as you say, she's not my ex-wife, got
2   it or -- I don't know.
3           MR. GUNNER: Well, he asked first
4   if you have one.  Did you have a storage
5   facility at U-Haul?
6           THE WITNESS: Apparently she put
7   it in my name.
8   BY MR. BECKER:
9       Q.   You're saying that this was all done
10  by your wife?
11      A.   I don't know.  I don't know the
12  answer.
13      Q.   Who paid the bill for the storage
14  unit?
15      A.   I can't answer that, either.  I
16  don't know.
17      Q.   Well, the bills were being sent to
18  you at your Riley Road address.  They were
19  addressed to Michael Riley, Senior, T111 Riley
20  Road, Barton, Ohio.
21      A.   My parents' address?
22      Q.   Yes.  So that's where the bills were
23  going.  My question to you is somebody made a
24  payment -- if you look at page GMR 019, which
25  I believe is the second to the last, it says

Page 100

1   date of last payment, June 12th, 2012.
2       A.   I don't know who made that payment.
3       Q.   Could it have been that you made
4   that payment with an Ohio Rock check?
5       A.   I don't know.
6       Q.   What was in the storage unit?
7       A.   I don't know.
8       Q.   Was it Ohio Rock property or your
9   property?
10      A.   I don't know.
11      Q.   So have you rented storage units for
12  Ohio Rock?
13      A.   No.
14      Q.   Have you ever stored anything in a
15  storage unit that was Ohio Rock's property?
16      A.   No.
17      Q.   So if you had items stored at this
18  particular location, it was your personal
19  property or someone else's but it wasn't Ohio
20  Rock's?  Is that what you're telling me?
21      A.   That's correct.
22      Q.   It was paid with a Visa card,
23  apparently.  Did Ohio Rock have a Visa card in
24  October of 2012 that you could use?
25      A.   I don't know.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 101

1    Q.   Did you ever use a credit card for
2  Ohio Rock?
3    A.   I told you yes.
4    Q.   Okay.  It's possible that was a Visa
5  card that was Ohio Rock's?
6    A.   I don't know.
7    Q.   You're not denying it, you just
8  don't know?
9    A.   I just don't know.
10   Q.   And where would the credit card
11 records for Ohio Rock be?
12   A.   I don't understand what you mean.
13   Q.   You told me that Ohio Rock had a
14 credit card.
15   A.   It was a kind that came out of the
16 checking account.
17   Q.   So it was a debit card as opposed to
18 a credit card?
19   A.   See what I mean?  That's how you do.
20   Q.   I'm just asking a follow-up
21 question, sir.
22   A.   The answer is the same answer it was
23 before.  It's the credit card that comes out
24 of a bank account.  He's a banker.  Ask him.
25   Q.   Was it a Visa card?

---

Page 102

1    A.   I don't know.
2    Q.   Did you remove any items from the
3  location of the storage unit that we're
4  talking about here?
5    A.   I don't understand.
6    Q.   Well, they closed the account.
7    A.   Okay.
8    Q.   It was paid in October of 2012.  Did
9  you go, you, Mike Riley, on behalf of Ohio
10 Rock, and remove what was in the storage unit
11 before they closed it?
12   A.   I don't remember.
13   Q.   Okay.  So it's possible you did, you
14 just don't remember?
15   A.   Right.
16   Q.   Okay.  You don't remember what was
17 in it?
18   A.   I do not.
19   Q.   What vehicle were you utilizing in
20 the fall of 2012?
21       MS. MORRISON:  Objection.  Are we
22 talking about what vehicle Mr. Riley was
23 utilizing on behalf of any services for Ohio
24 Rock or personally?
25       MR. BECKER:  Well, first I have

---

Page 103

1  to establish, ma'am, whether he had a vehicle.
2  Then I'll figure out whether he was using it
3  for Ohio Rock or Mr. Riley personally.  I
4  can't ask the second question until I know the
5  answer to the first one.
6  BY MR. BECKER:
7    Q.   Were you using a vehicle -- since
8  the time you began working for Ohio Rock, have
9  you used a vehicle?  Have you driven a vehicle
10 for your personal or Ohio Rock use?
11   A.   Sir, what's the question?  For Ohio
12 Rock or for me?
13   Q.   Either one first.
14   A.   Of course I drive a car.
15   Q.   Whose car is it?  Ohio Rock's car or
16 your car?
17   A.   It's my brother's.
18   Q.   Have you used your brother's car for
19 Ohio Rock purposes?
20   A.   No.
21   Q.   What vehicle did you use for Ohio
22 Rock business?
23   A.   Ohio Rock.
24   Q.   What kind of car is that?
25   A.   It's not a car.

---

Page 104

1    Q.   What is it?
2    A.   It was a truck.
3    Q.   What kind of truck?
4    A.   It's an S-10.
5    Q.   All right.  Is that the only vehicle
6  that you've driven for Ohio Rock?
7    A.   No.
8    Q.   What else have you driven for Ohio
9  Rock?
10   A.   I don't know.
11   Q.   Well, cars?  Trucks?  Tractors?
12   A.   Trucks.
13   Q.   Other trucks?
14   A.   Yes.
15   Q.   How many other trucks other than the
16 S-10?
17   A.   Maybe one or two.
18   Q.   And how were those vehicles titled?
19 Who owns them?
20   A.   I assume Ohio Rock.
21   Q.   Where did you get them?  Where did
22 you get the keys and the vehicles?  Who gave
23 them to you?
24   A.   Who gave me what?
25   Q.   The keys and the vehicles that you

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

**Page 105**

1  drove for Ohio Rock --
2  A.  Uh-huh.
3  Q.  -- where did you get them?
4  A.  They're in it.
5  Q.  Where did you get the vehicle?
6  A.  Ohio Rock.
7  Q.  Who at Ohio Rock?
8  A.  I don't know.
9  Q.  Did you use an Ohio Rock checking
10 account and go out and purchase a vehicle and
11 put it in Ohio Rock's name?
12 A.  I don't remember.
13 Q.  Or did somebody else give you a
14 vehicle and say you could drive this for Ohio
15 Rock purposes?
16 A.  I don't remember.
17 Q.  Where are the Ohio Rock vehicles
18 kept?
19 A.  I don't know.
20 Q.  Are they kept at your apartment?
21 A.  Nope.
22 Q.  Where do you get them when you need
23 them?
24 A.  I don't need them.
25 Q.  Whenever you've driven them, where

**Page 106**

1  did you go get them?
2  A.  Wherever they was at.
3  Q.  That's what I'm asking.
4  A.  It could be anywhere.  Who knows.
5  Q.  The last time you went to get an
6  Ohio Rock vehicle, where did you pick it up
7  at?
8  A.  I don't know.
9  Q.  How did you know it was the vehicle
10 that you were supposed to drive for Ohio Rock?
11 A.  How did I know?
12 Q.  Yes.
13 A.  I must have got lucky.
14 Q.  So you just walked down the street,
15 found a car that had keys in and assumed it
16 was an Ohio Rock vehicle and got in and drove
17 it off?
18 A.  That's fine.
19 Q.  You tell me.  How did you know that
20 the vehicle that you were driving was the Ohio
21 Rock vehicle?  Who told you?
22 A.  I don't understand your question.
23 Q.  You told me you drove at least a
24 Chevy S-10 truck that was owned by Ohio Rock.
25 A.  Uh-huh.

**Page 107**

1  Q.  I'm asking you where you got the
2  truck.  How did you know it was an Ohio Rock
3  truck?
4  A.  Because Ohio Rock bought it.
5  Q.  Okay.  Did you buy it for Ohio Rock?
6  A.  Yes.
7  Q.  Okay.  Where did you buy it?
8  A.  Excuse me?
9  Q.  Where?
10 A.  I don't know.
11 Q.  Did you buy it from an individual or
12 did you buy it from a lot?
13 A.  Individual.
14 Q.  Okay.  Did you use an Ohio Rock
15 check?
16 A.  Yes.  I think.
17 Q.  All right.  Once you bought it,
18 where did you park the S-10?
19 A.  Wherever I wanted to stop.
20 Q.  Did you park it at night when you
21 went to your apartment?
22 A.  Yes.
23 Q.  Where is it now?
24 A.  The truck?
25 Q.  Yes.

**Page 108**

1  A.  I don't know where it is at the
2  moment.
3  Q.  Does Ohio Rock still own it?
4  A.  I can't answer that.  I don't know.
5  Q.  Did you sell it?
6  A.  I didn't.
7  Q.  Did you give it away?
8  A.  I did not.
9  Q.  When is the last time you drove it?
10 A.  I don't even know.
11 Q.  Where did you leave it when you
12 drove it?
13 A.  Actually, the motor blew up in it.
14 Q.  So where did you leave it?
15 A.  I can't remember.
16    MR. BECKER:  We need to take a
17 break.  I need to make a phone call and then
18 we'll come back.  We'll figure in 15 minutes.
19    (WHEREUPON, a recess was taken.)
20 BY MR. BECKER:
21 Q.  We were talking about the Chevy S-10
22 when we had a take a quick break.  You said
23 that the last you knew the engine had blown on
24 it and I can't remember if you told me where
25 the last place you saw it was or not.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 109

1    A.  I believe it might have been at my
2  brother's.
3    Q.  Who has the title to the vehicle?
4    A.  I don't know.
5    Q.  Well, when you bought it, you said
6  you bought it for Ohio Rock?
7    A.  Uh-huh.
8    Q.  I assume you used the Ohio Rock
9  account to write a check?
10    A.  Uh-huh.
11    Q.  In order to take possession of the
12  car, you would have had to have gotten a
13  title.
14    A.  Correct.
15    Q.  When you got the title, what did you
16  do with it?
17    A.  Put it in the glove box.
18    Q.  Of the car?
19    A.  More than likely.
20    Q.  Is it still with the car?
21    A.  I don't know.
22    Q.  That's a document that belongs to
23  Ohio Rock, right, because it's their car?
24    A.  Uh-huh.
25    Q.  Did you have to tell anybody from

---

Page 110

1  Ohio Rock that the engine blew?
2    A.  No.
3    Q.  You just went out -- did you go out
4  and buy another car then?
5    A.  No.
6    Q.  What other vehicles has Ohio Rock
7  purchased through you?
8    A.  I don't remember.
9    Q.  Well, more than one more?
10    A.  I don't know.  I don't remember.
11  That S-10 might be gone.
12    Q.  It couldn't be sold without somebody
13  transferring the title, right?
14    A.  Not to a junkyard.
15    Q.  They want a junk title, don't they?
16    A.  It could be gone.  I may have got
17  rid of it.  It could be gone.
18    Q.  Do you recall what you did with it?
19    A.  I don't.
20    Q.  Was it a 2003, the vehicle?
21    A.  No.
22    Q.  Okay.  Ohio Rock Industries is
23  showing at least in, I don't see a date on
24  this one, of having a vehicle which is a 2003
25  Chevy truck, combined gross vehicle weight of

---

Page 111

1  3,850 pounds with a license plate PHP 8531.
2    A.  I don't know.
3    Q.  Is that a vehicle that you bought
4  for Ohio Rock?
5    A.  I don't know.
6    Q.  Well, it was going to the P.O. Box
7  135 in Etna, Ohio.  That's your P.O. Box,
8  right, that you used for Ohio Rock business,
9  right?
10    A.  I don't know what that vehicle is.
11    Q.  Did you buy a 2003 year vehicle for
12  Ohio Rock?
13    A.  2003 what?
14    Q.  It says a Chevy truck.  I don't know
15  the model.
16    A.  I don't know.
17    Q.  Did Ohio Rock give you any other
18  vehicles to use other than the Chevy S-10 that
19  you bought?
20    A.  I don't remember.
21    Q.  Was there a 1994 GMC Sonoma that you
22  were using for Ohio Rock?
23    A.  Yes.
24    Q.  Is that the pickup truck we were
25  talking about?

---

Page 112

1    A.  Yes.
2    Q.  So that was a '94 vehicle?
3    A.  It could be.
4    Q.  Was there a 2001 Freightline that
5  you purchased for Ohio Rock?
6    A.  What is it?
7    Q.  A Freightline.
8    A.  Freightline?
9    Q.  Yes.
10    A.  I don't know.
11    Q.  Actually, there are two of those.
12  Did you buy Freightline vehicles for Ohio Rock
13  that you used?
14    A.  I don't remember.
15    Q.  Did you buy a 1997 station wagon
16  that you used for Ohio Rock?
17    A.  Station wagon?
18    Q.  Yes.
19    A.  I don't know.
20    Q.  Is it possible you did?
21    A.  It's possible.  I don't remember.
22    Q.  Where are the titles of those
23  vehicles?
24    A.  I assume in them.  I don't recognize
25  the vehicles there.

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 113

1    Q.   Did you buy a 2003 Chevrolet K3500
2    for Ohio Rock?
3    A.   I don't know.
4    Q.   Did you buy a 1998 Ford Explorer for
5    Ohio Rock?
6    A.   I don't know.
7    Q.   You don't deny it, you just don't
8    remember?
9    A.   I don't remember it.
10   Q.   Did you buy a 2000 Dodge Durango for
11   Ohio Rock?
12   A.   2000 Dodge Durango?
13   Q.   Yes.
14   A.   I don't know.
15   Q.   Did you buy a --
16   A.   Show the counsel what you're looking
17   at.  Maybe they can help you.
18   Q.   I'm not obligated to show them
19   anything, sir.  I'm asking you questions right
20   now.
21   A.   I don't know.
22   Q.   Did you buy a 1987 Ford for Ohio
23   Rock?
24   A.   Is it titled to Ohio Rock?
25   A.   It's to the company name, Ohio Rock

Page 114

1    Industries.
2    A.   Is it titled to Ohio Rock?
3    Q.   I'm asking you the questions, sir.
4    A.   I don't know.  You're asking me
5    something I don't understand.  So if it says
6    Ohio Rock, show me where it says Ohio Rock.
7    Q.   I'm just asking you whether you did
8    or you didn't.  You can either tell me you did
9    or you didn't or you don't remember.
10   A.   Unless you made documentation for my
11   counsel to see, I don't know.
12   Q.   Okay.  Where are the titles to any
13   other vehicles that Ohio Rock Industries uses?
14   A.   I have no idea.
15   Q.   Do you use any -- when you drove to
16   West Virginia to do the work in West Virginia,
17   the two jobs that you did for Harris Real
18   Estate, which vehicle did you use?
19   A.   I don't remember.
20   Q.   The 11 -- I'm sorry, the address
21   that we talked about earlier in Barton, Ohio,
22   on Riley Road, T111 Riley Road, you indicated
23   that was your parents' address, correct?
24   A.   Yes.
25   Q.   Do they still live there?

Page 115

1    A.   My mother is deceased.
2    Q.   Does anybody still live at that
3    address?
4    A.   I don't know.
5    Q.   You don't know if your father still
6    lives at the Riley Road address?
7    A.   You'd have to ask him.
8    Q.   You list that address on your
9    driver's license in Ohio.
10   A.   Excuse me?
11   Q.   You use that address for your
12   address on your Ohio driver's license.
13   A.   What's that got to do with my mom
14   and dad?
15   Q.   I'm just trying to ask who lives
16   there and why did you use that as your address
17   for your Ohio license?
18   A.   What's that got to do with my mom
19   and dad?
20   Q.   Documents are going to that address
21   that were sent to them, I believe by, I think
22   that was the U-Haul documents that used that
23   address.  Yep.
24   A.   Okay.
25   Q.   So I'm trying to figure out since

Page 116

1    documents were going there who was there to
2    receive them since you told me you don't live
3    there.  You live at this apartment on Moull
4    Street in Newark.
5    A.   Right.
6    Q.   Who gets the documents at T111 Riley
7    Road?
8    A.   I don't know.
9    Q.   When was the last time you were
10   there?
11   A.   A week ago.
12   Q.   Who was there?
13   A.   Excuse me?
14   Q.   Who was there?
15   A.   I was there.
16   Q.   Anybody else?
17   A.   Myself.
18   Q.   Anybody else?
19   A.   I went by myself.
20   Q.   I know.  Was there anybody else
21   there?
22   A.   Where?
23   Q.   At the address on T111 Riley Road
24   when you arrived.
25   A.   Yes.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 117

1    Q.  Who else was there?
2    A.  I don't know the guy's name.
3    Q.  Were you there on Ohio Rock
4  business?
5    A.  No.
6    Q.  Okay.  What's Auto Recyclers?  Does
7  that have anything to do with Ohio Rock?
8    A.  No.
9        MR. GUNNER: What's the name of
10  the company you said?
11        MR. BECKER: Auto Recyclers.
12  BY MR. BECKER:
13    Q.  Did you ever -- as a representative
14  of Ohio Rock, did you ever have any dealings
15  with Reed Construction Data, LLC?
16    A.  What is that?
17    Q.  They're in Norcross, Georgia, is
18  their business address.  Robert Leavenworth
19  was a senior sales rep.
20    A.  I don't know.
21        (Plaintiff's Exhibit 10 was
22  marked for identification.)
23        MR. BECKER: I only have one
24  extra of that one, so you will have to look at
25  that one.

Page 118

1  BY MR. BECKER:
2    Q.  Marked as exhibit 10 is a document
3  that I'd like to see whether you recognize.
4  It's a Reed Construction Data Standard
5  Agreement dated May 24th, 2012 for a specific
6  order, Q041653.  Let me know when you've had a
7  chance to look at that document.
8    A.  Okay.
9    Q.  Is any of the handwriting on this
10  document yours?
11    A.  Doesn't look like it.
12    Q.  Okay.  Did you do any business with
13  Reed Construction Data or attempt to do
14  business on behalf of Ohio Rock with Reed
15  Construction Data in May of 2012?
16    A.  I don't remember.
17    Q.  You don't deny it, you just don't
18  remember it, correct?
19    A.  I gave you my answer.
20        MR. GUNNER: Tell him whether --
21        THE WITNESS: I don't remember.
22  BY MR. BECKER:
23    Q.  So you don't deny it?
24    A.  I don't remember.
25    Q.  The document indicates that the

Page 119

1  contact name for Ohio Rock Industries is
2  Michael Riley, and it's listed title owner
3  with a Martins Ferry, Ohio, address.  Do you
4  see that?
5    A.  I do not.  You said it says Michael
6  Riley, owner?
7    Q.  Yes, sir.  Under customer
8  information.
9        MR. BECKER: Counsel, on the far
10  left side about the middle.
11        MR. GUNNER: Far left side?
12        MR. BECKER: Right here.
13        MR. GUNNER: Contact name Michael
14  Riley.  Customer information.
15  BY MR. BECKER:
16    Q.  Do you see it?  So under customer
17  information the first line says, company, Ohio
18  Rock Industries.
19    A.  So whoever filled it out --
20        MR. GUNNER: That says up here
21  Ohio Rock Industries, contact name.
22  BY MR. BECKER:
23    Q.  Michael Riley, title, owner.  And
24  then it has your e-mail address,
25  mriley@ohiorockindustries.com.  Do you see

Page 120

1  that?
2    A.  Uh-huh.
3    Q.  And the billing information, which
4  is directly next to it, has company, Ohio Rock
5  Industries; Billing Contact, Michael Riley,
6  owner, is the title.
7    A.  I'm not the owner.
8    Q.  It has your same e-mail address.
9    A.  But that's not my writing at the
10  bottom.
11    Q.  But you don't deny doing business
12  with Reed Construction Data as Ohio Rock,
13  correct?
14    A.  I don't remember.
15        MR. GUNNER: I don't think that's
16  what the document says.  I think it's a
17  mischaracterization.  I'll object.
18        MS. MORRISON: May I see it,
19  please?
20        MR. GUNNER: That's right up
21  there.  It seems to say Ohio Rock Industries
22  is the owner and the contact is Michael Riley.
23        MR. BECKER: I thought that's
24  what I said, but maybe I said it incorrectly.
25        MR. GUNNER: I don't think so.  I

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

**Page 121**

1  think you were saying it says Michael Riley,
2  owner.
3          MR. BECKER: Well, there's a
4  category that says, title, owner, under the
5  name Michael Riley.
6          MR. GUNNER: Yeah. Title of
7  the -- well, I think that's different than
8  what it says at the bottom where it says
9  president. But since he doesn't recognize the
10  document, I guess it doesn't matter.
11  BY MR. BECKER:
12      Q. Okay. Is Ohio Rock Industries
13  authorized to do business in the State of West
14  Virginia?
15      A. I don't know.
16      Q. Did you ever apply to allow Ohio
17  Rock Industries to do business in the State of
18  West Virginia?
19      A. Did I apply?
20      Q. Yes, sir.
21      A. I don't remember.
22      Q. Did the State of West Virginia send
23  Ohio Rock Industries, Limited, a West Virginia
24  sales and use tax return reminder in September
25  of 2012 to the P.O. Box 135, Etna, Ohio,

---

**Page 122**

1  43018, which is your P.O. Box?
2      A. I don't know.
3      Q. What did you do with the document?
4      A. I didn't say I got it.
5      Q. Well, their records indicate they
6  sent it to that address. That's your P.O.
7  Box. My question is, if you got it, what did
8  you do with it? Where would that document be?
9      A. My answer is I don't know if I got
10  it. I don't remember.
11      Q. I understand. If you did get it,
12  where would that document now be?
13          MR. GUNNER: Objection. Calls
14  for conjecture.
15  BY MR. BECKER:
16      Q. Where would the documents be?
17      A. I don't know.
18      Q. What did you customarily do with
19  documents that were sent to you for Ohio Rock
20  business purposes at your P.O. Box in Etna,
21  Ohio?
22      A. Excuse me?
23      Q. When documents would arrive at your
24  P.O. Box in Etna, Ohio, that were Ohio Rock
25  documents, what would you do with them?

