# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

**This Operating Agreement** is entered into on and effective as of the 2nd day of May, 2011, by and between The Prometheus Irrevocable Trust and The Ethon Irrevocable Trust (collectively, the "Members" or individually the "Member"), and **Ohio Rock, Ltd.**, an Ohio limited liability company (the "Company").

## RECITALS

In consideration of the mutual covenants of the parties hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## SECTION 1
## Formation Of Limited Liability Company

1.1   **Filing.**   On the 2nd day of May, 2011, the current Members executed and filed Articles of Organization (the "Articles") with the Ohio Secretary of State, thereby forming a limited liability company (the "Company") under the provisions of Ohio Limited Liability Company Act set forth in Chapter 1705 of the Ohio Revised Code (the "Act") and, except as herein otherwise expressly provided, the rights and liabilities of the Members shall be as provided in that Act, as amended from time to time.

1.2   **Agreement to Maintain Status.**   The Members shall take such steps as are necessary to (a) allow the Company to continue legally to conduct business, and (b) maintain its status as a limited liability company formed under the laws of the State of Ohio and its qualification to conduct business in any jurisdiction where the Company does business and is required to be qualified.

## SECTION 2
## NAME

The business of the Company shall be conducted under the name **Ohio Rock, Ltd.**, or such other names as the Members shall hereafter designate.

## SECTION 3
## DEFINITIONS

As used in this Agreement, the following terms shall have the meanings indicated.

3.1   "Agreement" means this Operating Agreement, as amended, modified or supplemented from time to time.

3.2   "Capital Contribution" means the amount of cash or the fair market value of (a) any property that a Member has contributed to the Company, or (b) services rendered to the Company by a Member in exchange for his or her Membership Interests. In addition, the Capital Contribution of a Member may include a promissory note or any other binding obligation to contribute cash, or property or to perform services; provided however that such binding obligation must be set forth in writing and signed by the Member.

PLAINTIFF'S
EXHIBIT
NO. 3
PENGAD 800-631-6989

GMR 056

# Ohio Rock Industries, Ltd.
## A Ohio Limited Liability Company

3.3    "Cash Available for Distribution" means and includes all funds received by the Company from (a) its operations, including interest earned on such funds, (b) borrowing or the refinancing of any indebtedness of the Company; and/or (c) the sale of any of the Company's assets (but excluding sales made to liquidate Company Property upon dissolution), and determined by the Members to be available for distribution after paying expenses, making such prepayments of indebtedness of the Company, and providing reserves for such anticipated expenses as the Members reasonably determines are necessary for the efficient and appropriate operation of the Company.

3.4    "Code" means the Internal Revenue Code of 1986, as amended. All references to particular sections of the Code shall be deemed to include reference to corresponding provisions of subsequent federal tax law.

3.5    "Company" means the limited liability company formed pursuant to the Articles of Organization of the Company, as said company may from time to time be constituted.

3.6    "Company Property" means all real and personal property acquired by the Company and shall include both tangible and intangible property.

3.7    "Economic Interest" shall mean a Member's, or an owner's, share of the Company's Profits and Losses and Cash Available For Distribution pursuant to this Agreement and the Act, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members.

3.8    "Economic Interest Owner" shall mean the owner of an Economic Interest who may or may not also be a Member.

3.9    "Fiscal Year" means the fiscal year of the Company, and its taxable year for Federal income tax purposes, which shall be the calendar year.

3.10    "Members" mean effective as of the date first above written, those persons listed on Exhibit A, attached hereto and made a part hereof, sometimes referred to individually as "Member."

3.11    "Membership Interests" means the membership interests in the Company. There shall be One Hundred (100) Membership Interests authorized to be issued by the Company.

3.12    "Person" shall mean any individual or entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person where the context so permits.

3.13    "Enhanced Facsimile" shall mean any facsimile service used by the Company that provides a date and time confirmation by electronic return receipt for facsimile messages.

3.14    "Death of a Member" shall mean for an individual owner a termination of the owner's life. For an owner which is a corporation, Death shall mean the dissolution of the corporation or the termination of business operations for a period of more than thirty days. For an owner which is a business association, such as a not-for-profit corporation, or 501(C)(3), or similar not-for-profit association, Death of a Member shall mean the revocation, termination or dissolution of said association. For an owner which is a limited liability company, the Death of a Member shall mean the expiration of the limited liability company according to its Operating Agreement or

GMR  057

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

applicable law. For an Owner which is a limited liability partnership, shall mean the termination of the limited liability partnership by its agent or applicable law. For a partnership, Death of a Member shall mean the dissolution or termination of the said partnership unless the partners elect to continue the Partnership upon the death of the individual partner; if the partner of the partnership is a corporation, limited liability company or other business association then the previous Death of a Member definition shall apply.