---

**Page 123**

1      A. Just as I said before, I'd put them
2  in a box.
3      Q. Where is that box now?
4      A. I don't know.
5      Q. Is it at your apartment?
6      A. I don't know.
7      Q. Have you looked for it?
8      A. I have not.
9      Q. When you were asked to give your
10  counsel -- I'm sorry. When you were asked to
11  give Ohio Rock's counsel all the Ohio Rock
12  documents, didn't you go look for that box?
13      A. I don't remember.
14      Q. Have you applied for any building
15  permits through the City of Wheeling on behalf
16  of Ohio Rock Industries?
17      A. Yes.
18      Q. How many?
19      A. I don't know.
20      Q. How many jobs have you done for Ohio
21  Rock in Wheeling?
22      A. I don't remember.
23      Q. Two? Twenty?
24      A. I don't remember.
25      Q. An estimate?

---

**Page 124**

1      A. I don't remember.
2          (Plaintiff's Exhibit 11 was
3  marked for identification.)
4  BY MR. BECKER:
5      Q. I've handed you, sir, a fairly large
6  stack of documents that we labeled as Exhibit
7  11. They run from Bates range GMR 128 through
8  GMR 361. I think they're sequential. I
9  haven't gone through and specifically made
10  sure that they run sequentially, but my
11  understanding is they do.
12          These are a series of building
13  permits issued by the City of Wheeling, West
14  Virginia, and I believe there's 14 of these
15  packets, and they're stapled, all list Ohio
16  Rock Industries, Limited, as the contractor.
17  I'll represent to you that these document were
18  provided to us by the City of Wheeling, West
19  Virginia.
20          Do you dispute that Ohio Rock
21  Industries, Limited, would have applied for
22  the building permits that are referenced in
23  these documents that were provided by the City
24  of Wheeling?
25      A. I can't answer that on behalf of

---

COMMODORE BANK v.                                    GEORGE MICHAEL RILEY, SR.
GEORGE MICHAEL RILEY, SR.                                    September 20, 2013

Page 125

1    Ohio Rock.
2    Q. Why not?
3    A. How can I?
4    Q. You're the only person that does
5    anything for Ohio Rock, aren't you?
6    A. I don't know.
7    Q. Well, did you do the work for the
8    City of Wheeling that are referenced in these
9    building permits?
10    A. Is my name on them?
11    Q. Well, I guess we'll go through them
12    one at a time. Who's Bernard Glenn, and what
13    relationship does he have to Ohio Rock?
14        MR. GUNNER: We've got those.
15    You can keep those.
16    BY MR. BECKER:
17    Q. Who's Bernard Glenn and what is his
18    relationship to Ohio Rock?
19    A. I don't know.
20    Q. You don't know Bernard Glenn? The
21    first stack of building permit records at
22    document GMR 136 is a submission on behalf of
23    Ohio Rock Industries, Limited, signed by
24    Bernard Glenn listing a P.O. Box of 135 Etna,
25    Ohio, which is your P.O. Box.

Page 126

1        So I'm trying to figure out who
2    Mr. Glenn is and what relationship he had to
3    Ohio Rock.
4        MR. GUNNER: It looks like that's
5    a customer name.
6    BY MR. BECKER:
7    Q. Is Mr. Glenn where the work was to
8    be performed?
9        MR. GUNNER: Page 136. He's
10    talking about this guy down here in this
11    agreement, Mr. Glenn.
12    BY MR. BECKER:
13    Q. Or was -- is he who you were doing
14    the work for?
15    A. When you say you, as in Ohio Rock?
16    Q. Ohio Rock.
17    A. I would assume.
18    Q. Did you do that work at that
19    address? 30 -- let's see, it looks like
20    361/363 National Road, Wheeling, West
21    Virginia.
22    A. I'm not familiar with the address.
23    I don't remember.
24    Q. So you don't deny that you did work
25    there, you just don't remember?

Page 127

1    A. Right.
2    Q. Okay. If you look at GMR 140, which
3    is a couple of pages further into that same
4    packet. There's a letter with a signature at
5    the bottom. The signature is over the top of
6    your name, Michael Riley. Is that your
7    signature?
8    A. I don't know.
9    Q. You can't tell?
10    A. I cannot tell.
11    Q. All right. That page would indicate
12    that Bernard Glenn has hired Ohio Rock
13    Industries, Limited, at 361 and 363 National
14    Road, Wheeling, West Virginia, and it's
15    scheduled for December of 2012. Does that
16    refresh your recollection as to whether you
17    did that work for Ohio Rock?
18    A. I don't know.
19    Q. You don't deny it, though, right?
20    A. I don't remember.
21    Q. That wasn't my question. Do you
22    deny that you did the work for Mr. Glenn?
23    A. I don't understand your question.
24    Q. This document indicates that you
25    agreed that you were going to do this

Page 128

1    demolition --
2    A. You as in Ohio Rock?
3    Q. You as in Ohio Rock. Did you
4    personally do the work for Ohio Rock at that
5    residence?
6    A. I don't remember.
7    Q. Who else would have done it if Ohio
8    Rock did the work if you didn't?
9    A. I don't remember.
10    Q. Is there anybody else that you know
11    that would have done demolition work for Ohio
12    Rock in 2012 if you personally were the one
13    that didn't do the work?
14    A. I don't remember.
15    Q. Well, was there anybody else working
16    for Ohio Rock in 2012 other than you doing
17    demolition work in West Virginia?
18    A. I don't know.
19    Q. You're the general manager of Ohio
20    Rock. You don't know if there was anybody
21    doing work for Ohio Rock?
22    A. I don't know.
23    Q. If you look at document GMR 170. It
24    should be about three stacks in. It should be
25    the first page of this stack. 170 at the

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 129

1  bottom.  Do you have it?
2      A.  I do.
3      Q.  Go to the second page of that
4  packet.  There's a building permit application
5  document that has a signature at the bottom
6  with your printed name over it.  Do you see
7  that?
8      A.  I do.
9      Q.  Is that your signature?
10     A.  It does not look like it.
11     Q.  Did you submit on behalf of Ohio
12  Rock -- in June of 2012 did you submit a
13  building permit application to Wheeling, the
14  City of Wheeling, West Virginia, for the
15  address at 1133 Fort Henry Avenue?
16     A.  I don't remember.
17     Q.  You don't deny that you did?
18     A.  I don't remember.
19     Q.  Who is Katharine Corbin relative to
20  Ohio Rock Industries?
21     A.  I think you know that answer.
22     I don't know the answer to that.
23     A.  Okay.
24     Q.  So who is she?
25     A.  That is my wife.

---

Page 130

1      Q.  So in July of 2012 your wife was
2  going also by the name of Katharine Corbin?
3      A.  I assume, if that's what it says.
4      Q.  If you look at GMR 208 -- let me
5  know when you've gotten to that page.
6          MR. GUNNER:  Wait a minute.
7  You're going too far.
8          THE WITNESS:  298?
9          MR. BECKER:  208.
10  BY MR. BECKER:
11     Q.  Document 208 is on Ohio Rock
12  Industries, Limited, letterhead.  Do you see
13  that at the top?
14     A.  I do.
15     Q.  All right.  And at the bottom after
16  the word sincerely, there's a typed statement,
17  Katharine Corbin, K-A-T-H-A-R-I-N-E,
18  C-O-R-B-I-N, listed as the Director of
19  Compliance for Ohio Rock Industries, Limited,
20  with the same P.O. Box in Etna, Ohio, that you
21  indicated was your P.O. Box 135.  Do you see
22  that?
23     A.  I do.
24     Q.  Was Katharine Corbin the director of
25  compliance for Ohio Rock Industries, Limited,

---

Page 131

1  in July of 2012?
2      A.  I don't know.  She typed this up.
3      Q.  Did you hire her to do that
4  position?
5      A.  She was my wife.  I don't know
6  what --
7      Q.  Was she working for Ohio Rock
8  Industries, Limited, in July 2012 as this
9  paper would indicate she was?
10     A.  I don't know.
11     Q.  How was she paid?
12     A.  I don't know.
13     Q.  Did you ever pay her for Ohio Rock?
14     A.  Probably not.
15     Q.  Did you designate her as the
16  director of compliance for Ohio Rock
17  Industries, Limited?
18     A.  Not that I remember.
19     Q.  Did you authorize her to send this
20  correspondence on behalf of Ohio Rock?
21     A.  I may have.  I don't remember.
22     Q.  But you may have, correct?
23     A.  I could have.
24     Q.  If you look further in that packet
25  at page 212 --

---

Page 132

1      A.  Uh-huh.
2      Q.  -- it's a Notification of Abatement,
3  Demolition, or Renovation for Project Number
4  LES12-092, and it lists the other
5  contractor -- Counsel, can you help him so he
6  knows -- other contractor -- it's about the
7  fifth one down.
8          MR. GUNNER:  Other contractor.
9          THE WITNESS:  Okay.
10  BY MR. BECKER:
11     Q.  It lists Ohio Rock with a Martins
12  Ferry address with the contact person being
13  Mike Riley with a phone number of
14  (740)232-5633, which I think you told me was
15  your cell number, correct?
16     A.  It is.
17     Q.  So did Ohio Rock perform the work
18  that's listed in the packet number Permit
19  BP38700?  Did you guys do that work?
20     A.  I don't know.
21     Q.  If the work was done by Ohio Rock,
22  are you the one that performed the demolition?
23     A.  I don't remember.
24     Q.  Would there have been anybody else
25  in July of 2012 that would have performed

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 133

1  demolition work for Ohio Rock other than you?
2    A.  I don't know.
3    Q.  You don't deny you did the work, you
4  just don't recall?
5    A.  I don't know.
6    Q.  If you look at the next packet, it
7  starts with GMR 215.  This is a building
8  permit BP38644 for an address at 3838
9  McCulloch, M-C-C-O-L-L-O-C-H, Street.  The
10 second page of that packet has a signature of
11 applicant line at the bottom with a printed
12 name.  Is that your signature above Signature
13 of Applicant?
14   A.  It could be.
15   Q.  Underneath the printed name it says,
16 Mike Riley, owner/contractor, Ohio Rock.  Do
17 you see that?
18   A.  I do.
19   Q.  Is that your handwriting or someone
20 else's?
21   A.  I don't know.
22   Q.  Do you remember doing the work at
23 3838 McColloch in Wheeling, West Virginia, on
24 behalf of Ohio Rock?
25   A.  I don't remember.

---

Page 134

1    Q.  Did Ohio Rock ever use a 101 North
2  Zane Highway, Martins Ferry address?
3    A.  If it's on here they did.
4    Q.  What is at that address, and why did
5  Ohio Rock use it?
6    A.  I don't, I don't know.  I don't
7  remember.
8    Q.  Does Ohio Rock own a piece of real
9  estate at that location at Martins Ferry?
10   A.  I don't know.
11   Q.  Well, on page GMR 218 under other
12 contractor, the name is Ohio Rock and the
13 address is 101 North Zane Highway, city is
14 Martins Ferry, State of Ohio.  Contact person,
15 Mike Riley.  Was Ohio Rock using 101 North
16 Zane Highway as a business address?
17   A.  By the documentation that I have it
18 looks like they have.
19   Q.  Okay.  What is at 101 North Zane
20 Highway?  Is it a house?  Is it a building?
21   A.  I don't know.
22   Q.  Why did you use that address?
23   A.  Excuse me?
24   Q.  Why did you --
25   A.  You asked about Ohio Rock.  You

---

Page 135

1  didn't ask me.
2    Q.  Well, these documents on page 2
3  indicate --
4    A.  You said Ohio Rock.
5    Q.  These documents indicate you were
6  the one on behalf of Ohio Rock submitting the
7  application and the application goes on --
8    A.  Your question was?  Repeat your
9  question to me again, please.
10   Q.  Why did Ohio Rock list 101 North
11 Zane Highway in Martins Ferry, Ohio, as its
12 business address?
13   A.  I don't know.
14   Q.  You don't know what's located there?
15   A.  I don't know.
16   Q.  Did Ohio Rock ever own any real
17 estate in Martins Ferry?
18   A.  I can't answer that.  I don't know.
19   Q.  To your knowledge?
20   A.  To my knowledge I don't believe so.
21   Q.  Did they ever rent or lease any real
22 estate in Martins Ferry?
23   A.  I don't know.
24   Q.  Where does Ohio Rock purchase its
25 insurance from?

---

Page 136

1    A.  I don't know.
2    Q.  Well, have you on behalf of Ohio
3  Rock purchased any insurance for Ohio Rock
4  ever?
5    A.  I don't remember.
6    Q.  If you look at page GMR 230 -- let
7  me know when you get there.  It should be the
8  second to last page of that packet.
9    A.  Okay.
10   Q.  There's a Certificate of Liability
11 Insurance at that page that lists the insured
12 as Ohio Rock with an address where Mr. Dunn
13 practices law, 33 South James Road, Columbus
14 Ohio, 43213.  Do you see that?
15   A.  I do.
16   Q.  And there's an assured on this one
17 that I can't read, which is why I'm asking you
18 the question of -- is it Colony Insurance
19 Company, maybe?  Is that who Ohio Rock
20 purchased its liability insurance through?
21   A.  I don't know.
22   Q.  Did you ever write the checks for
23 the liability insurance for Ohio Rock?
24   A.  I don't remember.
25   Q.  Every time you submitted an

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 137

1 application for a building permit on behalf of
2 Ohio Rock, you had to prove you had liability
3 insurance, right?  That's part of the process,
4 right?
5     A.  If that's the process.
6     Q.  Well, you know how it works.  You're
7 the one that's directing Ohio Rock to make
8 these applications, right?
9     A.  I don't know what you're saying.
10     Q.  So you personally don't know how to
11 fill out a building permit application for the
12 City of Wheeling?
13     A.  If that's what you say.
14     Q.  I'm asking you do you know how to do
15 it or not?
16     A.  You said I didn't.
17     Q.  Well --
18         MR. GUNNER: Just answer his
19 question.
20         THE WITNESS: I'd get help when I
21 did it.
22 BY MR. BECKER:
23     Q.  Do you know that if you're
24 submitting a building permit application to
25 the City of Wheeling, West Virginia on behalf

---

Page 138

1 of Ohio Rock, you have to submit a Certificate
2 of Liability Insurance?
3     A.  If -- I don't know.
4     Q.  Have you ever asked anyone whether
5 Ohio Rock has liability insurance?
6     A.  Have I ever asked?
7     Q.  Yes, sir.
8     A.  For what reason?
9     Q.  To submit a building permit
10 application for Ohio Rock.
11     A.  I don't remember.
12     Q.  Where do you get the certificates
13 from that are submitted with the building
14 permit applications that you file?
15     A.  I don't understand what you're
16 saying.
17     Q.  These building permit applications
18 for Ohio Rock were filed with the City of
19 Wheeling.  They all contain liability
20 insurance applications.  You directed Ohio
21 Rock to submit these building applications?
22     A.  I did?
23     Q.  You're the manager of Ohio Rock,
24 right?
25     A.  Okay.

---

Page 139

1     Q.  So where did you go and ask when you
2 needed to know and get copies of the liability
3 insurance for Ohio Rock?
4     A.  I don't remember.
5     Q.  Did Mr. Dunn give them to you?
6     A.  I don't remember.
7     Q.  Does Mr. Dunn have the insurance
8 documents for Ohio Rock?
9     A.  I don't know.
10     Q.  Have you ever asked him?
11     A.  No.
12     Q.  So you don't get them from Mr. Dunn
13 when you submit these applications because you
14 just told me you never asked him for them.  So
15 where do you get them?
16     A.  I told you I don't know.  I don't
17 remember.
18     Q.  But it wasn't Mr. Dunn?
19     A.  Excuse me?
20     Q.  But it wasn't from Mr. Dunn?
21     A.  That's what my answer was.  I don't
22 remember.
23     Q.  Let's look at GMR 232.  This is a
24 packet that references Building Permit BP38475
25 for the contractor Ohio Rock Industries,

---

Page 140

1 Limited, for an address of 113 York Street S,
2 in Wheeling, West Virginia.  If you look at
3 the second page of that packet --
4         MR. GUNNER: Second page.
5 BY MR. BECKER:
6     Q.  -- there's a Signature of Applicant
7 line and a printed name.  Is that your
8 signature at the bottom above Signature of
9 Applicant on the building permit application?
10     A.  Which one?  The top one or the
11 second one?
12     Q.  The Signature of Applicant is the
13 top one at the bottom.
14     A.  It could be.
15     Q.  The printed name below that is Mike
16 Riley, circled was contractor.  Do you see
17 that?
18     A.  I do.
19     Q.  Is that your writing?
20     A.  I'm not for sure.
21     Q.  Did you perform the work at 113 York
22 Street that's referenced in this permit on
23 behalf of Ohio Rock?
24     A.  I may have.
25     Q.  Did anybody assist you?