3.15    "Domestic Relations" means:

(a) a separation of marital assets where a claim is made against a Member's interest or stake in the company;

(b) dissolution of a marriage of an individual Member;

(c) a division of marital property for any purpose, whether it be prenuptial, post-nuptial or as part of an individual Member's estate planning.

## SECTION 4
## NATURE OF BUSINESS

The purposes for which the Company is formed and the powers which it may exercise, all being in the furtherance of, and not in limitation of, the general powers conferred upon limited liability companies by the State of Ohio, are as follows:

(a) To accomplish any lawful purpose whatever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company or Company Property;

(b) To borrow funds, to invest in investment grade securities and to purchase, own, sell, convey, transfer, exchange, lease, mortgage, pledge, improve, finance, operate, manage and otherwise deal with, in any manner whatever, directly or indirectly, real and personal property and any interest therein, and as security for the repayment thereof, grant mortgages and/or security interests in Company Property;

(c) To do any and all things necessary and/or incidental to the accomplishment of the purposes hereinbefore set forth or necessary and/or incidental to the protection and benefit of the Company, and, without limiting the foregoing, to receive and/or purchase from lessees, borrowers, contractors or others, contracts, promissory notes, mortgages, security agreements and guaranties, and to make, enter into, perform and carry out any and all arrangements, contracts and agreements of every kind relating to the foregoing or in furtherance of the purposes hereinabove mentioned.

## SECTION 5

GMR  058

# Ohio Rock Industries, Ltd.
*A Ohio Limited Liability Company*

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are set forth in Exhibit A.

## SECTION 6
## TERM

The term of the Company shall commence on the date hereof and shall be perpetual, unless sooner terminated as hereinafter provided.

## SECTION 7
## PRINCIPAL PLACE OF BUSINESS

The principal place of business of the Company shall be City of Columbus, Franklin County, Ohio, United States of America, or such other place or places as the Members may designate, either within or without the State of Ohio.

## SECTION 8
## DESIGNATION OF MEMBERS AND THEIR CAPITAL CONTRIBUTIONS

8.1    **Designation of Members.**  The Members of the Company shall be those persons named herein and such other persons who may hereafter be admitted to the Company as Members. Exhibit A attached to this Agreement and made a part hereof sets forth the name and address of each Member as of the date of this Agreement and the Capital Contribution, if any, to be made by each Member to the Company, and the number of Membership Interests to be issued to, and owned by, each Member in exchange for his or her Capital Contribution. The amount of the Capital Contribution to be made with respect to the other authorized Membership Interests shall be such amount as may from time to time be determined by the vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote.

8.2    **Capital Contributions.**  No interest shall be paid on the Capital Contributions of any Member. In addition, no Member shall be obligated to make additional capital contributions to the Company, but under certain circumstances a Member may (but shall not be obligated to) lend the Company additional funds. Any funds so lent shall be repaid with reasonable interest and prior to any distributions to the Members as set forth in *Section 9* of this Agreement.  If the Company accepts a binding obligation as a capital contribution hereunder of a Member, and any such Member fails to perform any such obligation, even if unable to do so due to the death, disability, or other reason, then, at the option of the Company, the Member is obligated to contribute cash equal to the that portion of the agreed value of such binding obligation as set forth or as amended on SCHEDULE A hereof which such Member has failed to make. This right of the Company is in addition to and not in lieu of any other rights, including but not limited to, the right to specific performance, that the Company may have against the Member under this Agreement or applicable law.

## SECTION 9

GMR  059

# Ohio Rock Industries, Ltd.
*A Ohio Limited Liability Company*

## DISTRIBUTIONS

9.1 **Cash Available for Distribution.** Any Cash Available for Distribution shall be distributed to the Members at such times as determined by the Members.

9.2 **Dissolution.** Upon the occurrence of a Dissolution Event (as defined in *Section 18.1* hereof), the Dissolution Member, as defined below, shall liquidate Company Property and apply and distribute the proceeds thereof as follows:

(a) The proceeds shall first be applied to the payment of the liabilities of the Company (including the repayment of any loans or advances made by Members to the Company) and the expenses of liquidation. The Dissolution Member may retain such amounts as it deems reasonably necessary as a reserve for any contingent liabilities or obligations of the Company. A reasonable time shall be allowed for the orderly liquidation of Company Property and the discharge of liabilities to creditors so as to enable the Dissolution Member to minimize the normal losses attendant upon a liquidation.

(b) Any or all proceeds remaining after paying the liabilities referred to in subparagraph (a) above shall be distributed to the Members in accordance with their Capital Accounts, after giving effect to all contributions, distributions and allocations for all periods.

9.3 **Record Date.** Any distributions to be made by the Company (whether from Cash Available for Distribution or by reason of the liquidation of the Company) will be distributed to those Members who are the owners of record of Membership Interests on the date each such distribution is made.