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 141

```
 1    A.  I don't remember.
 2    Q.  What vehicle did you use to do the
 3  work?
 4    A.  I don't remember.
 5    Q.  You would have needed a vehicle,
 6  though, to perform the work, right, to haul
 7  the demolition work away?
 8    A.  I assume if that's what they did.
 9    Q.  Well, if you look at GMR 240, which
10  is later in the packet, that's a letter again
11  that is representing that Katharine Corbin is
12  the director of compliance for Ohio Rock
13  Industries, Limited.  It's writing to the
14  resident at 109 South York Street, Wheeling,
15  West Virginia, on March 19th, 2012 that
16  William Yeager has hired Ohio Rock Industries,
17  Limited, to perform the total demolition of
18  the burnt structure.
19        So you don't recall for sure if
20  you did that work but you don't deny that you
21  did, right, for Ohio Rock?
22    A.  Correct.
23    Q.  Correct?
24    A.  Excuse me?
25    Q.  I said you don't recall specifically
```

Page 143

```
 1        MR. GUNNER: He's talking about
 2  you.
 3  BY MR. BECKER:
 4    Q.  You on behalf of Ohio Rock.
 5    A.  I don't understand your question.
 6    Q.  When you tear down a building for
 7  Ohio Rock -- that's something you do on
 8  occasion for Ohio Rock, right?
 9    A.  I can.
10    Q.  And you've done that, right?
11    A.  I can.
12    Q.  I didn't ask if you can.  I asked
13  you if you did.
14    A.  I can.
15    Q.  That's not my question.  Answer the
16  question.
17    A.  I did answer the question.
18    Q.  No, you didn't.  Have you ever torn
19  down a building for Ohio Rock?
20    A.  Have I ever?
21    Q.  Yes.
22    A.  I can.
23    Q.  That's not my question.
24    A.  I don't understand.
25        MR. BECKER: Counsel.
```

Page 142

```
 1  yourself doing that work for Ohio Rock, but
 2  you don't deny you may have done it, correct?
 3    A.  I don't remember.
 4    Q.  The question is if you were the one
 5  that did the demolition work at this 113 South
 6  York Street for Ohio Rock, what equipment
 7  would you need?
 8    A.  If -- I can't answer on an if.
 9    Q.  Where would you get the equipment
10  that you needed to tear that structure down?
11    A.  I don't know if I did.  I don't
12  remember but if -- I don't understand.
13    Q.  If you're going to tear down a --
14    A.  You could do it by hand.  You could
15  do it by multiple different things.
16    Q.  Has Ohio Rock through you ever
17  leased equipment used for the purposes of
18  tearing down burnt buildings?
19    A.  I don't remember.
20        MR. GUNNER: He said do you ever.
21        THE WITNESS: Excuse me?
22        MR. GUNNER: He said do you ever
23  use equipment when you tear down buildings.
24        THE WITNESS: Are you talking
25  about Mike Riley or Ohio Rock?
```

Page 144

```
 1        MR. GUNNER: Just answer him.
 2  He's asking whether Ohio Rock has ever torn
 3  down a building.
 4  BY MR. BECKER:
 5    Q.  You on behalf of Ohio Rock.  You
 6  personally on behalf of Ohio Rock, have you
 7  ever torn down a building?
 8    A.  Have I?
 9    Q.  Yes.
10    A.  Yes.
11    Q.  Okay.  Have you ever used equipment
12  to do so?
13    A.  Yes.
14    Q.  Where did you get the equipment?
15    A.  I don't remember.
16    Q.  Is it Ohio Rock's equipment or did
17  you have to lease it from someone?
18    A.  I don't remember.
19    Q.  What type of equipment?
20    A.  I don't know.  I mean, it's -- I
21  don't remember.
22    Q.  Who is Mary K. Heller relative to
23  Ohio Rock Industries?
24    A.  Who?
25    Q.  Mary K. Heller, H-E-L-L-E-R.
```

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

---

Page 145

1  A. Where is that at?
2  Q. GMR 242.
3  A. I have no idea.
4  Q. Okay. She's not anybody that's
5  affiliated with Ohio Rock to your knowledge?
6  A. To my knowledge.
7  Q. Let's go to GMR 246. This is --
8      MR. GUNNER: That's the next
9  packet, the front page.
10 BY MR. BECKER:
11 Q. It's Building Permit BP38479 for an
12 address at 2718 Chapline Street in Wheeling,
13 West Virginia. Second page of that packet is
14 a Building Permit Application.
15     There's a signature line at the
16 bottom along with a printed name line at the
17 bottom. Is the writing above Signature of
18 Applicant yours?
19 A. Which one?
20 Q. The one that's right there.
21 A. Are you talking about the initials?
22 Q. Yes.
23 A. It doesn't look like mine.
24 Q. Is the signature above
25 owner/contractor your signature?

---

Page 146

1  A. I don't know.
2  Q. You don't deny it, you just can't
3  tell?
4  A. I can't tell. Mike really doesn't
5  look like mine, either.
6  Q. Okay. Do you remember doing the
7  work for Ohio Rock at 2718 Chapline Street?
8  A. I don't remember.
9  Q. If you didn't do the work, would
10 anybody else at Ohio Rock have done the work?
11 A. I don't know.
12 Q. So not to your knowledge?
13 A. I don't know.
14 Q. Let's go to the next packet, which
15 is GMR 283. This references permit BP38478.
16 It's for 2820 Chapline Street, which is
17 different from 2718 Chapline Street that we
18 just talked about.
19     The second page, if you'd turn to
20 that, please, which is GMR 284, there is an
21 application for -- it's a Building Permit
22 Application with signature lines at the
23 bottom. Above Signature of Applicant, is that
24 your handwriting?
25 A. It doesn't look like it.

---

Page 147

1  Q. The printed name looks like Mike
2  Riley, does it not?
3  A. That's what it says.
4  Q. Do you remember doing any work for
5  Ohio Rock at 2820 Chapline Street?
6  A. I don't remember.
7  Q. You don't deny doing the work, you
8  just don't recall?
9  A. I don't remember.
10 Q. If you didn't do the work for Ohio
11 Rock at this address, do you know who did?
12 A. I don't.
13 Q. To your knowledge nobody else was
14 doing demolition work for Ohio Rock in
15 Wheeling, West Virginia, correct?
16 A. I don't know.
17 Q. To your knowledge you don't know of
18 anybody else, right?
19 A. I don't know.
20 Q. Let's go to the next packet. It
21 begins with GMR 294. It's permit BP38477 for
22 address 513 Huron Street North. Turn to the
23 second page of the packet, which is GMR 295.
24 There's a Building Permit Application with a
25 Signature of Applicant line and a printed name

---

Page 148

1  line. Is the Signature of Applicant yours?
2  A. I don't know.
3  Q. And above the printed name it says
4  Mike Riley, correct?
5  A. It does.
6  Q. You don't deny that's your
7  signature, you just don't know?
8  A. I don't know.
9  Q. Do you remember doing the work at
10 513 Huron Street for Ohio Rock Industries?
11 A. I don't remember.
12 Q. Does Ohio Rock keep copies of its
13 Building Permit Applications?
14 A. I don't know.
15 Q. Well, if you submit a Building
16 Permit Application on behalf of Ohio Rock, do
17 you keep copies of it?
18 A. Do I?
19 Q. Yes, sir.
20 A. Not usually.
21 Q. Why not?
22 A. I don't.
23 Q. Well, how do you know, then, how to
24 fill out reporting requirements regarding the
25 compensation that was paid to Ohio Rock for

---

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 149

1 those?
2    A.  I don't understand what you're
3 saying.
4    Q.  How do you know how to fill out
5 paperwork that you're required to provide to
6 the government regarding work that was done by
7 Ohio Rock if you don't keep the paperwork?
8    A.  I'm not -- that's not my job.
9    Q.  Whose job is it?
10   A.  I don't know.
11   Q.  If you turn to GMR 306, which is the
12 beginning of the next packet, this is for
13 Permit BP38476, Contractor, Ohio Rock
14 Industries, Limited, 437 National Road.  The
15 Building Permit Application has a signature
16 line on the second page.  Is that your
17 signature?
18   A.  It may be.
19   Q.  Turn to GMR 310, a little further in
20 the packet.  There's an Ohio Rock Industries
21 letter at that page addressed to Shelly Mills.
22 It has Mike Riley, Ohio Rock Industries,
23 Limited, P.O. Box 135 Etna Ohio, 43018, at the
24 top.  Do you see that?
25   A.  I do.

Page 150

1    Q.  At the bottom it is signed -- well,
2 there is a space that says sincerely, and
3 underneath that space it's Mike Riley,
4 President/CEO, Ohio Rock Industries, Limited,
5 providing over 75 years of experience.  Do you
6 see that?
7    A.  I do.
8    Q.  Was this Ohio Rock Industries,
9 Limited, letterhead that you were utilizing in
10 the summer of 2012?
11   A.  I never signed it.  I don't know
12 where this came from.
13   Q.  Well, I didn't ask you if you signed
14 it.  I'm asking was Ohio Rock Industries,
15 Limited, using this type letterhead in the
16 summer of 2012?
17   A.  I don't know.
18   Q.  Do you recall doing the work at 437
19 National Road on behalf of Ohio Rock?
20   A.  I don't remember.
21   Q.  You don't deny that you did, you
22 just don't recall?
23   A.  I don't remember.
24   Q.  To your knowledge nobody else was
25 performing demolition work for Ohio Rock in

Page 151

1 West Virginia during that time period,
2 correct?
3    A.  I don't know.
4    Q.  Let's go to the next packet.  GMR
5 322 is the first page.  It's for a Permit
6 BP38263.  It's dated May 10th, 2012, Ohio Rock
7 Industries, Limited, the contractor.  The
8 address is 3733 Jacob Street.
9          If you turn to the second page of
10 the packet, there's a document, GMR 323.  It's
11 a Building Permit Application with a signature
12 line at the bottom and a printed name line at
13 the bottom.  Is the signature above the
14 Signature of Applicant at the bottom of that
15 page yours?
16   A.  It looks like it.
17   Q.  Underneath where it says printed
18 name, Ohio Rock by Mike Riley --
19   A.  It looks like it.
20   Q.  That's yours?
21   A.  It looks like it.
22   Q.  Do you remember doing the work at
23 that address?
24   A.  I don't.
25   Q.  You don't deny that you did it, you

Page 152

1 just don't remember?
2    A.  I don't remember.
3    Q.  Let's go to the next one, which is
4 GMR 342.  It is Permit BP38051.  It's dated
5 March 13th, 2012.  Contractor is Ohio Rock
6 Industries, Limited, Cove Avenue E in
7 Wheeling, West Virginia.
8          Turn to the second page of the
9 packet.  There's a Building Permit
10 Application.  It's page GMR 343.  The bottom
11 of that page there are lines for the signature
12 of the applicant and printed name.  Is that
13 your signature that appears over Signature of
14 Applicant?
15   A.  It could be.
16   Q.  And your name is printed above the
17 printed name Mike Riley, correct?
18   A.  I don't know if that's mine.
19   Q.  Well, your name is there.  You don't
20 know whether you wrote it?
21   A.  Yes.
22   Q.  But your name is there.  And it
23 lists Ohio Rock Industries as the contractor,
24 does it not?
25   A.  Yes.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 153

1    Q.  Do you remember doing the demolition
2  work at Cove Avenue in Wheeling in the spring
3  of 2012?
4    A.  I don't remember.
5    Q.  You don't deny it, you just don't
6  remember?
7    A.  I don't remember.
8    Q.  If you look at page 345 of that
9  packet, there's another signature line at the
10  bottom of GMR 345 for Signature of
11  Owner/Operator.  Is that your signature?
12    A.  I don't know.
13    Q.  The final packet is GMR 349.  It's
14  BP38052.  This is for 68 Cove Avenue E.  The
15  contractor is Ohio Rock Industries, Limited.
16  Turn to the second page which is GMR 350.  It
17  is a Building Permit Application that has a
18  signature line at the bottom.  Is that your
19  signature?
20    A.  It may be.
21    Q.  You don't deny it's yours, you just
22  don't know?
23    A.  It may be.
24    Q.  There's a printed name Mike Riley
25  listed as Ohio Rock Industries, Contractor, is

Page 154

1  there not?
2    A.  Yes.
3    Q.  Do you remember doing the work at 68
4  Cove Avenue E for Ohio Rock?
5    A.  I don't remember.
6    Q.  You don't deny you did the work, you
7  jut don't remember?
8    A.  I don't remember.
9    Q.  If you turn to GMR 354.  There's a
10  copy of a document that says it's a Contractor
11  License authorized by the West Virginia
12  Contracting Licensing Board for Ohio Rock
13  Industries, Limited.  It lists their address
14  as being 33 South James Road, Columbus, Ohio,
15  43213, which is the business legal address for
16  Mr. Dunn.  Correct?
17    A.  I would assume.
18    Q.  Is it issued in March of 2012,
19  correct?
20    A.  If that's what it says.
21    Q.  Is Mr. Dunn Ohio Rock Industries'
22  counsel?
23    A.  How would I know?  You'd have to ask
24  Mr. Dunn.  I can't speak for Mr. Dunn.
25    Q.  Do you pay Mr. Dunn on behalf of

Page 155

1  Ohio Rock for work that he performs for the
2  company?
3    A.  You'd have to ask Mr. Dunn.
4    Q.  I'm asking you.  Have you ever
5  written a check with an Ohio Rock --
6    A.  You'd have to ask Mr. Dunn.
7        MR. GUNNER:  Well, he's asking
8  you.  If you know, Mike, you can answer.
9        THE WITNESS:  I don't know.  I
10  don't remember.
11  BY MR. BECKER:
12    Q.  Does Ohio Rock have a business
13  registration for the West Virginia State Tax
14  Department?
15    A.  What does that mean?
16    Q.  Well, did they ever register in West
17  Virginia as an entity that is subject to West
18  Virginia tax?
19    A.  I don't know.
20    Q.  Where would Ohio Rock keep those
21  documents if they have them?
22    A.  I don't know.
23    Q.  Who would know at Ohio Rock?
24    A.  I don't know that, either.
25    Q.  But you don't?

Page 156

1    A.  I don't know.
2    Q.  I lied.  There's one more we
3  skipped.  GMR 185.
4        MR. GUNNER:  185?
5        MR. BECKER:  Yes.
6  BY MR. BECKER:
7    Q.  It's Permit BP38706.  It's dated
8  August 15th, 2012.  It's for 34 --
9    A.  Who's the company or the contractor?
10    Q.  I'm getting there.  It's for 34 37th
11  Street.  On the first page it's listed as the
12  contractor, Ohio-West Virginia Excavating
13  Company.  Does Ohio Rock have anything to do
14  with Ohio-West Virginia Excavating Company.
15    A.  I don't believe so.
16    Q.  If you turn, however, to page GMR
17  187.
18    A.  I'm not going to answer any
19  questions on this.  This has nothing to do
20  with Ohio Rock.
21        MR. BECKER:  Counsel.
22        MR. GUNNER:  Well you can wait
23  and see what his question is first.
24  BY MR. BECKER:
25    Q.  Turn to page 187.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 157

1    A.  It's not my writing.
2         MR. GUNNER: Just answer his
3    questions.
4         THE WITNESS: Okay.
5         MR. BECKER: He needs to see the
6    document.  He can't ask any questions without
7    it.
8         THE WITNESS: I can't answer on
9    behalf of that company.
10         MR. GUNNER: He's not asking
11    that.  Wait for his questions and answer his
12    questions.
13    BY MR. BECKER:
14    Q.  Turn to page GMR 187.
15    A.  Okay.
16    Q.  Third page in.
17    A.  Okay.
18    Q.  This is a Notification of Abatement,
19    Demolition, and Renovation from the State of
20    West Virginia for Project OH-005.  It
21    indicates that the contractor is Ohio Rock
22    with the contact person being Mike Riley.  Do
23    you see that?
24    A.  I do.
25    Q.  And if you go to the second page of

Page 158

1    that packet, which is the Building Permit
2    Application, which is GMR 186, there is once
3    again a signature line for the applicant and a
4    printed name for the applicant.  Is the
5    Signature of Applicant yours?
6    A.  It is not.
7    Q.  It indicates under the printed name
8    Mike Riley, Ohio Rock as the Owner/Contractor,
9    does it not?
10    A.  It does but it's not my signature.
11    Q.  Okay.  Is that phone number yours,
12    (740)232-5633?
13    A.  It is.
14    Q.  Okay.  If you turn to page GMR 189,
15    further in the packet, there's an Ohio Rock
16    Industries, Limited, letterhead with
17    correspondence directed to the current
18    resident dated July 31st, 2012; an ending line
19    of Katharine Corbin, who you previously told
20    me was your wife at the time, listed as the
21    Director of Compliance for Ohio Rock
22    Industries, Limited, with a P.O. Box 135 at
23    your Etna, Ohio, P.O. Box.
24         And the substance of the letter
25    indicates that Ohio Rock Industries, Limited,

Page 159

1    has been hired to perform the total demolition
2    of the structure at 34-37 Street, Wheeling,
3    West Virginia.  Did you perform the demolition
4    work for Ohio Rock at 34 37th Street in
5    Wheeling, West Virginia?
6    A.  I don't know.
7    Q.  You don't deny that you did, you
8    just don't recall?
9    A.  I don't recall.
10    Q.  If you turn to page 198 in the
11    packet, there's a Certificate of Liability
12    Insurance representing that Ohio Rock is the
13    insured, correct?
14    A.  If that's what it says.
15    Q.  So what is the relationship between
16    Ohio Rock and the contractor listed on the
17    first page of Ohio-West Virginia Excavating
18    Company?
19    A.  I would assume that must be an error
20    on the City of wheeling.
21    Q.  So everything else appears to all be
22    Ohio Rock.  And to your knowledge, Ohio Rock
23    has no relationship or business --
24    A.  Any affiliation whatsoever.
25    Q.  -- with Ohio-West Virginia

Page 160

1    Excavating Company?
2    A.  Correct.
3         MR. BECKER: All right.  It is
4    5:00.  I represented to counsel I would try to
5    stop around 5 today.  I think I'm done with
6    questions relative to Ohio Rock, but I need to
7    go through my notes, but I think I am.
8         We will need to reconvene the
9    deposition to finish questions that are not
10    related to Ohio Rock that only relate to
11    Mr. Riley.  And if need be, to finish Ohio
12    Rock, although I think we've done Ohio Rock.
13         So I will get back in touch with
14    you, Mr. Gunner, and we'll try to find a new
15    date so we can finish this.
16         MS. MORRISON: I want to say
17    something on the record before we move on.  I
18    was talking to Ben Zacks and my understanding
19    is this morning when you guys breaked (sic),
20    there was some conversation regarding the
21    Operating Agreement.  Mr. Zacks wanted me to
22    let you know that we are currently working
23    with the client to get the unprivileged
24    portions of that Operating Agreement to you.
25    We will disclose that.