9.4 **No Withdrawals.** No Member shall be entitled to make withdrawals from his or her individual account except to the extent of distributions made under this *Section 9*.

## SECTION 10

## ALLOCATIONS OF PROFITS AND LOSSES

At the close of the Fiscal Year of the Company, the Members shall allocate the profits of the Company, if any, amongst the Members, provided however, if the Members allocate profits of the Company in any manner other than pro-rata according to the ownership of the Membership Interests, the Members shall be required to cause to be distributed in cash to each Member the sum of money allocated to each Member within thirty (30) days following the close of the respective Fiscal Year. In the event the Company's operation results in a loss for any Fiscal Year, the Members shall allocate such losses pro-rata to the Members in accordance with the ownership of Membership Interests.

## SECTION 11

GMR 060

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## BOOKS AND RECORDS

11.1    **Record-keeping Requirements.**  Full and complete books and records of the Company shall be kept and maintained at all times for the Company at its offices or, subject to the provisions of the Act, at such other place or places as the Company may from time to time determine. The Company's books and records shall be kept on the cash basis, unless a different accounting method is permitted under applicable law and the Members elect to employ such method.

11.2    **Obligation to Keep Specific Records.**  In furtherance and not in limitation of the foregoing, the Company shall keep, at its principal office, all of the following:

(a) a current list of the full names of each Member, in alphabetical order with their last known business and residence addresses;

(b) a copy of the Articles of Organization, all amendments thereto, and executed copies of any powers of attorney pursuant to which the Articles or the amendments have been executed;

(c) a copy of this Agreement, including all amendments thereto, and executed copies of any written powers of attorney pursuant to which this Agreement and the amendments have been executed;

(d) copies of any federal, state and local income tax returns and reports of the Company for the three most recent years; and

(e) copies of any financial statements of the Company for the three most recent years.

11.3    **Right to Examine Records.**  Any Member of the Company, upon written demand stating the specific purpose therefor, shall have the right to examine, in person or by agent or attorney, at any reasonable time specified by Company as hereinafter provided, and for any purpose reasonably related to the ownership of such Member's Membership Interests in the Company, any of the following:

(a) the items set forth in *Sections 11.2 (a), (b), (c), (d)* and *(e)* hereof;

(b) true and full information regarding the status of the business and the financial condition of the Company;

(c) true and full information regarding the date on which each Member became a member and the amount of cash, and a description and statement of the agreed value of any other property or services that have been contributed by each Member and that each Member has agreed to contribute in the future; and

(d) other information regarding the affairs of the Company that is just and reasonable.

GMR  061

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

Upon receipt of a proper written demand hereunder, the Company shall specify in reasonable time (during normal business hours on a date not to exceed thirty days from the date of the receipt of such demand) and place for such examination. In lieu of the examination of such records, the Company may, at such Member's expense, provide copies of the requested records to such Member.

11.4    **Tax Information.**  Within ninety (90) days after the end of each Fiscal Year, the Company shall transmit to all Members:

(a)  The financial statements of the Company for such Fiscal Year prepared by the Company's accountants in conformity with the method of accounting utilized in preparation of the Company's Federal income tax returns.

(b)  All information necessary to permit the Members to prepare all federal income tax returns that they may be required to file.

## SECTION 12
## COMPANY ASSETS

12.1    **Investments of Cash.**  The cash of the Company shall be deposited in such bank account or accounts, or invested in such interest-bearing or non-interest bearing investments, as shall be designated by the Members. All withdrawals from any such bank accounts shall be made by the authorized agent or agents of the Company. Company Property shall be separately identifiable from and not co-mingled with the assets of any other Person.

12.2    **Title to Real Estate.**  Title to any real estate owned by the Company (or to be acquired by the Company) or in which the Company has an interest may be held in the name of the Company.

## SECTION 13
## MANAGEMENT

13.1    **Member Managed.**  The management, business and affairs of the Company is to be managed by its Members. Each Member shall have the authority to direct, manage and control the business of the Company to the best of his or her ability. Except for situations in which the approval of all of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, each Member shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.

13.2    **Authority of a Member.**  Without limiting the generality of *Section 14.1*, each Member shall have power and authority, on behalf of the Company:

(a)  To acquire property from any Person as the Member may determine. The fact that a Member is directly or indirectly affiliated or connected with any such Person shall not prohibit the Member from dealing with that Person;

---

GMR  062

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

(b) To borrow money for the Company from banks, other lending institutions, a Member, or affiliates of a Member, on such terms as the Member deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in Company Property to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by a Member, or to the extent permitted under the Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by a Member;

(c) To purchase liability and other insurance to protect the Company's property and business;

(d) To hold and own any Company Property in the name of the Company;

(e) To invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments, and to make loans secured or unsecured;