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

Page 161

1  MR. BECKER: We're going to order
2  this. Do you want to instruct your client
3  relative to signature at this point?
4  MS. MORRISON: Do you want to
5  have -- well, he's your client.
6  MR. GUNNER: I would have to read
7  it to you.
8  MS. MORRISON: You can read this
9  transcript of what you said today or you can
10  just waive your right to read it.
11  THE WITNESS: I don't think she
12  made a mistake. What do you guys think?
13  MR. GUNNER: It's up to you,
14  Mike. You can't change your answers except to
15  the extent that she got a spelling wrong or
16  took down something you said inaccurately.
17  THE WITNESS: If we need it,
18  we'll get it.
19  MS. MORRISON: Do you want to
20  read the transcript before it's typed up and
21  can be used?
22  THE WITNESS: Who will read it to
23  me?
24  MR. GUNNER: You'll have to go to
25  the court reporter's office and basically have

Page 162

1  somebody with you.
2  THE WITNESS: Are you going to
3  check it over?
4  MR. GUNNER: Not unless it's
5  ordered up. I'm not going to read through it
6  at this point, so you have to tell her whether
7  you want to read it.
8  THE WITNESS: I'll waive it.
9  (WHEREUPON, the deposition was
10  concluded at 5:01 p.m.)
11  * * * * * *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 163

1  C E R T I F I C A T E
2
3  STATE OF OHIO
                    SS:
4  COUNTY OF PREBLE
5
6
7  I, Heather M. Byrne-Lunsford, the
undersigned, a Professional Court Reporter and
8  Notary Public within and for the State of
Ohio, do hereby certify that before the giving
9  of aforesaid deposition, said GEORGE MICHAEL
RILEY, SR., was by me first duly sworn to
10  depose the truth; the whole truth, and nothing
but the truth; that the foregoing is the
11  deposition given at said time and place by
said GEORGE MICHAEL RILEY, SR.; that said
12  deposition was taken in stenotypy by the court
reporter and transcribed into typewriting
13  under her supervision; that the transcribed
deposition was not submitted to the witness
14  for his examination and signature and that
signature was expressly waived; the court
15  reporter was neither a relative of nor
attorney for any of the parties to the case,
16  nor relative of nor employee for any of the
counsel and has no interest whatever in the
17  result of the action; I am not under a
contract as defined in Civil Rule 28(D).
18
19  IN WITNESS WHEREOF, I herein set my hand and
official seal of office this 6th day of
20  October 2013.
21  My commission   /s/Heather M. Byrne-Lunsford
expires June 29, 2017 Heather M.Byrne-Lunsford
22            Notary Public, State of Ohio
23
24
25

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

## $

**$4,000 (1)**
61:8
**$40,000 (2)**
69:23;70:2
**$40999.20 (1)**
70:19

## @

**@attnet (1)**
77:23
**@wellsfargocom (1)**
81:20

## {

**{Witness (1)**
60:16

## A

**Abatement (2)**
132:2;157:18
**ability (7)**
10:13;20:15,21;38:15,
17;39:24;52:1
**able (3)**
89:4;90:6;91:23
**above (9)**
89:18;133:12;140:8;
145:17,24;146:23;148:3;
151:13;152:16
**Absolutely (1)**
21:7
**access (7)**
26:12,20;27:17,22;46:7
**according (5)**
61:10;76:8;79:12;
82:11;89:24
**account (35)**
16:25;17:4,6,7,8;
23:20;25:13;29:8;30:21;
35:17,20;40:21,22;41:1,
12,14,22;42:9,12;43:9,
14;60:14;62:10;66:16,23;
69:23;70:2,18;74:19;
101:16,24;102:6;105:10;
109:9
**accounts (2)**
20:10;28:20
**accurate (2)**
74:4,14
**accusing (1)**
81:3
**acknowledge (1)**
12:1
**across (1)**
52:12
**action (1)**
27:7

**Actually (7)**
71:19;76:3;79:10;
93:24;94:6;108:13;
112:11
**addition (1)**
23:19
**address (66)**
4:17;9:4;51:24;52:12,
15;53:1,3,4;57:2;61:13;
65:20;69:9,16;77:15,18;
79:2,9;81:23;88:13,15,
19;89:6;95:25;96:1,24;
97:1,19;98:1;99:18,21;
114:20,23;115:3,6,8,11,
12,16,20,23;116:23;
117:18;119:3,24;120:8;
122:6;126:19,22;129:15;
132:12;133:8;134:2,4,13,
16,22;135:12;136:12;
140:1;145:12;147:11,22;
151:8,23;154:13,15
**addressed (2)**
99:19;149:21
**addresses (2)**
56:19;60:4
**addressing (1)**
74:12
**admit (1)**
55:11
**admitting (1)**
80:9
**advised (2)**
82:22;87:11
**affiliated (1)**
145:5
**affiliation (1)**
159:24
**afternoon (1)**
4:8
**again (11)**
7:19;10:25;23:24;
39:22;83:7,21;91:9;
95:13;135:9;141:10;
158:3
**age (1)**
4:3
**Agency (1)**
67:16
**agent (5)**
67:20;80:17;84:18,25;
85:8
**agent's (1)**
62:10
**ago (19)**
10:21,21,22,25;11:2,4,
6;12:7,9,11;16:1,2,3;
18:8,10;29:6;40:16;
82:20;116:11
**agree (1)**
38:8,8,15;39:24
**agreed (5)**
38:18;40:3;42:3;43:6;
127:25

**agreement (23)**
5:13,23,24,25;6:1;15:5;
47:7,8,9,11;48:1;49:1;
77:5,6;80:20;81:2;87:17;
96:15,24;118:5;126:11;
160:21,24
**agreements (1)**
95:4
**ahead (2)**
4:9;95:21
**ain't (1)**
49:24
**allow (2)**
84:19;121:16
**along (1)**
145:16
**although (1)**
160:12
**always (1)**
52:18
**Amended (1)**
9:12
**Amendment (2)**
48:25;77:4
**amendments (1)**
47:8
**amount (1)**
62:9
**Anderson (33)**
53:12;57:16,20,20;
59:17;60:7;62:13;63:5;
67:19;70:6;71:6;72:20;
75:12;76:9;77:22;78:4,
21;79:8,15;80:2,8,11,23;
81:12,20;83:20,23;84:3;
88:13;89:7,13;90:4;91:21
**Anderson's (2)**
60:9;61:16
**Anthony (1)**
96:11
**apartment (6)**
5:9;6:8;105:20;107:21;
116:3;123:5
**Apparently (3)**
53:5;99:6;100:23
**appear (1)**
18:25
**APPEARANCES (1)**
2:3
**appears (4)**
69:12;90:3;152:13;
159:21
**applicant (15)**
133:11,13;140:6,9,12;
145:18;146:23;147:25;
148:1;151:14;152:12,14;
158:3,4,5
**application (19)**
129:4,13;135:7,7;
137:1,11,24;138:10;
140:9;145:14;146:21,22;
147:24;148:16;149:15;
151:11;152:10;153:17;

158:2
**applications (7)**
137:8;138:14,17,20,21;
139:13;148:13
**applied (2)**
123:14;124:21
**apply (2)**
121:16,19
**April (2)**
45:9,17
**around (3)**
17:15;51:2;160:5
**arrangements (1)**
15:4
**arrive (1)**
122:23
**arrived (1)**
116:24
**aside (1)**
31:19;97:21
**asset (1)**
84:2
**assets (2)**
44:16;45:8
**assigned (1)**
4:25
**assist (2)**
58:22;140:25
**assume (12)**
12:24;37:13;60:24;
75:10;104:20;109:8;
112:24;126:17;130:3;
141:8;154:17;159:19
**assumed (1)**
106:15
**assuming (4)**
10:8;43:19;62:17,20
**assured (1)**
136:16
**attached (3)**
70:7;83:24;92:3
**attachment (1)**
9:22
**attempt (7)**
56:24;57:3;61:9;75:12;
82:25;85:22;118:13
**attempted (4)**
61:14,23;86:4;94:17
**attempting (3)**
69:4;75:8;85:14
**attorney (1)**
81:1
**attorney-client (1)**
84:13
**August (2)**
70:19;156:8
**authority (6)**
20:24;21:1;36:1;38:7;
45:19;46:7
**authorize (1)**
131:19
**authorized (5)**
46:10;74:2;92:8;

158:2
121:13;154:11
**Auto (2)**
117:6,11
**Avenue (6)**
60:1;129:15;152:6;
153:2,14;154:4
**aware (1)**
41:4
**away (3)**
45:12;108:7;141:7

## B

**back (6)**
31:22;43:1;78:4;83:21;
108:18;160:13
**balance (1)**
70:2
**bank (13)**
17:1,2,3;20:10;23:20;
26:3,7,19,21;28:20;
30:23,24;101:24
**banker (1)**
101:24
**banking (3)**
69:21;70:7,17
**bankruptcy (1)**
8:19
**Barton (3)**
95:25;99:20;114:21
**based (1)**
85:12
**basically (1)**
161:25
**basis (4)**
13:18,19;37:6,7
**Bates (2)**
97:14;124:7
**BECKER (130)**
2:6;4:7;7:6,9,14,20;8:5,
13;9:17;10:8,17;11:17,
21;12:3,20;13:4;14:18;22;
19:8,15,20;20:8;25:8,11,
24;27:12;30:7;31:21;
34:15;47:21,24;48:7,23;
49:9,20,25;50:10;51:11,
15;52:5,7,21;53:2;58:18;
59:10,23;60:20;61:19,22;
62:19;63:1,18,22;67:7,
12,24;68:2;69:2;70:3,4,
16,21;71:1,16,19,22,23;
72:8,14;73:10;77:8,12;
78:11;81:25;82:3;83:16,
19;84:8,10,23;85:9,10;
88:8,10;89:22;94:25;
95:10;96:13;97:24;98:18,
23;99:8;102:25;103:6;
108:16,20;117:11,12,23;
118:1,22;119:9,12,15,22;
120:23;121:3,11;122:15;
124:4;125:16;126:6,12;
130:9,10;132:10;137:22;
140:5;143:3,25;144:4;

**COMMODORE BANK v.**
**GEORGE MICHAEL RILEY, SR.**

**GEORGE MICHAEL RILEY, SR.**
September 20, 2013

145:10;155:11;156:5,6,
21,24;157:5,13;160:3;
161:1
**become (3)**
5:10;11:8;93:24
**began (1)**
103:8
**beginning (3)**
79:12,14;149:12
**begins (2)**
10:4;147:21
**behalf (59)**
8:16;9:25;14:1;19:22;
31:2,10;32:11;36:2;46:8,
11;47:3;48:12;55:13,16;
56:24;57:3,5;61:11,23,
25;62:2,4,19;63:5;72:20;
75:24;83:3;85:7,14,25;
86:16,17,24;89:4;91:23;
95:5;98:3,4;102:9,23;
118:14;123:15;124:25;
125:22;129:11;131:20;
133:24;135:6;136:2;
137:1,25;140:23;143:4;
144:5,6;148:16;150:19;
154:25;157:9
**belongings (1)**
98:7
**belongs (1)**
109:22
**below (2)**
80:15;140:15
**Ben (1)**
160:18
**Bernard (5)**
125:12,17,20,24;
127:12
**besides (2)**
13:13;23:15
**best (1)**
19:6
**Bi (1)**
82:12
**B-I (1)**
82:13
**bill (13)**
64:17;65:1,2,7,8,11,16,
24;66:11,13,14,23;99:13
**billing (2)**
120:3,5
**bills (3)**
67:3;99:17,22
**birth (2)**
4:15;89:6
**blew (2)**
108:13;110:1
**blown (1)**
108:23
**Board (1)**
154:12
**boss (3)**
12:17,21,22
**both (3)**

53:8;80:19,21
**bottom (27)**
58:22;59:1,3;61:4;
67:18;88:1;95:14;97:3;
120:10;121:8;127:5;
129:1,5;130:15;133:11;
140:8,13;145:16,17;
146:23;150:1;151:12,13,
14;152:10;153:10,18
**bought (6)**
94:2;107:4,17;109:5,6;
111:3,19
**Box (30)**
26:12,21,21;27:17,20,
25;28:3,4,5,23;42:13;
65:22;109:17;111:6,7;
121:25;122:1,7,20,24;
123:2,3,12;125:24,25;
130:20,21;149:23;
158:22,23
**boy (1)**
81:19
**BP38051 (1)**
152:4
**BP38052 (1)**
153:14
**BP38263 (1)**
151:6
**BP38475 (1)**
139:24
**BP38476 (1)**
149:13
**BP38477 (1)**
147:21
**BP38478 (1)**
146:15
**BP38479 (1)**
145:11
**BP38644 (1)**
133:8
**BP38700 (1)**
132:19
**BP38706 (1)**
156:7
**break (7)**
25:9;78:13;85:11,19;
86:20;108:17,22
**breaked (1)**
160:19
**bring (1)**
24:10
**brother's (3)**
103:17,18;109:2
**building (41)**
14:5,12,14;15:2,3,14;
32:21,23;123:14;124:12,
22;125:9,21;129:4,13;
133:7;134:20;137:1,11,
24;138:9,13,17,21;
139:24;140:9;143:6,19;
144:3,7;145:11,14;
146:21;147:24;148:13,
15;149:15;151:11;152:9;

153:17;158:1
**buildings (5)**
14:7;30:16;32:10;
142:18,23
**burnt (2)**
141:18;142:18
**business (22)**
29:14;36:2;45:16,20;
54:22;73:20;83:25;
103:22;111:8;117:4,18;
118:12,14;120:11;
121:13,17;122:20;
134:16;135:12;154:15;
155:12;159:23
**buy (25)**
35:20;41:14;69:4,16;
81:6;83:4;85:18;86:23;
87:2;93:12;94:14,17;
107:5,7,11,12;110:4;
111:11;112:12,15;113:1,
4,10,15,22
**buyer (7)**
61:7;62:8;80:17;83:24;
87:22;88:4,6
**buyer's (1)**
83:25
**buying (1)**
93:16
**buys (1)**
29:21

---

## C

**call (3)**
8:11;90:11;108:17
**called (2)**
90:9,12
**Calls (1)**
122:13
**came (4)**
42:14;92:12;101:15;
150:12
**can (52)**
8:3,11;21:19;29:12;
45:23;47:1,16;51:2,7,16,
19,20;52:5,11;56:1;
58:21,23;59:22;63:18;
67:7,25;68:20,21;81:18,
25;82:13,23;84:5,6;85:3,
21;88:18,25;90:15;91:2;
92:16;113:17;114:8;
125:3,15;132:5;143:9,11,
12,14,22;155:8;156:22;
160:15;161:8,9,21
**capacities (1)**
8:7
**capacity (7)**
7:10;8:18;36:20;50:20;
51:8,18;85:19
**car (13)**
103:14,15,15,16,18,24,
25;106:15;109:12,18,20,
23;110:4

**card (17)**
25:12,19,19,20,21,23,
25;100:22,23;101:1,5,10,
14,17,18,23,25
**cards (7)**
23:21,23;24:22,25;
25:6,7,17
**carry (1)**
51:2
**cars (1)**
104:11
**case (5)**
6:16;15:12,13;20:3;
28:8
**Cash (3)**
33:14;34:20;60:21
**cashed (1)**
41:8
**categories (1)**
9:23
**category (2)**
88:2;121:4
**cell (6)**
64:14,15,17;65:2;
66:23;132:15
**certain (2)**
8:16;14:13
**certainly (2)**
8:21;10:12
**Certificate (3)**
136:10;138:1;159:11
**certificates (1)**
138:12
**certified (1)**
4:4
**chain (1)**
81:24
**chance (1)**
118:7
**change (2)**
82:16;161:14
**changed (1)**
85:17
**changing (1)**
83:25
**Chapline (5)**
145:12;146:7,16,17;
147:5
**charge (7)**
13:1;25:13,15,19,20;
38:11;39:25
**check (38)**
20:16,20,22;29:4,9;
33:18,19;34:2,3,21;35:1,
9,19;40:20;41:8,11;42:5,
7;43:8;60:21,22;63:3;
65:12;66:22;68:4,8,17,
21;69:11,20;70:6,12;
74:18;100:4;107:15;
109:9;155:5;162:3
**checkbook (1)**
29:12
**checking (6)**

16:25;41:14;42:12;
69:23;101:16;105:9
**Checks (9)**
16:23;21:2;28:25;
29:11,24;34:10;41:20;
60:25;136:22
**Chevrolet (1)**
113:1
**Chevy (5)**
106:24;108:21;110:25;
111:14,18
**circled (1)**
140:16
**circumstance (1)**
37:11
**circumstances (4)**
33:6;37:10;44:10,11
**City (11)**
123:15;124:13,18,23;
125:8;129:14;134:13;
137:12,25;138:18;159:20
**clarification (1)**
62:16
**clarify (5)**
54:8;55:5;61:18;62:23
**clarifying (1)**
61:21
**clearly (1)**
32:18
**click (2)**
51:25;52:2
**client (6)**
11:19,23;67:20;
160:23;161:2,5
**close (1)**
10:24
**closed (2)**
102:6,11
**cognizant (1)**
10:14
**colon (1)**
79:10
**Colony (1)**
136:18
**Columbus (2)**
136:13;154:14
**combined (1)**
110:25
**company (22)**
12:23;19:7;65:7,25;
76:10;80:20;82:18;83:13,
14,15;113:25;117:10;
119:17;120:4;136:19;
155:2;156:9,13,14;157:9;
159:18;160:1
**compensated (1)**
33:22
**compensation (1)**
148:25
**completed (1)**
59:25
**Compliance (5)**
130:19,25;131:16;

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

141:12;158:21

**computer (12)**
50:19,21,22;51:5,8,17,
22;52:2;54:1;91:15;
92:12,15

**concern (1)**
74:12

**concerned (1)**
19:10

**concerning (3)**
58:3;71:2;82:4

**concluded (1)**
162:10

**conduct (1)**
36:1

**confirm (2)**
90:22;92:7

**conjecture (1)**
122:14

**consider (2)**
22:16,18

**considering (1)**
97:15

**consisted (1)**
17:20

**Construction (5)**
117:15;118:4,13,15;
120:12

**contact (11)**
11:11,13;82:22;119:1,
13,21;120:5,22;132:12;
134:14;157:22

**contacted (1)**
12:12

**contain (1)**
18:2;138:19

**contained (1)**
9:13

**continuing (1)**
7:24

**contract (2)**
83:24;84:2

**Contracting (1)**
154:12

**contractor (18)**
124:16;132:5,6,8;
134:12;139:25;140:16;
149:13;151:7;152:5,23;
153:15,25;154:10;156:9,
12;157:21;159:16

**conversation (9)**
11:18,22;17:22;84:15,
19;85:3,6,12;160:20

**conversations (2)**
19:16;85:20

**Coordinator (1)**
78:6

**copied (4)**
77:24;78:1;79:7,8

**copies (3)**
139:2;148:12,17

**copy (7)**
48:15;58:21;59:16;

71:24;78:2;84:2;154:10

**Corbin (6)**
129:19;130:2,17,24;
141:11;158:19

**C-O-R-B-I-N (1)**
130:18

**corner (1)**
59:8

**corporate (2)**
7:12;20:9

**correspondence (2)**
131:20;158:17

**cost (2)**
38:14,16

**counsel (45)**
8:20;9:10;10:10;11:17;
12:20;14:2,3;18:22;
28:12;47:13;48:23;
49:21;51:12;52:6,11,21;
58:21;63:18;67:7,14,25;
70:22;71:1;77:7;78:8;81:18,
25;83:17;84:10;85:3,20;
87:14;88:9,25;92:5;
95:12;113:16;114:11;
119:9;123:10,11;132:5;
143:25;154:22;156:21;
160:4