(f) Upon the affirmative vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote, to sell or otherwise dispose of all or substantially all of the Company Property as part of a single transaction or plan so long as such disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound, provided, however, that the affirmative vote of the Members shall not be required with respect to any sale or disposition of Company Property in the ordinary course of the Company's business;

(g) To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments; bills of sale; leases; partnership agreements, operating agreements of other limited liability companies; and any other instruments or documents necessary, in the opinion of the Member, to the business of the Company;

(h) To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(i) To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Member may approve; and

(j) Upon the affirmative vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote, to authorize and approve the issuance of additional Membership Interests upon such terms and for such consideration as the Member may from time to time determine;

GMR 063

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

(k) Subject to the consent of the holders of a majority of the Membership Interests pursuant to Section 16, admit to the Company additional Members in substitution of Members disposing of their Membership Interests; and

(l) To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

Unless authorized to do so by this Agreement or a Member, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable peculiarly for any purpose.

13.3    **Right to Rely on Opinions and Reports.**  In performing his or her duties or exercising his or her authority, a Member is entitled to rely on information, opinions, reports, or statements, including, but not limited to, financial statements and other financial data, that are prepared or presented by the following persons:

(a) one or more Members, officers or employees of the Company who the Member reasonably believes are reliable and competent in the matters prepared or presented; and

(b) counsel, public accountants, or other persons as to matters that the Member reasonably believes are within the person's professional or expert competence.

13.4    **Members Duties to the Company.**  A Member shall not be required to manage the Company as his/her sole and exclusive function and he/she (and any Member) may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of a Member or to the income or proceeds derived therefrom.  No Member shall incur any liability to the Company or to any of the Members as a result of engaging in any other business or venture.

This non-exclusivity provision can be superceded by agreement between a Member and the Company by way of employment agreement or other such instrument that specifies compliance with the Business Judgment Rule in such areas that include but are not limited to duties of loyalty, non-competition, non-disclosure, disclosures of conflicts of interest or lack thereof, and other such commitments and obligations entered into from time to time between the Company and Member.

13.5    **Bank Accounts.**  A Member may from time to time open bank accounts in the name of the Company, and the Member shall be the sole signatory thereon, unless the Member delegates otherwise.

13.6    **Indemnity of the Member, Employees and other Agents.**  The Company shall indemnify a Member and make advances for expenses to the maximum extent permitted under the Ohio Revised Code. The Company shall indemnify its employees and other agents, other than the Member to the fullest extent permitted by law, provided that such indemnification in any given situation is approved by the Members.

13.7    **Right to Rely on the Member(s).**  Any Person dealing with the Company may rely (without duty of further inquiry) upon a certificate signed by any Member as to:

GMR  064

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

(a) The identity of any Member;

(b) The existence or nonexistence of any fact or facts which constitute a condition precedent to acts by any Member or which are in any other manner germane to the affairs of the Company;

(c) The Persons who are authorized to execute and deliver any instrument or document of the Company; or

(d) Any act or failure to act by the Company or any other matters whatsoever involving the Company or any Member.

13.8    **Restrictions on Authority of an Individual Member.**    An Individual Member shall not have the authority to, and covenants and agrees that he shall not, do any of the following acts without the prior approval of the favorable vote of the Members holding fifty-one percent of all of the outstanding Membership Interest eligible to vote:

(a) Cause or permit the Company to engage in any activity that is not consistent with the purposes of the Company as set forth in Section 4 hereof;

(b) Knowingly do any act in contravention of this Operating Agreement;

(c) Knowingly do any act which would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Operating Agreement;

(d) Confess a judgment against the Company in any amount;

(e) Possess property, or assign rights in specific property, for other than a Company purpose;

(f) Knowingly perform any act that would cause the Company to conduct business in a state which has neither connected legislation which permits limited liability companies to organize in such state nor permits the Company to register to do business in such state as a foreign limited liability company;

(g) Cause the Company to voluntarily take any action that would cause a bankruptcy of the Company;

(h) Cause the Company to acquire any equity or debt securities of any Member, or otherwise make loans to any Member;

(i) Cause a significant change in the nature of the Company's business;

(j) Sell or otherwise dispose of all or substantially all of the Company's assets other than in the ordinary course of the Company's business, except for a liquidating sale in connection with the dissolution of the Company.

GMR  065

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## SECTION 14
## RIGHTS AND OBLIGATIONS OF MEMBERS

14.1    No Personal Liability.    A Member shall not be personally liable for any debts, liabilities or obligations of the Company, whether to the Company, any Member or to the creditors of the Company, beyond the amount contributed by such Member to the capital of the Company, such Member's share of the accumulated but undistributed profits of the Company, if any, and the amount of any distribution (including the return of any capital contribution) made to such Member required to be returned to the Company pursuant to the Act.

14.2    Priority and Return of Capital.    Except as may be expressly provided in *Section 9* and/or *Section 10*, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.