**counter (4)**
34:13;61:5;62:7;63:14

**couple (4)**
4:21;127:3

**course (1)**
103:14

**court (4)**
4:11;24:18;58:19;
161:25

**Cove (4)**
152:6;153:2,14;154:4

**credit (13)**
23:21,23;24:22,25;
25:6,7,12,17;101:1,10,14,
18,23

**CROSS (1)**
4:6

**current (2)**
4:17;158:17

**currently (3)**
44:16,24;160:22

**customarily (1)**
122:18

**customer (5)**
95:24;119:7,14,16;
126:5

**cut (1)**
39:11

**cuts (2)**
22:18;23:6

**cutting (2)**
37:12;38:25

**CX (1)**
2:5

**D**

**dad (2)**
115:14,19

**dad's (1)**
96:9

**Data (5)**
117:15;118:4,13,15;
120:12

**date (8)**
4:15;64:1;67:18;89:6,
10;100:1;10:23;160:15

**dated (15)**
61:5;67:21;71:25;79:6;
82:5;87:19;88:3,22;
89:11,15;118:5;151:6;
152:4;156:7;158:18

**dates (3)**
10:20,23;12:6

**days (2)**
89:12,15

**day-to-day (4)**
13:18,19;37:6,7

**deal (2)**
17:12;57:11

**dealing (3)**
57:8,9,24

**dealings (1)**
117:14

**dealt (3)**
57:13,18,23

**debit (5)**
25:19,20,22,25;101:17

**deceased (1)**
115:1

**December (1)**
127:15

**decide (4)**
14:13;15:2;66:25;83:4

**decision (7)**
13:9,11;14:23;65:10;
66:16,18,19

**decisions (5)**
13:5,7,9,14;64:23

**Defendant (1)**
4:3

**Define (1)**
55:15

**definition (1)**
36:17

**demolish (2)**
32:11;39:21

**demolished (1)**
32:22;43:6

**Demolition (17)**
39:20;42:1;128:1,11,
17;132:3,22;133:1;141:7,
17;142:5;147:14;150:25;
153:1;157:19;159:1,3

**demos (2)**
59:25;60:3

**deny (42)**

54:5,9;55:3,9;58:7;
63:7;75:16;76:16,19,20,
25;80:13;81:14;83:7;
86:3,9,10,11;91:2;92:24,
25;97:6;113:7;118:17,23;
120:11;126:24;127:19,
22;129:17;133:3;141:20;
142:2;146:2;147:7;
148:6;150:21;151:25;
153:5,21;154:6;159:7

**denying (8)**
54:10;55:6,21,24;56:5;
80:5,7;101:7

**Department (1)**
155:14

**depend (3)**
15:11;64:19,20

**Depending (1)**
33:6

**Depends (10)**
13:12,21;14:15,17;
15:10;35:21;38:22;
44:10;51:18;66:13

**deposed (2)**
4:5;20:5

**deposit (5)**
30:22;31:2;42:8;43:8;
62:8

**deposition (10)**
8:1,17;9:12;19:12,17;
31:23;52:9;91:14;160:9;
162:9

**describing (1)**
68:17

**designate (1)**
131:15

**designated (6)**
8:8,15,24;9:24;44:19;
45:3

**designee (1)**
44:1

**determination (3)**
36:7,16,23

**determine (4)**
20:2;36:13;38:14;98:2

**difference (1)**
55:24

**different (8)**
13:8;14:16;15:12;18:5;
37:10;121:7;142:15;
146:17

**direct (2)**
67:8,25

**directed (2)**
138:20;158:17

**directing (1)**
137:7

**direction (1)**
38:4

**directly (2)**
57:10;120:4

**Director (5)**
130:18,24;131:16;

141:12;158:21

**disclose (1)**
160:25

**discuss (1)**
19:24

**discussed (2)**
10:9;51:6

**discussing (1)**
87:19;88:24

**discussion (1)**
85:16

**dispute (1)**
124:20

**distributed (1)**
45:9

**divorce (1)**
27:7

**divorced (1)**
27:4

**document (49)**
24:17,19;49:20;53:10,
19,22;59:2;61:5,10;
67:13;68:4;70:21;71:16,
24;72:9,16,19;74:1,9;
77:7,14;78:22;79:21;
80:4;83:10;84:4;89:7,10,
21;95:22;109:22;118:2,7,
10,25;120:16;121:10;
122:3,8,12;124:17;
125:22;127:24;128:23;
129:5;130:11;151:10;
154:10;157:6

**documentation (4)**
80:22;81:8;114:10;
134:17

**documents (52)**
24:9,11;48:21;49:18;
53:21,23;55:9;58:2,20;
69:19;70:6,22;71:2,5;
74:3;76:7,13,20;77:2,2;
79:16;80:1,12,18,19;
81:1;85:13;86:3;87:13;
90:4;93:10,18;95:12;
97:13,18,23;98:11;
115:20,22;116:1,6;
122:16,19,23,25;123:12;
124:6,23;135:2,5;139:8;
155:21

**Dodge (2)**
113:10,12

**dollars (9)**
38:12;62:5,9,12,24,25;
63:4;68:10;69:12

**done (21)**
14:19;20:3;29:21;39:2,
16;45:14;46:1,4;67:4;
73:14;99:9;123:20;128:7,
11;132:21;142:2;143:10;
146:10;149:6;160:5,12

**down (41)**
14:5,7,12,13,18,23;
15:3,4,7,14;18:6;23:14;
25:9;30:8,17;37:12,16;

COMMODORE BANK v.                                           GEORGE MICHAEL RILEY, SR.
GEORGE MICHAEL RILEY, SR.                                         September 20, 2013

38:3,4,11,24;39:3,11;
44:12;59:7;78:13,17;
86:20;95:13;106:14;
126:10;132:7;142:10,13,
18,23;143:6,19;144:3,7;
161:16
**drive (3)**
103:14;105:14;106:10
**driven (4)**
103:9;104:6,8;105:25
**driver (1)**
22:14
**drivers (1)**
22:20
**driver's (2)**
115:9,12
**driving (1)**
106:20
**drove (6)**
105:1;106:16,23;108:9,
12;114:15
**duly (1)**
4:4
**Dunn (34)**
16:18,20;17:10,25;
36:10,15;52:10;53:11;
54:2;72:2;76:6,21;81:10;
89:11,16,24;90:13;92:2,
4,11,21;136:12;139:5,7,
12,18,20;154:16,21,24,
24,25;155:3,6
**Dunn's (1)**
89:6
**Durango (2)**
113:10,12
**during (7)**
7:4;9:7;23:13;52:9;
75:6;82:25;151:1
**DX (1)**
2:5

**E**

**earlier (6)**
60:15;76:5;77:3,17;
91:13;114:21
**early (1)**
8:3
**earnest (5)**
62:6,8;63:4;69:12;70:9
**easier (1)**
25:10
**education (1)**
10:6
**eighth (1)**
10:5
**either (24)**
10:9;24:22;25:1,9;
27:21;29:10;31:12;
36:19;42:22;44:25;
45:12;46:15;49:8,14;
50:9;86:13;91:2;93:4;
96:4;99:15;103:13;

114:8;146:5;155:24
**else (38)**
6:14;7:3;9:6;13:13;
14:21;22:20;23:14,17;
26:20,25;32:9,25;35:11;
37:13,15;38:21;40:11;
48:12;60:10;64:2;66:6;
71:6;72:20;104:8;
105:13;116:16,18,20;
117:1;128:7,10,15;
132:24;146:10;147:13,
18;150:24;159:21
**else's (6)**
17:7;32:16;87:24,25;
100:19;133:20
**e-mail (45)**
49:14;51:21,23,24;
52:12,15,16,25;53:3,11;
58:2,10;59:16,16;71:10;
76:5;77:6,14,15,17,18;
78:3;79:2,9,15;80:15;
81:11,18,23;82:11;83:20;
88:12,13,15,19;91:6,21;
92:1,9;96:24;97:1,19;
98:1;119:24;120:8
**E-mailed (2)**
48:14;77:22
**e-mails (3)**
51:19;53:25;91:16
**employed (1)**
85:2
**employee (7)**
22:7,17,18,19;23:7;
84:18,25
**employees (8)**
19:10;21:21,25;22:4,5,
15;23:5;32:7
**employer (1)**
76:9
**end (1)**
93:16
**ending (1)**
158:18
**engine (2)**
108:23;110:1
**entitled (1)**
8:21
**entity (3)**
19:23;71:4;155:17
**enunciate (1)**
10:15
**equipment (8)**
142:6,9,17,23;144:11,
14,16,19
**error (1)**
159:19
**escrow (1)**
62:10
**establish (1)**
103:1
**established (1)**
98:16
**establishment (1)**

71:3
**Estate (29)**
53:13,25;54:2,12,21;
55:14,17;57:4,11,12,13,
21,21;59:18;67:15;75:8;
76:10;77:23;79:17;82:8;
85:15;88:24;89:25;
93:22;94:18;114:18;
134:9;135:17,22
**estimate (1)**
123:25
**Etna (13)**
26:13;27:17;28:23;
42:13;65:20;111:7;
121:25;122:20,24;
125:24;130:20;149:23;
158:23
**even (10)**
10:5,23;11:14;12:14;
15:20;18:15;39:4;73:17;
74:24;108:10
**exact (4)**
6:20,21;10:23;12:6
**exactly (1)**
10:15
**EXAMINATION (1)**
4:6
**examined (1)**
4:5
**example (10)**
38:3;39:1,6,15,17;
40:17,18;42:1,17;43:1
**examples (2)**
16:22;39:8
**Excavating (4)**
156:12,14;159:17;
160:1
**except (1)**
161:14
**exchange (1)**
33:23
**Excuse (12)**
24:24;30:15;37:14;
46:19;107:8;115:10;
116:13;122:22;134:23;
139:19;141:24;142:21
**Exhibit (20)**
9:12,13,21,22,22;10:7;
47:22,23;48:24;49:21;
52:6,8;58:16,20;95:8;
97:15;117:21;118:2;
124:2,6
**EXHIBITS (1)**
2:8
**existed (1)**
11:14
**experience (1)**
150:5
**explained (1)**
40:15
**explanation (1)**
20:6
**Explorer (1)**

113:4
**extent (2)**
10:2;161:15
**extra (1)**
117:24
**ex-wife (2)**
27:2;99:1

**F**

**facility (2)**
95:2;99:5
**fact (2)**
42:16;97:15
**fairly (1)**
124:5
**fall (1)**
102:20
**familiar (2)**
19:23;126:22
**far (7)**
11:25;12:2;19:10,12;
119:9,11;130:7
**Fargo (2)**
81:21;87:20
**father (1)**
115:5
**federal (1)**
46:16
**Ferry (8)**
119:3;132:12;134:2,9,
14;135:11,17,22
**fifth (1)**
132:7
**figure (9)**
14:20;43:4;69:8;98:19,
19;103:2;108:18;115:25;
126:1
**file (1)**
138:14
**filed (4)**
8:19;46:14;47:3;
138:18
**fill (8)**
34:3,5,11,13;63:25;
137:11;148:24;149:4
**filled (2)**
68:24;119:19
**final (3)**
9:5;27:6;153:13
**find (3)**
59:4;83:24;160:14
**fine (1)**
106:18
**finish (3)**
160:9,11,15
**finished (3)**
41:25;42:16;43:13
**finishes (1)**
67:16
**first (30)**
4:4;6:3;10:18,18;11:8,
11;12:4;48:25;52:19;

67:14;69:21;70:5;71:24;
77:4;82:4;86:24;92:19;
93:10;95:23;99:3;
102:25;103:5,13;119:17;
125:21;128:25;151:5;
156:11,23;159:17
**five (1)**
40:15
**Florida (1)**
27:10
**followed (1)**
5:21
**following (3)**
77:6,7;80:18
**follows (1)**
4:5
**follow-up (1)**
101:20
**Ford (2)**
113:4,22
**Fort (2)**
60:1;129:15
**forward (10)**
51:25;52:2;53:25;62:6;
78:5;79:10,10;89:19;
91:11,15
**forwarded (9)**
53:12,23;76:8,13;80:1,
25;81:11;92:10,14
**forwarding (4)**
76:20;79:16;89:24;
92:20
**found (1)**
106:15
**foundation (1)**
51:12
**Freightline (4)**
112:4,7,8,12
**front (4)**
47:13;59:19;68:6;
145:9
**full (1)**
4:10
**funds (1)**
46:8
**further (4)**
127:3;131:24;149:19;
158:15

**G**

**gave (8)**
17:20,25;20:24;28:14,
17;104:22,24;118:19
**General (2)**
67:16;128:19
**gentleman (1)**
7:25
**gentleman's (1)**
5:15
**GEORGE (6)**
2:2;4:2,12;74:1;87:21;
92:7

**Georgia (1)**
117:17
**gets (1)**
116:6
**given (3)**
21:1;45:12;58:21
**gives (1)**
43:8
**giving (1)**
39:1
**Glenn (9)**
125:12,17,20,24;126:2,
7,11;127:12,22
**glove (1)**
109:17
**GMC (1)**
111:21
**GMR (41)**
58:25;59:1;67:17;
87:14;88:9;89:9;95:15,
16;99:24;124:7,8;125:22;
127:2;128:23;130:4;
133:7;134:11;136:6;
139:23;141:9;145:2,7;
146:15,20;147:21,23;
149:11,19;151:4,10;
152:4,10;153:10,13,16;
154:9;156:3,16;157:14;
158:2,14
**goes (5)**
12:1,2;30:21;92:9;
135:7
**good (3)**
4:8;21:16;70:3
**government (2)**
46:16;149:6
**grade (1)**
10:6
**grass (2)**
22:19;23:7
**gross (1)**
110:25
**group (5)**
57:11,12,14;71:25;92:4
**guess (6)**
21:16;29:23;31:23;
44:12;121:10;125:11
**GUNNER (81)**
9:15;10:3;11:20,24;
12:21,25;25:5,16,20;
27:10;29:23;30:3;34:9;
47:19,23;48:3;49:4,22;
50:4;52:23;59:6,21;
60:17;61:17,20;62:15,22;
63:20;67:10;68:1,20,25;
69:25;70:14,24;71:18,21;
72:4,12;73:6;77:10;78:7;
83:18;89:20;96:9,12;
98:15,21;99:3;117:9;
118:20;119:11,13,20;
120:15,20,25;121:6;
122:13;125:14;126:4,9;
130:6;132:8;137:18;

140:4;142:20,22;143:1;
144:1;145:8;155:7;156:4,
22;157:2,10;160:14;
161:6,13,24;162:4
**guy (1)**
126:10
**guys (5)**
82:15,23;132:19;
160:19;161:12
**guy's (1)**
117:2

**H**

**hand (2)**
59:8;142:14
**handed (2)**
95:11;124:5
**handles (1)**
20:9
**handwriting (5)**
87:22,23;118:9;
133:19;146:24
**happened (2)**
41:18;90:23
**happens (1)**
13:6
**Harris (18)**
53:12,13,24;54:2,12,
21,24;55:14,17;57:13,21;
59:17;67:15;68:13;76:9;
77:23;89:25;114:17
**haul (1)**
141:6
**hauled (1)**
35:13
**head} (1)**
60:16
**heads-up (1)**
82:14
**Heller (2)**
144:22,25
**H-E-L-L-E-R (1)**
144:25
**Help (14)**
20:17;22:11,17;26:10;
59:4;69:3,15;81:18;82:1;
83:17;96:3;113:17;
132:5;137:20
**helped (4)**
73:9,12,13;91:17
**helps (1)**
79:23
**Henry (2)**
60:1;129:15
**herein (1)**
4:3
**hereinafter (1)**
4:4
**here's (2)**
89:18;92:2
**herself (3)**
71:8,15;74:21

**hi (1)**
89:2
**Highway (5)**
134:2,13,16,20;135:11
**hire (4)**
37:16;55:18,18;131:3
**hired (3)**
127:12;141:16;159:1
**hold (1)**
62:13
**home (1)**
89:6
**homeowner (1)**
43:7
**honestly (1)**
21:19
**hour (1)**
93:9
**hours (1)**
80:17
**house (11)**
14:18;15:18;18:5,6;
23:13;33:7;39:18,22;
44:12;50:25;134:20
**houses (3)**
14:22;30:16;32:10
**Huron (2)**
147:22;148:10

**I**

**idea (4)**
28:21;36:18;114:14;
145:3
**identification (7)**
58:17;82:6;83:22;
87:15;95:9;117:22;124:3
**identified (1)**
52:8
**inaccurately (1)**
161:16
**incorrectly (1)**
120:24
**INDEX (1)**
2:1
**indicate (9)**
53:22;85:13;86:4;
92:10;122:5;127:11;
131:9;135:3,5
**indicated (4)**
14:3;88:19;114:22;
130:21
**indicates (15)**
50:1;53:10;61:6,10;
62:7;73:3;77:21;80:4,16;
95:23;118:25;127:24;
157:21;158:7,25
**indicating (2)**
48:20;76:6
**indication (2)**
97:17,22
**individual (2)**
107:11,13

**individuals (1)**
32:3
**Industries (59)**
9:20;45:20;46:8,12,15;
47:7,25;50:2;61:7;68:7;
71:3;73:5;74:3,10;77:3;
89:5;92:6;110:22;114:1,
13;119:1,18,21;120:5,21;
121:12,17,23;123:16;
124:16,21;125:23;
127:13;129:20;130:12,
19,25;131:8,17;139:25;
141:13,16;144:23;
148:10;149:14,20,22;
150:4,8,14;151:7;152:6,
23;153:15,25;154:13;
158:16,22,25
**Industries' (1)**
154:21
**inform (1)**
19:1
**information (7)**
34:11;81:7,10;119:8,
14,17;120:3
**informed (3)**
82:15,19;83:12
**initial (1)**
98:9
**initially (2)**
83:2;85:14
**initials (1)**
145:21
**Inspection (2)**
87:18;88:3
**instruct (1)**
161:2
**Insult (1)**
24:5
**insurance (13)**
135:25;136:3,11,18,20,
23;137:3;138:2,5,20;
139:3,7;159:12
**insured (2)**
136:11;159:13
**intent (1)**
84:14
**intention (1)**
17:17
**into (6)**
30:21;35:17;42:9;43:9;
87:4;127:3
**invade (1)**
84:13
**involved (1)**
11:9
**involvement (1)**
10:19
**issue (1)**
82:23
**issued (2)**
124:13;154:18
**issues (1)**
19:11

**items (2)**
9:20,25;10:14;100:17;
102:2

**J**

**Jacob (1)**
151:8
**James (9)**
53:12,24;54:2;55:14,
17;67:15;89:25;136:13;
154:14
**JB (1)**
82:22
**jhre@msncom (3)**
53:24;81:21;90:1
**Jim (4)**
54:23;57:15,20;68:13
**Jindra (3)**
7:6;8:9,12
**job (11)**
16:9,24;17:23;18:14,
17,20;42:17;43:14,22;
149:8,9
**jobs (1)**
60:7;114:17;123:20
**Johnson (7)**
73:4,5,7,16;74:9,16;
75:19
**July (5)**
130:1;131:1,8;132:25;
158:18
**June (2)**
100:1;129:12
**junk (1)**
110:15
**junkyard (1)**
110:14
**jut (1)**
154:7

**K**

**K3500 (1)**
113:1
**Kate (3)**
6:5;27:1;59:18
**Katharine (6)**
129:19;130:2,17,24;
141:11;158:19
**K-A-T-H-A-R-I-N-E (1)**
130:17
**keep (7)**
59:18,21;125:15;
148:12,17;149:7;155:20
**keeps (1)**
16:12
**kept (3)**
35:13;105:18,20
**keys (3)**
104:22,25;106:15
**kind (4)**
91:8;101:15;103:24;

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

104:3
knew (2)
  91:15;108:23
knowledge (11)
  6:2;10:2;135:19,20;
  145:5,6;146:12;147:13,
  17;150:24;159:22
knowledgeable (6)
  9:19;18:24;19:21;20:1;
  44:20;45:4
knows (5)
  10:10;19:3;27:14;
  34:13;106:4;132:6