14.3    Liability of a Member to the Company.    A Member who fails to fulfill a binding obligation to the Company that had constituted such Member's Capital Contribution shall be liable to the Company in accordance with *Section 8.2* hereof. In addition, a member who knowingly receives any distribution or payment made contrary to the Articles of Organization or this Agreement of the Company is liable to the Company for the amount received by him that is in excess of the amount that could have been paid or distributed without a violation of the Articles or this Agreement, in accordance with Ohio Revised Statute Section 86.391.

14.4    Agreement Among Members.    Notwithstanding anything to the contrary contained herein, each Member's rights under this Agreement shall be subject to the restrictions set forth in certain Agreements Among Members that may from time to time be entered into between the Company and each of the Members.

## SECTION 15
## MEETINGS OF MEMBERS

15.1    Meetings of Members.    Meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any Member or Members holding at least twenty-five percent (25%) of the Membership Interests eligible to vote. Meetings need not be held annually. If Members holding at least twenty-five percent (25%) of the Membership Interests eligible to vote call for a meeting, they must notify all the Members of their desire and purpose for said meeting, the meeting place and designate the date and time of the meeting which shall be set within fourteen days following receipt of the request.

15.2    Place of Meetings.    The Member or Members requesting the meeting may designate any place within the county of Franklin for any meeting of the Members. If no designation is made, the place of the meeting shall be deemed to be the principal executive office of the Company in the State of Ohio.

15.3    Notice of Meetings.    Except as provided in Section 15.4, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than three (3) nor more than five (5) days before the date of the meeting, either

GMR  066

# Ohio Rock Industries, Ltd.

## *A Ohio Limited Liability Company*

personally or by mail, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at his or her address as it appears on the books of the Company, with postage thereon prepaid. If sent by facsimile, such notice shall be deemed to be delivered one calendar day after transmission to the Member's facsimile telephone number as said number appears on the books of the Company.

15.4    **Meeting of all Members.** If all of the Members shall meet at any time and place and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting, lawful action may be taken.

15.5    **Record Date.** For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

15.6    **Quorum.** Members holding at least fifty (50) percent of all outstanding Membership Interests eligible to vote, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Membership Interests so represented may adjourn the meeting from time to time for a period not to exceed 30 days without further notice. However, if the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of outstanding Membership Interests whose absence would cause there to be less than a quorum.

15.7    **Manner of Acting; Voting by the Members.**

(a) If a quorum is present, Members should strive to achieve consensus of opinion, especially on important issues. However, for purposes of ratifying decisions made, the affirmative vote of Members holding a majority of the outstanding Membership Interests eligible to vote shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, by the Articles of Organization, or by this Agreement.

(b) Unless otherwise provided in this Agreement, each Member shall be entitled to one vote for each Membership Interest owned by a Member.

15.8    **Proxies.** At all meetings of Members a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Company repsresentative, before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

GMR 067

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

15.9    Action by Members Without a Meeting.  Action required or permitted to be taken at a meeting of Members eligible to vote may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member whose vote or consent is necessary to take such action. Action taken under this Section is effective when all such Members have signed the consent, unless the consent specifies a different effective date. The record date for determining Members entitled to take action without a meeting shall be the date the first Member signs a written consent.

15.10    Waiver of Notice.  When any notice is required to be given to any Member, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

## SECTION 16
## TRANSFERABILITY OF MEMBERSHIP INTERESTS

Except as otherwise specifically provided in this Agreement, no Member shall sell, assign, transfer, pledge, or encumber his or her Membership Interest during his or her lifetime without the prior written consent of all of the Members.

## SECTION 17
## ADDITIONAL MEMBERS

From the date of the formation of the Company, any Person or entity acceptable to the holders of a majority of the outstanding Membership Interests many become a Member in the Company either by the issuance by the Company of Membership Interests for such consideration as shall be determined, or as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement. No new Members shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company.

## SECTION 18
## DISSOLUTION OF THE COMPANY

18.1    Dissolution Events.  The Company shall be dissolved upon the occurrence of any of the following events ("Dissolution Events"):

(a)  The dissolution of the Company by court decree;

(b)  Upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of a Member, or occurrence of any other event which terminates the continued membership of a Member in the Company (a "Withdrawal Event"), unless the business of the Company is continued with the affirmative vote of Members holding at least fifty (50) percent of all the outstanding Membership Interests eligible to vote within 90 days after the Withdrawal Event and there is at least one remaining Member;

GMR  068

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

(c) The dissolution of the Company as a result of the decision by the Members owning two-thirds (2/3) of the Membership Interests eligible to vote; or

(d) Upon the occurrence of the expiration date of the term of the Company, if any, as provided in Section 6 of this Agreement.