## L

labeled (1)
  124:6
lady (1)
  73:12
laptop (3)
  50:24;51:16;91:15
large (1)
  124:5
last (34)
  4:10;9:4;15:17;17:23;
  18:4,6;23:13;24:3,7,14;
  29:3,8;31:1,4,6,8,15,24;
  32:21;33:7;57:17;75:4,
  23;93:9;94:3,18;99:25;
  100:1;106:5;108:9,23,25;
  116:9;136:8
later (6)
  27:15;31:22;83:4;87:2;
  89:15;141:10
law (4)
  18:3;71:25;92:4;
  136:13
lawful (1)
  4:3
lawyer (1)
  81:10
laying (1)
  51:11
Learned (1)
  24:3
lease (7)
  4:25;5:1,5,6,17;135:21;
  144:17
leased (1)
  142:17
least (3)
  9:4;106:23;110:23
leave (3)
  8:4;108:11,14
Leavenworth (1)
  117:18
left (2)
  119:10,11
legal (2)
  92:5;154:15
LES12-092 (1)
  132:4

less (3)
  18:9,10,11
lesson (1)
  24:3
letter (18)
  71:25;77:13;89:3,14,
  18,19,23;90:5;91:22;
  92:2,3,7,10,20;127:4;
  141:10;149:21;158:24
letterhead (6)
  72:5;73:18;130:12;
  150:9,15;158:16
liabilities (1)
  44:23
Liability (9)
  136:10,20,23;137:2;
  138:2,5,19;139:2;159:11
license (5)
  111:1;115:9,12,17;
  154:11
Licensing (1)
  154:12
lie (2)
  32:18,20
lied (1)
  156:2
likely (3)
  40:7,10;109:19
limit (1)
  54:19
Limited (35)
  9:20;47:7;61:7;68:8;
  71:4;73:5;74:4,11;77:4;
  92:6;121:23;124:16,21;
  125:23;127:13;130:12,
  19,25;131:8,17;140:1;
  141:13,17;149:14,23;
  150:4,9,15;151:7;152:6;
  153:15;154:13;158:16,
  22,25
line (22)
  67:21;68:16;78:24;
  88:4,6,12,14,16;119:17;
  133:11;140:7;145:15,16;
  147:25;148:1;149:16;
  151:12,12;153:9,18;
  158:3,18
lines (2)
  146:22;152:11
list (3)
  115:8;124:15;135:10
listed (10)
  9:21;64:9;80:18;119:2;
  130:18;132:18;153:25;
  156:11;158:20;159:16
listening (1)
  82:10
listing (2)
  62:9;125:24
lists (5)
  132:4,11;136:11;
  152:23;154:13
little (2)

69:22;149:19
live (9)
  5:12,23;6:11;34:17,23;
  114:25;115:2;116:2,3
lived (2)
  7:3;9:6
lives (2)
  115:6,15
living (4)
  5:8;6:4,22;9:3
LLC (2)
  71:25;117:15
located (2)
  6:10;135:14
location (5)
  4:20;28:22;100:18;
  102:3;134:9
long (5)
  4:20;5:14;6:16,22;
  74:23
longer (2)
  16:2,4
look (42)
  37:12;47:12,16,18;
  48:1,3;49:4,5,22;53:18;
  59:14;61:3;63:10;67:9;
  68:5;81:17;89:9,20;92:3;
  96:21;97:5,8,10;99:24;
  117:24;118:7,11;123:12;
  127:2;128:23;129:10;
  130:4;131:24;133:6;
  136:6;139:23;140:2;
  141:9;145:23;146:5,25;
  153:8
looked (1)
  123:7
looking (5)
  47:15;59:2,12;87:15;
  113:16
looks (5)
  79:14;126:4,19;
  134:18;147:1;151:16,19,
  21
lot (3)
  13:8,8;107:12
lower (1)
  59:7
lucky (1)
  106:13

## M

ma'am (1)
  103:1
mail (3)
  27:24;49:14;71:9
mailed (2)
  26:8;48:15
makes (4)
  13:5,13;66:15,19
making (1)
  62:14
manage (3)

12:12;22:5,6
managed (1)
  12:2
manager (16)
  12:23;14:1,3;19:7;
  22:2,21;29:15;36:4,7,8,
  11,24;37:23;84:2;128:19;
  138:23
managing (1)
  12:4
many (3)
  104:15;123:18,20
March (3)
  141:15;152:5;154:18
Marcus (13)
  53:11;54:2;72:2;76:21;
  89:5,11,16,24;90:13;
  92:1,4,11,21
Mark (4)
  16:16,17;74:6;90:12
MARKED (9)
  2:9;9:11;48:24;58:16,
  19;95:8;117:22;118:2;
  124:3
Martins (8)
  119:3;132:11;134:2,9,
  14;135:11,17,22
Mary (2)
  144:22,25
matter (2)
  6:23;121:10
matters (1)
  8:16
may (24)
  16:4;19:14;28:20;
  29:24;30:2,9,9;41:2;69:1;
  71:7,14;74:12;110:16;
  118:5,15;120:18;131:21,
  22;140:24;142:2;149:18;
  151:6;153:20,23
maybe (9)
  18:11;40:13;75:1;
  92:16;98:21;104:17;
  113:17;120:24;136:19
McColloch (1)
  133:23
M-C-C-O-L-L-O-C-H (1)
  133:9
McCulloch (1)
  133:9
mean (25)
  5:10;11:13;12:16;13:7;
  17:5,14;23:7;25:18;27:5;
  32:12;33:12;35:23;40:9;
  41:10;43:18;45:10,22;
  51:20;62:17;91:11;
  92:13;101:12,19;144:20;
  155:15
means (1)
  56:9
met (1)
  4:9
MICHAEL (15)

2:2;4:2;87:21;92:7;
  95:24;99:19;119:2,5,13,
  23;120:5,22;121:1,5;
  127:6
middle (4)
  52:10;81:19;89:11;
  119:10
might (3)
  48:17;109:1;110:11
Mike (36)
  7:13;31:20;60:25;
  63:15;64:2,11,21;65:2;
  66:14,18;69:6;77:15;
  78:24;82:15,22;89:2,18;
  90:14;102:9;132:13;
  133:16;134:15;140:15;
  142:25;146:4;147:1;
  148:4;149:22;150:3;
  151:18;152:17;153:24;
  155:8;157:22;158:8;
  161:14
Mills (1)
  149:21
mine (7)
  13:10;21:16;35:14;
  59:22;145:23;146:5;
  152:18
minute (3)
  37:19,19;130:6
minutes (2)
  40:15;108:18
mischaracterization (1)
  120:17
mistake (1)
  161:12
model (1)
  111:15
mom (2)
  115:13,18
moment (2)
  82:20;108:2
money (17)
  30:12,20;32:2,19;
  33:20,23,25;34:17,23;
  35:13,18;43:14;62:6,8;
  63:4;69:12;70:9
month (6)
  6:18;11:2;12:7;16:3;
  31:6;75:1
monthly (2)
  42:11;65:17
months (10)
  6:18,24,25;9:5;10:21;
  11:4;16:6;18:8,11;74:25
More (20)
  7:1;10:25;11:2,4,6;
  12:7,9,10;18:7;10:32:19;
  39:19;40:7,10;63:12;
  78:9;109:19;110:9,9;
  156:2
morning (3)
  36:10;52:9;160:19
morning's (1)

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

19:12
**MORRISON (24)**
7:7,8,11,18;8:11,12,14;
9:5,9,18;20:4;31:17;
51:3;84:7,21;85:5;94:20;
97:12;102:21;120:18;
160:16;161:4,8,19
**most (6)**
9:19;18:23;19:21;20:1;
44:20;45:4
**mother (1)**
115:1
**motor (1)**
108:13
**Moull (3)**
4:18;9:3;116:3
**move (3)**
9:9;43:21;160:17
**moved (2)**
6:3;27:10
**Moving (1)**
96:22
**mriley (3)**
52:18,24;76:6
mriley@ohiorockindustriescom (9)
52:13;77:16;79:1;
81:22;88:14;89:17;
96:25;97:20;119:25
**Mrileysr (1)**
53:6
mrileysr@ohiorockindustriescom (2)
52:14;76:7
**Mrs (1)**
7:7;8:12,14
**much (1)**
40:25
**multiple (1)**
142:15
**must (2)**
106:13;159:19
**Myself (8)**
6:13;22:6;35:12;39:11,
12;86:17;116:17,19

**N**

**name (57)**
4:10,10;5:15;50:6;
57:17;63:15;65:3,4,5;
73:25;82:16,19,21;83:25;
84:1,1;86:6,6;87:3,5,9;
90:18;96:10;97:11;99:7;
105:11;113:25;117:2,9;
119:1,13,21;121:5;
125:10;126:5;127:6;
129:6;130:2;133:12,15;
134:12;140:7,15;145:16;
147:1,25;148:3;151:12,
18;152:12,16,17,19,22;
153:24;158:4,7
**National (1)**
126:20;127:13;149:14;
150:19

**need (25)**
11:25;16:22;22:17;
35:7,8;43:3;59:18;61:18;
67:21;77:19;84:11;89:2,
5,20;90:14;91:22;105:22,
24;108:16,17;142:7;
160:6,8,11;161:17
**needed (17)**
18:3;33:15;34:2,6,20;
35:18,20;40:20;41:1;
81:8;87:4;89:13;90:5,7;
139:2;141:5;142:10
**needs (3)**
29:18;73:14;157:5
**net (1)**
45:1
**new (1)**
160:14
**Newark (4)**
4:18;9:4;96:23;116:4
**next (23)**
37:19;43:22;61:3;
63:11;67:21;70:21;
71:16;73:3;76:3;77:2;
82:7;83:10,16;84:4;88:9;
120:4;133:6;145:8;
146:14;147:20;149:12;
151:4;152:3
**night (1)**
107:20
**nobody (8)**
9:6;15:1,6;21:5;41:21;
67:4;147:13;150:24
**nods (1)**
60:16
**Nope (2)**
29:2;105:21
**nor (1)**
83:14
**Norcross (1)**
117:17
**normally (1)**
5:11
**North (6)**
134:1,13,15,19;135:10;
147:22
**notarized (4)**
89:3,14;90:5;91:22
**note (1)**
59:17
**notes (1)**
160:7
**Notice (1)**
9:12
**noticed (2)**
8:17;9:18
**Notification (2)**
132:2;157:18
**November (1)**
88:3
**Number (16)**
58:24;59:3,11;64:8,10,
11,14;82:6;83:22;95:19,

19;132:3,13,15,18;
158:11
**numbers (4)**
58:22,23;59:7;95:13

**O**

**oath (1)**
24:21
**object (3)**
7:16;98:15;120:17
**objection (8)**
7:14,20,23;31:17;51:3;
94:20;102:21;122:13
**objections (1)**
8:25
**obligated (1)**
113:18
**occasion (1)**
143:8
**October (14)**
54:3;72:1;77:23;79:6;
80:2;82:5;85:23;87:19;
88:22;89:11;90:4;91:6;
100:24;102:8
**off (2)**
84:5;106:17
**offer (1)**
20:6;61:5,8;62:7,13;
63:14
**offered (2)**
19:22;20:1
**offers (1)**
58:10
**office (8)**
18:3;26:18,21;60:9;
61:16;78:22;84:16;
161:25
**off-the-record (2)**
11:18,22
**OH-005 (1)**
157:20
**Ohio (511)**
4:18;7:13,22;8:3,8,14,
15,22,22,23;9:9,13,18,19,
24;10:9,19;11:12;12:2,5,
12,22;13:2,6,14,17;14:1,
1,2,10,14,21;16:12;18:2,
25;19:3,6,13;20:10,16,19,
22;21:2,6,14,15,18,20,22;
22:10,13,21,24;23:14,19;
23:29:1,4,9,12,15,15,18,
25,25;30:9,14,17;31:2,10,
18,19,20,24;32:3,11,22;
33:11;34:25;35:3,8,10,
15,17,19;36:2,4,9,11,21;
37:3,6,8,17,19,21,23;
38:2,11;39:2,9,13,16,23;
40:21,22;41:1,8,12,13,21,
22;42:9,11,13,17,23;43:9,
13,21,23,25;44:4,14,16,

20,23;45:1,4,8,11,14,16,
19,21,23,24;46:1,2,4,8,
11,15,16;47:3,6,25;48:12,
20;49:17;50:2,12;51:5,6,
13;52:2;53:23;54:1,14,
17,18,20,21;55:14,17,19;
56:17,21,24;57:3,5;58:3;
59:25;60:3,14;61:1,2,7,
11,23,25;62:2,4,14,17,20,
24;63:2,5,16;64:2,9,18,
22;65:3,12;66:13,19,23;
68:7;69:6,7,17,22;70:11,
18;71:3,4;72:21;73:4,20,
21;74:3,10,17,19,23;75:6,
7,13,21,24;77:3,18;79:2;
80:21;81:6,9;82:19,25;
83:3,5;84:17,18;85:2,4,7,
8,14,25;86:7,16,25;
88:15;89:4;91:23;92:5,8;
93:5,10,16,21;94:11,14,
21;95:1,6,25;96:4,7,16,
18,23;97:18,22;98:1,3,11,
13,99:20;100:4,8,12,15,
19,23;101:2,5,11,13;
102:9,23;103:3,8,10,11,
15,19,21,23;104:6,8,20;
105:1,6,7,9,11,14,17;
106:6,10,16,20,24;107:2,
4,5,14;108:3;109:6,8,23;
110:1,6,22;111:4,7,8,12,
17,22;112:5,12,16;113:2,
5,11,22,24,25;114:2,6,6,
13,21;115:9,12,17;117:3,
7,14;118:14;119:1,3,17,
21;120:4,12,21;121:12,
16,23,25;122:19,21,24,
24;123:11,11,16,20;
124:15,20;125:1,5,13,18,
23,25;126:3,15,16;
127:12,17;128:2,3,4,7,11,
16,19,21;129:11,20;
130:11,19,20,25;131:7,
13,16,20;132:11,11,17,21;
133:1,16,24;134:1,5,8,12,
14,15,25;135:4,9,14,18,
16,24;136:2,3,12,14,19,
23;137:2,7;138:1,5,10,18,
20,23;139:3,8,25;140:23;
141:12,16,21;142:1,6,16,
25;143:4,7,8,19;144:2,5,
6,16,23;145:5;146:7,10;
147:5,10,14;148:10,12,
16,25;149:7,13,20,22,23;
150:4,8,14,19,25;151:6,
18;152:5,23;153:15,25;
154:4,12,14,21;155:1,5,
12,20,23;156:13,20;
157:21;158:8,15,21,23,
25;159:4,12,16,22,22;
160:6,10,11,12
ohiorockindustriescom (2)
53:4;77:25
**Ohio-West (4)**

156:12,14;159:17,25
**once (5)**
38:18;40:3;45:11;
107:17;158:2
**one (58)**
6:2,10,14;8:7;15:14,17;
25:9;31:12,22;37:19;
44:2;47:20,20,25;48:25;
49:23;51:2,13,14;57:23;
59:25;62:20;63:11,12;
67:3,19;70:25;72:23;
84:5;87:13;89:12,15;
94:13;99:4;103:5,13;
104:17;110:9,24;117:23,
24,25;125:12;128:12;
132:7,22;135:6;136:16;
137:7;140:10,10,11,13;
142:4;145:19,20;152:3;
156:2
**ones (2)**
15:6;94:9
**only (18)**
8:22;22:7;27:13,16;
31:18,20;32:22;35:10;
51:4;82:13;92:17;94:13,
21;98:10;104:5;117:23;
125:4;160:10
**open (1)**
78:25
**opened (1)**
27:20
**operate (1)**
50:19
**operated (1)**
51:13
**Operating (13)**
47:7,8,9,11;48:1;49:1;
50:20;77:4,5;80:19;81:2;
160:21,24
**operations (1)**
19:13
**opposed (4)**
83:5;85:24;86:6;
101:17
**oral (1)**
5:24
**order (4)**
60:7;109:11;118:6;
161:1
**ordered (1)**
162:5
**original (1)**
77:5
**ounce (1)**
47:13
**out (36)**
10:4;14:20;24:8;34:4,
5,11,14;35:19;40:21,22;
41:1;43:4;60:25;61:1;
63:25;66:17;68:13,24;
69:8;74:19;78:22;82:23;
98:19,19;101:15,23;
103:2;105:10;110:3,3;

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

115:25;119:19;126:1;
137:11;148:24;149:4
**outside (1)**
84:16
**over (8)**
69:22;86:21;97:14;
127:5;129:6;150:5;
152:13;162:3
**owe (1)**
44:24
**owing (1)**
32:19
**own (18)**
4:22;5:11;21:9;25:5;
26:1;51:8;65:12;67:1,2;
79:9;83:14;85:18;86:6;
87:3,9;108:3;134:8;
135:16
**owned (6)**
39:25;42:3;45:12;
83:13,15;106:24
**owner (18)**
21:18;40:13;44:5;50:1,
7,12;57:10;81:8;82:21;
93:25;119:2,6,23;120:6,
7,22;121:2,4
**owner/contractor (3)**
133:16;145:25;158:8
**Owner/Operator (1)**
153:11
**owners (5)**
21:20;80:20;90:8,10,15
**owner's (1)**
82:16
**ownership (1)**
19:11
**owns (4)**
44:4;48:20;49:17;
104:19

## P

**pack (1)**
95:12
**package (3)**
58:20;59:15;71:5
**packet (25)**
127:4;129:4;131:24;
132:18;133:6,10;136:8;
139:24;140:3;141:10;
145:9,13;146:14;147:20,
23;149:12,20;151:4,10;
152:9;153:9,13;158:1,15;
159:11
**packets (1)**
124:15
**PAGE (67)**
2:3,9;49:21,23;50:6,14;
59:7,12,14;61:3;63:10,
12,13;64:1;67:14,17;
68:5;69:21;73:3;76:3;
78:10;81:17;83:17;
87:23;92:3;95:18,23;

96:22;97:4;99:24;126:9;
127:11;128:25;129:3;
130:5;131:25;133:10;
134:11;135:2;136:6,8,11;
140:3,4;145:9,13;146:19;
147:23;149:16,21;151:5,
9,15;152:8,10,11;153:8,
16;156:11,16,25;157:14,
16,25;158:14;159:10,17
**pages (5)**
67:8;76:4,4;95:14;
127:3
**paid (21)**
16:24;30:13;33:3,4,10,
13;40:12,14;60:13,21;
64:21,22;65:1,2;66:12;
74:17;99:13;100:22;
102:8;131:11;148:25
**Pam (37)**
53:12;57:15,16,18,23;
58:1,2,10;59:17;60:6,9;
61:1;66:2;13;64:4;67:19;
69:1,20;70:1,6;71:5,7,14;
75:12;76:8;77:22;78:3,
21;79:15;80:2;84:3;87:4;
88:13;89:7,12;90:21;
91:17,21
**panderson@hre (1)**
77:22
**pandersonhre@attnet (1)**
79:6
**paper (3)**
73:19;75:12;131:9
**paperwork (2)**
149:5,7
**Pardon (1)**
11:20
**paren (1)**
78:25
**parents' (3)**
96:1;99:21;114:23
**park (2)**
107:18,20
**part (3)**
75:12;97:22;137:3
**particular (1)**
100:18
**past (1)**
67:4
**pay (19)**
5:14;20:20;22:12,21,
23;30:17;32:2;33:1;34:2;
35:8;42:5;60:9,10;65:8,
11;66:14,23;131:13;
154:25
**paycheck (1)**
33:13
**paychecks (1)**
22:9
**payee (1)**
34:11
**paying (1)**
65:6