18.2   **Death or Incompetency.**   Without limiting the requirements of *Section 16*, if a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his or her person or property, the Member's executor, administrator, guardian, conservator, or other legal representative ("Successor") may exercise all of the Member's rights for the purpose of settling his or her estate or administering his or her property, provided, however, that for purposes of *Section 16*, *Section 17* and *Section 18.1(b)*, the Successor shall not be considered a Member and shall have no right to vote, approve or consent to any matter pursuant to such provisions.

18.3   **Voluntary Withdrawal.**   Except as expressly permitted in this Agreement, a Member shall not take any action that directly causes a Withdrawal Event. Unless otherwise approved by Members owning fifty-one percent of the Membership Interests eligible to vote, a Member who resigns (a "Resigning Member") or whose Membership Interest is otherwise terminated by virtue of a Withdrawal Event, regardless of whether such Withdrawal Event was the result of a voluntary act by such Resigning Member, shall be entitled to receive distributions only through the date of resignation or the date of the Withdrawal Event to which such Resigning Member would have been entitled had such Resigning Member remained a Member (and only at such times as such distribution would have been made had such Resigning Member remained a Member). Except as otherwise expressly provided herein, a Resigning Member shall become an Economic Interest Owner. Damages for breach of this *Section 18.3* shall be limited to monetary damages only (and not specific performance) and recoverable only by offset against distributions by the Company to which the Resigning Member would otherwise be entitled.

18.4   **No Recourse.**   Each Member shall look solely to Company Property for all distributions with respect to the Company and for the return of his or her Capital Contribution and shall have no recourse therefor against any other Member. The Members shall not have any right to demand or receive property other than cash upon dissolution and termination of the Company or to demand the return of their Capital Contributions to the Company prior to dissolution and termination of the Company.

18.5   **Winding Up.**   Upon the occurrence of a Dissolution Event, the Members will elect an individual Member (the "Dissolution Member") to proceed with the winding up of the affairs of the Company, and Company Property shall be applied and distributed in accordance with the provisions of *Section 9.2* of this Agreement. If the Dissolution Member, in his or her sole discretion, so determines, a pro rata portion of the distributions that would otherwise be made to the Members pursuant to said *Section 9.2* may be:

(a) distributed to a trust established for the benefit of the Members for the purposes of liquidating Company Property, collecting amounts owed to the Company, and paying any contingent or unforeseen liabilities or obligations of the Company or of the Members arising out of or in connection with the Company. The assets of any such trust shall be distributed to the Members from time to time, in the same

GMR  069

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

proportions as the amount distributed to such trust by the Company would otherwise have been distributed to the Members pursuant to this Agreement; or

(b) withheld to provide a reasonable reserve for the Company's liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Company, provided that such withheld amounts shall be distributed to the Members as soon as practicable.

18.6    No Effect from Technical Liquidation.   Notwithstanding any other provision of this Agreement, in the event the Company is liquidated within the meaning of U.S. Treas. Regulations Section 1.704-1(b)(2)(ii)(g) but no Dissolution Event has occurred, the Company's property shall not be liquidated, the Company's liabilities shall not be paid or discharged, and the Company's affairs shall not be wound up. Instead, the Company shall be deemed to have distributed Company Property in kind to the Members, who shall be deemed to have assumed and taken subject to all of the Company's liabilities, all in accordance with their respective Capital Accounts. Immediately thereafter, the Members shall be deemed to have recontributed the Company's property in kind to the Company, which shall be deemed to have assumed and taken subject to all such liabilities.

18.7    Statement Furnished.   Following the winding up of the affairs of the Company, each of the Members shall be furnished with a statement which shall set forth the assets and liabilities of the Company as of the date of the complete liquidation. Upon compliance by the Dissolution Member with the foregoing, the Members shall cease to be such, and the Dissolution Member, or the Company, shall execute and cause to be filed a certificate of dissolution of the Company and any and all other documents necessary with respect to termination and dissolution.

## SECTION 19
## EMPLOYMENT OF MEMBERS

Any Members who provides services to the Company shall be an employee-at-will, subject to immediate discharge with or without cause or notice, unless the Member has entered into a separate written employment agreement by and between such Member and the Company, or such terms and conditions which normally are included in an employment agreement have been set forth below in this Agreement or any amendment or addendum hereto. No Member, who is an individual, shall be considered an employee of the Company by virtue of owning one or more Membership Interests.

## SECTION 20
## NOTICES

All notices and demands required or permitted under this Agreement shall be in writing and may be sent by U.S. mail, first class, postage prepaid, overnight air courier, personal delivery, or electronic enhanced facsimile with receipt notification to the Members at their addresses as shown from time to time on the records of the Company. Any Member may specify a different address by notifying the other Members in writing of such different address. Such notices shall be deemed given three (3) days after mailing, the day after transmission by enhanced facsimile, the day after deposit with an overnight courier or when delivered in person, as the case may be.