**payment (5)**
64:24;99:24;100:1,2,4
**pays (2)**
64:17;66:13
**people (2)**
5:11;30:17
**perform (6)**
132:17;140:21;141:6,
17;159:1,3
**performed (3)**
126:8;132:22,25
**performing (1)**
150:25
**performs (1)**
155:1
**perhaps (1)**
18:8
**period (8)**
7:4;9:7;75:7;76:24,24;
79:18;89:5;151:1
**permission (1)**
66:24
**permit (31)**
125:21;129:4,13;
132:18;133:8;137:1,11,
24;138:9,14,17;139:24;
140:9,22;145:11,14;
146:15,21;147:21,24;
148:13,16;149:13,15;
151:5,11;152:4,9;153:17;
156:7;158:1
**permits (4)**
123:15;124:13,22;
125:9
**person (20)**
5:1;8:19,9:19;18:24;
19:21;20:1;27:13,16;
29:20;32:23;39:25;42:2;
44:6,20;45:4;46:10;
125:4;132:12;134:14;
157:22
**personal (16)**
8:18,20;17:6;26:1;
31:11;51:8;65:13;82:21;
84:1;85:18;86:6;87:3,9;
98:7;100:18;103:10
**personally (18)**
39:11;62:23;83:4;
85:24;93:11,16;94:2,17,
23;96:15;98:5,13;102:24;
103:3;128:4,12;137:10;
144:6
**phone (13)**
64:8,14,15,17;65:3,7,
25,25;66:8,23;108:17;
132:13;158:11
**PHP (1)**
111:1
**Pick (2)**
28:1;106:6
**pickup (1)**
111:24
**piece (9)**

43:5;57:4;61:15;73:19;
75:11;82:8;88:23;93:12;
134:8
**pile (1)**
47:12
**place (1)**
108:25
**Plaintiff's (4)**
58:16;95:8;117:21;
124:2
**plate (1)**
111:1
**please (8)**
4:11;24:18;52:22;
55:15;83:24;120:19;
135:9;146:20
**PLF's (4)**
2:10,11,12,13
**pm (1)**
162:10
**PNC (1)**
69:21
**PO (22)**
12:6;22;17:17,20,25;
28:3,23;42:13;65:22;
111:6,7;121:25;122:1,6,
20,24;125:24,25;130:20,
21;149:23;158:22,23
**point (4)**
10:3;70:3;161:3;162:6
**Policy (1)**
67:16
**portions (3)**
64:1;65:11;160:24
**position (5)**
24:20;84:17,24;85:1;
131:4
**possession (1)**
109:11
**possible (8)**
56:3,3;71:12;73:1;
101:4;102:13;112:20,21
**post (2)**
26:18,21
**pounds (1)**
111:1
**practices (1)**
136:13
**prepare (2)**
19:16;46:11
**prepared (1)**
19:25
**present (2)**
7:21;9:11
**president (1)**
121:9
**President/CEO (1)**
150:4
**previous (1)**
82:18
**previously (4)**
4:9;9:11;88:19;158:19
**price (6)**

38:9,18;39:24;40:4;
42:3;43:7
**print (1)**
78:19
**printed (19)**
63:15;78:22;129:6;
133:11,15;140:7,15;
145:16;147:1,25;148:3;
151:12,17;152:12,16,17;
153:24;158:4,7
**printout (1)**
88:11
**privilege (1)**
84:14
**privileged (3)**
84:20;85:4,7
**probably (2)**
70:12;131:14
**problem (1)**
84:8
**proceed (1)**
98:14
**process (2)**
137:3,5
**produce (3)**
28:7,12,15
**produced (1)**
18:23
**Project (2)**
132:3;157:20
**pronounce (1)**
82:12
**property (27)**
4:23;5:12;57:10;58:11;
61:15;70:11;75:14;81:6;
82:17,21;83:1;85:18,23;
86:5,23;87:3,18;93:5,12,
17;94:3,6,10;100:8,9,15,
19
**proposed (1)**
19:22
**prove (1)**
137:2
**provide (5)**
9:14,18;22:9;85:21;
149:5
**provided (5)**
19:2;24:9;81:7;124:18,
23
**providing (2)**
96:22;150:5
**public (1)**
8:1
**pull (1)**
24:8
**purchase (27)**
20:20;29:18;56:25;
57:4,9;58:11;61:8,9,15,
24;62:7,14;63:13;70:10;
75:8,13;83:1;85:15,23;
86:4;87:10,17;93:5;94:6,
10;105:10;135:24
**purchased (7)**

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

93:22,24;94:22;110:7;
112:5;136:3,20
**purchasing (1)**
29:25
**purpose (2)**
92:6;98:9
**purposes (6)**
41:23;62:16;103:19;
105:15;122:20;142:17
**Put (9)**
28:4;35:17;60:14;87:8;
90:18;99:6;105:11;
109:17;123:1

**Q**

**Q041653 (1)**
118:6
**QUICK (2)**
2:1;108:22

**R**

**range (1)**
124:7
**RCX (1)**
2:5
**RDX (1)**
2:5
**reach (1)**
5:23
**read (18)**
10:4,7,14;17:21;47:14;
58:23;68:20,21;88:25;
97:16;136:17;161:6,8,10,
20,22;162:5,7
**Real (29)**
53:13,24;54:2,12,21;
55:14,17;57:4,11,12,13,
20,21;59:17;67:15;75:8;
76:10;77:23;79:17;82:8;
85:15;88:23;89:25;
93:22;94:18;114:17;
134:8;135:16,21
**really (3)**
33:25;97:16;146:4
**realtor (1)**
87:11
**reason (1)**
138:8
**recall (11)**
24:14;72:23;110:18;
133:4;141:19,25;147:8;
150:18,22;159:8,9
**receive (1)**
116:2
**received (1)**
54:1
**recess (2)**
84:9;108:19
**recognize (5)**
50:17;88:18;112:24;
118:3;121:9

**recollection (4)**
69:4;76:12;96:4;
127:16
**reconvene (1)**
160:8
**record (8)**
10:6;17:11,18;18:1;
83:11;84:5;97:13;160:17
**records (20)**
16:8,12,19;17:9,19,24;
18:13,16;26:5,7,20;28:2,
8,13,19;46:11;48:20;
101:11;122:5;125:21
**Recyclers (2)**
117:6,11
**Reed (5)**
117:15;118:4,13,14;
120:12
**REFERENCE (1)**
2:1
**referenced (3)**
124:22;125:8;140:22
**references (2)**
139:24;146:15
**referring (1)**
13:24;95:19
**reflect (1)**
10:7
**refresh (5)**
69:3;76:11,14;96:3;
127:16
**regarding (4)**
7:16;148:24;149:6;
160:20
**register (1)**
155:16
**registration (1)**
155:13
**regular (1)**
49:14
**relate (1)**
160:10
**related (1)**
160:10
**relationship (5)**
125:13,18;126:2;
159:15,23
**relationships (1)**
84:12
**relative (7)**
9:20,25;79:17;129:19;
144:22;160:6;161:3
**Relevancy (1)**
94:21
**relevant (1)**
31:19
**rely (1)**
10:13
**remember (173)**
12:14;15:16,20,21,23,
25;17:3,23;18:7,21;
20:25;21:3;23:16,18,24;
27:23;30:5,25;31:3;32:1,

24;33:2,8,9;35:23;39:4,
14;40:9;46:3,6;48:22;
49:12;50:13;53:20;54:4,
6,9;55:2,4,6,7,20,22,23;
56:2,4,7,9,14;57:24;58:5;
60:8,12;61:13,14;63:6,8,
9;66:2;69:9,15;70:8,20;
71:11,13,14;72:25;73:2,
17;75:3,5,15,17,18,25;
76:15,17,18,22,24;77:1;
79:22,23;80:6;81:15,16;
83:6,8,9;86:12;91:3;
92:19,20,25;95:7;98:24;
102:12,14,16;105:12,16;
108:15,24;110:8,10;
111:20;112:14,21;113:8,
9;114:9,19;118:16,18,21,
24;120:14;121:21;
122:10;123:13,22,24;
124:1;126:23,25;127:20;
128:6,9,14;129:16,18;
131:18,21;132:23;
133:22,25;134:7;136:5,
24;138:11;139:4,6,17,22;
141:1,4;142:3,12,19;
144:15,18,21;146:6,8;
147:4,6,9;148:9,11;
150:20,23;151:22;152:1,
2;153:1,4,6,7;154:3,5,7,8;
155:10
**remembering (1)**
55:24
**reminder (1)**
121:24
**remove (2)**
102:2,10
**Renovation (2)**
132:3;157:19
**rent (6)**
4:22,24;5:16;6:8,9;
135:21
**rental (1)**
96:24
**rented (4)**
98:3,4,7;100:11
**REO (1)**
78:6
**rep (1)**
117:19
**Repair (1)**
78:6
**Repeat (1)**
135:8
**rephrase (1)**
11:25
**report (9)**
12:15;21:4,10;42:15,
18;43:2,3;44:7,13
**reporter (2)**
4:11;58:19
**reporter's (1)**
161:25
**reporting (1)**

148:24
**represent (2)**
7:25;124:17
**representative (7)**
7:12,22;8:8;19:6;
39:23;92:8;117:13
**represented (1)**
160:4
**representing (5)**
7:12;8:22;84:17;
141:11;159:12
**represents (2)**
8:9,14
**request (1)**
69:20
**requested (3)**
58:3;80:23;81:9
**require (1)**
19:21
**required (1)**
149:5
**requirements (1)**
148:24
**residence (7)**
40:1;42:1,4;43:6;
61:11;75:13;128:5
**resident (1)**
141:14;158:18
**Residential (2)**
39:18,22
**residing (1)**
4:19
**resolution (1)**
27:6
**respond (1)**
10:16
**response (1)**
78:5
**responsibility (2)**
46:22,25
**responsible (1)**
65:6
**restrictions (2)**
40:24;41:5
**return (4)**
46:14;47:3;80:17;
121:24
**rid (1)**
110:17
**Rider/Waiver (1)**
87:18
**right (81)**
9:2,9;12:22;15:7;20:5;
21:6;30:18;31:23;34:16;
37:23;38:5,16;40:1,3;
42:13;43:9;49:23;51:16;
52:24;54:19;56:10;
57:14;59:1,12,15,24;
60:15;61:24;63:17,21;
65:1,8,19;66:11;67:5;
68:3;69:20,24;72:16;
77:19;78:18;79:3,19;
80:13,15;88:3,16;90:16;

91:17;92:16;93:4,13;
95:14,22;102:15;104:5;
107:17;109:23;110:13;
111:8,9;113:19;116:5;
119:12;120:20;127:1,11,
19;130:15;137:3,4,8;
138:24;141:6,21;143:8,
10;145:20;147:18;160:3;
161:10
**right- (1)**
59:7
**RILEY (73)**
2:2;4:2,8,12;7:13;8:18;
19:5,14,16;20:9;31:18;
51:4;59:18;61:1;63:15;
64:2,21;65:2;66:14,18;
69:6;74:2;77:15;78:25;
84:18,24;85:2,4,7,8,11;
87:21;91:14;92:7;94:22;
95:24,25;97:15;99:18,19,
19;102:9,22;103:3;
114:22,22;115:6;116:6,
23;119:2,6,14,23;120:5,
22;121:1,5;127:6;132:13;
133:16;134:15;140:16;
142:25;147:2;148:4;
149:22;150:3;151:18;
152:17;153:24;157:22;
158:8;160:11
**R-I-L-E-Y (1)**
4:12
**Riley's (1)**
64:11
**Road (14)**
95:25;99:18,20;114:22,
22;115:6;116:7,23;
126:20;127:14;136:13;
149:14;150:19;154:14
**Robert (1)**
117:18
**Rock (455)**
7:13,22;8:3,8,14,15,22,
23,24;9:10,13,18,19,24;
10:19;11:12;12:2,5,13,
22;13:2,6,14,17;14:1,2,2,
10,14,21;16:13;18:3,25;
19:3,6,13;20:10,16,19,22;
21:2,6,14,15,18,20,22;
22:10,13,21,24;23:14,19;
24:23;25:1,6,25;26:2,8;
28:3,8,13,19;29:1,4,9,12,
15,15,18,25;30:1,9,14,17;
31:2,18,19,20,25;32:3,11,
22;33:11;34:25;35:3,10,
16;36:2,5,11,21;37:3,6,9,
17,19,21,23;38:2,11;39:3,
9,13,16,23;41:9,21;42:9,
11,17,23;43:13,21,23,25;
44:4,14,16,20;45:8;45:1,4,
8,11,14,16,19,23;46:1,4,
8,12,15;47:4,7,25;48:12,
20;49:17;50:2,12;51:5,6,
13;52:3;53:23;54:1,14,

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

17,18,20,21;55:14,17,19;
56:17,21,24;57:4,6;58:3;
59:25;60:3,14;61:1,2,7,
11,23,25;62:2,4,14,18,20,
24;63:3,5,16;64:2,9,18,
22;65:12;66:13,20,23;
68:7;69:6,7,17,22;70:11;
71:3;72:21;73:4,20,21;
74:3,10,17,23;75:6,7,13,
21,24;77:3,18;79:2;81:6,
9;82:19;83:1,3,5;84:17,
19;85:2,4,7,8,14,25;86:7,
16,25;88:15;89:4;91:24;
92:5,8;93:5,11,16,21;
94:11,14,21;95:1,6;96:4,
7,16;97:18,22;98:1,3,11,
13;100:4,8,12,23;101:2,
11,13;102:10,24;103:3,8,
10,12,19,22,23;104:6,9,
20;105:1,6,7,9,15,17;
106:6,10,16,21,24;107:2,
4,5,14;108:3;109:6,8,23;
110:1,6,22;111:4,8,12,17,
22;112:5,12,16;113:2,5,
11,23,24,25;114:2,6,6,13;
117:3,7,14;118:14;119:1,
18,21;120:4,12,21;
121:12,17,23;122:19,24;
123:11,16,21;124:16,20;
125:1,5,13,18,23;126:3,
15,16;127:12,17;128:2,3,
4,8,12,16,20,21;129:12,
20;130:11,19,25;131:7,
13,16,20;132:11,17,21;
133:1,16,24;134:1,5,8,12,
15,25;135:4,6,10,16,24;
136:3,3,12,19,23;137:2,7;
138:1,5,10,18,21,23;
139:3,8,25;140:23;
141:12,16,21;142:1,6,16,
25;143:4,7,8,19;144:2,5,
6,23;145:5;146:7,10;
147:5,11,14;148:10,12,
16,25;149:7,13,20,22;
150:4,8,14,19,25;151:6,
18;152:5,23;153:15,25;
154:4,12,21;155:1,5,12,
20,23;156:13,20;157:21;
158:8,15,21,25;159:4,12,
16,22,22;160:6,10,12,12

**Rock's (25)**
10:10;25:13;31:10;
35:8,17,20;36:10;40:21,
22;41:1,12,14,22;43:9;
65:4;70:18;74:19;96:18;
100:15,20;101:5;103:15;
105:11;123:11;144:16

**role (1)**
36:21

**rule (1)**
20:4

**rules (1)**
19:20

**run (4)**
59:1;95:15;124:7,10

**runs (1)**
44:4

## S

**S-10 (7)**
104:4,16;106:24;
107:18;108:21;110:11;
111:18

**sales (2)**
117:19;121:24

**same (15)**
13:9;32:16;40:19,22;
47:18;74:11;78:2;82:7;
87:2;88:23;95:17;
101:22;120:8;127:3;
130:20

**saw (1)**
108:25

**saying (31)**
12:19;20:14;25:4,6,14;
29:17;31:14;32:8;34:10;
35:6;42:25;44:15;65:15;
78:14;80:5,9;81:4,5;
83:23;86:2,14;89:13;
91:22;92:2;93:8;96:14;
99:9;121:1;137:9;
138:16;149:3

**scheduled (1)**
127:15

**scrap (1)**
35:13

**second (24)**
50:14;59:14;67:17;
68:4;84:6,6;88:16;92:23;
99:25;103:4;129:3;
133:10;136:8;140:3,4,11;
145:13;146:19;147:23;
149:16;151:9;152:8;
153:16;157:25

**secretary (2)**
73:4;74:10

**secure (1)**
62:13

**seem (1)**
85:13

**seems (1)**
120:21

**self (1)**
96:5

**self-storage (1)**
95:5

**sell (1)**
108:5

**seller (2)**
81:5;87:21

**send (21)**
51:19,20,23;52:16,17;
58:1;62:5,12,24;63:5;
65:7;70:5,15,17;71:5;
72:19;75:11;78:3;80:22;

121:22;131:19

**sending (1)**
79:15

**Senior (5)**
4:13;87:21;95:24;
99:19;117:19

**sense (1)**
47:14

**sent (24)**
47:6;48:11,14,21;
49:13,17;55:9;62:23;
69:19;70:1,12;76:6;78:2;
79:5,8;81:11,19,20;
87:12;89:13;99:17;
115:21;122:6,19

**separately (1)**
95:12

**September (3)**
56:23;61:6;121:24

**sequential (1)**
124:8

**sequentially (1)**
124:10

**series (3)**
70:22;71:22;124:12

**service (3)**
65:25;66:5,8

**services (1)**
102:23

**set (1)**
83:11

**Shade (1)**
93:6

**Shady (23)**
56:17,25;58:11;60:2;
61:11;68:18;69:5,10,13;
78:5;79:10,11,17;82:6;
83:2,22;85:15,24;86:5,
24;88:23;93:13;94:10

**share (2)**
24:18;59:22

**Shelly (1)**
149:21

**show (13)**
47:20,21;48:24;52:5,
11,22;63:19;70:22;77:9;
87:14;113:16,18;114:6

**showed (2)**
76:4;77:3

**showing (6)**
69:11,22;70:18;80:20;
81:1;110:23

**shown (1)**
67:14

**shows (1)**
70:2

**sic (1)**
160:19

**side (3)**
67:20;119:10,11

**sign (12)**
20:21;34:4,14;46:11;
72:9,10,15,15;89:4;90:6;

91:23;97:11

**signature (61)**
50:3,15,16;63:16,21,
23;64:6,7,13;67:9,21,22,
23;68:7;72:2,18;73:23;
87:15;88:1,5,5;97:3,8;
127:4,5,7;129:5,9;
133:10,12,12;140:6,8,8,
12;145:15,17,24,25;
146:22,23;147:25;148:1,
7;149:15,17;151:11,13,
14;152:11,13,13;153:9,
10,11,18,19;158:3,5,10;
161:3

**signatures (1)**
63:12

**signed (9)**
5:1;67:19;72:1;83:24;
97:6;125:23;150:1,11,13

**signer (1)**
74:2

**similar (1)**
76:4

**sincerely (2)**
130:16;150:2

**situations (1)**
94:8

**Six (4)**
6:18;7:1;9:4;11:4

**six-month (2)**
7:4;9:7

**skipped (1)**
156:3

**sold (2)**
45:12;110:12

**somebody (26)**
14:10,21;17:7;22:18;
23:6;32:16;37:13,15,22;
38:2;41:13;43:2,11;
52:16;60:10;64:2;66:24;
71:6;72:20;78:21;81:21;
92:14;99:23;105:13;
110:12;162:1