GMR 070

## Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

### SECTION 21
### AMENDMENT OF OPERATING AGREEMENT

21.1    Clarification Amendments.    This Agreement may be amended by a Member without the approval of all of the Members if such amendment is solely for the purpose of clarification and does not change the substance hereof and the Company has obtained the opinion of its counsel to that effect.

21.2    Amendments Admitting Members.    This Agreement may further be amended by a Member without the approval of all of the Members if such amendment is for the purpose of admitting or substituting Members in accordance with this Agreement.

21.3    Amendments to Satisfy Changes in Law.    This Agreement may further be amended by a Member without the approval of all of the Members if such amendment is, in the opinion of counsel for the Company, necessary or appropriate to satisfy requirements of the Code or the Regulations with respect to partnerships or of any federal or state securities laws or regulations. Any amendment made pursuant to this paragraph may be made effective as of the date of this Agreement.

21.4    Other Amendments.    Except as otherwise specifically provided in this *Section 21*, amendments to this Agreement or the Articles of Organization shall require the written consent of the Members holding a majority of the Membership Interests of the Company.

### SECTION 22
### POWER OF ATTORNEY

22.1    Appointment.    Each of the Members irrevocably constitutes and appoints the other Member (the "Member POA"), with full power of substitution, his or her true and lawful attorney in his or her name, place and stead to make, execute, acknowledge, deliver and file:

(a) Any certificate or other instrument which may be required to be filed by the Company under the laws of the State of Ohio or of any other state or jurisdiction in which the Member POA shall deem it advisable to file;

(b) Any documents, certificates or other instruments, including, without limiting the generality of the foregoing, any and all amendments and modifications of this Agreement or of the instruments described in subparagraph (a) above which may be required or deemed desirable by the Member POA to effectuate the provisions of any part of this Agreement, and, by way of extension and not in limitation, to do all such other things as shall be necessary to continue and to carry on the business of the Company; and/or

(c) All documents, certificates, or other instruments which may be required to effectuate the dissolution and termination of the Company, to the extent such dissolution and termination is authorized hereby.

GMR 071

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

In addition to the foregoing, each of the Members hereby ratifies the execution and filing of the Articles of Organization by the Company's statutory agent on behalf of such Member pursuant to this power of attorney, to the extent that the same is applicable to such Member.

22.2   Survival of Appointment.  It is expressly intended by each of the Members that the power of attorney set forth in *Section 22.1* is coupled with an interest, is irrevocable and shall survive the death, incompetence or adjudication of insanity of each such Member. The foregoing power of attorney shall survive the delivery of an assignment by any Member of his or her entire interest in the Company, except that where an assignee of such entire interest has become a Member, then the foregoing power of attorney of the assignor Member shall survive the delivery of such assignment for the sole purpose of enabling the Member POA to execute, acknowledge edge and file any and all instruments necessary to effectuate such substitution.

## SECTION 23
## CREDITOR SITUATIONS

The Members believe it is in the Company's best interest to provide for a mechanism to deal with any claim, attachment, levy, assessment, garnishment, execution, charging order or similar action by a creditor of a Member or Economic Interest Owner (a "Creditor Situation"), which may negatively impact the Company, its assets or may result in changing the composition of the membership.  The Members believe that if a claim is made against a Member's Membership Interests or stake in the Company by a creditor of such Member, the foundation of the Company and the intricacies of the partnership concept may be compromised.  Therefore, upon the occurrence of a Creditor Situation, for a Member who is affected by such Creditor Situation, so that such Member may not be able to perform obligations, or may be diverted from pursuing Company objectives, the following shall occur:

(a)   Emergency Power of Attorney.   If a Creditor Situation occurs, the Member experiencing such Creditor Situation automatically appoints the other Members as the affected Member's attorney-in-fact to take such legal action as is necessary and prudent under the circumstances. This appointment shall terminate when the Creditor Situation has been resolved to the Company's satisfaction or unless otherwise agreed to be so terminated by the other Members.

(b)   Creditor's Claim.   If the creditor of a Member makes a claim against the Member's Membership Interest or stake in the Company, the other Members shall have the right to purchase the effected Member's Membership Interests pursuant to the terms and conditions of this Agreement as determined in accordance with subparagraph (c) as set froth below, except as otherwise modified in this *Section 23, Creditor Situations*.  The purchase price shall be 25% of the purchase price as determined in sub-paragraph (c) below minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants and/or attorneys to evaluate these matters on behalf of the Company, if any.

(c)   Purchase Price.   The purchase price for Membership Interests to be purchased pursuant to this *Section 23, Creditor Situations* shall be Fair Market Value.  Fair Market Value shall be determined by a qualified and mutually acceptable third party selected by the Members.