**somehow (1)**
71:8

**someone (8)**
5:24;51:23;72:1;87:24,
25;100:19;133:19;144:17

**Sometimes (3)**
64:21,22;66:12

**Somewhat (1)**
15:8

**Sonoma (1)**
111:21

**sorry (12)**
7:9,18;8:9;26:15;
57:21;58:2;61:19;77:6,
13;84:21;114:20;123:10

**sort (1)**
89:3

**sound (1)**
79:19

**South (4)**

136:13;141:14;142:5;
154:14

**space (3)**
82:13;150:2,3

**speak (1)**
154:24

**speaks (1)**
20:4

**specific (6)**
14:11;40:17;59:2,12;
63:2;118:5

**specifically (2)**
124:9;141:25

**spell (1)**
4:10

**spelling (1)**
161:15

**spent (1)**
93:9

**spoke (3)**
57:25;82:15;83:12

**sporadic (1)**
19:14

**spring (1)**
153:2

**SR (2)**
2:2;4:2

**Stacia (6)**
73:4,5,7;74:9,16;75:19

**stack (3)**
124:6;125:21;128:25

**stacks (1)**
128:24

**stamped (1)**
97:14

**Standard (1)**
118:4

**stapled (1)**
124:15

**start (7)**
12:4;47:22;58:25;
78:16;86:21;95:13,15

**started (2)**
17:22;91:7

**starts (2)**
59:16;133:7

**State (10)**
46:15;97:13,18,23;
121:13,17,22;134:14;
155:13;157:19

**stated (1)**
74:5

**statement (7)**
24:17,21;69:21;70:1,7,
17;130:16

**statements (1)**
42:12

**states (6)**
45:20,23;46:2;80:21;
89:3;90:6

**stating (1)**
92:4

**station (2)**

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

112:15,17
**stationary (1)**
50:24
**stay (1)**
5:14
**staying (2)**
7:15,17
**Stella (1)**
73:24
**step (1)**
79:13
**still (13)**
11:15;23:1;28:25;
29:11,24;66:3;75:21;
76:16;108:3;109:20;
114:25;115:2,5
**stop (2)**
107:19;160:5
**storage (15)**
95:1;96:23,23;98:2,4,
17,20,22;99:4,13;100:6,
11,15;102:3,10
**stored (2)**
100:14,17
**straight (1)**
83:11
**Street (30)**
4:18;9:3;56:17,25;
58:11;60:2;61:12;69:10,
13;82:6;83:2,22;106:14;
116:4;133:9;140:1,22;
141:14;142:6;145:12;
146:7,16,17;147:5,22;
148:10;151:8;156:11;
159:2,4
**strike (1)**
84:25
**structure (3)**
141:18;142:10;159:2
**stuff (5)**
78:9;90:25;91:9
**subject (7)**
78:4;79:9;82:5,17;
83:21;88:23;155:17
**submission (1)**
125:22
**submit (7)**
129:11,12;138:1,9,21;
139:13;148:15
**submitted (2)**
136:25;138:13
**submitting (2)**
135:6;137:24
**substance (1)**
158:24
**summer (2)**
150:10,16
**supplies (1)**
29:19
**support (1)**
35:4
**supposed (6)**
10:10;19:24;44:2,3;

96:20;106:10
**sure (10)**
6:17;10:12,15;38:10;
56:10;84:7,12;124:10;
140:20;141:19
**sworn (1)**
4:4

---

**T**

---

**T111 (5)**
95:25;99:19;114:22;
116:6,23
**talk (9)**
18:4;37:22;51:7;54:11,
16;55:8;84:6;98:10,12
**talked (5)**
54:20,23;80:16;
114:21;146:18
**talking (28)**
37:21;38:23,25;42:2;
50:4,5;52:22,23;59:6;
63:19;70:24;72:4;77:11;
78:7;82:7,8;86:15,16;
94:9;102:4,22;108:21;
111:25;126:10;142:24;
143:1;145:21;160:18
**tax (6)**
46:11,14;47:3;121:24;
155:13,18
**Tear (13)**
14:5,6,11,13,23;15:2,7;
30:16;44:12;142:10,13,
23;143:6
**tearing (2)**
14:18;142:18
**telling (3)**
9:2;33:8;100:20
**tells (5)**
14:6,22;15:1,6;51:13
**term (2)**
36:9;62:17
**termination (1)**
36:8
**testified (1)**
19:11
**testify (5)**
8:7,16;9:25;19:22;45:5
**testifying (1)**
10:11
**testimony (1)**
25:2
**thinking (1)**
18:1
**third (5)**
49:21,22;50:5;63:13;
157:16
**though (3)**
35:16;127:19;141:6
**thought (3)**
52:18;74:6;120:23
**thousand (9)**
38:12;62:5,9,12,24,25;

63:3;68:10;69:12
**Three (4)**
16:6;18:8,11;128:24
**title (12)**
61:4;90:15;109:3,13,
15;110:13,15;119:2,23;
120:6;121:4,6
**titled (3)**
104:18;113:24;114:2
**titles (2)**
112:22;114:12
**today (7)**
10:11;24:1,10,15,21;
160:5;161:9
**together (1)**
57:15
**told (34)**
34:18,19,24;37:4;
40:19;41:13,21;43:8;
50:11;60:14;66:12;67:4;
69:8,9;77:16;79:1,13,22;
87:4;90:5,7,21;91:13;
98:24;101:3,13;106:21,
23;108:24;116:2;132:14;
139:14,16;158:19
**took (2)**
85:11;161:16
**top (12)**
73:21;77:14;78:16,17,
18;87:23;95:23;127:5;
130:13;140:10,13;149:24
**topic (1)**
79:16
**topics (2)**
18:24;19:24
**tore (2)**
18:6;23:14
**torn (6)**
15:4,13;30:8;143:18;
144:2,7
**total (2)**
141:17;159:1
**touch (1)**
160:13
**Tractors (1)**
104:11
**traffic (2)**
76:5;91:21
**transact (3)**
29:14;45:20;73:20
**transacted (1)**
45:17
**transaction (2)**
38:13;88:12
**transcript (2)**
161:9,20
**transferring (1)**
110:13
**tree (8)**
37:12,15;38:3,4,11,23;
39:3,11
**tried (5)**
87:9;93:23;94:5,10,13

**truck (11)**
22:14,20;104:2,3;
106:24;107:2,3,24;
110:25;111:14,24
**Trucks (4)**
104:11,12,13,15
**true (3)**
27:8;36:14;50:8
**trust (1)**
80:19
**trusts (1)**
80:19
**try (13)**
10:14;25:9;57:9;62:6;
63:2;83:4;85:18;86:20,
23;87:2,8;160:4,14
**trying (31)**
14:20;20:2,18;24:5;
35:25;36:13;37:18;40:8;
41:17;43:4;54:8,18;55:5;
66:15;69:7,16;70:10;
78:15;79:14,22;81:6;
83:2;90:22;91:20;93:11;
98:1,18,19;115:15,25;
126:1
**turn (16)**
16:14;17:15;88:8;
146:19;147:22;149:11,
19;151:9;152:8;153:16;
154:9;156:16,25;157:14;
158:14;159:10
**Twenty (1)**
123:23
**two (13)**
8:7;52:19;59:25;60:4;
76:4;89:12,15;94:3,18;
104:17;112:11;114:17;
123:23
**two-page (2)**
67:13;68:3
**type (4)**
41:16;95:17;144:19;
150:15
**typed (3)**
130:16;131:2;161:20
**types (1)**
41:14
**typically (1)**
33:10

---

**U**

---

**U-Haul (6)**
95:2,5;96:5,22;99:5;
115:22
**unable (2)**
94:4,7
**under (3)**
24:21;96:23;119:7,16;
121:4;134:11;158:7
**Underneath (6)**
64:13;72:2;88:2;
133:15;150:3;151:17

**unit (10)**
95:5;98:2,4,20,22;
99:14;100:6,15;102:3,10
**units (1)**
100:11
**unless (3)**
5:12;114:10;162:4
**unprivileged (1)**
160:23
**up (5)**
5:22;21:12;28:1;78:8;
93:16;106:6;108:13;
119:20;120:20;131:2;
161:13,20;162:5
**uploaded (1)**
84:1
**use (33)**
20:19;24:22;25:1,13;
35:8,18;39:16;41:13,22;
51:7,16;62:16,17;66:1,5;
82:20;100:24;101:1;
103:10,21;105:9;107:14;
111:18;114:15,18;
115:11,16;121:24;134:1,
5,22;141:2;142:23
**used (20)**
34:21;35:3;36:10;51:5;
52:1;73:20;77:18;82:18;
97:19;98:1;103:9,18;
109:8;111:8;112:13,16;
115:22;142:17;144:11;
161:21
**uses (1)**
114:13
**using (6)**
36:9;103:2,7;111:22;
134:15;150:15
**usually (1)**
148:20
**utilized (1)**
52:9
**utilizing (3)**
102:19,23;150:9

---

**V**

---

**vehicle (27)**
102:19,22;103:1,7,9,9,
21;104:5;105:5,10,14;
106:6,9,16,20,21;109:3;
110:20,24,25;111:3,10,
11;112:2;114:18;141:2,5
**vehicles (10)**
104:18,22,25;105:17;
110:6;111:18;112:12,23,
25;114:13
**Verizon (2)**
66:6,10
**Virginia (54)**
46:5;56:18,21;57:1,5;
58:12;60:1,3;61:12,16;
75:9,14;79:18;80:21;
81:7;82:9;83:1;85:16,24;

NEARY REPORTING SERVICES, LLC
Phone (937) 402-0081 ****** nearyreportingservices@yahoo.co

COMMODORE BANK v.
GEORGE MICHAEL RILEY, SR.

GEORGE MICHAEL RILEY, SR.
September 20, 2013

86:5,24;93:6,12;114:16,
16;121:14,18,22,23;
124:14,19;126:21;
127:14;128:17;129:14;
133:23;137:25;140:2;
141:15;145:13;147:15;
151:1;152:7;154:11;
155:13,17,18;156:12,14;
157:20;159:3,5,17,25
**Visa (4)**
100:22,23;101:4,25

---

## W

**wagon (2)**
112:15,17
**Wait (3)**
130:6;156:22;157:11
**waive (2)**
161:10;162:8
**Waiver (1)**
88:2
**walked (1)**
106:14
**wallet (9)**
23:25;24:8,12,13,15,
16,17,19;32:18
**wants (8)**
15:3;20:19;29:20;38:2;
48:3;49:5;52:16;73:6
**way (4)**
51:25;72:23;82:13;
97:11
**week (8)**
6:18;10:25;16:1,2;
18:10;29:6;31:4;116:11
**weeks (3)**
6:23;10:21;74:25
**weight (1)**
110:25
**Wells (2)**
81:21;87:20
**West (50)**
46:5;56:17,21,25;57:5;
58:12;60:1,2;61:12,15;
75:8,14;79:18;80:21;
81:7;82:9;83:1;85:15,23;
86:5,24;93:6,12;114:16,
16;121:13,18,22,23;
124:13,18;126:20;
127:14;128:17;129:14;
133:23;137:25;140:2;
141:15;145:13;147:15;
151:1;152:7;154:11;
155:13,16,17;157:20;
159:3,5
**What' (1)**
22:3
**What's (13)**
15:9,11;36:23;45:1;
50:20;86:19;96:9;
103:11;115:13,18;117:6,
9;135:14

**whatsoever (1)**
159:24
**Wheeling (32)**
56:17,21,25;57:5;
58:12;60:1,2;61:12,15;
123:15,21;124:13,18,24;
125:8;126:20;127:14;
129:13,14;133:23;
137:12,25;138:19;140:2;
141:14;145:12;147:15;
152:7;153:2;159:2,5,20
**Whenever (2)**
37:8;105:25
**WHEREUPON (4)**
4:1;84:9;108:19;162:9
**Wherever (2)**
106:2;107:19
**Who's (5)**
12:17;21:13;125:12,
17;156:9
**Whose (7)**
17:4,6,8;50:17;98:20;
103:15;149:9
**wife (7)**
6:6;98:6;99:10;129:25;
130:1;131:5;158:20
**William (1)**
141:16
**without (3)**
90:17;110:12;157:6
**WITNESS (47)**
2:2;7:22;9:14;12:24;
13:3;18:23;19:2;25:18,
22;30:2,5;34:12;36:10;
48:6;49:2,7,24;50:8;
51:10;52:25;59:9;60:19;
68:23;69:1;72:6;73:9;
78:9;82:2;84:16;94:24;
96:11;98:25;99:6;
118:21;130:8;132:9;
137:20;142:21,24;155:9;
157:4,8;161:11,17,22;
162:2,8
**word (1)**
130:16
**work (80)**
15:3;22:12,23;23:14;
29:21;30:13;31:9,16,24;
32:3,10,23;33:11,23;
35:16;38:19;39:15;40:4;
43:7;45:23;46:1,4;51:9;
55:13,16;56:16,20;60:6,
10,13;74:17,23;75:21,24;
78:16;82:23;114:16;
125:7;126:7,14,18,24;
127:17,22;128:4,8,11,13,
17,21;132:17,19,21;
133:1,3,22;140:21;141:3,
6,7,20;142:1,5;146:7,9,
10;147:4,7,10,14;148:9;
149:6;150:18,25;151:22;
153:2;154:3,6;155:1;
159:4

**working (5)**
75:6;103:8;128:15;
131:7;160:22
**works (1)**
137:6
**worth (1)**
45:1
**write (18)**
10:4;20:15;21:2;29:8,
12;33:18,19;34:10,25;
35:19;40:25;41:8;63:3;
66:22;68:21;74:18;
109:9;136:22
**writing (8)**
28:25;29:24;68:17;
120:9;140:19;141:13;
145:17;157:1
**written (4)**
5:25;6:1;41:11;155:5
**wrong (4)**
15:9;44:6;89:1;161:15
**wrote (4)**
29:3;40:20;41:20;
152:20

---

## Y

**Yeager (1)**
141:16
**year (8)**
6:19;11:6;12:9,11;
30:10;75:4,4;111:11
**years (6)**
4:21;10:22;74:25;94:3,
18;150:5
**Yep (1)**
115:23
**York (4)**
140:1,21;141:14;142:6
**Yuge (2)**
82:12;83:23
**Y-U-G-E (1)**
82:13
**yugebi (2)**
81:19;83:21

---

## Z

**Zacks (4)**
71:25;92:4;160:18,21
**Zane (5)**
134:2,13,16,19;135:11

---

## 0

**001 (2)**
95:15;97:14
**004 (2)**
96:22;97:14
**019 (1)**
99:24
**020 (1)**
95:16

**021 (1)**
58:25
**022 (1)**
59:15
**023 (1)**
61:4
**024 (1)**
63:11
**025 (2)**
63:10,13
**036 (2)**
67:8,14
**037 (3)**
67:8,9,17
**042 (1)**
67:25
**043 (1)**
67:25
**049 (1)**
71:17
**050 (1)**
71:17
**077 (3)**
77:7,9,14

---

## 1

**1 (3)**
9:12,22;10:1
**10 (4)**
2:12;10:1;117:21;
118:2
**101 (5)**
134:1,13,15,19;135:10
**103 (2)**
89:9,23
**104 (1)**
89:9
**105 (2)**
89:10;92:3
**106 (2)**
88:9,11
**109 (1)**
141:14
**10th (2)**
82:5;151:6
**11 (5)**
2:13;10:1;114:20;
124:2,7
**113 (3)**
140:1,21;142:5
**1133 (2)**
59:25;129:15
**117 (1)**
2:12
**11th (4)**
54:3;77:24;79:7;80:2
**12 (1)**
10:1
**124 (1)**
2:13
**127 (1)**
59:1

**128 (1)**
124:7
**12th (1)**
100:1
**13 (2)**
9:23;10:1
**135 (8)**
26:12;28:23;111:7;
121:25;125:24;130:21;
149:23;158:22
**136 (2)**
125:22;126:9
**13th (1)**
152:5
**14 (1)**
124:14
**140 (1)**
127:2
**15 (1)**
108:18
**15th (1)**
156:8
**170 (2)**
128:23,25
**18286 (1)**
68:8
**185 (2)**
156:3,4
**186 (1)**
158:2
**187 (3)**
156:17,25;157:14
**189 (1)**
158:14
**198 (1)**
159:10
**1987 (1)**
113:22
**1994 (1)**
111:21
**1997 (1)**
112:15
**1998 (1)**
113:4
**19th (1)**
141:15
**1st (3)**
88:22;90:4;91:6

---

## 2

**2 (2)**
10:2;135:2
**2000 (2)**
113:10,12
**2001 (1)**
112:4
**2003 (5)**
110:20,24;111:11,13;
113:1
**2011 (2)**
45:9,17
**2012 (37)**

**COMMODORE BANK v.**
**GEORGE MICHAEL RILEY, SR.**

**GEORGE MICHAEL RILEY, SR.**
September 20, 2013

54:3;56:23;61:6;70:19;
72:1;77:24;79:7;82:5;
85:23;87:20;88:4,22;
89:12;100:1,24;102:8,20;
118:5,15;121:25;127:15;
128:12,16;129:12;130:1;
131:1,8;132:25;141:15;
150:10,16;151:6;152:5;
153:3;154:18;156:8;
158:18
**2013 (3)**
  28:20;30:3,9
**208 (3)**
  130:4,9,11
**212 (1)**
  131:25
**215 (1)**
  133:7
**218 (1)**
  134:11
**230 (1)**
  136:6
**232 (1)**
  139:23
**24 (1)**
  80:17
**240 (1)**
  141:9
**242 (1)**
  145:2
**246 (1)**
  145:7
**24th (1)**
  118:5
**25th (1)**
  61:6
**26003 (1)**
  60:2
**2718 (3)**
  145:12;146:7,17
**2820 (2)**
  146:16;147:5
**283 (1)**
  146:15
**284 (1)**
  146:20
**294 (1)**
  147:21
**295 (1)**
  147:23
**298 (1)**
  130:8

**3**

**3 (4)**
  2:3;10:1;47:22,23
**3,850 (1)**
  111:1
**30 (1)**
  126:19
**306 (1)**
  149:11

**310 (1)**
  149:19
**31st (1)**
  158:18
**322 (1)**
  151:5
**323 (1)**
  151:10
**33 (2)**
  136:13;154:14
**34 (3)**
  156:8,10;159:4
**342 (1)**
  152:4
**343 (1)**
  152:10
**34-37 (1)**
  159:2
**345 (2)**
  153:8,10
**349 (1)**
  153:13
**350 (1)**
  153:16
**354 (1)**
  154:9
**36 (1)**
  67:10
**361 (2)**
  124:8;127:13
**361/363 (1)**
  126:20
**363 (1)**
  127:13
**37 (1)**
  67:11
**3733 (1)**
  151:8
**37th (2)**
  156:10;159:4
**3838 (2)**
  133:8,23
**3rd (2)**
  72:1;89:11

**4**

**4 (3)**
  2:6;10:1;96:22
**42 (1)**
  68:1
**43 (1)**
  68:1
**43018 (2)**
  122:1;149:23
**43213 (2)**
  136:14;154:15
**437 (2)**
  149:14;150:18
**44 (2)**
  70:23,25
**45 (1)**
  70:25

**46 (1)**
  70:25
**47 (1)**
  70:25
**48 (2)**
  70:23,25
**49 (1)**
  71:18

**5**

**5 (2)**
  10:2;160:5
**5:00 (1)**
  160:4
**5:01 (1)**
  162:10
**50 (25)**
  56:17,25;58:11;60:2;
  61:11;68:18;69:5,10,13;
  71:18;78:5;79:9,10,17;
  82:6;83:2,21;85:15,24;
  86:5,24;88:23;93:5,12;
  94:10
**51 (1)**
  71:19
**513 (2)**
  147:22;148:10
**52 (1)**
  71:22
**58 (1)**
  2:10
**594 (1)**
  4:18
**5th (1)**
  87:20

**6**

**6 (3)**
  10:2;48:24;49:21
**68 (2)**
  153:14;154:3
**6th (1)**
  88:3

**7**

**7 (3)**
  9:15;10:2;52:6
**740232-5633 (2)**
  132:14;158:12
**75 (1)**
  150:5
**78 (1)**
  81:17
**79 (1)**
  83:17

**8**

**8 (5)**
  2:10;10:1;58:16,20,24

**8/14/63 (1)**
  4:16
**8/24/12 (1)**
  67:21
**8531 (1)**
  111:1

**9**

**9 (4)**
  2:11;10:1;95:8;97:15
**94 (1)**
  112:2
**95 (1)**
  2:11
**96 (3)**
  87:14,16,17