GMR  072

# Ohio Rock Industries, Ltd.
*A Ohio Limited Liability Company*

## SECTION 24
## DOMESTIC RELATIONS SITUATIONS

The Members believe it is in the Company's best interest to provide for a mechanism to deal with any Domestic Relations situations which may negatively impact the Company. The Members believe that if a claim is made against a Member's interest or stake in the Company by division of marital assets whether for prenuptial, post-nuptial or estate planning purposes, the foundation of the Company and the intricate governance may be compromised. Therefore, upon the occurrence of a Domestic Relations situation the Membership Interest owner who is affected may not be able to perform obligations, or may be diverted from pursuing Company objectives, and so the following shall occur:

(a) Emergency Power of Attorney. If a Domestic Relations situation occurs the Member experiencing a Domestic Relations situation (the "Affected Owner") automatically appoints the other Members as the Affected Owner's attorney-in-fact to take such legal action as is necessary and prudent under the circumstances. This appointment shall terminate when the Domestic Relations situation has come to its full conclusion or unless otherwise agreed to be so terminated by the other (unaffected) Members.

(b) Marital Asset Claim. If the spouse or marital partner of an Affected Owner makes a claim against the Membership Interests or stake in the Company, the other Members shall have the right to purchase the Affected Owner's Membership Interests pursuant to the terms and conditions of this Agreement as determined in subparagraph (c) as set forth below, and except as herein modified in this *Section 24, Domestic Relations Situations*.

(i) If the claim can be resolved by the Affected Owner entering into an agreement for the dissolution of the marriage or domestic partnership, then the purchase price shall be 75% of the purchase price as determined in subparagraph (c) as set forth below, minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any;

(ii) If the claim involves a contested divorce or dissolution, then the purchase price shall be 50% of the purchase price as determined in subparagraph (c) as set forth below, minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any;
Separation

(iii) If the domestic relations situation involves contesting a prenuptial or post-nuptial agreement, then the purchase price shall be 50% of the purchase price as determined in subparagraph (c) as set forth below, hereof minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any.

(c) Purchase Price. The purchase price for Membership Interests to be purchased pursuant to this *Section 24, Creditor Situations* shall be Fair Market Value. Fair Market Value shall be determined by a qualified and mutually acceptable third party selected by the Members.

GMR 073

## Ohio Rock Industries, Ltd.
*A Ohio Limited Liability Company*

## SECTION 25

## MISCELLANEOUS

25.1    No Partnership Intended for Non-Tax Purposes.   The Members form the Company pursuant to the Act, and expressly did not and do not intend to form a partnership or limited partnership. The Members do not intend to be partners one to another, or partners as to any third party. To the extent any Member, by word or action, represents to another person that any other Member is a partner or that the Company is a partnership, the Member making such wrongful representation shall be deemed to have misspoken, but if such representation was willful, such Member is liable to any other Member who incurs personal liability by reason of such wrongful representation.

25.2    Rights of Creditors and Third Parties Venue This Agreement.   This Agreement is entered into among the Members for the exclusive benefit of the Company, its Members, and their successors and permitted assignees. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by Ohio Revised Statute Section 86.401, no creditor or third party shall have any rights under this Agreement or any agreement between the Company and any Member with respect to any Capital Contribution or otherwise.

25.3    Entire Agreement.   This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. It supersedes any prior agreement or understandings between them relating to the subject matter hereof, and it may not be modified or amended in any manner other than as set forth herein.

25.4    Governing Law; Venue.   This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the local laws of the State of Ohio, and the courts of the State of Ohio shall have exclusive jurisdiction, and the courts of Franklin County, Ohio, where the Company's principal place of business is located, shall have exclusive venue over disputes arising herefrom.

25.5    Binding Effect.   Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns.

25.6    Captions.   Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision thereof.

25.7    Gender.   Where necessary or appropriate to the meaning hereof, the singular and the plural shall be deemed to include each, and the masculine, the feminine and the neuter shall be deemed to include each other.

25.8    Invalidity.   If any provision of this Agreement, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected hereby.

GMR  074

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

25.9   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

25.10   **Not for Benefit of Creditors.** The provisions of this Agreement are intended only for the regulation of relations among the member and the Company. This Agreement is not intended for the benefit of nonmember creditors and does not grant any rights to, or confer any benefits on, nonmember creditors or any other person who is not a member.

In Witness Whereof, the undersigned Members have executed this Agreement as of the date first set forth above.

Members

By:  The Prometheus Irrevocable Trust

By: _____
Marc Dunn, Trustee       May 2, 2011

By:  The Ethon Irrevocable Trust

By: _____
Marc Dunn, Trustee       May 2, 2011

GMR 075

# Ohio Rock Industries, Ltd.

### Operating Agreement
### <u>Exhibit A</u>

| <u>Member Name</u> | <u>Percentage Ownership Interest</u> |
|---|---|
| The Prometheus Irrevocable Trust | 50% |
| The Ethon Irrevocable Trust | 50% |

GMR  076