# Harris Real Estate

| | |
|---|---|
| 128 S. Marietta St | 1025 Main St Suite 317 |
| St. Clairsville, OH | Wheeling. WV 26003 |
| (740) 695-2117 Phone | (304) 233-3492 Phone |
| (740) 695-2517 Fax | (740) 695-2517 Fax |

May 2, 2013

RE: George Michael Riley, SR

Dear Mr. Becker:

Please find enclosed the requested documents in regards to George Michael Riley Sr.

Thank You

Jim Harris
Harris Real Estate



PLAINTIFF'S
EXHIBIT

PENGAD 800-631-6989

NO. 8

GMR 021

Print

**From:** Kate Riley (katharinecorbin@gmail.com)
**To:** panderson.hre@att.net;
**Date:** Mon, January 21, 2013 10:38:52 PM
**Cc:**
**Subject:** Re:

Thanks so much Pam.  -  Katharine

On Mon, Jan 7, 2013 at 2:55 PM, Pam Anderson <panderson.hre@att.net> wrote:

Hi Katharine

The two demos completed by OhioRock were 1133 Fort Henry Ave  Wheeling  Wv  26003  and 50 Shady Street
Wheeling  Wv .  Let me know if you need anything else.

Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

GMR  022

# PREMIERE
## ASSET™ SERVICES

## COUNTER OFFER

Date:          09/25/2012                 Buyer:        **Ohio Rock Industries, . LTD.** ᴀᴏ
                                          Seller:       Owner of Record

This is a Counter Offer dated 09/25/2012, regarding property located at **50 SHADY STREET, WHEELING, WV, 26003**
and supersedes any prior offers, purchase agreements or other documents previously executed in connection with the
property between Owner of Record, Seller, and Buyer. All terms and provisions of any offer, purchase agreement or other
documents, including the Seller's Addendum executed in connection with the property which are not amended by this
Counter Offer shall remain effective.

1. Sales price to be $4,000.00
2. Buyer is to deposit earnest money in the amount of **$1,000.00** in listing agent's escrow account or with Seller's
   closing agent upon acceptance of this Counter Offer. Seller will not execute any contract for purchase without written
   proof of the Buyer's earnest money deposit.
3. Seller will make no repairs or inspections to the subject property unless expressly addressed in this Counter Offer or
   the Seller's Addendum. Should the property sustain any material damage after the acceptance of an offer or prior to
   closing under contract for purchase, Seller, in its sole discretion shall have the option to a) terminate the
   offer/contract, b) re-negotiate the sales price, or c) proceed with repairs. In the event the Seller elects option b) or c),
   the Buyer may either a) proceed with the transaction or b) terminate the offer/contract and receive a refund of the
   Buyer's deposit.

   Should any lender or any insuring entity or agency require that repairs to the property be made or that certain
   conditions be met, the Seller, at its sole option, may comply with such requirements or terminate the contract for
   purchase. Further, should any FHA Conditional Commitment or VA Certificate of Reasonable Value vary from the
   agreed upon purchase price of the property, then Seller, at its sole option, may terminate the contract for purchase.

   Seller will pay a maximum of $0.00 toward lender required repairs only. If lender required repairs are less than $0.00
   , any excess shall be credited back to the Seller. Buyer must provide a list of required repairs in writing from the
   lender. Bids are required for repairs and must be supplied to the Seller from bonded, licensed vendors for review and
   approval. All work will be scheduled and coordinated by the listing agent. Repairs will not be authorized until
   Buyer provides documentation of full mortgage commitment.

4. Termite inspection will be the responsibility of the BUYER. Any termite corrective work and/or treatment will be at
   the expense of the BUYER, unless otherwise agreed upon herein.

   MatterID: 362174                                              Buyer Initials _____ | _____

GMR  023

# PREMIERE

## ASSET™ SERVICES

Address:    **50 SHADY STREET, WHEELING, WV, 26003**    Buyer:    **Ohio Rock Industries, , LTD&R**

5. Closing is to occur on or before **10/26/2012**. Time is of the essence. No extension of the closing date will be given without prior written approval of the Seller. Seller reserves the right to unilaterally extend closing date if legible copies of the executed purchase contract are not received in a timely manner. The Buyer shall be charged a fee of $50.00 per calendar day for any extension of the escrow period past the closing date of **10/26/2012**, to be paid to and collected by the closing agent at the time such extension is granted. The Buyer shall not be obligated for any delays caused by the Seller's title company/closing agent. All funds must be paid according to the closing/escrow agent's instructions for receipt prior to the closing.

The closing will occur at the office or physical location of Seller's choice. Buyer may use counsel of choice as representation at settlement, at Buyer's expense. Seller will pay for Owner's title policy if closing occurs at Seller's directed office and the Owner's policy is ordered through closing office listed below, provided however, in states where Seller's representative is prohibited from providing title and settlement services to the Buyer, Seller will not pay the cost of an Owner's title policy issued by Buyer's representative or other settlement costs incurred by the Buyer. Seller's representation will be:

Name:                                      **ServiceLink**
                                              **Attn: Kim, Arndt**
Address:                                   **400 Corporation Drive,**
                                              **Aliquippa,**
                                              **PA,**
                                              **15001**
Phone#:                                    **855-264-4930**
Fax#:                                      **866-320-6162**

6. Seller will pay a maximum of **$0.00** towards Buyer's closing costs(this includes non-allowables, pre-paid and points). If Buyer's closing costs are less than this amount, any excess shall be credited back to the Seller. If applicable, FHA or VA non-allowables will be capped at a maximum of **$0.00**.
7. Agent commission will be paid in accordance with the listing agreement. Agent commission will be based on the sales price of **$4,000.00**. If property does not close, no commission will be paid.
8. All pro-rations, including without limitation, pro-rations of any and all taxes, fees, utilities, homeowner or condominium association assessments and dues and any and all other charges against the property reflected on the settlement statement and executed by the Seller are final. No adjustments or payments will be made by the Seller after closing.
9. FINAL OFFER ACCEPTANCE IS SUBJECT TO INVESTOR APPROVAL.
10. No other incentives apply. Any incentives agreed to be paid hereunder shall be paid at closing. In the event that the purchase transaction is not consummated, regardless of fault or reason, the Seller shall not be obligated to pay any such incentives.
11. Sale terms subject to management/MI/client final approval. This is an AS IS cash-only sale, and Seller makes no concessions and/or credits and no repairs or repair credits. Seller is willing to close early if all parties are prepared in time. Both parties agree that Buyer is declining to complete property inspections; Buyer is purchasing the property in As-Is condition and will not seek price reductions, concessions and/or credits from Seller once the offer has been accepted. Sale is scheduled to close on 10/26/2012 or sooner if all parties are ready to close.

MatterID: 362174                                          Buyer Initials _MW_ | _____

© Copyright 2006 Premiere Asset Services. All Rights Reserved.

GMR 024

# PREMIERE
## ASSET℠ SERVICES

Property Address:          **50 SHADY STREET, WHEELING, WV, 26003**

This Counter Offer, the attached Seller's Addendum, the attached Property Condition Addendum, and any state specific contract must be signed and initialed by Buyer(s) and returned to Seller within two (2) business days. If these documents are not returned within two business days, or by **09/27/2012**, Seller reserves the right to terminate this transaction for non-performance by Buyer(s).

Date 9/25/12

Mike Riley   Shco Rock
Buyer Name (printed)                           Buyer (signature)

Buyer Email Address 54685 Riley Rd         Buyer Phone Number (74) 232 - 5633
Bonzer, dy

Date 9/25/12

_____           _____
Buyer Name (printed)                           Buyer (signature)
Buyer Email Address _____        Buyer Phone Number (   ) _____ - _____

Buyer email address and Buyer phone number information will be used for internal purposes only and will not be used to solicit the purchaser.

Date _____

_____
Seller Name (printed)                           Seller (signature)

MatterID: 362174                               Buyer Initials _____

© Copyright 2006 Premiere Asset Services. All Rights Reserved

GMR 025

# PREMIERE
## ASSET℠ SERVICES

Property Address:          **50 SHADY STREET, WHEELING, WV, 26003**

## STANDARD SELLER'S ADDENDUM

This Seller's Addendum is attached to and is a part of the offer, purchase agreement or other documents executed in connection with the purchase of the property. The Seller's Addendum will supersede the offer, purchase agreement or other documents executed in connection with the purchase of the property where provisions of this Seller's Addendum amend the provisions of such documents. The following terms and conditions are accepted and incorporated into the offer, purchase agreement or other documents executed in connection with the purchase of the property, subject to the following, and in accordance with certain state requirements. Paragraphs in the offer, purchase agreement or other documents executed in connection with the purchase of the property which require initials by all parties, but are not initialed by all parties, are excluded from the final agreement. Unless otherwise specified in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original offer.

1. Property is sold in its present "As Is" condition with no warranties, repairs, or inspections completed by the Seller, unless otherwise expressly addressed in the Counter Offer or this Seller's Addendum. Buyer agrees that by closing hereunder Buyer has received no promises as to condition and no warranties, and has been afforded an opportunity to obtain an inspection by an inspector of Buyer's choosing. Buyer acknowledges that Seller obtained the Property through foreclosure or similar process and that Seller has not occupied the Property. No personal property is included in this sale, unless otherwise specified.
2. Buyer agrees that in contracting to buy the property, Buyer has not relied upon any representation made by the Seller or Wells Fargo Home Mortgage, or any parent, subsidiary or affiliate thereof, or any of their officers, directors, employees, agents or representatives.
3. In order for an offer to be considered, Buyer must present a prequalification letter from Wells Fargo Home Mortgage, an entity which is a joint venture with Wells Fargo Home Mortgage, or Neighborhood Assistance Corporation of America (NACA). A Buyer who is not interested in comparing any other financing options, may also present proof of a loan commitment or credit decision pre-approval from another lender.
4. Buyer shall have seven (7) calendar days from the date of the fully executed purchase contract to declare the contract null and void as a result of inspection findings. After the seventh (7th) calendar day, Buyer is obligated to complete the purchase or forfeit their earnest money deposit.
5. Buyer is advised that Seller works closely with certain escrow companies, title companies, title agents, title attorneys, and other closing agents that are familiar with Seller's forms, documents, procedures, and special requirements. By utilizing such entities, Seller is generally able to achieve closings quickly and efficiently. Unless Buyer chooses otherwise, Seller will refer the contract with a company, attorney or agent of Seller's choice to perform all necessary title services and products either itself or through a title company chosen by Seller, except in those states where Seller's representative is prohibited from performing such services for the benefit of both parties. Buyer is advised that the use of such companies, attorneys or agents is not required, nor a condition of the sale of the property to Buyer.
6. Closing to occur at the office or physical location of Seller's choice. Buyer may use counsel of their choice to represent the Buyer at closing at Buyer's expense.
7. Seller will pay for Seller's closing costs agreed to with Seller's preferred closing office as well as any costs agreed to in the Counter Offer at closing. If Listing/Selling Agent or Buyer initiates title or closing with an attorney or closing office other than that of Seller's choice; any additional Seller closing costs beyond those that would be charged at Seller's preferred closing office, including but not limited to, title, closing and miscellaneous fees, will be the responsibility of the Agent or Buyer.
8. Seller does not agree to arbitration and mediation.

MatterID: 362174

Buyer Initials _____  |_____

GMR 026

# PREMIERE
## ASSET™ SERVICES

Property Address:        **50 SHADY STREET, WHEELING, WV, 26003**

9. Seller will not assign to Buyer any rights to any insurance claims or proceeds covering destruction or damage to property. Seller's insurance policies are non-transferable and will not be prorated at closing.

10. The originally executed offer or purchase contract and all addenda (or clear facsimile copy) must be received by date specified in the Counter Offer. Otherwise, Seller may terminate the contract for purchase and the escrow with the escrow holder for Buyer's non-performance. The original purchase contract including all original offers and counter offers are subject to review and signature by Seller.

11. Buyer is aware that the property will remain on the market during the counter offer stages and that any and all offers will be considered.

12. This contract may be assigned by the Buyer, to another buyer or the Buyer may add a co-buyer to this contract upon written request submitted to Seller, and approved by Seller in it's sole discretion; provided, that the assignee or co-buyer meets the requirements of Paragraph 3 and Paragraph 32 hereunder and executes the Counter Offer, Seller's Addendum and any other offer, purchase agreement or other documents relative to the transaction.

13. This property may be subject to ground rent, the Seller will not redeem the ground rent.

14. Any special assessments, municipal assessments, or liens that are due or incurred after closing will be the responsibility of the Buyer. Seller does not agree to comply or bring property into compliance with any violation notices or requirements noted or issued by any governmental authority, or actions in any court on account thereof, against or affecting the property as of the date of closing of this contract, unless expressly addressed in this Seller's Addendum or the Counter Offer. Buyer specifically agrees to comply or bring property into compliance with any government code or other requirements.

15. The Seller requires three (3) full business days prior to closing to review and execute any lender required documents, HUD1, and/or any other documents requiring the Seller's signature. The Seller cannot be responsible for any loss or damage due to closing being delayed if the Seller is not given three (3) full business days for review and execution of these items.

16. **Prohibited sale: Employees and family members residing with employees of Wells Fargo Bank, N.A., its affiliates or subsidiaries or Wachovia Corporation, its affiliates and subsidiaries are strictly prohibited from directly or indirectly purchasing any property owned or managed by Premiere Asset Services. The agent or employees of the agent or agency and family members residing with the agent or employees of the agent or agency are prohibited from directly or indirectly purchasing any property owned or managed by Premiere Asset Services and listed by the agent or agency or any property for which the agent has performed services. For purposes of this paragraph "family member" is defined as a spouse, domestic partner, parents, grandparents, children, grandchildren, brothers and sisters, including in all cases, step-family members.**
Buyer Initials /W/— |_____

17. If the Buyer alters the property or causes the property to be altered in any way and/or occupies the property or allows any other person to occupy the property prior to closing without the prior written consent of the Seller, such event shall constitute a breach of contract by the Buyer and the Seller may terminate the contract to purchase. Buyer shall be liable to the Seller for damages caused by any such alteration or occupation of the property prior to closing and funding and waives any and all claims for damages or compensations for improvements made by the Buyer to the property including, but not limited to, any claims for unjust enrichment.

18. Title to the property will be conveyed via special/limited warranty deed or such other form of deed acceptable in jurisdiction where the property is located. Notwithstanding any legal description in any offer, addenda or counter offer, the legal description according to title report shall control.

19. Seller will not provide a survey, appraisal or a home warranty, unless otherwise specified in the Seller's Counter Offer. Should the Seller agree to pay for a home warranty, Seller will provide home warranty from a company of its sole choosing after closing.

20. If applicable, retrofit to be paid by Buyer(s). Seller represents that the property as of the close of escrow, will be compliance with Health and Safety code 19211 by having water heaters braced, anchored or strapped in place in accordance with these requirements. (California only)

MatterID: 362174                                              Buyer Initials _oc/R_ |_____

GMR  027

# PREMIERE

## ASSET™ SERVICES

Property Address:     **50 SHADY STREET, WHEELING, WV, 26003**

21. All pro-rations, including without limitation, pro-rations of any and all taxes, fees, utilities, homeowner or condominium association assessments and dues and any and all other charges against the property as reflected on the settlement statement executed by the Seller are final. No adjustments or payments will be made by the Seller after closing. Tax Pro-rations shall be based upon 100% of the last ascertainable actual tax bill and shall be final as of closing. There shall be no pro-ration adjustment. Tax pro-rations which are not yet due and payable will not be allowed as closing costs. This paragraph controls all pro-rations as described, regardless of language to the contrary in any offer, addendum or counter offer.

22. Seller shall have a minimum of thirty (30) days from the earlier of the closing date or the date upon which Seller receives a copy of a title insurance commitment/title report within which to resolve title exceptions, defects, or other title issues which in any way impede or impair Seller's ability to convey insurable title. If, within such thirty (30) day period, Seller determines that it is unable or unwilling to resolve such matters, the Buyer (1) may take title in its then state, thereby waiving any title objections, or (2) terminate the contract and receive a refund of any deposit as Buyer's sole and exclusive remedy. Alternatively, in such circumstances, Seller may terminate the contract and refund Buyer's deposit, such refund being Buyer's exclusive remedy for such termination. In the event Seller fails to resolve such issues within the aforesaid thirty (30) day period, it shall be presumed that Seller has determined that it is unable or unwilling to resolve such issues.

23. Seller shall deliver possession and occupancy of the property upon close of escrow. The property will be delivered vacant unless otherwise agreed in writing or **if the paragraph below is initialed.** If, prior to close of escrow, Seller notifies Buyer it will be unable to deliver the property vacant, Buyer may cancel this contract within five (5) calendar days after receipt of such notice or prior to the close of escrow, whichever is earlier, and Seller's inability to deliver the property vacant shall not be deemed a breach of this contract. If Buyer accepts the property occupied, Buyer takes the property subject to any applicable rent, vacancy or occupancy control which are matters to be investigated by Buyer.

**Pursuant to section 702 of the Protecting Tenants at Foreclosure Act (the Act), Seller has determined that the property is occupied by a bona fide tenant with a bona fide lease and that the property will be delivered at close of escrow with the tenant occupying the property. A copy of the lease provided by the tenant to Seller has previously been presented to Buyer for inspection. It is the responsibility of the Buyer to review the Act and to comply with the provisions thereof. In particular, should the Buyer intend to occupy the property as a primary residence, it shall be the obligation of the Buyer to comply with the notice provisions of section 702 (a)(2)(A) of the Act and Buyer shall be responsible for all legal and other actions, including attorneys' fees and costs, necessary to gain possession of the property.**

Buyer Initials _____

24. The Buyer shall not be allowed, under any circumstance, to receive funds from the closing that exceed the amount of the earnest money plus prepaid deposits paid by the Buyer. In the event that the proposed HUD reflects proceeds to the Buyer in excess of the earnest money and prepaid deposits, the closing cost credit by Seller shall be reduced so that the Buyer receives an amount exactly equal to the earnest money amount, plus prepaid deposits by the Buyer.

25. Termination of Contract: In the event the contract for purchase is terminated by Seller pursuant to any provision of the Counter Offer, this Seller's Addendum, any other purchase contract, addendum or counter offer, Seller's sole liability to Buyer will be to return Buyer's deposit, at which time the contract for purchase shall cease and terminate and Seller and Buyer shall have no further obligations, liabilities or responsibilities to one another. Notwithstanding any language to the contrary in any purchase contract, offer, addenda or counter offer, if Buyer defaults in the performance of the contract for purchase of the property, the full amount of the earnest money will be tendered to the Seller.

MatterID: 362174                                                    Buyer Initials _____

GMR 028

# PREMIERE

## ASSET™ SERVICES

Property Address:     **50 SHADY STREET, WHEELING, WV, 26003**

26. **Release of Escrow upon Termination:** Upon Seller's termination of purchase contract due to Buyer's non-performance, Seller shall provide written notice to the Buyer and the escrow/closing agent, given by hand delivery or fax or email transmission. Upon receipt of such notice of termination from Seller, Buyer shall have two (2) business days in which to provide a written objection of termination to Seller and escrow/closing agent by one of the above-referenced methods. In the event escrow/closing agent does not receive a written objection from Buyer within two (2) business days, escrow/closing agent is instructed to immediately cancel the escrow and to comply with any other instructions set forth in the Seller's notice of termination, which may include release of the Buyer's deposit in escrow with no additional instructions from the Buyer.

**Buyer acknowledges and agrees that Seller shall have the right to terminate the purchase contract due to Buyer's non-performance upon notice stated above, and to release the earnest money deposit to Buyer without any further action, consent or release from Buyer.**

Buyer Initials _____

27. **Waiver of Specific Performance:** Buyer agrees that the property is not unique and that in the event of Seller's default or a material breach of the Counter Offer, this Seller's Addendum any other offer, purchase contract, addendum or counter offer, Buyer's sole remedy shall be a return of Buyer's earnest money deposit. Buyer hereby waives all rights of specific performance against Seller or actions against the property including but not limited to the filing of any lis pendens or similar action.

Buyer Initials _____

28. Notwithstanding any language to the contrary in any offer, addendum, or counter offer, in any action or proceeding between Buyer and Seller, Seller does not agree and shall not be responsible to indemnify any broker(s) or agent(s) for any liability, loss, cost, damages or expenses incurred by broker(s) or agent(s).

29. Seller makes no representation and advises buyers to make their own investigation to determine the source of the water supply and type of sewage disposal system.

30. This property may be subject to a redemption period pursuant to applicable state law. It is the Buyer's responsibility to consult with the closing attorney or closing agent to determine if any redemption period applies and has expired. An unexpired redemption period could delay or prevent closing and could result in a prior mortgagor or lien holder exercising their option to redeem the property. Seller makes no guarantees or representations concerning the expiration of any redemption periods. Should an unexpired redemption period, prohibit closing; Buyer may exercise their option to cancel the contract for purchase and receive earnest monies back from Seller. No additional compensation will be paid by Seller for any expenditure made by Buyer regarding this property.

31. If the Buyer is participating in a 1031 Exchange, the Buyer(s) understands and agrees that all obligations related to the purchase of this property and the timeliness of the closing shall remain in full effect regardless of the Buyer's participation in the 1031 Exchange. Buyer(s) shall remain solely responsible and liable to the Seller for Buyer(s)' performance of each and every warranty and obligation under this agreement. Buyer agrees to hold Seller harmless from any and all claims and liabilities, including tax liabilities or penalties, costs or delays in time that may result from any aspect of the transaction by virtue of its characterization as a 1031 Exchange. Seller agrees to cooperate with the Buyer, including allowing an assignment of this contract by the Buyer for purposes of affecting the 1031 Exchange.

MatterID: 362174

Buyer Initials _____

GMR 029

# PREMIERE
## ASSET™ SERVICES

Property Address:    **50 SHADY STREET, WHEELING, WV, 26003**

32. Pursuant to the Bank Secrecy Act and requirements specified by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), Premiere Asset Services will not engage in any transaction with any individual or entity that either appears on the list of Specially Designated Nationals and Blocked Persons, Specially Designated Terrorists, Specially Designated Narcotics Traffickers, or that Premiere Asset Services suspects to involved in a suspicious transaction or one in violation of federal law. Therefore, the information on the form attached as Exhibit A, must be provided. This information will be used for the sole purpose of screening against OFAC and WorldCheck lists. If the Seller finds in it sole and absolute discretion that any Buyer(s) meet the criteria as described above, the offer, purchase agreement or other documents executed in connection with the purchase of the property shall be of no effect, and shall be immediately cancelled and terminated. No party shall be liable to the other party in any way, for any claims whatsoever. Any earnest money deposit will be returned to the Buyer.

33. If any provision (or any portion of any provision) of this agreement is held by a court of competent jurisdiction to be illegal, invalid, or unenforceable under present or future laws effective during the term of this agreement, the legality, validity, and enforceability of the remaining provisions (or the balance of such provision) shall not be affected thereby.

34. All notices given under this agreement will be in writing and signed by the party giving the notice. Notice will be deemed received as follows: If delivered in person, upon delivery; if delivered by United States Postal Service, First Class mail, two (2) business days after deposit into the mail; if delivered by a national overnight courier on a next-day basis, one (1) business day after deposit with the service; if delivered by facsimile or Email during Seller's regular business hours, upon transmission or sending, if delivered by facsimile or Email outside of Seller's regular business hours or on a weekend or holiday, upon the commencing of the next business day.

Date _____

Buyer Name (printed)                                    Buyer (signature)

Date _____

Buyer Name (printed)                                    Buyer (signature)

Date _____

Seller Name (printed)                                    Seller (signature)

### [Exhibit A Follows]

MatterID: 362174                                         Buyer Initials _____

GMR 030

# PREMIERE
## ASSET™ SERVICES

### Exhibit A

Pursuant to the Bank Secrecy Act and requirements specified by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), Premiere Asset Services will not engage in any transaction with any individual or entity that either appears on the list of Specially Designated Nationals and Blocked Persons, Specially Designated Terrorists, Specially Designated Narcotics Traffickers, or that Premiere Asset Services suspects to be involved in a suspicious transaction or one in violation of federal law. Therefore the following information must be provided. This information will only be used for the sole purpose of screening against OFAC and WorldCheck lists.

Please provide the following information:

Full Legal Name (First Middle and Last) _Ohio Rock Industries - George Michael Riley_

Full Complete Address (no P.O. Boxes) _T L 11 Riley Road_

City _Barton_ State _Ohio_ Country _USA_ Zip _43505_

Buyer(s) Date of Birth _8-14-63_

**\*Buyers Social Security may be requested at a later date.\*** _45-2048478 EIN_

Full Name (First Middle and Last) _____

Complete Address (no P.O. Boxes) _____

City _____ State _____ Country _____ Zip _____

Buyer(s) Date of Birth

**\*Buyers Social Security may be requested at a later date.\***

Buyer's Agent Information

First Name: _PAM_                Last Name: _Anderson_

Company _Harris Real Estate_

Address: _128 S Marietta St_ City: _St Clairsville_ State: _Oh_ Zip: _43950_

Email: _anderson.hre@att_ Phone#: _740-695-2117_

Fax#: _740-695-2517.com_

If buyer is a Company/Corporation/Partnership/Limited Liability Company, Non-Profit Organization, a Trust or is not purchasing as an individual, buyer must provide full company corporation or trust name and proof of signing authority.

Buyer's Company/Corporation/Partnership/Limited Liability Company/ Non-Profit Organization/Trust:

_____

Corporation Tax ID#, if applicable

_____

List All Principal owners of Partnership or LLC or all signers (including non-board members) and all individuals with principal ownership or financial interest in Non-profit Organizations or Trusts, including full name, permanent home address (no P.O. Boxes) and dates of birth for each.

_____

_____

GMR  031

# PREMIERE
## ASSET™ SERVICES

If the Seller finds in it sole and absolute discretion that any buyer meets the criteria as described above, the offer, purchase agreement or other documents executed in connection with the purchase of the property shall be of no effect, and shall be immediately cancelled. No party shall be liable to the other party in any way, for any claims whatsoever. Any earnest money shall be returned.

Seller: _____

Date: _____

Listing Agent: _____
9-25-12

Date: _____

Buyer: _____

Date: 9/25/12

Buyer: _____

Date: _____

MatterID: 362174

Buyer Initials _____

© Copyright 2006 Premiere Asset Services. All Rights Reserved

GMR  032

# PREMIERE
## ASSET℠ SERVICES

Property Address:          50 SHADY STREET, WHEELING, WV, 26003

## PROPERTY CONDITION ADDENDUM

Addendum to the Purchase Contract accepted by Buyers for property located at: **50 SHADY STREET, WHEELING, WV, 26003.**

### LEAD-BASED PAINT DISCLOSURE

This contract for purchase is contingent upon a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at the Purchaser's expense until 9 p.m. on the seventh (7th) calendar day after ratification. The lead-based paint that is in good condition is not necessarily a hazard. See the EPA pamphlet Protect Your Family From Lead in Your Home for more information. This contingency will terminate at the predetermined deadline unless the Buyer (or Buyer's agent) delivers to the Seller (or Seller's agent) a written contract addendum listing the specific existing deficiencies and corrections needed, either with a copy of the inspection and/or risk assessment report. The Seller may, at the Seller's option within 10 (ten) days after delivery of the addendum, elect in writing whether to correct the condition(s) prior to closing. If the Seller will correct the condition, the Seller shall furnish the Buyer with certification form a risk assessor or inspector demonstrating that the condition has been remedied before the close of the settlement. If the Seller does not elect to make the repairs, or if the Seller makes a counter-offer, the Buyer shall have 10 (ten) days to respond to the counter-offer or remove this contingency and buy the property in "as is" condition or this contract shall become void. The purchaser may remove this contingency at any time without cause. Buyer acknowledges they have received the Lead Base Paint pamphlet. Buyer Initials

### CHINESE/DEFECTIVE DRYWALL

During the time much of the United States was experiencing building material shortages, some homes were built or renovated using defective drywall imported from or manufactured in China. Defective drywall reportedly emits levels of sulfur, methane, and/or other volatile organic compounds that cause corrosion of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items as well as create noxious odors which may also pose health risks. Seller has made no inspection for and has no knowledge of the presence of Chinese/defective drywall affecting the Property, unless otherwise stated in the Counter Offer.

### "AS-IS" DISCLOSURE

Buyer is aware that Seller acquired the property which is the subject of this transaction by way of foreclosure, and that the Seller is selling and Buyer is purchasing the property in an "AS-IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE. Buyer acknowledges for Buyer, for Buyer's successors, heirs and assignees, that Buyer has been given a reasonable opportunity to inspect and investigate the property and all improvements thereon, either independently or through agents of Buyer's choosing, and that in purchasing the property, Buyer is not relying on Seller or its agents as to the condition of the property and/or any improvements thereon, including, but not limited to, roof, foundation, soils, electrical, plumbing, heating, basement, mechanical systems, water or septic systems, geology, lot size or the existence of termites or other wood destroying insects, radon or hazardous substances, whether or not the property is located in a flood zone or whether the property conforms to local ordinance or regulations, including zoning or suitability of the property and/or in compliance with any city, county, State and/or Federal statutes, codes or ordinances. Buyer is not relying on Seller or it's agents as to the condition of property and /or any improvements thereon, including but not limited to mold, roof, foundations, etc. THE PREMISES WERE ACCEPTED WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE AND IN AN "AS-IS" CONDITION BASED SOLELY ON BUYER'S OWN INSPECTION

MatterID: 362174

Buyer Initials

© Copyright 2006 Premiere Asset Services. All Rights Reserved

GMR  033

# PREMIERE
## ASSET™ SERVICES

Property Address:        **50 SHADY STREET, WHEELING, WV, 26003**

### WARNING:

A winterization may have been performed at this property pursuant to a work order issued by the current owner.  The sole purpose of a winterization is to prevent damage from freezing pipes.  The winterization completed at this property was a system shut-down only; the plumbing system was not tested for damage or leaks.  This procedure is not a guaranty or warranty of any kind with respect to the HVAC, plumbing, or any other mechanical systems at this property.  The plumbing system should be de-winterized by a licensed contractor or plumber before the water is turned back on, to assure that the system is operational.

Buyer Initials _____

### MOLD DISCLOSURE AND RELEASE

Buyer is hereby advised that mold and/or other microscopic organisms may exist at the property known as **50 SHADY STREET, WHEELING, WV, 26003**.  Such microscopic organisms and/or mold may cause physical injuries, including but not limited to allergic and/or respiratory reactions or other problems, particularly in persons with immune system problems, young children and/or elderly persons.  Buyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from microscopic organisms and/or mold and to hold harmless, release and indemnify Seller and Seller's managing agents from any liability / recourse / damages ( financial or otherwise ).  Buyer understands that Seller has taken no action to remediate mold.  Buyer hereby acknowledges this disclosure and release and is aware of the condition set forth therein.  This disclosure and release is executed voluntarily and with full knowledge of its significance.  Wells Fargo Home Mortgage, Premiere Asset Services or managing agents are not qualified to inspect property for mold or make recommendations or determinations concerning possible health or safety issues.  The purpose of this disclaimer is to put Buyers on notice to conduct their own due diligence regarding this matter using appropriate, qualified experts.  This is a legal document and Buyers are advised to seek legal counsel prior to executing same.

*IMPORTANT NOTICE: This document may contain information that is considered confidential and may not be transmitted through unencrypted email.  The transmission of information on this document should be completed by uploading to the Agent Portal or by faxing with a cover page to 1-855-694-0268.*

Date 9/25/12

Ohio Rock _____
Buyer Name (printed)                                    Buyer (signature)

Date 9/25/12

_____                              _____
Buyer Name (printed)                                    Buyer (signature)

Date _____

_____                              _____
Seller Name (printed)                                   Seller (signature)

Premiere Asset Services

© Copyright 2006 Premiere Asset Services.  All Rights Reserved.

GMR  034

# NOTICE OF AGENCY RELATIONSHIP

When working with a real estate agent in buying or selling real estate, West Virginia Law requires that you be informed of whom the agent is representing in the transaction.

The agent may represent the seller, the buyer, or both. The party represented by the agent is known as the agent's principal and as such, the agent owes the principal the duty of utmost care, integrity, honesty and loyalty.

Regardless of whom they represent, the agent has the following duties to both the buyer and the seller in any transaction:

- Diligent exercise of reasonable skill and care in the performance of the agent's duties.
- A duty of honest and fair dealing and good faith.
- Must offer all property without regard to race, color, religion, sex, ancestry, physical or mental handicap, national origin or familial status.
- Must promptly present all written offers to the owner.
- Must disclose all facts known to the agent materially affecting the value or desirability of the property.
- Provide copies of all contracts.

The agent is not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties set forth above.

Should you desire to have a real estate agent represent you as your agent, you should enter into a written contract that clearly establishes the obligations of both parties. If you have any questions about the roles and responsibilities of a real estate agent, they can provide information upon your request.

In compliance with the Real Estate Brokers License Act of West Virginia, all parties are hereby notified that

(printed name of agent) _Tay Anderson_ _____ affiliated with

(firm name) _Harris Real Estate_ _____ is acting as agent of:

_____ The Seller, as listing agent or subagent.     _____ The Buyer, as the buyer's agent.
_____ Both Seller and Buyer, with the full knowledge and consent of both parties.

---

## CERTIFICATION

By signing below, the parties certify that they have read and understand the information contained in this disclosure and have been provided with signed copies prior to signing any contract.

| _____ | _____ | X _____ | X 8/24/12 |
|---------|---------|-----------|-----------|
| Seller | Date | Buyer | Date |
| _____ | _____ | _____ | _____ |
| Seller | Date | Buyer | Date |
| _____ | _____ | _____ | _____ |
| Seller | Date | Buyer | Date |

---

I certify that I have provided the above named individuals with a copy
of this form prior to signing any contract.

Agent's Signature _Tam Anderson_

Date _8-24-12_

*WV Real Estate Commission*
*1033 Quarrier Street, Suite 400*
*Charleston, WV 25301*
*(304) 348-3555*

# JIM HARRIS REAL ESTATE

## GENERAL POLICY ON AGENCY

1) It is the policy of *Jim Harris Real Estate* to represent both sellers and buyers. Affiliated agents shall represent the seller when they list the property and shall act as buyer's agents when working with buyers.

2) When representing a seller, *Jim Harris Real Estate* and its agent owe the seller the duties of loyalty, obedience, confidentiality, accounting and reasonable skill and care in performing our duties, and any other duties contained in our listing agreement. We are required to act solely on behalf of the seller's interest to seek the best price and terms for the seller. Finally, as a seller's agent, we also have a duty to disclose to the seller all material information obtained from the buyer or from any other source.

3) When representing a buyer, *Jim Harris Real Estate* and its agents owe the buyer the duties of loyalty, obedience, confidentiality, accounting and reasonable skill and care in performing their duties, and any other duties contained in the agency agreement. The agent and brokerage are required to act solely on behalf of the buyer's interests to seek the best price and terms for the buyer. Finally, a buyer's agent and brokerage also have a duty to disclose to the buyer all material information obtained from the seller or from any other source.

4) On in-company transactions where both buyer and seller are represented by separate, non-management-level licensees, each party will be represented by his respective agent and those agents must not share confidential information with each other. The buyer must initial the bottom section on the back of the *Agency Disclosure Statement* they previously signed, consenting to another agent representing the seller. This must be delivered to the listing agent along with the offer. **The seller must initial this section before the offer is presented to him.**
   The brokerage and its management-level licensees are dual agents. In this situation, the brokerage's role is to do the following:
* Objectively supervise the agents involved so they can each fulfill their duties, as outlined above, to each of their clients.
* Assist the parties in an unbiased manner to negotiate a contract.
* Assist the parties in an unbiased manner to fulfill the terms of any contract.

**As a dual agent, the brokerage cannot:**
* Advocate or negotiate on behalf of either the buyer or the seller.
* Disclose confidential information to any party or any other employee or agent of the brokerage.
* Use confidential information of one party to benefit the other party to the transaction.

5) If an agent sells his own listing to a buyer he/she represents, the agent is a dual agent. He may only act as a dual agent if both the buyer and seller agree. The parties must sign the state-mandated *Dual Agency Disclosure Statement*. A dual agent may not disclose any

*initial* _____

confidential information that would place one party at an advantage over the other party and may not disclose any of the following information without the informed consent of the party to whom the information pertains:

* that a buyer is willing to pay more than the price offered;
* that a seller is willing to accept less than the asking price;
* motivating factors of either party for buying or selling;
* that a party will agree to financing terms other than those offered.

6) If the management-level licensees represent a party, either buyer or seller, on an in-company transaction, that management-level licensee must act as a **dual** agent. As such, he must have both buyer and seller complete the *Dual Agency Disclosure Statement* and sign it. If the other agent in the transaction, who represents the other party, is not a management-level licensee, then that agent is considered to only be the agent of the party he represents. That party must initial the bottom section on the back of the *Agency Disclosure Statement* he previously signed and acknowledge that his agent represents only him. The other party must initial this section as well.

## RECEIPT OF AGENCY POLICY

I hereby acknowledge that I have received the agency policy brochure of *Jim Harris Real Estate.*

| | | | |
|---|---|---|---|
| _____ | 8/24/12 | _____ | 8-24-12 |
| Client | Date | Agent | Date |

| | |
|---|---|
| _____ | _____ |
| Client | Date |

GMR 037

**HARRIS REAL ESTATE**
**1025 SUITE 317 MAIN STREET**
**WHEELING WV 26003**
**304-233-3492 OFFICE**
**740-695-2517 FAX**



HANDLED WITH KNOWLEDGE AND INTEGRITY

Wheeling Board of Realtors
**Real Estate Purchase Contract**
It is recommended that all parties be represented by legal counsel

 

REALTOR    EQUAL HOUSING
OPPORTUNITY

The undersigned Purchaser hereby offers and agrees to purchase from the Seller the following described property:

5-0 Shady Street Wheeling WV 26603 M

Legal Description: County **Ohio** Deed Book **703**, Page **398**

District **10-Wheeling** Map# **W33** Parcel **0286 0000 0000**

The property shall include the land with all appurtenant rights, privileges and easements thereunto belonging, but subject to all legal highways, zoning ordinance, easements, restrictions and conditions of record.

(1) *PURCHASE PRICE:* The Purchaser agrees to pay and the Seller agrees to sell said premises for the sum of:
**Four Thousand Dollars** Dollars ($**4000.00**).
Purchaser's obligations are contingent upon financing. Purchaser has obtained (N/A) or will obtain (N/A) written loan pre-qualification within N/A days. Purchaser shall apply for a CASH loan within N/A banking days for N/A % of the purchase price, and continue to make every reasonable effort to secure such loan. Failure to provide said loan pre-qualification will give the Seller the option to void the agreement.

(2) *FIXTURES AND EQUIPMENT:* The consideration shall include all buildings and fixtures delivered in their present condition, excepted herein, including without limitations such of the following as are now on the property: all windows/door shades, awnings, storms and screens, curtain/drapery rods and fixtures, TV antennas, garage door opener and controls, gas or electric heaters, water heater and softener (unless leased), incinerator, trash compactors, all heating, plumbing and bathroom fixtures, permanently attached lighting fixtures, affixed mirror, air conditioning units, humidifiers, all built-in appliances and accessories, door bells, chimes, fireplace grate and equipment, smoke detectors, all tacked down carpeting and floor coverings and all landscaping, and —

The following shall be excluded:

(3) *GENERAL PROVISIONS:* Purchaser agrees to purchase the real estate, improvements and fixtures in their present condition, except as herein expressly set forth, and acknowledge that he has examined the physical condition and character and size and signed this agreement as a result of said examination and not upon representations made by Seller, Broker, Co-Broker, or any agent or salesperson. This instrument contains the entire agreement between the parties and no representations, promises, provisions, terms, warranties or conditions or obligations whatsoever, expressed or implied, other than herein set forth, shall be binding upon Purchaser, Seller or Broker. The parties agree to hold the Broker or its agents or employees harmless from and against any liability for damage resulting from any misrepresentation by any party hereto. In compliance with fair housing laws, no party shall in any manner discriminate against any purchaser or purchasers because of race, creed, sex, national origin, handicap or familial status. Seller and Purchaser authorize Broker to disclose this Sales information to the Multiple Listing Service and to any multiple listing service to which Broker is a member and further authorize MLS to report this sale information to their MLS participants, affiliates and to those governmental agencies authorized to receive MLS information.

(4) *DEPOSIT:* The earnest money deposit in the sum of **$4000.00** in cash or by check delivered to
**Harris Real Estate** listing Broker, shall be held in uncashed form until acceptance of this Agreement and then deposited in a non-interest bearing trust account. This deposit shall be held until closing. If no closing takes place, the Broker shall hold the earnest money until both Purchaser and Seller execute a written release of said earnest money. If the Purchaser and the Seller are unable to agree, the Broker shall continue to hold the earnest money in trust account until such time as the parties can agree or a court of competent jurisdiction shall order the earnest money disbursed. Upon closing the earnest money will be returned to the Purchaser.

(5) *EVIDENCE OF TITLE:* Purchaser shall furnish and pay for an EXAMINATION OF TITLE showing in the name of the Seller, good and merchantable title in fee simple free and clear of all liens and encumbrances excepting those specifically set forth in this contract, or those liens that are to be paid at closing. Merchantability of title shall be determined in accordance with the standards of Title Examination adopted by the West Virginia State Bar Association.

Seller Initial:_____ _____ Date:_____     X Buyer Initial: _____ Date:_____

GMR 038

**(6) *DEED:*** Seller shall pay for and deliver to Purchaser a recordable and transferable general warranty deed or special warranty deed, if Seller is a fiduciary, conveying good and marketable title to the subject property, subject only to such exceptions, restrictions and easements of record. By executing the Deed, Seller is certifying that Seller is authorized to make this conveyance and that all parties who are required to be notified of this conveyance have been appropriately notified.

**7) *TAXES, ASSESSMENTS AND RENTS:*** Taxes, assessments and rents, if any, shall be pro-rated to the date of delivery of the deed for the subject premises. Seller shall pay transfer stamps.

**(8) *CLOSING:*** The closing or escrow shall be at a designated location, and all funds and documents necessary to the completion of this transaction shall be delivered to that office, on _10 - 2 6 - 2 0 1 2_, or upon a mutually agreeable earlier date. This agreement will terminate on the closing date designated above subject to any extension agreed to in writing signed by the parties. Time is of the essence in all provisions of this contract.

**(9) *POSSESSION:*** Possession and occupancy of the premises shall be delivered in the same condition as at the date of acceptance of this contract, except for ordinary wear and tear, to the Purchaser on _____.

**(10) *DAMAGE OR DESTRUCTION OF PROPERTY:*** Seller shall bear the risk of loss of the real estate and appurtenances until closing, provided that if any buildings or other improvements on the subject premises are damaged or destroyed prior to the delivery of the deed to the Purchaser, then the said Purchaser shall have the option of accepting the proceeds of any insurance payable as a result of such damage or destruction, not to exceed the contract price, and completing this contract, or of terminating this contract in which latter case all funds and documents shall be returned to the parties depositing them and this contract shall be null and void. If Purchaser does not make such election within fifteen (15) days after receiving notice of such damage or destruction, the Purchaser shall be presumed to have elected to complete the transaction.

**(11) *INSPECTIONS:*** Purchaser shall furnish at his own cost, an inspection by a licensed exterminator stating the property is free of infestation or damage by wood destroying insects. Any infestation shall be treated by Seller. Seller shall have a choice in the qualified company performing the treatment. If cost of correcting damage caused by infestation exceeds $_____, the Seller may terminate this contract and all earnest money will be returned to the Buyer.

**(12) *INSPECTION RIDER/WAIVER:*** A Property Inspection Rider/Waiver is a part of this contract.

**IT IS FURTHER AGREED:** _____

_____

_____

_____

| | | |
|---|---|---|
| **PURCHASER** Signature X | **ADDRESS:** PO Box 108 | **TELEPHONE:** 740-232-5633    **DATE:** |
| Print Name Ohio Rock Industries | Etna Oh  43018 | |
| **PURCHASER** Signature _____ | | |
| Print Name _____ | | |

***DEPOSIT RECEIPT:*** Receipt is hereby acknowledged as agent for the Seller ( ) Buyer ( ) of _____
The deposit of earnest money is subject to the terms of the within contract. The earnest money shall be deposited upon acceptance.

_____, Broker    By: _____    Agent    Date: _____

---

**NOTICE**

Fair Housing Statement  It is illegal, pursuant to the West Virginia Fair Housing Act, West Virginia Code 5-11A-5 and the Federal Fair Housing Law, 42 U.S.C.A. 3601, to refuse to sell, transfer, assign, rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in West Virginia Code 5-11A-3, ancestry, military status, handicap as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services.  It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

Page 2 of 4

GMR  039

**ACTION BY SELLER:** The under signed Seller has read and fully understands the foregoing offer and hereby:
(   ) accepts said offer and agrees to convey the real estate according to the above terms and conditions;
(   ) rejects said offer, or;
(   ) counteroffers according to the following modifications/additions by Seller which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____ at _____ o'clock (am) (pm):

_____

_____

_____

_____

| SELLER | ADDRESS: | TELEPHONE: | DATE: |
|--------|----------|------------|-------|
| Signature | | | |
| Print Name | | | |

SOCIAL SECURITY NUMBER: _____

| SELLER | ADDRESS: | TELEPHONE: | DATE: |
|--------|----------|------------|-------|
| Signature | | | |
| Print Name | | | |

SOCIAL SECURITY NUMBER: _____

**ACTION BY PURCHASER:** The under signed Purchaser has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to purchase the real estate according to the above terms and conditions;
(   ) rejects said counteroffer, or;
(   ) counteroffers according to the following modifications/additions by Purchaser which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____ at _____ o'clock (am) (pm):

_____

_____

_____

PURCHASER_____  PURCHASER_____
          Signature              Date                    Signature              Date

**ACTION BY SELLER:** The under signed Seller has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to convey the real estate according to the above terms and conditions;
(   ) rejects said counteroffer, or;
(   ) counteroffers according to the following modifications/additions by Seller which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____ at _____ o'clock (am) (pm):

_____

_____

SELLER_____  SELLER_____
         Signature              Date                Signature              Date

**ACTION BY PURCHASER:** The under signed Purchaser has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to purchase the real estate according to the above terms and conditions; OR
(   ) rejects said counteroffer.

PURCHASER_____  PURCHASER_____
          Signature              Date                    Signature              Date

GMR 040

**HARRIS REAL ESTATE**
**1025 SUITE 317 MAIN STREET**
**WHEELING WV 26003**
**304-233-3492 OFFICE**
**740-695-2517 FAX**



 
REALTOR    EQUAL HOUSING
           OPPORTUNITY

HANDLED WITH KNOWLEDGE AND INTEGRITY

## PURCHASE AGREEMENT
## INSPECTION RIDER/WAIVER

This is a Rider to a Purchase Agreement dated _8-24-12_ between _Wells Fargo_ as
Sellers, and _Ohio Rock Industries_ as Buyers, in reference to the property at
_50 Shady Lane Wheeling WV 26003_

**1. CONDITION OF THE PREMISES:** The house and fixtures, appliances and personal property (collectively "contents") being sold and purchased are not new. Buyers understand and agree that neither the Sellers, nor any agents have made any representations concerning the house, or the contents, except as noted.

**2. RIGHT AND DUTY OF INSPECTION:** Inspection to be made within _____(    ) working days of contract acceptance. Buyers have the right and duty to inspect the house and contents, or have them inspected by an expert, for including, but not limited to, lead based paint, radon, mold, asbestos and toxic insulation. Buyers shall pay for these inspections. Buyers shall request any defect correction within three (3) working days of the completion of inspection.

Buyers still have the right to make a final inspection before settlement to be sure that the condition has not changed from their first inspection.

**3. LIMITATION OF REMEDIES:** Upon request for any defect correction, Sellers may either (1) correct the defect in a workmanlike manner at their own cost; (2) allow an agreed credit at closing; or (3) terminate the agreement and refund all earnest money deposits paid by Buyers. Sellers shall notify Buyers of the remedy within _____(    ) days of Buyers' request. Should the Sellers elect Option #3, however, Buyers shall have the option to accept property in its present condition and proceed with settlement under the original terms or agree to the termination.

If Buyers choose not to inspect the premises and its contents, or if Buyers do not have an expert inspect the property, or if Buyers do not request any defect correction in the premises or the contents within three (3) working days after inspection, Buyers waives the right to any defect correction and agree to accept the premises and contents in their then present condition, and Sellers will have no liability with respect to them.

**4. WAIVER:** A waiver of the inspections by the Buyers excludes any test or inspections required by their lending institution.

**All notifications and requests by either party must be in writing.**

BUYER_____    SELLER_____

BUYER_____    SELLER_____

DATE_____    DATE_____

### WAIVER OF RIGHT TO INSPECTION

Buyers hereby waive the right to an inspection. Buyers are accepting the property in "AS IS" condition and agree to hold Sellers, Broker, or its agents and employees, harmless from and against any liabilities from damage or defects.

X BUYER _____    X DATE _8/24/12_

BUYER _____    DATE _____

GMR 041

PNC Online Banking

 **PNC.** *Online Banking*

## Account Activity

Business Basic Checking ████████████   Available Balance: **$40,999.20**

### Account Summary

| | |
|---|---|
| Available Balance: | $40,999.20 |
| Ledger Balance: | $41,928.97 |
| Pending Withdrawals: | $929.77 |
| Pending Deposits: | $950.00 |
| Last Deposit Amount: | $950.00<br>09/27/2012 |
| Last Statement Balance: | $24,800.64<br>08/31/2012 |

### Additional Information

| | |
|---|---|
| Nickname: | None |
| Type: | Business Basic Checking |
| Text Banking Nickname: | Not Enrolled |
| Address: | PO BOX 135<br>ETNA, OH 43018 - 0135 |

### Pending Transactions

These transactions have been submitted to us since the last business day and are not yet posted to your account. When they have posted, they will be reflected in your Posted Transactions. Pending items may affect your Available Balance and are not a statement of your account.

| Description | Withdrawals | Deposits |
|---|---|---|

GMR 042

**OHIO ROCK INDUSTRIES, LTD**
P.O. BOX 135
ETNA, OHIO 43018
(740) 232-5633

18286

8-9-430

PAY
TO THE
ORDER OF _Jim Harris_

DATE _9/25/12_    $ _1000 00_

_One Thousand_ _____ DOLLARS

PNC Bank, N.A.
Pittsburgh, PA    001

VOID AFTER 60 DAYS

FOR _So Sheet_

⑈018286⑈ ⑆043000096⑆ ⑈0337090 37⑈

GMR 043

Doc ID -->        201112401346



| DATE:<br>05/05/2011 | DOCUMENT ID<br>201112401346 | DESCRIPTION<br>ARTICLES OF ORGNZTN/DOM. PROFIT<br>LIM.LIAB. CO. (LCF) | FILING<br>125.00 | EXPED<br>.00 | PENALTY | CERT<br>.00 | COPY<br>.00 |

## Receipt
This is not a bill. Please do not remit payment.

ZACKS LAW GROUP, LLC
33 S. JAMES ROAD - 3RD FL
COLUMBUS, OH 43213

---

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jon Husted

2018072

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**OHIO ROCK INDUSTRIES, LTD.**

and, that said business records show the filing and recording of:

Document(s)                                                    Document No(s):
ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO.        **201112401346**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 2nd day of May, A.D.
2011.

*Jon Husted*

Ohio Secretary of State

GMR 044

Doc ID -->        201112401346



Form 533A Prescribed by the:
**Ohio Secretary of State**

Central Ohio: (614) 466-3910
Toll Free: (877) SOS-FILE (767-3453)

www.sos.state.oh.us
Busserv@sos.state.oh.us

Expedite this form: (select one)
Mail form to one of the following:

○ Expedite        PO Box 1390
                  Columbus, OH 43216
*** Requires an additional fee of $100 ***

○ Non Expedite    PO Box 670
                  Columbus, OH 43216

## ARTICLES OF ORGANIZATION FOR A DOMESTIC
## LIMITED LIABILITY COMPANY
### Filing Fee: $125.00

*(CHECK ONLY ONE (1) BOX)*

(1) ☑ Articles of Organization for Domestic
       For-Profit Limited Liability Company
       (115-LCA)
       ORC 1705

(2) ☐ Articles of Organization for Domestic
       Nonprofit Limited Liability Company
       (115-LCA)
       ORC 1705

Name of limited liability company

**Ohio Rock Industries, Ltd.**

Name must include one of the following words or abbreviations: "limited liability company," "limited," "LLC," "L.L.C.," "ltd.," or "ltd"

Effective Date
(Optional)                 _____        (The legal existence of the limited liability company begins upon the filing
                           mm/dd/yyyy               of the articles or on a later date specified that is not more than ninety days
                                                    after filing)

This limited liability company shall exist for      Perpetual unless sooner pursuant to Operating Agreement
(Optional)                                          Period of Existence

Purpose            The purpose for which the limited liability company is formed is to engage in
(Optional)
                   any lawful act or activity for which limited liability companies may be formed

                   under Chapter 1705 of the Ohio Revised Code.

                   _____

                   _____

                   _____

☐ Check here if additional provisions are attached

Form 533A                        Page 1 of 5                        Last Revised: 8/21/08

Page 2

GMR 045

Doc ID -->      201112401346

# ORIGINAL APPOINTMENT OF AGENT

The undersigned authorized member(s), manager(s) or representative(s) of

Ohio Rock Industries, Ltd.
Name of Limited Liability Company

hereby appoint the following to be Statutory Agent upon whom any process, notice or demand required or permitted by statute to be served upon the limited liability company may be served.  The name and address of the agent is

Marcus D. Dunn
Name of Agent

33 S. James Road, 3rd Floor
Mailing Address

Columbus                    Ohio                    43213
City                        State                   Zip Code

☐ If the agent is an individual and using a P.O. Box, check this box to certify the agent is an Ohio resident.

## ACCEPTANCE OF APPOINTMENT

The undersigned, named herein as the statutory agent for

Ohio Rock Industries, Ltd.
Name of Limited Liability Company

hereby acknowledges and accepts the appointment of agent for said limited liability company.

Agent's Signature

Form 533A                   Page 2 of 5                   Last Revised: 8/21/08

Page 3

GMR  046

Doc ID --->     201112401346

By signing and submitting this form to the Ohio Secretary of State, the undersigned hereby certifies
that he or she has the requisite authority to execute this document on behalf of the limited liability company
identified above.

**REQUIRED**
Articles and original
appointment of agent must
be authenticated **(signed)**
by a member, manager or
other representative.

Signature _____     Date  4 29· 11
_____

Marcus D. Dunn
Print Name
_____

Signature _____     Date _____

Print Name
_____

Signature _____     Date _____

Print Name
_____

{See Instructions Below}

Form 533A                    Page 3 of 5                    Last Revised: 8/21/08

GMR  047

Printer Friendly Report

Print this report

Corporation Details

| Corporation Details | | |
|---|---|---|
| Entity Number | 2018072 | |
| Business Name | OHIO ROCK INDUSTRIES, LTD. | |
| Filing Type | DOMESTIC LIMITED LIABILITY COMPANY | |
| Status | Active | |
| Original Filing Date | 05/02/2011 | |
| Expiry Date | | |
| Location: | County: | State: |

| Agent / Registrant Information |
|---|
| MARCUS D. DUNN<br>33 S. JAMES ROAD - 3RD FL<br>COLUMBUS,OH 43213<br>Effective Date: 05/02/2011<br>Contact Status: Active |

| Incorporator Information |
|---|
| MARCUS D. DUNN |

| Filings | | |
|---|---|---|
| Filing Type | Date of Filing | Document Number/Image |
| ARTICLES OF ORGNZTN/DOM. PROFIT LIM.LIAB. CO. | 05/02/2011 | 201112401346 |

GMR  048



## ZACKS LAW GROUP LLC
### *Counselors & Practitioners at Law*

Marcus D. Dunn
mddunn@zlglaw.com

at Broad and James
33 South James Road
Third Floor
Columbus, Ohio 43213
614.236.8000 voice
614.236.3236 fax

October 3, 2012

**Re:   Ohio Rock Industries, Ltd.**

To whom it may concern:

As legal counsel for Ohio Rock Industries, Ltd. ("Ohio Rock"), the purpose of this letter is to confirm that George Michael Riley is the authorized representative of Ohio Rock.

In addition, in forming and filing the Articles of Organization for Ohio Rock, our firm and myself merely acted as authorized agents in the creation of the company.

If you have any other questions or concerns, please do not hesitate to contact me.

Very truly yours,

Marcus D. Dunn

GMR  049



To whom it may concern;

*October 2, 20.*

George M Riley is an authorized signer for any and all documents for Ohio Rock Industries, LTD.

Sincerely,

*Stacia Johnson*

Stacia Johnson

Secretary

Ohio Rock Industries, LTD

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
AMANDA L. BERISFORD
Ohio County Public Library
52 - 16th Street
Wheeling, West Virginia 26003
My Commission Expires Nov. 1, 2014

*State of WV*
*County of Ohio*

*The foregoing instrument was acknowledged before me this 2nd day of October, 2012, by Stacia Johnson*

*Amanda L. Berisford.*

*My commission expires November 1, 2014.*

Print                                                                                    Page 1 of 2

**From:** James Harris (jhre@msn.com)
**To:** panderson.hre@att.net;
**Date:** Thu, October 11, 2012 4:06:34 PM
**Cc:**
**Subject:** FW: Ohio Rock Documents


*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517



Subject: Fwd: Ohio Rock Documents
From: mriley@ohiorockindustries.com
Date: Thu, 11 Oct 2012 15:41:04 -0400
CC: mriley@ohiorockindustries.com
To: jhre@msn.com


Sent from my iPhone

Begin forwarded message:

> **From:** "Marcus D. Dunn, Esq." <mddunn@zlglaw.com>
> **Date:** October 11, 2012, 3:29:56 PM EDT
> **To:** <mriley@ohiorockindustries.com>
> **Cc:** <mrileysr@ohiorockindustries.com>
> **Subject: Ohio Rock Documents**
>
> ## Here they are Mike.
>
> :::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
>
> Marcus D. Dunn, Esq.
> Zacks Law Group LLC
> Counselors and Practitioners at Law
> The eBuilding at Broad and James
> 3rd Floor
> 33 South James Road
> Columbus, Ohio  43213
> Work No: 614.236.8000
> Cell No: 614.306.3092
> Fax No:  614.236.3236
>
> *************************************************************
> Named in *U.S. News & World Report* as one of the **"Best Law Firms"** 2011
> -1st Amendment & Litigation
>
> Practice Areas:
> Business, Real Estate, Tax, Technology, Constitutional Rights & Health Care
> in complex litigation & transactional matters for individuals, families and companies.

GMR  051

Print

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Confidentiality Notice

The information contained in this e-mail message may be privileged and confidential, and thus is protected from disclosure.  This message is NOT intended for transmission to, or receipt by, anyone other than the named addressee (or a person authorized to receive and deliver it to the named addressee).  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this e-mail message in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail or by calling 614.236.8000 (collect).

Thank you for your anticipated cooperation.

Zacks Law Group LLC

IRS CIRCULAR 230 DISCLOSURE
In compliance with requirements imposed by the Internal Revenue Service, we inform you that any Federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# OHIO ROCK INDUSTRIES, LTD.
## First Amendment to the Operating Agreement

This First Amendment to the Operating Agreement (this "Amendment") is made effective as of July1, 2012 by and among Ohio Rock Industries, Ltd., an Ohio limited liability company (the "Company"), and the undersigned members of the Company.

**Whereas,** on May 2, 1011, the Company filed its Articles of Organization with the Secretary of State of Ohio;

**Whereas,** effective May 2, 2011, the members of the Company executed an Operating Agreement to govern the conduct of its business and internal affairs;

**Whereas,** effective June 30, 2012, the then current members transferred 100% of their ownership in the Company to Michael Riley; and

**Whereas,** the Members desire to amend the definition of a "Member" by revising Exhibit A to reflect the current ownership of Membership Interests in the Company.

**Now therefore,** in consideration of the premises and the mutual promises and agreements herein contained, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    **Capitalized Terms.** The Capitalized terms used I this Amendment but not otherwise defined herein shall have the same meanings ascribed to such terms in the Operating Agreement.

2.    **Amendment to Exhibit A.** Th Members hereby agree that the amended version of Exhibit A attached hereto shall supersede and replace in all aspects all previous versions of Exhibit A to the Operating Agreement. The Members hereby acknowledge that the ownership of Membership Interests as reflected on the attached Exhibit A properly reflect the current ownership of the Company.

3.    **Ratification.** Except as hereby specifically modified or amended, all terms, provisions and conditions of the Operating Agreement are hereby ratified and confirmed and shall remain and continue in full force and effect. Nothing contained in this Amendment is intended or shall be construed to impair the limited liability company protections afforded to the members of the Company pursuant to applicable Ohio law.

4.    **Future References to Operating Agreement.** As of and after the date hereof, all references to the Operating Agreement in any and all agreements, instruments, mortgages, conveyances, documents, notes, certificates, or writings of any nature, kind or description shall be deemed to mean the Operating Agreement as amended by this Amendment.

5.    **Miscellaneous.** This Amendment shall be construed in accordance with and governed by the laws of the State of Ohio. This Amendment may be executed in two or more counterparts (including counterparts executed by facsimile), all of which counterparts shall be deemed originals, and all of which counterparts taken together shall constitute a single instrument.

GMR 053

**In Witness Whereof,** the parties have executed this First Amendment to the Operating Agreement of the Company effective as of July 1, 2012.

Member:

Michael Riley

GMR 054

# Ohio Rock Industries, Ltd.

Operating Agreement
## Exhibit A

| Member Name | Percentage Ownership Interest |
| --- | --- |
| Michael Riley | 100% |

GMR 055

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

**This Operating Agreement** is entered into on and effective as of the 2nd day of May, 2011, by and between The Prometheus Irrevocable Trust and The Ethon Irrevocable Trust (collectively, the "Members" or individually the "Member"), and **Ohio Rock, Ltd.**, an Ohio limited liability company (the "Company").

## RECITALS

In consideration of the mutual covenants of the parties hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

## SECTION 1
## Formation Of Limited Liability Company

1.1     **Filing.** On the 2nd day of May, 2011, the current Members executed and filed Articles of Organization (the "Articles") with the Ohio Secretary of State, thereby forming a limited liability company (the "Company") under the provisions of Ohio Limited Liability Company Act set forth in Chapter 1705 of the Ohio Revised Code (the "Act") and, except as herein otherwise expressly provided, the rights and liabilities of the Members shall be as provided in that Act, as amended from time to time.

1.2     **Agreement to Maintain Status.** The Members shall take such steps as are necessary to (a) allow the Company to continue legally to conduct business, and (b) maintain its status as a limited liability company formed under the laws of the State of Ohio and its qualification to conduct business in any jurisdiction where the Company does business and is required to be qualified.

## SECTION 2
## NAME

The business of the Company shall be conducted under the name **Ohio Rock, Ltd.**, or such other names as the Members shall hereafter designate.

## SECTION 3
## DEFINITIONS

As used in this Agreement, the following terms shall have the meanings indicated.

3.1     "Agreement" means this Operating Agreement, as amended, modified or supplemented from time to time.

3.2     "Capital Contribution" means the amount of cash or the fair market value of (a) any property that a Member has contributed to the Company, or (b) services rendered to the Company by a Member in exchange for his or her Membership Interests. In addition, the Capital Contribution of a Member may include a promissory note or any other binding obligation to contribute cash, or property or to perform services; provided however that such binding obligation must be set forth in writing and signed by the Member.

GMR 056

# Ohio Rock Industries, Ltd.
## A Ohio Limited Liability Company

3.3    "Cash Available for Distribution" means and includes all funds received by the Company from (a) its operations, including interest earned on such funds, (b) borrowing or the refinancing of any indebtedness of the Company; and/or (c) the sale of any of the Company's assets (but excluding sales made to liquidate Company Property upon dissolution), and determined by the Members to be available for distribution after paying expenses, making such prepayments of indebtedness of the Company, and providing reserves for such anticipated expenses as the Members reasonably determines are necessary for the efficient and appropriate operation of the Company.

3.4    "Code" means the Internal Revenue Code of 1986, as amended.  All references to particular sections of the Code shall be deemed to include reference to corresponding provisions of subsequent federal tax law.

3.5    "Company" means the limited liability company formed pursuant to the Articles of Organization of the Company, as said company may from time to time be constituted.

3.6    "Company Property" means all real and personal property acquired by the Company and shall include both tangible and intangible property.

3.7    "Economic Interest" shall mean a Member's, or an owner's, share of the Company's Profits and Losses and Cash Available For Distribution pursuant to this Agreement and the Act, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members.

3.8    "Economic Interest Owner" shall mean the owner of an Economic Interest who may or may not also be a Member.

3.9    "Fiscal Year" means the fiscal year of the Company, and its taxable year for Federal income tax purposes, which shall be the calendar year.

3.10    "Members" mean effective as of the date first above written, those persons listed on Exhibit A, attached hereto and made a part hereof, sometimes referred to individually as "Member."

3.11    "Membership Interests" means the membership interests in the Company.  There shall be One Hundred (100) Membership Interests authorized to be issued by the Company.

3.12    "Person" shall mean any individual or entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person where the context so permits.

3.13    "Enhanced Facsimile" shall mean any facsimile service used by the Company that provides a date and time confirmation by electronic return receipt for facsimile messages.

3.14    "Death of a Member" shall mean for an individual owner a termination of the owner's life.  For an owner which is a corporation, Death shall mean the dissolution of the corporation or the termination of business operations for a period of more than thirty days.  For an owner which is a business association, such as a not-for-profit corporation, or 501(C)(3), or similar not-for-profit association, Death of a Member shall mean the revocation, termination or dissolution of said association.  For an owner which is a limited liability company, the Death of a Member shall mean the expiration of the limited liability company according to its Operating Agreement or

GMR  057

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

applicable law. For an Owner which is a limited liability partnership, shall mean the termination of the limited liability partnership by its agent or applicable law. For a partnership, Death of a Member shall mean the dissolution or termination of the said partnership unless the partners elect to continue the Partnership upon the death of the individual partner; if the partner of the partnership is a corporation, limited liability company or other business association then the previous Death of a Member definition shall apply.

3.15    "Domestic Relations" means:

(a)  a separation of marital assets where a claim is made against a Member's interest or stake in the company;

(b)  dissolution of a marriage of an individual Member;

(c)  a division of marital property for any purpose, whether it be prenuptial, post-nuptial or as part of an individual Member's estate planning.

## SECTION 4
## NATURE OF BUSINESS

The purposes for which the Company is formed and the powers which it may exercise, all being in the furtherance of, and not in limitation of, the general powers conferred upon limited liability companies by the State of Ohio, are as follows:

(a)  To accomplish any lawful purpose whatever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company or Company Property;

(b)  To borrow funds, to invest in investment grade securities and to purchase, own, sell, convey, transfer, exchange, lease, mortgage, pledge, improve, finance, operate, manage and otherwise deal with, in any manner whatever, directly or indirectly, real and personal property and any interest therein, and as security for the repayment thereof, grant mortgages and/or security interests in Company Property;

(c)  To do any and all things necessary and/or incidental to the accomplishment of the purposes hereinbefore set forth or necessary and/or incidental to the protection and benefit of the Company, and, without limiting the foregoing, to receive and/or purchase from lessees, borrowers, contractors or others, contracts, promissory notes, mortgages, security agreements and guaranties, and to make, enter into, perform and carry out any and all arrangements, contracts and agreements of every kind relating to the foregoing or in furtherance of the purposes hereinabove mentioned.

## SECTION 5

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are set forth in Exhibit A.

## SECTION 6
## TERM

The term of the Company shall commence on the date hereof and shall be perpetual, unless sooner terminated as hereinafter provided.

## SECTION 7
## PRINCIPAL PLACE OF BUSINESS

The principal place of business of the Company shall be City of Columbus, Franklin County, Ohio, United States of America, or such other place or places as the Members may designate, either within or without the State of Ohio.

## SECTION 8
## DESIGNATION OF MEMBERS AND THEIR CAPITAL CONTRIBUTIONS

8.1     Designation of Members.  The Members of the Company shall be those persons named herein and such other persons who may hereafter be admitted to the Company as Members. Exhibit A attached to this Agreement and made a part hereof sets forth the name and address of each Member as of the date of this Agreement and the Capital Contribution, if any, to be made by each Member to the Company, and the number of Membership Interests to be issued to, and owned by, each Member in exchange for his or her Capital Contribution. The amount of the Capital Contribution to be made with respect to the other authorized Membership Interests shall be such amount as may from time to time be determined by the vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote.

8.2     Capital Contributions.  No interest shall be paid on the Capital Contributions of any Member. In addition, no Member shall be obligated to make additional capital contributions to the Company, but under certain circumstances a Member may (but shall not be obligated to) lend the Company additional funds. Any funds so lent shall be repaid with reasonable interest and prior to any distributions to the Members as set forth in *Section 9* of this Agreement.  If the Company accepts a binding obligation as a capital contribution hereunder of a Member, and any such Member fails to perform any such obligation, even if unable to do so due to the death, disability, or other reason, then, at the option of the Company, the Member is obligated to contribute cash equal to the that portion of the agreed value of such binding obligation as set forth or as amended on SCHEDULE A hereof which such Member has failed to make. This right of the Company is in addition to and not in lieu of any other rights, including but not limited to, the right to specific performance, that the Company may have against the Member under this Agreement or applicable law.

## SECTION 9

GMR  059

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## DISTRIBUTIONS

9.1    **Cash Available for Distribution.** Any Cash Available for Distribution shall be distributed to the Members at such times as determined by the Members.

9.2    **Dissolution.** Upon the occurrence of a Dissolution Event (as defined in *Section 18.1* hereof), the Dissolution Member, as defined below, shall liquidate Company Property and apply and distribute the proceeds thereof as follows:

(a) The proceeds shall first be applied to the payment of the liabilities of the Company (including the repayment of any loans or advances made by Members to the Company) and the expenses of liquidation. The Dissolution Member may retain such amounts as it deems reasonably necessary as a reserve for any contingent liabilities or obligations of the Company. A reasonable time shall be allowed for the orderly liquidation of Company Property and the discharge of liabilities to creditors so as to enable the Dissolution Member to minimize the normal losses attendant upon a liquidation.

(b) Any or all proceeds remaining after paying the liabilities referred to in subparagraph (a) above shall be distributed to the Members in accordance with their Capital Accounts, after giving effect to all contributions, distributions and allocations for all periods.

9.3    **Record Date.** Any distributions to be made by the Company (whether from Cash Available for Distribution or by reason of the liquidation of the Company) will be distributed to those Members who are the owners of record of Membership Interests on the date each such distribution is made.

9.4    **No Withdrawals.** No Member shall be entitled to make withdrawals from his or her individual account except to the extent of distributions made under this *Section 9*.

## SECTION 10

## ALLOCATIONS OF PROFITS AND LOSSES

At the close of the Fiscal Year of the Company, the Members shall allocate the profits of the Company, if any, amongst the Members, provided however, if the Members allocate profits of the Company in any manner other than pro-rata according to the ownership of the Membership Interests, the Members shall be required to cause to be distributed in cash to each Member the sum of money allocated to each Member within thirty (30) days following the close of the respective Fiscal Year. In the event the Company's operation results in a loss for any Fiscal Year, the Members shall allocate such losses pro-rata to the Members in accordance with the ownership of Membership Interests.

## SECTION 11

GMR  060

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

## BOOKS AND RECORDS

11.1  **Record-keeping Requirements.**  Full and complete books and records of the Company shall be kept and maintained at all times for the Company at its offices or, subject to the provisions of the Act, at such other place or places as the Company may from time to time determine. The Company's books and records shall be kept on the cash basis, unless a different accounting method is permitted under applicable law and the Members elect to employ such method.

11.2  **Obligation to Keep Specific Records.**  In furtherance and not in limitation of the foregoing, the Company shall keep, at its principal office, all of the following:

(a)  a current list of the full names of each Member, in alphabetical order with their last known business and residence addresses;

(b)  a copy of the Articles of Organization, all amendments thereto, and executed copies of any powers of attorney pursuant to which the Articles or the amendments have been executed;

(c)  a copy of this Agreement, including all amendments thereto, and executed copies of any written powers of attorney pursuant to which this Agreement and the amendments have been executed;

(d)  copies of any federal, state and local income tax returns and reports of the Company for the three most recent years; and

(e)  copies of any financial statements of the Company for the three most recent years.

11.3  **Right to Examine Records.**  Any Member of the Company, upon written demand stating the specific purpose therefor, shall have the right to examine, in person or by agent or attorney, at any reasonable time specified by Company as hereinafter provided, and for any purpose reasonably related to the ownership of such Member's Membership Interests in the Company, any of the following:

(a)  the items set forth in *Sections 11.2 (a), (b), (c), (d) and (e)* hereof;

(b)  true and full information regarding the status of the business and the financial condition of the Company;

(c)  true and full information regarding the date on which each Member became a member and the amount of cash, and a description and statement of the agreed value of any other property or services that have been contributed by each Member and that each Member has agreed to contribute in the future; and

(d)  other information regarding the affairs of the Company that is just and reasonable.

GMR 061

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

Upon receipt of a proper written demand hereunder, the Company shall specify in reasonable time (during normal business hours on a date not to exceed thirty days from the date of the receipt of such demand) and place for such examination. In lieu of the examination of such records, the Company may, at such Member's expense, provide copies of the requested records to such Member.

11.4    **Tax Information.**  Within ninety (90) days after the end of each Fiscal Year, the Company shall transmit to all Members:

(a) The financial statements of the Company for such Fiscal Year prepared by the Company's accountants in conformity with the method of accounting utilized in preparation of the Company's Federal income tax returns.

(b) All information necessary to permit the Members to prepare all federal income tax returns that they may be required to file.

## SECTION 12
## COMPANY ASSETS

12.1    **Investments of Cash.**  The cash of the Company shall be deposited in such bank account or accounts, or invested in such interest-bearing or non-interest bearing investments, as shall be designated by the Members. All withdrawals from any such bank accounts shall be made by the authorized agent or agents of the Company. Company Property shall be separately identifiable from and not co-mingled with the assets of any other Person.

12.2    **Title to Real Estate.**  Title to any real estate owned by the Company (or to be acquired by the Company) or in which the Company has an interest may be held in the name of the Company.

## SECTION 13
## MANAGEMENT

13.1    **Member Managed.**  The management, business and affairs of the Company is to be managed by its Members.  Each Member shall have the authority to direct, manage and control the business of the Company to the best of his or her ability. Except for situations in which the approval of all of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, each Member shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.

13.2    **Authority of a Member.**  Without limiting the generality of *Section 14.1*, each Member shall have power and authority, on behalf of the Company:

(a) To acquire property from any Person as the Member may determine. The fact that a Member is directly or indirectly affiliated or connected with any such Person shall not prohibit the Member from dealing with that Person;

GMR  062

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

(b) To borrow money for the Company from banks, other lending institutions, a Member, or affiliates of a Member, on such terms as the Member deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in Company Property to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by a Member, or to the extent permitted under the Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by a Member;

(c) To purchase liability and other insurance to protect the Company's property and business;

(d) To hold and own any Company Property in the name of the Company;

(e) To invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments, and to make loans secured or unsecured;

(f) Upon the affirmative vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote, to sell or otherwise dispose of all or substantially all of the Company Property as part of a single transaction or plan so long as such disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound, provided, however, that the affirmative vote of the Members shall not be required with respect to any sale or disposition of Company Property in the ordinary course of the Company's business;

(g) To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments; bills of sale; leases; partnership agreements, operating agreements of other limited liability companies; and any other instruments or documents necessary, in the opinion of the Member, to the business of the Company;

(h) To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(i) To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Member may approve; and

(j) Upon the affirmative vote of the Members holding fifty-one percent of all of the outstanding Membership Interests eligible to vote, to authorize and approve the issuance of additional Membership Interests upon such terms and for such consideration as the Member may from time to time determine;

GMR 063

# Ohio Rock Industries, Ltd.
## A Ohio Limited Liability Company

(k) Subject to the consent of the holders of a majority of the Membership Interests pursuant to Section 16, admit to the Company additional Members in substitution of Members disposing of their Membership Interests; and

(l) To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

Unless authorized to do so by this Agreement or a Member, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable peculiarly for any purpose.

13.3   **Right to Rely on Opinions and Reports.**   In performing his or her duties or exercising his or her authority, a Member is entitled to rely on information, opinions, reports, or statements, including, but not limited to, financial statements and other financial data, that are prepared or presented by the following persons:

(a) one or more Members, officers or employees of the Company who the Member reasonably believes are reliable and competent in the matters prepared or presented; and

(b) counsel, public accountants, or other persons as to matters that the Member reasonably believes are within the person's professional or expert competence.

13.4   **Members Duties to the Company.**   A Member shall not be required to manage the Company as his/her sole and exclusive function and he/she (and any Member) may have other business interests and may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of a Member or to the income or proceeds derived therefrom. No Member shall incur any liability to the Company or to any of the Members as a result of engaging in any other business or venture.

This non-exclusivity provision can be superceded by agreement between a Member and the Company by way of employment agreement or other such instrument that specifies compliance with the Business Judgment Rule in such areas that include but are not limited to duties of loyalty, non-competition, non-disclosure, disclosures of conflicts of interest or lack thereof, and other such commitments and obligations entered into from time to time between the Company and Member.

13.5   **Bank Accounts.**   A Member may from time to time open bank accounts in the name of the Company, and the Member shall be the sole signatory thereon, unless the Member delegates otherwise.

13.6   **Indemnity of the Member, Employees and other Agents.**   The Company shall indemnify a Member and make advances for expenses to the maximum extent permitted under the Ohio Revised Code. The Company shall indemnify its employees and other agents, other than the Member to the fullest extent permitted by law, provided that such indemnification in any given situation is approved by the Members.

13.7   **Right to Rely on the Member(s).**   Any Person dealing with the Company may rely (without duty of further inquiry) upon a certificate signed by any Member as to:

GMR 064

# Ohio Rock Industries, Ltd.
*A Ohio Limited Liability Company*

(a) The identity of any Member;

(b) The existence or nonexistence of any fact or facts which constitute a condition precedent to acts by any Member or which are in any other manner germane to the affairs of the Company;

(c) The Persons who are authorized to execute and deliver any instrument or document of the Company; or

(d) Any act or failure to act by the Company or any other matters whatsoever involving the Company or any Member.

13.8    **Restrictions on Authority of an Individual Member.**    An Individual Member shall not have the authority to, and covenants and agrees that he shall not, do any of the following acts without the prior approval of the favorable vote of the Members holding fifty-one percent of all of the outstanding Membership Interest eligible to vote:

(a) Cause or permit the Company to engage in any activity that is not consistent with the purposes of the Company as set forth in Section 4 hereof;

(b) Knowingly do any act in contravention of this Operating Agreement;

(c) Knowingly do any act which would make it impossible to carry on the ordinary business of the Company, except as otherwise provided in this Operating Agreement;

(d) Confess a judgment against the Company in any amount;

(e) Possess property, or assign rights in specific property, for other than a Company purpose;

(f) Knowingly perform any act that would cause the Company to conduct business in a state which has neither connected legislation which permits limited liability companies to organize in such state nor permits the Company to register to do business in such state as a foreign limited liability company;

(g) Cause the Company to voluntarily take any action that would cause a bankruptcy of the Company;

(h) Cause the Company to acquire any equity or debt securities of any Member, or otherwise make loans to any Member;

(i) Cause a significant change in the nature of the Company's business;

(j) Sell or otherwise dispose of all or substantially all of the Company's assets other than in the ordinary course of the Company's business, except for a liquidating sale in connection with the dissolution of the Company.

GMR 065

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

## SECTION 14
## RIGHTS AND OBLIGATIONS OF MEMBERS

14.1   **No Personal Liability.**   A Member shall not be personally liable for any debts, liabilities or obligations of the Company, whether to the Company, any Member or to the creditors of the Company, beyond the amount contributed by such Member to the capital of the Company, such Member's share of the accumulated but undistributed profits of the Company, if any, and the amount of any distribution (including the return of any capital contribution) made to such Member required to be returned to the Company pursuant to the Act.

14.2   **Priority and Return of Capital.**   Except as may be expressly provided in *Section 9* and/or *Section 10*, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.

14.3   **Liability of a Member to the Company.**   A Member who fails to fulfill a binding obligation to the Company that had constituted such Member's Capital Contribution shall be liable to the Company in accordance with *Section 8.2* hereof. In addition, a member who knowingly receives any distribution or payment made contrary to the Articles of Organization or this Agreement of the Company is liable to the Company for the amount received by him that is in excess of the amount that could have been paid or distributed without a violation of the Articles or this Agreement, in accordance with Ohio Revised Statute Section 86.391.

14.4   **Agreement Among Members.**   Notwithstanding anything to the contrary contained herein, each Member's rights under this Agreement shall be subject to the restrictions set forth in certain Agreements Among Members that may from time to time be entered into between the Company and each of the Members.

## SECTION 15
## MEETINGS OF MEMBERS

15.1   **Meetings of Members.**   Meetings of the Members, for any purpose or purposes, unless otherwise prescribed by statute, may be called by any Member or Members holding at least twenty-five percent (25%) of the Membership Interests eligible to vote. Meetings need not be held annually. If Members holding at least twenty-five percent (25%) of the Membership Interests eligible to vote call for a meeting, they must notify all the Members of their desire and purpose for said meeting, the meeting place and designate the date and time of the meeting which shall be set within fourteen days following receipt of the request.

15.2   **Place of Meetings.**   The Member or Members requesting the meeting may designate any place within the county of Franklin for any meeting of the Members. If no designation is made, the place of the meeting shall be deemed to be the principal executive office of the Company in the State of Ohio.

15.3   **Notice of Meetings.**   Except as provided in Section 15.4, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than three (3) nor more than five (5) days before the date of the meeting, either

GMR 066

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

personally or by mail, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at his or her address as it appears on the books of the Company, with postage thereon prepaid. If sent by facsimile, such notice shall be deemed to be delivered one calendar day after transmission to the Member's facsimile telephone number as said number appears on the books of the Company.

15.4    **Meeting of all Members.** If all of the Members shall meet at any time and place and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting, lawful action may be taken.

15.5    **Record Date.** For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

15.6    **Quorum.** Members holding at least fifty (50) percent of all outstanding Membership Interests eligible to vote, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Membership Interests so represented may adjourn the meeting from time to time for a period not to exceed 30 days without further notice. However, if the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of outstanding Membership Interests whose absence would cause there to be less than a quorum.

15.7    **Manner of Acting; Voting by the Members.**

(a) If a quorum is present, Members should strive to achieve consensus of opinion, especially on important issues. However, for purposes of ratifying decisions made, the affirmative vote of Members holding a majority of the outstanding Membership Interests eligible to vote shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, by the Articles of Organization, or by this Agreement.

(b) Unless otherwise provided in this Agreement, each Member shall be entitled to one vote for each Membership Interest owned by a Member.

15.8    **Proxies.** At all meetings of Members a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Company representative, before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

GMR 067

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

15.9  **Action by Members Without a Meeting.**  Action required or permitted to be taken at a meeting of Members eligible to vote may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member whose vote or consent is necessary to take such action. Action taken under this Section is effective when all such Members have signed the consent, unless the consent specifies a different effective date. The record date for determining Members entitled to take action without a meeting shall be the date the first Member signs a written consent.

15.10  **Waiver of Notice.**  When any notice is required to be given to any Member, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

## SECTION 16
## TRANSFERABILITY OF MEMBERSHIP INTERESTS

Except as otherwise specifically provided in this Agreement, no Member shall sell, assign, transfer, pledge, or encumber his or her Membership Interest during his or her lifetime without the prior written consent of all of the Members.

## SECTION 17
## ADDITIONAL MEMBERS

From the date of the formation of the Company, any Person or entity acceptable to the holders of a majority of the outstanding Membership Interests many become a Member in the Company either by the issuance by the Company of Membership Interests for such consideration as shall be determined, or as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement. No new Members shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company.

## SECTION 18
## DISSOLUTION OF THE COMPANY

18.1  **Dissolution Events.**  The Company shall be dissolved upon the occurrence of any of the following events ("Dissolution Events"):

(a)  The dissolution of the Company by court decree;

(b)  Upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of a Member, or occurrence of any other event which terminates the continued membership of a Member in the Company (a "Withdrawal Event"), unless the business of the Company is continued with the affirmative vote of Members holding at least fifty (50) percent of all the outstanding Membership Interests eligible to vote within 90 days after the Withdrawal Event and there is at least one remaining Member;

GMR 068

# Ohio Rock Industries, Ltd.
## A Ohio Limited Liability Company

(c) The dissolution of the Company as a result of the decision by the Members owning two-thirds (2/3) of the Membership Interests eligible to vote; or

(d) Upon the occurrence of the expiration date of the term of the Company, if any, as provided in Section 6 of this Agreement.

18.2   **Death or Incompetency.** Without limiting the requirements of *Section 16*, if a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his or her person or property, the Member's executor, administrator, guardian, conservator, or other legal representative ("Successor") may exercise all of the Member's rights for the purpose of settling his or her estate or administering his or her property, provided, however, that for purposes of *Section 16*, *Section 17* and *Section 18.1(b)*, the Successor shall not be considered a Member and shall have no right to vote, approve or consent to any matter pursuant to such provisions.

18.3   **Voluntary Withdrawal.** Except as expressly permitted in this Agreement, a Member shall not take any action that directly causes a Withdrawal Event. Unless otherwise approved by Members owning fifty-one percent of the Membership Interests eligible to vote, a Member who resigns (a "Resigning Member") or whose Membership Interest is otherwise terminated by virtue of a Withdrawal Event, regardless of whether such Withdrawal Event was the result of a voluntary act by such Resigning Member, shall be entitled to receive distributions only through the date of resignation or the date of the Withdrawal Event to which such Resigning Member would have been entitled had such Resigning Member remained a Member (and only at such times as such distribution would have been made had such Resigning Member remained a Member). Except as otherwise expressly provided herein, a Resigning Member shall become an Economic Interest Owner. Damages for breach of this *Section 18.3* shall be limited to monetary damages only (and not specific performance) and recoverable only by offset against distributions by the Company to which the Resigning Member would otherwise be entitled.

18.4   **No Recourse.** Each Member shall look solely to Company Property for all distributions with respect to the Company and for the return of his or her Capital Contribution and shall have no recourse therefor against any other Member. The Members shall not have any right to demand or receive property other than cash upon dissolution and termination of the Company or to demand the return of their Capital Contributions to the Company prior to dissolution and termination of the Company.

18.5   **Winding Up.** Upon the occurrence of a Dissolution Event, the Members will elect an individual Member (the "Dissolution Member") to proceed with the winding up of the affairs of the Company, and Company Property shall be applied and distributed in accordance with the provisions of *Section 9.2* of this Agreement. If the Dissolution Member, in his or her sole discretion, so determines, a pro rata portion of the distributions that would otherwise be made to the Members pursuant to said *Section 9.2* may be:

(a) distributed to a trust established for the benefit of the Members for the purposes of liquidating Company Property, collecting amounts owed to the Company, and paying any contingent or unforeseen liabilities or obligations of the Company or of the Members arising out of or in connection with the Company. The assets of any such trust shall be distributed to the Members from time to time, in the same

GMR 069

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

proportions as the amount distributed to such trust by the Company would otherwise have been distributed to the Members pursuant to this Agreement; or

(b) withheld to provide a reasonable reserve for the Company's liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations owed to the Company, provided that such withheld amounts shall be distributed to the Members as soon as practicable.

18.6    **No Effect from Technical Liquidation.**  Notwithstanding any other provision of this Agreement, in the event the Company is liquidated within the meaning of U.S. Treas. Regulations Section 1.704-1(b)(2)(ii)(g) but no Dissolution Event has occurred, the Company's property shall not be liquidated, the Company's liabilities shall not be paid or discharged, and the Company's affairs shall not be wound up. Instead, the Company shall be deemed to have distributed Company Property in kind to the Members, who shall be deemed to have assumed and taken subject to all of the Company's liabilities, all in accordance with their respective Capital Accounts. Immediately thereafter, the Members shall be deemed to have recontributed the Company's property in kind to the Company, which shall be deemed to have assumed and taken subject to all such liabilities.

18.7    **Statement Furnished.**  Following the winding up of the affairs of the Company, each of the Members shall be furnished with a statement which shall set forth the assets and liabilities of the Company as of the date of the complete liquidation. Upon compliance by the Dissolution Member with the foregoing, the Members shall cease to be such, and the Dissolution Member, or the Company, shall execute and cause to be filed a certificate of dissolution of the Company and any and all other documents necessary with respect to termination and dissolution.

## SECTION 19
## EMPLOYMENT OF MEMBERS

Any Members who provides services to the Company shall be an employee-at-will, subject to immediate discharge with or without cause or notice, unless the Member has entered into a separate written employment agreement by and between such Member and the Company, or such terms and conditions which normally are included in an employment agreement have been set forth below in this Agreement or any amendment or addendum hereto. No Member, who is an individual, shall be considered an employee of the Company by virtue of owning one or more Membership Interests.

## SECTION 20
## NOTICES

All notices and demands required or permitted under this Agreement shall be in writing and may be sent by U.S. mail, first class, postage prepaid, overnight air courier, personal delivery, or electronic enhanced facsimile with receipt notification to the Members at their addresses as shown from time to time on the records of the Company. Any Member may specify a different address by notifying the other Members in writing of such different address. Such notices shall be deemed given three (3) days after mailing, the day after transmission by enhanced facsimile, the day after deposit with an overnight courier or when delivered in person, as the case may be.

GMR  070

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## SECTION 21
## AMENDMENT OF OPERATING AGREEMENT

21.1    **Clarification Amendments.** This Agreement may be amended by a Member without the approval of all of the Members if such amendment is solely for the purpose of clarification and does not change the substance hereof and the Company has obtained the opinion of its counsel to that effect.

21.2    **Amendments Admitting Members.** This Agreement may further be amended by a Member without the approval of all of the Members if such amendment is for the purpose of admitting or substituting Members in accordance with this Agreement.

21.3    **Amendments to Satisfy Changes in Law.** This Agreement may further be amended by a Member without the approval of all of the Members if such amendment is, in the opinion of counsel for the Company, necessary or appropriate to satisfy requirements of the Code or the Regulations with respect to partnerships or of any federal or state securities laws or regulations. Any amendment made pursuant to this paragraph may be made effective as of the date of this Agreement.

21.4    **Other Amendments.** Except as otherwise specifically provided in this *Section 21*, amendments to this Agreement or the Articles of Organization shall require the written consent of the Members holding a majority of the Membership Interests of the Company.

## SECTION 22
## POWER OF ATTORNEY

22.1    **Appointment.** Each of the Members irrevocably constitutes and appoints the other Member (the "Member POA"), with full power of substitution, his or her true and lawful attorney in his or her name, place and stead to make, execute, acknowledge, deliver and file:

(a) Any certificate or other instrument which may be required to be filed by the Company under the laws of the State of Ohio or of any other state or jurisdiction in which the Member POA shall deem it advisable to file;

(b) Any documents, certificates or other instruments, including, without limiting the generality of the foregoing, any and all amendments and modifications of this Agreement or of the instruments described in subparagraph (a) above which may be required or deemed desirable by the Member POA to effectuate the provisions of any part of this Agreement, and, by way of extension and not in limitation, to do all such other things as shall be necessary to continue and to carry on the business of the Company; and/or

(c) All documents, certificates, or other instruments which may be required to effectuate the dissolution and termination of the Company, to the extent such dissolution and termination is authorized hereby.

GMR 071

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

In addition to the foregoing, each of the Members hereby ratifies the execution and filing of the Articles of Organization by the Company's statutory agent on behalf of such Member pursuant to this power of attorney, to the extent that the same is applicable to such Member.

    22.2    **Survival of Appointment.**  It is expressly intended by each of the Members that the power of attorney set forth in *Section 22.1* is coupled with an interest, is irrevocable and shall survive the death, incompetence or adjudication of insanity of each such Member. The foregoing power of attorney shall survive the delivery of an assignment by any Member of his or her entire interest in the Company, except that where an assignee of such entire interest has become a Member, then the foregoing power of attorney of the assignor Member shall survive the delivery of such assignment for the sole purpose of enabling the Member POA to execute, acknowledge edge and file any and all instruments necessary to effectuate such substitution.

## SECTION 23
## CREDITOR SITUATIONS

    The Members believe it is in the Company's best interest to provide for a mechanism to deal with any claim, attachment, levy, assessment, garnishment, execution, charging order or similar action by a creditor of a Member or Economic Interest Owner (a "Creditor Situation"), which may negatively impact the Company, its assets or may result in changing the composition of the membership. The Members believe that if a claim is made against a Member's Membership Interests or stake in the Company by a creditor of such Member, the foundation of the Company and the intricacies of the partnership concept may be compromised. Therefore, upon the occurrence of a Creditor Situation, for a Member who is affected by such Creditor Situation, so that such Member may not be able to perform obligations, or may be diverted from pursuing Company objectives, the following shall occur:

    (a)  Emergency Power of Attorney.  If a Creditor Situation occurs, the Member experiencing such Creditor Situation automatically appoints the other Members as the affected Member's attorney-in-fact to take such legal action as is necessary and prudent under the circumstances. This appointment shall terminate when the Creditor Situation has been resolved to the Company's satisfaction or unless otherwise agreed to be so terminated by the other Members.

    (b)  Creditor's Claim.  If the creditor of a Member makes a claim against the Member's Membership Interest or stake in the Company, the other Members shall have the right to purchase the effected Member's Membership Interests pursuant to the terms and conditions of this Agreement as determined in accordance with subparagraph (c) as set forth below, except as otherwise modified in this *Section 23, Creditor Situation*. The purchase price shall be 25% of the purchase price as determined in sub-paragraph (c) below minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants and/or attorneys to evaluate these matters on behalf of the Company, if any.

    (c)  Purchase Price.  The purchase price for Membership Interests to be purchased pursuant to this *Section 23, Creditor Situations* shall be Fair Market Value.  Fair Market Value shall be determined by a qualified and mutually acceptable third party selected by the Members.

GMR 072

# Ohio Rock Industries, Ltd.
### *A Ohio Limited Liability Company*

## SECTION 24
## DOMESTIC RELATIONS SITUATIONS

The Members believe it is in the Company's best interest to provide for a mechanism to deal with any Domestic Relations situations which may negatively impact the Company. The Members believe that if a claim is made against a Member's interest or stake in the Company by division of marital assets whether for prenuptial, post-nuptial or estate planning purposes, the foundation of the Company and the intricate governance may be compromised. Therefore, upon the occurrence of a Domestic Relations situation the Membership Interest owner who is affected may not be able to perform obligations, or may be diverted from pursuing Company objectives, and so the following shall occur:

(a) Emergency Power of Attorney. If a Domestic Relations situation occurs the Member experiencing a Domestic Relations situation (the "Affected Owner") automatically appoints the other Members as the Affected Owner's attorney-in-fact to take such legal action as is necessary and prudent under the circumstances. This appointment shall terminate when the Domestic Relations situation has come to its full conclusion or unless otherwise agreed to be so terminated by the other (unaffected) Members.

(b) Marital Asset Claim. If the spouse or marital partner of an Affected Owner makes a claim against the Membership Interests or stake in the Company, the other Members shall have the right to purchase the Affected Owner's Membership Interests pursuant to the terms and conditions of this Agreement as determined in subparagraph (c) as set forth below, and except as herein modified in this *Section 24, Domestic Relations Situations.*

(i) If the claim can be resolved by the Affected Owner entering into an agreement for the dissolution of the marriage or domestic partnership, then the purchase price shall be 75% of the purchase price as determined in subparagraph (c) as set forth below, minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any;

(ii) If the claim involves a contested divorce or dissolution, then the purchase price shall be 50% of the purchase price as determined in subparagraph (c) as set forth below, minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any;
Separation

(iii) If the domestic relations situation involves contesting a prenuptial or post-nuptial agreement, then the purchase price shall be 50% of the purchase price as determined in subparagraph (c) as set forth below, hereof minus an amount equal to the expenses incurred by the Company for expert witnesses, consultants, accountants or attorneys to evaluate these matters on behalf of the Company, if any.

(c) Purchase Price. The purchase price for Membership Interests to be purchased pursuant to this *Section 24, Creditor Situations* shall be Fair Market Value. Fair Market Value shall be determined by a qualified and mutually acceptable third party selected by the Members.

GMR 073

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

## SECTION 25
## MISCELLANEOUS

25.1    **No Partnership Intended for Non-Tax Purposes.** The Members form the Company pursuant to the Act, and expressly did not and do not intend to form a partnership or limited partnership. The Members do not intend to be partners one to another, or partners as to any third party. To the extent any Member, by word or action, represents to another person that any other Member is a partner or that the Company is a partnership, the Member making such wrongful representation shall be deemed to have misspoken, but if such representation was willful, such Member is liable to any other Member who incurs personal liability by reason of such wrongful representation.

25.2    **Rights of Creditors and Third Parties Venue This Agreement.** This Agreement is entered into among the Members for the exclusive benefit of the Company, its Members, and their successors and permitted assignees. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by Ohio Revised Statute Section 86.401, no creditor or third party shall have any rights under this Agreement or any agreement between the Company and any Member with respect to any Capital Contribution or otherwise.

25.3    **Entire Agreement.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof. It supersedes any prior agreement or understandings between them relating to the subject matter hereof, and it may not be modified or amended in any manner other than as set forth herein.

25.4    **Governing Law; Venue.** This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the local laws of the State of Ohio, and the courts of the State of Ohio shall have exclusive jurisdiction, and the courts of Franklin County, Ohio, where the Company's principal place of business is located, shall have exclusive venue over disputes arising herefrom.

25.5    **Binding Effect.** Except as herein otherwise specifically provided, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns.

25.6    **Captions.** Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provision thereof.

25.7    **Gender.** Where necessary or appropriate to the meaning hereof, the singular and the plural shall be deemed to include each, and the masculine, the feminine and the neuter shall be deemed to include each other.

25.8    **Invalidity.** If any provision of this Agreement, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected hereby.

GMR 074

# Ohio Rock Industries, Ltd.
## *A Ohio Limited Liability Company*

25.9   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

25.10   **Not for Benefit of Creditors.** The provisions of this Agreement are intended only for the regulation of relations among the member and the Company. This Agreement is not intended for the benefit of nonmember creditors and does not grant any rights to, or confer any benefits on, nonmember creditors or any other person who is not a member.

**In Witness Whereof,** the undersigned Members have executed this Agreement as of the date first set forth above.

**Members**

By:  The Prometheus Irrevocable Trust

By: _____   *May 2, 2011*
    Marc Dunn, Trustee

By:  The Ethon Irrevocable Trust

By: _____   *May 2, 2011*
    Marc Dunn, Trustee

GMR 075

# Ohio Rock Industries, Ltd.

### Operating Agreement
### <u>Exhibit A</u>

| <u>Member Name</u> | <u>Percentage Ownership Interest</u> |
|---|---|
| The Prometheus Irrevocable Trust | 50% |
| The Ethon Irrevocable Trust | 50% |

GMR  076

Print

**From:** Mike Riley (mriley@ohiorockindustries.com)
**To:** panderson.hre@att.net;
**Date:** Thu, October 11, 2012 2:33:30 PM
**Cc:** mriley@ohiorockindustries.com;
**Subject:** Fwd: 50 shady

Sent from my iPhone

Begin forwarded message:

> **From:** <Yuge.Bi@wellsfargo.com>
> **Date:** October 11, 2012, 11:50:48 AM EDT
> **To:** <mriley@ohiorockindustries.com>
> **Subject: 50 shady**
>
> Mike: See below --
>
> Pre closing issues with this file.
>
> 1. Company is listed in West Virginia and Ohio using same agent/same address
>
> 2. Per agent if they have a company in Ohio they also have to register the company in WV (???)
>
> 3. AOI for WV shows The ethon Irrevocable Trust and The Prometheus Irrevocable Trust as – advise agent I will need to see trust documents for these trust. AOI for ohio does not show owners.
>
> 4. Received a letter from buyer's attorney and buyer's bank stating George Riley is the owner-unacceptable- I will need to review documents filed with the state showing owners.
>
> 5. Informed agent buyer has 24 hours to return the following documents. If documents are not returned property will be reverted back to listed. Agent is not allowed to resubmit the offer for the same buyer unless information requested is provided first.
>
>    1. Trust documents for both trusts.
>
>    2. Operating Agreement showing owners of the company for both states Ohio and West Virginia.
>
> 6. Received a revised counter with a name change to George Michael Rile Sr which is unacceptable, in order to change from company to individual we need evidence the individual has ownership in the company and an addendum changing the name.

**Yuge Bi**
REO Repair Coordinator
Premiere Asset Services
Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328
MAC X2301-049
Email: Yuge.Bi@WellsFargo.com
Direct Phone: 515-324-2513
Fax number: 855-694-0268

www.pasreo.com
CONFIDENTIALITY NOTICE:  This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable law.  If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited.  Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

Print

**From:** James Harris (jhre@msn.com)
**To:** panderson.hre@att.net;
**Date:** Thu, October 11, 2012 9:35:32 AM
**Cc:**
**Subject:** FW: 50 SHADY STREET / 0137079331B


*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517


From: Yuge.Bi@wellsfargo.com
To: jhre@msn.com; Adalberto.O.Hermida@wellsfargo.com; mriley@ohiorockindustries.com
Date: Wed, 10 Oct 2012 17:40:08 -0400
Subject: 50 SHADY STREET / 0137079331B

Hello Adalberto, J.B.

Just wanted to give a heads-up to you guys, I just spoke with Mike, he informed me that he wanted to change the owner's name of the subject property. He previous used his company Ohio Rock as the name, but he informed a moment ago to me that he wanted to use a personal name as the owner of the property. I have advised Mike to contact you J.B. on this, so you guys can work the issue out, thank you!

**Yuge Bi**
REO Repair Coordinator
Premiere Asset Services
Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328
MAC X2301-049
Email: Yuge.Bi@WellsFargo.com
Direct Phone: 515-324-2513
Fax number: 855-694-0268

www.pasreo.com
CONFIDENTIALITY NOTICE:  This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable law.  If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited.  Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

Print                                                                                                          Page 1 of 1

**From:** Pam Anderson (panderson.hre@att.net)
**To:** Yuge.Bi@WellsFargo.com;
**Date:** Thu, October 11, 2012 8:16:19 AM
**Cc:**
**Subject:** 50 SHADY STREET / 0137079331B

Hi Yuge

Please find attached the buyer signed contract. Changing the buyers name from his business name to his personal name. I have uploaded a copy of the contract for the asset manager.

Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

**From:** Yuge.Bi@wellsfargo.com
**To:** jhre@msn.com; Adalberto.O.Hermida@wellsfargo.com; mriley@ohiorockindustries.com
**Date:** Wed, 10 Oct 2012 17:40:08 -0400
**Subject:** 50 SHADY STREET / 0137079331B

Hello Adalberto, J.B.

Just wanted to give a heads-up to you guys, I just spoke with Mike, he informed me that he wanted to change the owner's name of the subject property. He previous used his company Ohio Rock as the name, but he informed a moment ago to me that he wanted to use a personal name as the owner of the property. I have advised Mike to contact you J.B. on this, so you guys can work the issue out, thank you!

**Yuge Bi**
REO Repair Coordinator
Premiere Asset Services
Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA 50328
MAC X2301-049
Email: Yuge.Bi@WellsFargo.com
Direct Phone: 515-324-2513
Fax number: 855-694-0268

www.pasreo.com
CONFIDENTIALITY NOTICE: This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable law. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited. Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

GMR  079

# PREMIERE
## ASSET™ SERVICES

### COUNTER OFFER

| | | | |
|---|---|---|---|
| Date: | **10/05/2012** | Buyer: | George Michael Riley Sr. |
| | | Seller: | Owner of Record |

This is a Counter Offer dated **10/05/2012**, regarding property located at **50 SHADY STREET, WHEELING, WV, 26003** and supersedes any prior offers, purchase agreements or other documents previously executed in connection with the property between Owner of Record, Seller, and Buyer. All terms and provisions of any offer, purchase agreement or other documents, including the Seller's Addendum executed in connection with the property which are not amended by this Counter Offer shall remain effective.

1. Sales price to be **$4,000.00**
2. Buyer is to deposit earnest money in the amount of **$1,000.00** in listing agent's escrow account or with Seller's closing agent upon acceptance of this Counter Offer. Seller will not execute any contract for purchase without written proof of the Buyer's earnest money deposit.
3. Seller will make no repairs or inspections to the subject property unless expressly addressed in this Counter Offer or the Seller's Addendum. Should the property sustain any material damage after the acceptance of an offer or prior to closing under contract for purchase, Seller, in its sole discretion shall have the option to a) terminate the offer/contract, b) re-negotiate the sales price, or c) proceed with repairs. In the event the Seller elects option b) or c), the Buyer may either a) proceed with the transaction or b) terminate the offer/contract and receive a refund of the Buyer's deposit.

   Should any lender or any insuring entity or agency require that repairs to the property be made or that certain conditions be met, the Seller, at its sole option, may comply with such requirements or terminate the contract for purchase. Further, should any FHA Conditional Commitment or VA Certificate of Reasonable Value vary from the agreed upon purchase price of the property, then Seller, at its sole option, may terminate the contract for purchase.

   Seller will pay a maximum of **$0.00** toward lender required repairs only. If lender required repairs are less than **$0.00**, any excess shall be credited back to the Seller. Buyer must provide a list of required repairs in writing from the lender. Bids are required for repairs and must be supplied to the Seller from bonded, licensed vendors for review and approval. All work will be scheduled and coordinated by the listing agent. Repairs will not be authorized until Buyer provides documentation of full mortgage commitment.

4. Termite inspection will be the responsibility of the BUYER. Any termite corrective work and/or treatment will be at the expense of the BUYER, unless otherwise agreed upon herein.

   MatterID: 362174                               Buyer Initials _____ | _____

10/05/2012 FRI 19:24  FAX 3044850267 Blennerhassett Hotel                                    ☒006/006

# PREMIERE
## ASSET℠ SERVICES

Address:  **50 SHADY STREET, WHEELING, WV,**        Buyer:  George Michael Riley Sr.
**26003**

5. Closing is to occur on or before **11/06/2012**. Time is of the essence. No extension of the closing date will be given without prior written approval of the Seller. Seller reserves the right to unilaterally extend closing date if legible copies of the executed purchase contract are not received in a timely manner. The Buyer shall be charged a fee of $50.00 per calendar day for any extension of the escrow period past the closing date of 11/06/2012, to be paid to and collected by the closing agent at the time such extension is granted. The Buyer shall not be obligated for any delays caused by the Seller's title company/closing agent. All funds must be paid according to the closing/escrow agent's instructions for receipt prior to the closing.

The closing will occur at the office or physical location of Seller's choice. Buyer may use counsel of choice as representation at settlement, at Buyer's expense. Seller will pay for Owner's title policy if closing occurs at Seller's directed office and the Owner's policy is ordered through closing office listed below, provided however, in states where Seller's representative is prohibited from providing title and settlement services to the Buyer, Seller will not pay the cost of an Owner's title policy issued by Buyer's representative or other settlement costs incurred by the Buyer. Seller's representation will be:

Name:                          ServiceLink
                               Attn: Kim, Arndt
Address:                       400 Corporation Drive,
                               Aliquippa,
                               PA,
                               15001
Phone#:                        855-264-4930
Fax#:                          866-320-6162

6. Seller will not pay any amounts towards Buyer's closing costs, non-allowables expenses, pre-paid amounts or points. Only costs specifically agreed to in the Counter Offer will be paid by the Seller on behalf of the Buyer, which amounts are inclusive of any previously offered incentives.
7. Agent commission will be paid in accordance with the listing agreement. Agent commission will be based on the sales price of **$4,000.00**. If property does not close, no commission will be paid.
8. All pro-rations, including without limitation, pro-rations of any and all taxes, fees, utilities, homeowner or condominium association assessments and dues and any and all other charges against the property reflected on the settlement statement and executed by the Seller are final. No adjustments or payments will be made by the Seller after closing.
9. **FINAL OFFER ACCEPTANCE IS SUBJECT TO INVESTOR APPROVAL.**
10. No other incentives apply. Any incentives agreed to be paid hereunder shall be paid at closing. In the event that the purchase transaction is not consummated, regardless of fault or reason, the Seller shall not be obligated to pay any such incentives.

MatterID: 362174                                    Buyer Initials ___ | _____

GMR  081

10/05/2012 FRI 19:24  FAX 3044850267 Blennerhassett Hotel                                                  ☑005/006

# PREMIERE
## ASSET™ SERVICES

Property Address:          50 SHADY STREET, WHEELING, WV, 26003

This Counter Offer, the attached Seller's Addendum, the attached Property Condition Addendum, and any state specific contract must be signed and initialed by Buyer(s) and returned to Seller within two (2) business days. If these documents are not returned within two business days, or by **10/09/2012**, Seller reserves the right to terminate this transaction for non-performance by Buyer(s).

Date _10- 5 - 12_____

_George Michael Riley SR_
Buyer Name (printed)                              Buyer (signature)
Buyer Email Address _MRiley @ OhioRiver_         Buyer Phone Number (740) _232 - 5633_
_Industries. com_

Date _____


_____              _____
Buyer Name (printed)                              Buyer (signature)
Buyer Email Address _____              Buyer Phone Number ( ) _____

Buyer email address and Buyer phone number information will be used for internal purposes only and will not be used to solicit the purchaser.

Date _____


_____              _____
Seller Name (printed)                             Seller (signature)

MatterID: 362174 ·                                           Buyer Initials_____|_____

GMR  082

# PREMIERE
## ASSET™ SERVICES

Property Address:          **50 SHADY STREET, WHEELING, WV, 26003**

### STANDARD SELLER'S ADDENDUM

This Seller's Addendum is attached to and is a part of the offer, purchase agreement or other documents executed in connection with the purchase of the property. The Seller's Addendum will supersede the offer, purchase agreement or other documents executed in connection with the purchase of the property where provisions of this Seller's Addendum amend the provisions of such documents. The following terms and conditions are accepted and incorporated into the offer, purchase agreement or other documents executed in connection with the purchase of the property, subject to the following, and in accordance with certain state requirements. Paragraphs in the offer, purchase agreement or other documents executed in connection with the purchase of the property which require initials by all parties, but are not initialed by all parties, are excluded from the final agreement. Unless otherwise specified in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original offer.

1. Property is sold in its present "As Is" condition with no warranties, repairs, or inspections completed by the Seller, unless otherwise expressly addressed in the Counter Offer or this Seller's Addendum. Buyer agrees that by closing hereunder Buyer has received no promises as to condition and no warranties, and has been afforded an opportunity to obtain an inspection by an inspector of Buyer's choosing. Buyer acknowledges that Seller obtained the Property through foreclosure or similar process and that Seller has not occupied the Property. No personal property is included in this sale, unless otherwise specified.

2. Buyer agrees that in contracting to buy the property, Buyer has not relied upon any representation made by the Seller or Wells Fargo Home Mortgage, or any parent, subsidiary or affiliate thereof, or any of their officers, directors, employees, agents or representatives.

3. In order for an offer to be considered, Buyer must present a prequalification letter from Wells Fargo Home Mortgage, an entity which is a joint venture with Wells Fargo Home Mortgage, or Neighborhood Assistance Corporation of America (NACA). A Buyer who is not interested in comparing any other financing options, may also present proof of a loan commitment or credit decision pre-approval from another lender.

4. Buyer shall have seven (7) calendar days from the date of the fully executed purchase contract to declare the contract null and void as a result of inspection findings. After the seventh (7th) calendar day, Buyer is obligated to complete the purchase or forfeit their earnest money deposit.

5. Buyer is advised that Seller works closely with certain escrow companies, title companies, title agents, title attorneys, and other closing agents that are familiar with Seller's forms, documents, procedures, and special requirements. By utilizing such entities, Seller is generally able to achieve closings quickly and efficiently. Unless Buyer chooses otherwise, Seller will refer the contract with a company, attorney or agent of Seller's choice to perform all necessary title services and products either itself or through a title company chosen by Seller, except in those states where Seller's representative is prohibited from performing such services for the benefit of both parties. Buyer is advised that the use of such companies, attorneys or agents is not required, nor a condition of the sale of the property to Buyer.

6. Closing to occur at the office or physical location of Seller's choice. Buyer may use counsel of their choice to represent the Buyer at closing at Buyer's expense.

7. Seller will pay for Seller's closing costs agreed to with Seller's preferred closing office as well as any costs agreed to in the Counter Offer at closing. If Listing/Selling Agent or Buyer initiates title or closing with an attorney or closing office other than that of Seller's choice; any additional Seller closing costs beyond those that would be charged at Seller's preferred closing office, including but not limited to, title, closing and miscellaneous fees, will be the responsibility of the Agent or Buyer.

8. Seller does not agree to arbitration and mediation.

    MatterID: 362174                                          Buyer Initials _____ | _____

GMR 083

10/05/2012 FRI 19:23   FAX 3044850267 Blennerhassett Hotel                    ☒003/006

# PREMIERE
## ASSET™ SERVICES

Property Address:      **50 SHADY STREET, WHEELING, WV, 26003**

9. Seller will not assign to Buyer any rights to any insurance claims or proceeds covering destruction or damage to property. Seller's insurance policies are non-transferable and will not be prorated at closing.
10. The originally executed offer or purchase contract and all addenda (or clear facsimile copy) must be received by date specified in the Counter Offer. Otherwise, Seller may terminate the contract for purchase and the escrow with the escrow holder for Buyer's non-performance. The original purchase contract including all original offers and counter offers are subject to review and signature by Seller.
11. Buyer is aware that the property will remain on the market during the counter offer stages and that any and all offers will be considered.
12. This contract may be assigned by the Buyer, to another buyer or the Buyer may add a co-buyer to this contract upon written request submitted to Seller, and approved by Seller in it's sole discretion; provided, that the assignee or co-buyer meets the requirements of Paragraph 3 and Paragraph 32 hereunder and executes the Counter Offer, Seller's Addendum and any other offer, purchase agreement or other documents relative to the transaction.
13. This property may be subject to ground rent, the Seller will not redeem the ground rent.
14. Any special assessments, municipal assessments, or liens that are due or incurred after closing will be the responsibility of the Buyer. Seller does not agree to comply or bring property into compliance with any violation notices or requirements noted or issued by any governmental authority, or actions in any court on account thereof, against or affecting the property as of the date of closing of this contract, unless expressly addressed in this Seller's Addendum or the Counter Offer. Buyer specifically agrees to comply or bring property into compliance with any government code or other requirements.
15. The Seller requires three (3) full business days prior to closing to review and execute any lender-required documents, HUD1, and/or any other documents requiring the Seller's signature. The Seller cannot be responsible for any loss or damage due to closing being delayed if the Seller is not given three (3) full business days for review and execution of these items.
16. **Prohibited sale: Employees and family members residing with employees of Wells Fargo Bank, N.A., its affiliates or subsidiaries or Wachovia Corporation, its affiliates and subsidiaries are strictly prohibited from directly or indirectly purchasing any property owned or managed by Premiere Asset Services. The agent or employees of the agent or agency and family members residing with the agent or employees of the agent or agency are prohibited from directly or indirectly purchasing any property owned or managed by Premiere Asset Services and listed by the agent or agency or any property for which the agent has performed services. For purposes of this paragraph "family member" is defined as a spouse, domestic partner, parents, grandparents, children, grandchildren, brothers and sisters, including in all cases, step-family members.**

Buyer Initial _____ | _____
17. If the Buyer alters the property or causes the property to be altered in any way and/or occupies the property or allows any other person to occupy the property prior to closing without the prior written consent of the Seller, such event shall constitute a breach of contract by the Buyer and the Seller may terminate the contract to purchase. Buyer shall be liable to the Seller for damages caused by any such alteration or occupation of the property prior to closing and funding and waives any and all claims for damages or compensations for improvements made by the Buyer to the property including, but not limited to, any claims for unjust enrichment.
18. Title to the property will be conveyed via special/limited warranty deed or such other form of deed acceptable in jurisdiction where the property is located. Notwithstanding any legal description in any offer, addenda or counter offer, the legal description according to title report shall control.
19. Seller will not provide a survey, appraisal or a home warranty, unless otherwise specified in the Seller's Counter Offer. Should the Seller agree to pay for a home warranty, Seller will provide home warranty from a company of its sole choosing after closing.
20. If applicable, retrofit to be paid by Buyer(s). Seller represents that the property as of the close of escrow, will be compliance with Health and Safety code 19211 by having water heaters braced, anchored or strapped in place in accordance with these requirements. (California only)

MatterID: 362174                                      Buyer Initial _____ | _____

GMR  084

10/05/2012 FRI 19:23  FAX 3044850267 Blennerhassett Hotel                          ☒002/006

# PREMIERE
## ASSET™ SERVICES

Property Address:        **50 SHADY STREET, WHEELING, WV, 26003**

21. All pro-rations, including without limitation, pro-rations of any and all taxes, fees, utilities, homeowner or condominium association assessments and dues and any and all other charges against the property as reflected on the settlement statement executed by the Seller are final. No adjustments or payments will be made by the Seller after closing. Tax Pro-rations shall be based upon 100% of the last ascertainable actual tax bill and shall be final as of closing. There shall be no pro-ration adjustment. Tax pro-rations which are not yet due and payable will not be allowed as closing costs. This paragraph controls all pro-rations as described, regardless of language to the contrary in any offer, addendum or counter offer.

22. Seller shall have a minimum of thirty (30) days from the earlier of the closing date or the date upon which Seller receives a copy of a title insurance commitment/title report within which to resolve title exceptions, defects, or other title issues which in any way impede or impair Seller's ability to convey insurable title. If, within such thirty (30) day period, Seller determines that it is unable or unwilling to resolve such matters, the Buyer (1) may take title in its then state, thereby waiving any title objections, or (2) terminate the contract and receive a refund of any deposit as Buyer's sole and exclusive remedy. Alternatively, in such circumstances, Seller may terminate the contract and refund Buyer's deposit, such refund being Buyer's exclusive remedy for such termination. In the event Seller fails to resolve such issues within the aforesaid thirty (30) day period, it shall be presumed that Seller has determined that it is unable or unwilling to resolve such issues.

23. Seller shall deliver possession and occupancy of the property upon close of escrow. The property will be delivered vacant unless otherwise agreed in writing or if the paragraph below is initialed. If, prior to close of escrow, Seller notifies Buyer it will be unable to deliver the property vacant, Buyer may cancel this contract within five (5) calendar days after receipt of such notice or prior to the close of escrow, whichever is earlier, and Seller's inability to deliver the property vacant shall not be deemed a breach of this contract. If Buyer accepts the property occupied, Buyer takes the property subject to any applicable rent, vacancy or occupancy control which are matters to be investigated by Buyer.

**Pursuant to section 702 of the Protecting Tenants at Foreclosure Act (the Act), Seller has determined that the property is occupied by a bona fide tenant with a bona fide lease and that the property will be delivered at close of escrow with the tenant occupying the property. A copy of the lease provided by the tenant to Seller has previously been presented to Buyer for inspection. It is the responsibility of the Buyer to review the Act and to comply with the provisions thereof. In particular, should the Buyer intend to occupy the property as a primary residence, it shall be the obligation of the Buyer to comply with the notice provisions of section 702 (a)(2)(A) of the Act and Buyer shall be responsible for all legal and other actions, including attorneys' fees and costs, necessary to gain possession of the property.**

                                                    Buyer Initials _____ |_____

24. The Buyer shall not be allowed, under any circumstance, to receive funds from the closing that exceed the amount of the earnest money plus prepaid deposits paid by the Buyer. In the event that the proposed HUD reflects proceeds to the Buyer in excess of the earnest money and prepaid deposits, the closing cost credit by Seller shall be reduced so that the Buyer receives an amount exactly equal to the earnest money amount, plus prepaid deposits by the Buyer.

25. Termination of Contract: In the event the contract for purchase is terminated by Seller pursuant to any provision of the Counter Offer, this Seller's Addendum, any other purchase contract, addendum or counter offer, Seller's sole liability to Buyer will be to return Buyer's deposit, at which time the contract for purchase shall cease and terminate and Seller and Buyer shall have no further obligations, liabilities or responsibilities to one another. Notwithstanding any language to the contrary in any purchase contract, offer, addenda or counter offer, if Buyer defaults in the performance of the contract for purchase of the property, the full amount of the earnest money will be tendered to the Seller.

· MatterID: 362174                               Buyer Initials _____ |_____

10/05/2012 FRI 19:23   FAX 3044850267 Blennerhassett Hotel                                      ☒001/006

# PREMIERE
ASSET℠ SERVICES

Property Address:       **50 SHADY STREET, WHEELING, WV, 26003**

26. Release of Escrow upon Termination: Upon Seller's termination of purchase contract due to Buyer's non-performance, Seller shall provide written notice to the Buyer and the escrow/closing agent, given by hand delivery or fax or email transmission. Upon receipt of such notice of termination from Seller, Buyer shall have two (2) business days in which to provide a written objection of termination to Seller and escrow/closing agent by one of the above-referenced methods. In the event escrow/closing agent does not receive a written objection from Buyer within two (2) business days, escrow/closing agent is instructed to immediately cancel the escrow and to comply with any other instructions set forth in the Seller's notice of termination, which may include release of the Buyer's deposit in escrow with no additional instructions from the Buyer.

Buyer acknowledges and agrees that Seller shall have the right to terminate the purchase contract due to Buyer's non-performance upon notice stated above, and to release the earnest money deposit to Buyer without any further action, consent or release from Buyer.

Buyer Initials ___ | ___

27. Waiver of Specific Performance: Buyer agrees that the property is not unique and that in the event of Seller's default or a material breach of the Counter Offer, this Seller's Addendum any other offer, purchase contract, addendum or counter offer, Buyer's sole remedy shall be a return of Buyer's earnest money deposit. Buyer hereby waives all rights of specific performance against Seller or actions against the property including but not limited to the filing of any lis pendens or similar action.

Buyer Initials ___ | ___

28. Notwithstanding any language to the contrary in any offer, addendum, or counter offer, in any action or proceeding between Buyer and Seller, Seller does not agree and shall not be responsible to indemnify any broker(s) or agent(s) for any liability, loss, cost, damages or expenses incurred by broker(s) or agent(s).

29. Seller makes no representation and advises buyers to make their own investigation to determine the source of the water supply and type of sewage disposal system.

30. This property may be subject to a redemption period pursuant to applicable state law. It is the Buyer's responsibility to consult with the closing attorney or closing agent to determine if any redemption period applies and has expired. An unexpired redemption period could delay or prevent closing and could result in a prior mortgagor or lien holder exercising their option to redeem the property. Seller makes no guarantees or representations concerning the expiration of any redemption periods. Should an unexpired redemption period, prohibit closing; Buyer may exercise their option to cancel the contract for purchase and receive earnest monies back from Seller. No additional compensation will be paid by Seller for any expenditure made by Buyer regarding this property.

31. If the Buyer is participating in a 1031 Exchange, the Buyer(s) understands and agrees that all obligations related to the purchase of this property and the timeliness of the closing shall remain in full effect regardless of the Buyer's participation in the 1031 Exchange. Buyer(s) shall remain solely responsible and liable to the Seller for Buyer(s)' performance of each and every warranty and obligation under this agreement. Buyer agrees to hold Seller harmless from any and all claims and liabilities, including tax liabilities or penalties, costs or delays in time that may result from any aspect of the transaction by virtue of its characterization as a 1031 Exchange. Seller agrees to cooperate with the Buyer, including allowing an assignment of this contract by the Buyer for purposes of affecting the 1031 Exchange.

MatterID: 362174                                          Buyer Initials ___ | ___

GMR 086

10/05/2012 FRI 19:21  FAX 3044850267 Blennerhassett Hotel                              ☑007/007

# PREMIERE

## ASSET℠ SERVICES

Property Address:  **50 SHADY STREET, WHEELING, WV, 26003**

32. Pursuant to the Bank Secrecy Act and requirements specified by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), Premiere Asset Services will not engage in any transaction with any individual or entity that either appears on the list of Specially Designated Nationals and Blocked Persons, Specially Designated Terrorists, Specially Designated Narcotics Traffickers, or that Premiere Asset Services suspects to involved in a suspicious transaction or one in violation of federal law. Therefore, the information on the form attached as Exhibit A, must be provided. This information will be used for the sole purpose of screening against OFAC and WorldCheck lists. If the Seller finds in it sole and absolute discretion that any Buyer(s) meet the criteria as described above, the offer, purchase agreement or other documents executed in connection with the purchase of the property shall be of no effect, and shall be immediately cancelled and terminated. No party shall be liable to the other party in any way, for any claims whatsoever. Any earnest money deposit will be returned to the Buyer.

33. If any provision (or any portion of any provision) of this agreement is held by a court of competent jurisdiction to be illegal, invalid, or unenforceable under present or future laws effective during the term of this agreement, the legality, validity, and enforceability of the remaining provisions (or the balance of such provision) shall not be affected thereby.

34. All notices given under this agreement will be in writing and signed by the party giving the notice. Notice will be deemed received as follows: if delivered in person, upon delivery; if delivered by United States Postal Service, First Class mail, two (2) business days after deposit into the mail; if delivered by a national overnight courier on a next-day basis, one (1) business day after deposit with the service; if delivered by facsimile or Email during Seller's regular business hours, upon transmission or sending, if delivered by facsimile or Email outside of Seller's regular business hours or on a weekend or holiday, upon the commencing of the next business day.

Date  _10 - 5 - 12_

_George Michael Riley SR_        _(signature)_
Buyer Name (printed)                              Buyer (signature)

Date _____

_____          _____
Buyer Name (printed)                              Buyer (signature)

Date _____

_____          _____
Seller Name (printed)                             Seller (signature)

**[Exhibit A Follows]**

MatterID: 362174                                  Buyer Initials _GMR_ |

GMR 087

# PREMIERE
## ASSET™ SERVICES

### Exhibit A

Pursuant to the Bank Secrecy Act and requirements specified by the Department of the Treasury's Office of Foreign Assets
Control ("OFAC"), Premiere Asset Services will not engage in any transaction with any individual or entity that either
appears on the list of Specially Designated Nationals and Blocked Persons, Specially Designated Terrorists, Specially
Designated Narcotics Traffickers, or that Premiere Asset Services suspects to be involved in a suspicious transaction or one
in violation of federal law. Therefore the following information must be provided. This information will only be used for
the sole purpose of screening against OFAC and WorldCheck lists.

Please provide the following information:

Full Legal Name (First Middle and Last)   *George Michael Riley Sr*

Full Complete Address (no P.O. Boxes)   *T 111 Riley Road*

City *Barton*   State *Oh*   Country *Belmont*   Zip *43905*

Buyer(s) Date of Birth   *8-14-63*

**\*Buyers Social Security may be requested at a later date.\***

Full Name (First Middle and Last)   _____

Complete Address (no P.O. Boxes)   _____

City _____ State _____ Country _____ Zip _____

Buyer(s) Date of Birth   _____

**\*Buyers Social Security may be requested at a later date.\***

Buyer's Agent Information

First Name: *Pam*   Last Name: *Anderson*

Company *Harris Real Estate*

Address: *128 S Marietta St* City: *St. Clairsville* State: *OH* Zip: *43950*

Email: *panderson.hre @ att* Phone#: *740-695-8117*

Fax#: *740-695-2517*   *onet*

If buyer is a Company/Corporation/Partnership/Limited Liability Company. Non-Profit Organization, a Trust or
is not purchasing as an individual, buyer must provide full company corporation or trust name and proof of
signing authority.

Buyer's Company/Corporation/Partnership/Limited Liability Company/ Non-Profit Organization/Trust:

_____

Corporation Tax ID#, if applicable

_____

List All Principal owners of Partnership or LLC or all signers (including non-board members) and all individuals
with principal ownership or financial interest in Non-profit Organizations or Trusts, including full name,
permanent home address (no P.O. Boxes) and dates of birth for each.

_____

_____

© Copyright 2006 Premiere Asset Services. All Rights Reserved

GMR 088

10/05/2012 FRI 19:21   FAX 3044850267  Blennerhassett Hotel                                      ☑005/007

# PREMIERE

## ASSET™ SERVICES

If the Seller finds in it sole and absolute discretion that any buyer meets the criteria as described above, the offer, purchase agreement or other documents executed in connection with the purchase of the property shall be of no effect, and shall be immediately cancelled.  No party shall be liable to the other party in any way, for any claims whatsoever.  Any earnest money shall be returned.

Seller: _____        Buyer: _____

Date: _____          Date: __10/5/12__

Listing Agent: _____    Buyer: _____

Date: __10-5-18__                          Date: _____

Matter ID: 362174                          Buyer Initials _____ |_____

GMR  089

10/05/2012 FRI 19:21  FAX 3044850267 Blennerhassett Hotel                    ☒004/007

# PREMIERE
## ASSET™ SERVICES

Property Address:       50 SHADY STREET, WHEELING, WV, 26003

## PROPERTY CONDITION ADDENDUM

Addendum to the Purchase Contract accepted by Buyers for property located at: 50 SHADY STREET, WHEELING, WV, 26003.

### LEAD-BASED PAINT DISCLOSURE

This contract for purchase is contingent upon a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at the Purchaser's expense until 9 p.m, on the seventh (7th) calendar day after ratification. The lead-based paint that is in good condition is not necessarily a hazard. See the EPA pamphlet Protect Your Family From Lead in Your Home for more information. This contingency will terminate at the predetermined deadline unless the Buyer (or Buyer's agent) delivers to the Seller (or Seller's agent) a written contract addendum listing the specific existing deficiencies and corrections needed, either with a copy of the inspection and/or risk assessment report. The Seller may, at the Seller's option within 10 (ten) days after delivery of the addendum, elect in writing whether to correct the condition(s) prior to closing. If the Seller will correct the condition, the Seller shall furnish the Buyer with certification form a risk assessor or inspector demonstrating that the condition has been remedied before the close of the settlement. If the Seller does not elect to make the repairs, or if the Seller makes a counter-offer, the Buyer shall have 10 (ten) days to respond to the counter-offer or remove this contingency and buy the property in "as is" condition or this contract shall become void. The purchaser may remove this contingency at any time without cause.  Buyer acknowledges they have received the Lead Base Paint pamphlet. Buyer Initials _GAD_

### CHINESE/DEFECTIVE DRYWALL

During the time much of the United States was experiencing building material shortages, some homes were built or renovated using defective drywall imported from or manufactured in China. Defective drywall reportedly emits levels of sulfur, methane and/or other volatile organic compounds that cause corrosion of air conditioner and refrigerator coils, copper tubing, electrical wiring, computer wiring and other household items as well as create noxious odors which may also pose health risks. Seller has made no inspection for and has no knowledge of the presence of Chinese/defective drywall affecting the Property, unless otherwise stated in the Counter Offer.

### "AS-IS" DISCLOSURE

Buyer is aware that Seller acquired the property which is the subject of this transaction by way of foreclosure, and that the Seller is selling and Buyer is purchasing the property in an "AS-IS" CONDITION WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE. Buyer acknowledges for Buyer, for Buyer's successors, heirs and assignees, that Buyer has been given a reasonable opportunity to inspect and investigate the property and all improvements thereon, either independently or through agents of Buyer's choosing, and that in purchasing the property, Buyer is not relying on Seller or its agents as to the condition of the property and/or any improvements thereon, including, but not limited to, roof, foundation, soils, electrical, plumbing, heating, basement, mechanical systems, water or septic systems, geology, lot size or the existence of termites or other wood destroying insects, radon or hazardous matters, whether or not the property is located in a flood zone or whether the property conforms to local ordinance or regulations, including zoning or suitability of the property and/or in compliance with any city, county, State and/or Federal statutes, codes or ordinances. Buyer is not relying on Seller or it's agents as to the condition of property and /or any improvements thereon, including but not limited to mold, roof, foundations, etc. THE PREMISES WERE ACCEPTED WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND OR NATURE AND IN AN "AS-IS".CONDITION BASED SOLELY ON BUYER'S OWN INSPECTION

MatterID: 362174                                      Buyer Initial _GAD_ |_____

GMR  090

10/05/2012 FRI 19:21  FAX 3044850267 Blennerhassett Hotel                                  ☒003/007

# PREMIERE
## ASSET™ SERVICES

Property Address:        50 SHADY STREET, WHEELING, WV, 26003

### WARNING:

A winterization may have been performed at this property pursuant to a work order issued by the current owner. The sole purpose of a winterization is to prevent damage from freezing pipes. The winterization completed at this property was a system shut-down only; the plumbing system was not tested for damage or leaks. This procedure is not a guaranty or warranty of any kind with respect to the HVAC, plumbing, or any other mechanical system at this property. The plumbing system should be de-winterized by a licensed contractor or plumber before the water is turned back on, to assure that the system is operational.

Buyer Initials _G-MR_ | _OR I_

### MOLD DISCLOSURE AND RELEASE

Buyer is hereby advised that mold and/or other microscopic organisms may exist at the property known as **50 SHADY STREET, WHEELING, WV, 26003**. Such microscopic organisms and/or mold may cause physical injuries, including but not limited to allergic and/or respiratory reactions or other problems, particularly in persons with immune system problems, young children and/or elderly persons. Buyer acknowledges and agrees to accept full responsibility/risk for any matters that may result from microscopic organisms and/or mold and to hold harmless, release and indemnify Seller and Seller's managing agents from any liability / recourse / damages ( financial or otherwise ). Buyer understands that Seller has taken no action to remediate mold. Buyer hereby acknowledges this disclosure and release and is aware of the condition set forth therein. This disclosure and release is executed voluntarily and with full knowledge of its significance. Wells Fargo Home Mortgage, Premiere Asset Services or managing agents are not qualified to inspect property for mold or make recommendations or determinations concerning possible health or safety issues. The purpose of this disclaimer is to put Buyers on notice to conduct their own due diligence regarding this matter using appropriate, qualified experts. This is a legal document and Buyers are advised to seek legal counsel prior to executing same.

*IMPORTANT NOTICE: This document may contain information that is considered confidential and may not be transmitted through unencrypted email. The transmission of information on this document should be completed by uploading to the Agent Portal or by faxing with a cover page to 1-855-694-0268.*

Date _10/5/12_

_George Michael Riley SR_                          _____
Buyer Name (printed)                              Buyer (signature)

Date _____

_____                              _____
Buyer Name (printed)                              Buyer (signature)

Date _____

_____                              _____
Seller Name (printed)                             Seller (signature)

Premiere Asset Services

© Copyright 2006 Premiere Asset Services. All Rights Reserved

GMR  091

**HARRIS REAL ESTATE**
1025 SUITE 317 MAIN STREET
WHEELING WV 26003
304-233-3492 OFFICE
740-695-2517 FAX







REALTOR    EQUAL HOUSING OPPORTUNITY

HANDLED WITH KNOWLEDGE AND INTEGRITY

### PURCHASE AGREEMENT
### INSPECTION RIDER/WAIVER

This is a Rider to a Purchase Agreement dated _10-5-12_ between _Wells Fargo_ as
Sellers, and _George Michael Riley Sr_ as Buyers, in reference to the property at

1. CONDITION OF THE PREMISES: The house and fixtures, appliances and personal property (collectively "contents") being sold and purchased are not new. Buyers understand and agree that neither the Sellers, nor any agents have made any representations concerning the house, or the contents, except as noted.

2. RIGHT AND DUTY OF INSPECTION: Inspection to be made within _____ (___) working days of contract acceptance. Buyers have the right and duty to inspect the house and contents, or have them inspected by an expert, for including, but not limited to, lead based paint, radon, mold, asbestos and toxic insulation. Buyers shall pay for these inspections. Buyers shall request any defect correction within three (3) working days of the completion of inspection.

Buyers still have the right to make a final inspection before settlement to be sure that the condition has not changed from their first inspection.

3. LIMITATION OF REMEDIES: Upon request for any defect correction, Sellers may either (1) correct the defect in a workmanlike manner at their own cost; (2) allow an agreed credit at closing; or (3) terminate the agreement and refund all earnest money deposits paid by Buyers. Sellers shall notify Buyers of the remedy within _____ (___) days of Buyers' request. Should the Sellers elect Option #3, however, Buyers shall have the option to accept property in its present condition and proceed with settlement under the original terms or agree to the termination.

If Buyers choose not to inspect the premises and its contents, or if Buyers do not have an expert inspect the property, or if Buyers do not request any defect correction in the premises or the contents within three (3) working days after inspection, Buyers waives the right to any defect correction and agree to accept the premises and contents in their then present condition, and Sellers will have no liability with respect to them.

4. WAIVER: A waiver of the inspections by the Buyers excludes any test or inspections required by their lending institution.

**All notifications and requests by either party must be in writing.**

BUYER _____    SELLER _____

BUYER _____    SELLER _____

DATE _____    DATE _____

### WAIVER OF RIGHT TO INSPECTION

Buyers hereby waive the right to an inspection. Buyers are accepting the property in "AS IS" condition and agree to hold Sellers, Broker, or its agents and employees, harmless from and against any liabilities from damage or defects.

X BUYER _____    X DATE _11/6/12_

BUYER _____    DATE _____

Page 4 of 4

GMR 096

PNC Online Banking



## Account Activity

Business Basic Checking ▬▬▬▬▬    Available Balance: $40,999.20

### Account Summary

| | | Additional Information | |
|---|---|---|---|
| Available Balance: | $40,999.20 | Nickname: | None |
| Ledger Balance: | $41,928.97 | Type: | Business Basic Checking |
| Pending Withdrawals: | $929.77 | Text Banking Nickname: | Not Enrolled |
| Pending Deposits: | $950.00 | Address: | |
| Last Deposit Amount: | $950.00 | | PO BOX 135 |
| | 09/27/2012 | | ETNA, OH 43018 - 0135 |
| Last Statement Balance: | $24,800.64 | | |
| | 08/31/2012 | | |

### Pending Transactions

These transactions have been submitted to us since the last business day and are not yet posted to your account. When they have posted, they will be reflected in your Posted Transactions. Pending items may affect your Available Balance and are not a statement of your account.

| | Description | Withdrawals | Deposits |
|---|---|---|---|

GMR  097

10/09/2012  16:43    740-282-7707          STEUBENVILLE TRUCK                PAGE  01/01

# PNC BANK

10/9/2012

George Michael Riley, Sr

You, George Michael Riley, Sr., are an authorized signer on the Ohio Rock Industries, LTD business checking account. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Respectfully,

*Nick Cacciacarro*

Nick Cacciacarro

Vice President

Steubenville Main

740.284.5717

Member of The PNC Financial Services Group
124 North Fourth Street  Steubenville  Ohio  43952
www.pnc.com

GMR  098

**OHIO ROCK INDUSTRIES, LTD**
P.O. BOX 136
ETNA, OHIO 43018
(740) 232-5633

18286

8-9-430

PAY
TO THE
ORDER OF_____ Jim Harris

DATE 9/25/12

$ 1000 00

One Thousand _____ DOLLARS

PNC Bank, N.A.
Pittsburgh, PA        001

VOID AFTER 60 DAYS

FOR S.O. Shed

⑆018286⑆ ⑈043000096⑈ 1033709037⑈

GMR  099

Print                                                                                    Page 1 of 3

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Fri, October 5, 2012 1:54:51 PM
**Cc:**
**Subject:** Re: 50 Shady Street Wheeling Wv

Hi Mike

I will need the attached addendums signed in the following places:

Counter offer page 1 and page 2 initial at the bottom

Page 3 Fill in the date, Printed name, signature, email address, and phone number (please make sure it is legible) and inital

Page 4  initial at the bottom

Page 5 Initial #16 and the bottom

Page 6 initial #23 and at the bottom

Page 7  initial #26, 27 and at the bottom

Page 8 fill in the date, printed name and signature  initial at the bottom

Page 9 fill in all information    all wners must include thir name, home address and birthdate  supply company's ein number

Page 10 fill in information and initial at the bottom

Page 11 initial under lead based paint and at the bottom

Page 12 initial under warning and date, print and sign

Let me know if you have any questions.

Thank You

Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

**From:** Pam Anderson <panderson.hre@att.net>
**To:** mriley@ohiorockindustries.com
**Sent:** Wed, September 26, 2012 11:26:36 AM
**Subject:** Fw: 50 Shady Street Wheeling Wv

Print

Thank You
Hi Mike

Please find attached the addendums that need to signed to go along with the contract signed earlier.

I will need you to give me an EMD check made out to Harris Real Estate in the Amount of $1000

I will need proof of funds if you provide me with a bank statement, please black out all account and routing numbers

I will need a copy of your corporate resolution

I will need the attached addendums signed in the following places:

Counter offer page 1 and page 2 initial at the bottom

Page 3 Fill in the date, Printed name, signature, email address, and phone number (please make sure it is legible) and inital

Page 4   initial at the bottom

Page 5 Initial #16 and the bottom

Page 6 initial #23 and at the bottom

Page 7  initial #26, 27 and at the bottom

Page  8 fill in the date, printed name and signature  initial at the bottom

Page 9 fill in all information    all wners must include thir name, home address and birthdate  supply company's ein number

Page 10 fill in information and initial at the bottom

Page 11 initial under lead based paint and at the bottom

Page 12 initial under warning and date, print and sign


 Let me know if you have any questions.


Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

Print

**From:** Mike Riley <mriley@ohiorockindustries.com>
**To:** panderson.hre@att.net
**Cc:** mriley@ohiorockindustries.com
**Sent:** Tue, September 4, 2012 12:56:55 PM
**Subject:** Fwd: pic

Sent from my iPhone

Begin forwarded message:

> **From:** <mriley@ohiorockindustries.com>
> **Date:** September 4, 2012 11:40:19 AM EDT
> **To:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Cc:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Subject:** pic
>
> 1133 Fort Henry
> Wheelig wv
> 26003

Print                                                                          Page 1 of 2

**From:** James Harris (jhre@msn.com)
**To:** panderson.hre@att.net;
**Date:** Wed, October 3, 2012 2:18:01 PM
**Cc:**
**Subject:** FW: Letter


*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517



Subject: Fwd: Letter
From: mriley@ohiorockindustries.com
Date: Wed, 3 Oct 2012 14:15:28 -0400
CC: mriley@ohiorockindustries.com
To: jhre@msn.com


Sent from my iPhone

Begin forwarded message:

> **From:** "Marcus D. Dunn, Esq." <mddunn@zlglaw.com>
> **Date:** October 3, 2012, 2:11:42 PM EDT
> **To:** <mrileysr@ohiorockindustries.com>, <mriley@ohiorockindustries.com>
> **Subject:** Letter

Here is the letter Mike.


Marcus D. Dunn, Esq.
Zacks Law Group LLC
Counselors and Practitioners at Law
The eBuilding at Broad and James
3rd Floor
33 South James Road
Columbus, Ohio  43213
Work No: 614.236.8000
Cell No: 614.306.3092
Fax No:  614.236.3236

*******************************************************************
Named in U.S. News & World Report as one of the "Best Law Firms" 2011
-1st Amendment & Litigation

Practice Areas:
Business, Real Estate, Tax, Technology, Constitutional Rights & Health Care
in complex litigation & transactional matters for individuals, families and
companies.
*******************************************************************
Confidentiality Notice

GMR  103

The information contained in this e-mail message may be privileged and confidential, and thus is protected from disclosure. This message is NOT intended for transmission to, or receipt by, anyone other than the named addressee (or a person authorized to receive and deliver it to the named addressee). If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail message in error, please delete it from your system without copying or forwarding it, and notify the sender of the error by reply e-mail or by calling 614.236.8000 (collect).

Thank you for your anticipated cooperation.

Zacks Law Group LLC

IRS CIRCULAR 230 DISCLOSURE
In compliance with requirements imposed by the Internal Revenue Service, we inform you that any Federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

GMR  104



# ZACKS LAW GROUP LLC
*Counselors & Practitioners at Law*

at Broad and James
33 South James Road
Third Floor
Columbus, Ohio 43213
614.236.8000 voice
614.236.3236 fax

Marcus D. Dunn
mddunn@zlglaw.com

October 3, 2012

Re:   **Ohio Rock Industries, Ltd.**

To whom it may concern:

As legal counsel for Ohio Rock Industries, Ltd. ("Ohio Rock"), the purpose of this letter is to confirm that George Michael Riley is the authorized representative of Ohio Rock.

In addition, in forming and filing the Articles of Organization for Ohio Rock, our firm and myself merely acted as authorized agents in the creation of the company.

If you have any other questions or concerns, please do not hesitate to contact me.

Very truly Yours,

Marcus D. Dunn

Print

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Mon, October 1, 2012 3:32:12 PM
**Cc:**
**Subject:** 50 Shady

Hi Mike

We need some sort of notarized letter that states you are able so sign on behalf of Ohio Rock Industries.  We will Need Markcus Dunns date of birth, and home address

Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email


**From:** Mike Riley <mriley@ohiorockindustries.com>
**To:** panderson.hre@att.net
**Cc:** mriley@ohiorockindustries.com
**Sent:** Tue, September 4, 2012 12:56:55 PM
**Subject:** Fwd: pic



Sent from my iPhone

Begin forwarded message:

> **From:** <mriley@ohiorockindustries.com>
> **Date:** September 4, 2012 11:40:19 AM EDT
> **To:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Cc:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Subject:** pic
>
> 1133 Fort Henry
> Wheelig wv
> 26003



GMR  106

Print

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Wed, September 26, 2012 11:26:35 AM
**Cc:**
**Subject:** Fw: 50 Shady Street Wheeling Wv


Thank You
Hi Mike

Please find attached the addendums that need to signed to go along with the contract signed earlier.

I will need you to give me an EMD check made out to Harris Real Estate in the Amount of $1000

I will need proof of funds if you provide me with a bank statement, please black out all account and routing numbers

I will need a copy of your corporate resolution

I will need the attached addendums signed in the following places:

Counter offer page 1 and page 2 initial at the bottom

Page 3 Fill in the date, Printed name, signature, email address, and phone number (please make sure it is legible) and inital

Page 4  initial at the bottom

Page 5 Initial #16 and the bottom

Page 6 initial #23 and at the bottom

Page 7  initial #26, 27 and at the bottom

Page  8 fill in the date, printed name and signature  initial at the bottom

Page 9 fill in all information    all wners must include thir name, home address and birthdate  supply company's ein number

Page 10 fill in information and initial at the bottom

Page 11 initial under lead based paint and at the bottom

Page 12 initial under warning and date, print and sign


Let me know if you have any questions.


Thank You


Pam Anderson
Harris Real Estate

Print

740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

**From:** Mike Riley <mriley@ohiorockindustries.com>
**To:** panderson.hre@att.net
**Cc:** mriley@ohiorockindustries.com
**Sent:** Tue, September 4, 2012 12:56:55 PM
**Subject:** Fwd: pic

Sent from my iPhone

Begin forwarded message:

> **From:** <mriley@ohiorockindustries.com>
> **Date:** September 4, 2012 11:40:19 AM EDT
> **To:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Cc:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Subject: pic**
>
> 1133 Fort Henry
> Wheelig wv
> 26003

Print                                                                                          Page 1 of 2

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Tue, September 25, 2012 11:03:16 AM
**Cc:**
**Subject:** Re: 50 Shady Street Wheeling Wv

Hi Mike

On page 9 all owners are to provide full name home address and birthdate

Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email


**From:** Pam Anderson <panderson.hre@att.net>
**To:** Mike Riley <mriley@ohiorockindustries.com>
**Sent:** Tue, September 25, 2012 10:58:21 AM
**Subject:** 50 Shady Street Wheeling Wv

Hi Mike

Please find attached the addendums that need to signed to go along with the contract signed earlier.

I will need you to give me an EMD check made out to Harris Real Estate in the Amount of $1000

I will need proof of funds if you provide me with a bank statement, please black out all account and routing numbers

I will need a copy of your corporate resolution

I will need the attached addendums signed in the following places:

Counter offer page 1 and page 2 initial at the bottom

Page 3 Fill in the date, Printed name, signature, email address, and phone number (please make sure it is legible) and inital

Page 4  initial at the bottom

Page 5 Initial #16 and the bottom

Page 6 initial #23 and at the bottom

Page 7  initial #26, 27 and at the bottom

Page 8 fill in the date, printed name and signature  initial at the bottom


GMR  109

Print

Page 9 fill in all information

Page 10 fill in information and initial at the bottom

Page 11 initial under lead based paint and at the bottom

Page 12 initial under warning and date, print and sign


Let me know if you have any questions.


Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email


**From:** Mike Riley <mriley@ohiorockindustries.com>
**To:** panderson.hre@att.net
**Cc:** mriley@ohiorockindustries.com
**Sent:** Tue, September 4, 2012 12:56:55 PM
**Subject:** Fwd: pic


Sent from my iPhone

Begin forwarded message:

> **From:** <mriley@ohiorockindustries.com>
> **Date:** September 4, 2012 11:40:19 AM EDT
> **To:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Cc:** "Mike Riley" <mriley@ohiorockindustries.com>
> **Subject: pic**

1133 Fort Henry
Wheelig wv
26003

Print

**From:** Mike Riley (mriley@ohiorockindustries.com)
**To:** panderson.hre@att.net;
**Date:** Fri, August 24, 2012 3:49:06 PM
**Cc:**
**Subject:** Fwd: W-9 form / 1133 fort henry

Sent from my iPhone

Begin forwarded message:

> **From:** Mike Riley <mriley@ohiorockindustries.com>
> **Date:** August 24, 2012 9:14:31 AM EDT
> **To:** mriley@ohiorockindustries.com
> **Subject:** Fwd: W-9 form / 1133 fort henry

Sent from my iPhone

Begin forwarded message:

> **From:** Mike Riley <mriley@ohiorockindustries.com>
> **Date:** August 2, 2012 12:23:11 PM EDT
> **To:** "<Yuge.Bi@wellsfargo.com>" <Yuge.Bi@wellsfargo.com>
> **Cc:** mriley@ohiorockindustries.com
> **Subject:** Re: W-9 form / 1133 fort henry

Yuge
Per our conversation Ohio rock industries is willing to accept all responsibility for removing any and all structures that we would not want on the said brought 50 Shelby St. wheeling West Virginia and there would be 0 balance due to Ohio rock industries for the demolition that it will be performing
Ohio rock industries will pay any and all expenses for the transfer of the said property to Ohio rock industries
Ohio rock industries will except the said property in and as is where is condition as of today's date August 2, 2012
Thank you
Mike Riley
740-232-5633
On Aug 1, 2012, at 4:12 PM, <Yuge.Bi@wellsfargo.com> wrote:

> Hello Mike,
>
> Please forward the below message to the environmental company, we are in the process to issue the check, but their W-9 is bad, per Meghan from WF AP, we will need the environmental company to revise their W-9. Thanks.
>
> **Yuge Bi**
> REO Repair Coordinator
> Premiere Asset Services
> Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328
> MAC X2301-049
> Email: Yuge.Bi@WellsFargo.com
> Direct Phone: 515-324-2513

Fax number: 855-694-0268

www.pasreo.com

CONFIDENTIALITY NOTICE: This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable law. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited. Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

**From:** Crain, Meghan L.
**Sent:** Wednesday, August 01, 2012 9:46 AM
**To:** Bi, Yuge
**Subject:** RE: W-9 form

Hi,

Can you reply to them and tell them the IRS has rejected this w9 stating that the name in the first line doesn't match the TIN/SSN that they have on file. Perhaps it's their business name that should be on the first line. Please have them send me a new w9. If they have any questions they can contact me.

Meghan Crain

Loan Servicing Specialist II

Accounts Payable

Premiere Asset Services | 8480 Stagecoach Cir | Frederick, MD 21701

MAC X3800-03C

Tel 240-586-7022 | Fax 855-694-0268

Meghan.L.Crain@wellsfargo.com

This message may contain confidential and/or restricted information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. This information should only be forwarded or distributed on a "need to know basis". If you have received this message in error, please advise the sender immediately by reply email and delete this message. Thank you for your cooperation.

**From:** Bi, Yuge
**Sent:** Monday, July 30, 2012 11:23 AM
**To:** Crain, Meghan L.
**Subject:** W-9 form

Hello Meghan,

I am forwarding a W-9 from a contractor Liberty Environmental Services, LLC. Thank you.
<< File: W-9_1207271423159304.pdf >>

**Yuge Bi**

REO Repair Coordinator

Premiere Asset Services

Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328

MAC X2301-049

Email: Yuge.Bi@WellsFargo.com

Direct Phone: 515-324-2513

Fax number: 855-694-0268

www.pasreo.com

CONFIDENTIALITY NOTICE: This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable

Print

law.  If you are not the intended recipient, you are hereby notified that you have received this
transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this
transmittal is strictly prohibited.  Further, the taking of any action in reliance on the contents of this
information is strictly prohibited. If you have received this transmission in error, please notify the
sender immediately by e-mail and delete the original message and all its attachments, if any.

GMR  113

Print

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Thu, August 23, 2012 3:49:03 PM
**Cc:**
**Subject:** Re: 50 Shady street Wheelin Wv

Hi Mike

Please forward email.

Thank You


Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email


**From:** Pam Anderson <panderson.hre@att.net>
**To:** mriley@ohiorockindustries.com
**Sent:** Tue, July 17, 2012 2:14:57 PM
**Subject:** 50 Shady street Wheelin Wv

Hi Mike

Please forward a copy of demo bid.

Thank You

Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

Print

**From:** Pam Anderson (panderson.hre@att.net)
**To:** mriley@ohiorockindustries.com;
**Date:** Wed, July 18, 2012 10:00:19 AM
**Cc:**
**Subject:** Fw: Work Order Issued: 0137079331B -50 SHADY STREET

Thank You

Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

----- Forwarded Message ----
**From:** James Harris <jhre@msn.com>
**To:** PAMELA J ANDERSON <panderson.hre@att.net>
**Sent:** Wed, July 18, 2012 9:49:23 AM
**Subject:** FW: Work Order Issued: 0137079331B -50 SHADY STREET

*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517

From: Tricia.Fogarty@wellsfargo.com
To: jhre@msn.com
CC: Adalberto.O.Hermida@wellsfargo.com
Date: Wed, 18 Jul 2012 09:32:15 -0400
Subject: Work Order Issued: 0137079331B -50 SHADY STREET

J.B., please notify the contractor ASAP and provide the repair coordinator (below) with a current email for them, thanks!

**Ohio Rock Industries:**

You have been awarded the winning bid on this job at the property listed below!

**Address:**

GMR  115

50 SHADY STREET

Attached is our Work Order. **Before starting any work, you must sign this form and return to the repair coordinator via e-mail or fax.** If sending by fax, you will need to put it to the repair coordinator's attention. Please also indicate the anticipated start date. If you have any questions during the course of this job, feel free to contact the repair coordinator.

| Repair Coordinator Contact Info | | | | |
|---|---|---|---|---|
| First Name | Last Name | Office | Email | Fax |
| Janice | Smith | 240-586-7182 | Janice.M.Smith@wellsfargo.com | 855-694-0268 |

When the job is complete, you will need to submit the following items to the repair coordinator:

✓ *The final invoice*

✓ *"After" pictures*

✓ *Third party post-remediation air clearance test (for mold remediation jobs).*

Please reach out to the agent regarding the lock box combination and scheduling your work.

| Agent Contact Info | | | | |
|---|---|---|---|---|
| Agency | Agent | Office | Mobile | E-mail |
| Jim Harris Real Estate Inc | J.B. Harris | (740) 695-2117 | (740) 359-5094 | jhre@msn.com |

## J.B. Harris:

The contractor, indicated in the attached Work Order, has been awarded the job. Attached is the Repair Sign-off form. You will need to complete this form and e-mail it to the repair coordinator, along with the dates when the work started and is completed. The contractor is to send the final invoice to the repair coordinator. **It is not to be submitted to COSS.**

## Adalberto Hermida:

No action is required on your part. This e-mail is only to inform you that work will be starting soon on this property.

Tricia Fogarty

REO Repair Coordinator
Premiere Asset Services | 1 Home Campus | Des Moines, IA 50328
515-324-5834

GMR  116

Print

Tricia.Fogarty@wellsfargo.com

"This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation."

GMR 117

**Work Order Issued to:**

Ohio Rock Industies                          Date: 7/18/2012

| PAS Loan #: | 0137079331 | Before starting the work: |
| Address: | 60 SHADY STREET | The contractor must sign the work order, and fax it to 855-694-0208, Please address the fax to the attention of the PAS representative that issued this work order |
| PAS Rep. | Janice Smith | ◄Thank you |

Contractor to complete work as scoped below not to exceed $9,500.00   The work is to be scheduled with the agent and completed as soon as possible, but no later than 08/1/2012    All permits are required to be included in price.

| INTERIOR | APPROVED $AMOUNT | REPAIR SCOPE // COMMENTS |
|---|---|---|
| 1. INTERIOR PAINT | | |
| 2. DRYWALL REPAIRS | | |
| 3. DEMO WALL COVERINGS | | |
| 4. CARPET REPLACE | | |
| 5. CARPET REPAIR | | |
| 6. VINYL | | |
| 7. HARDWOOD | | |
| 8. SUB-FLOOR | | |
| 9. OTHER FLOORING | | |
| 10. CABINETS/HARDWARE | | |
| 11. COUNTERTOPS | | |
| 12. INTERIOR DOORS/TRIM | | |
| 13. RANGE/COOKTOP/OVEN | | |
| 14. VENT HOOD | | |
| 15. DISPOSAL | | |
| 16. DISHWASHER | | |
| 17. REFRIGERATOR | | |
| 18. WATER HEATER | | |
| 19. BATH ACCESSORIES | | |
| 20. PLUMBING FIXTURES | | |
| 21. PLUMBING LINES | | |
| 22. SHOWER/TUBS/ SURROUNDS | | |
| 23. HVAC | | |
| 24. ELECTRIC FIXTURES | | |
| 25. OUTLETS & SWITCHES | | |
| 26. SMOKE DETECTORS | | |
| 27. WIRING & BREAKERS | | |
| 28. REPAIR CLEAN-UP | | |
| OTHER: | | |
| OTHER: | | |
| **INTERIOR SUBTOTAL:** | **$0.00** | |
| **EXTERIOR** | | |
| 29. ROOF REPAIR/REPLACE | | |
| 30. GUTTERS | | |
| 31. BRICK VENEER | | |
| 32. SIDING/TRIM REPAIR/REPLACE | | |
| 33. EXTERIOR PAINT | | |
| 34. POWER WASH | | |
| 35. WINDOW REPAIR/REPLACE | | |
| 36. EXT. DOORS/HARDWARE/TRIM | | |
| 37. GARAGE DOORS | | |
| 38. FENCE/GATE | | |
| 39. LANDSCAPING | | |
| 40. STRUCTURAL | $9,500.00 | Complete demo of the asset as stated in the bid. |
| 41. OTHER REPAIRS: | | |
| OTHER: | | |
| OTHER: | | |
| **EXTERIOR SUBTOTAL:** | **$9,500.00** | |
| **APPROVED BUDGET TOTAL:** | **$9,500.00** | |

*Terms & Conditions:*

Contractor shall install and complete all work in accordance with owner/agent's representations and local code requirements. Work shall be completed in a professional manner consistent with industry standards for residential construction. Contractor shall guarantee all work not covered by a manufacturer's warranty for 180 calendar days. All work covered by manufacturer's warranty shall be guaranteed for the entire warranty period. Contractor shall provide to the agent their invoice for the work and a Conditional Release of Lien in the amount of the invoice upon completion of the work. Contractor shall provide a certified Final Release of Liens to the agent within seven (7) days of final payment for the work, and release shall specifically identify all subcontractors for work, and a statement that all subcontractor's have been paid. All manufacturers' warranties shall be provided to the agent with the contractor's invoice for the work. Contractor acknowledges this "Release of the Project" and shall diligently execute the work to meet the scheduled completion date. Approved budget to include all materials, labor, permits, taxes and fees necessary to complete the scope of work in a professional manner.


CONTRACTOR ACCEPTANCE: _____                    DATE: _____

# REPAIR SIGN-OFF FORM

*CONTRACTOR*: _____

*PAS LOAN NUMBER*: _____

*ADDRESS*: _____

Quality of Work – Please select the most appropriate and return
to your Project Coordinator via email or fax 855-694-0268

| ☐ | ◇ 1 | UNACCEPTABLE Needs Immediate Attention |
| ☐ | ◇ 2 | POOR Below Average Quality |
| ☐ | ◇ 3 | ACCEPTABLE Average |
| ☐ | ◇ 4 | GOOD JOB Above Average |
| ☐ | ◇ 5 | OUTSTANDING Above and Beyond |

*Comments/concerns:* _____

*Agent Name / Date:* _____

*Requirements for payment* (ALL items must be received for payment to be processed) –
- Final Invoice (incl. service date and property address to be supplied by contractor)
- Repair Sign-off Form to be completed by agent
- After Photos of all items repaired

Page 1

GMR  119

Print

**From:** Pam Anderson (panderson.hre@att.net)
**To:** PasReoContractors@wellsfargo.com;
**Date:** Thu, May 17, 2012 8:25:49 AM
**Cc:** yuge.bi@wellsfargo.com;
**Subject:** DEMOLITION BID REQUEST: 0153668082 / 1133 FORT HENRY AVENUE / WV

Good Morning

Please find attached 2 demo bids for 0153668082 / 1133 FORT HENRY AVENUE / WV.

Thank You

Pam Anderson
Harris Real Estate
740-695-2117 Office
740-695-2517 Fax
740-359-5094 Cell
panderson.hre@att.net Direct Email
jhre@msn.com Office Email

From: PasReoContractors@wellsfargo.com
To: jhre@msn.com
CC: Yuge.Bi@wellsfargo.com
Date: Thu, 10 May 2012 07:28:18 -0500
Subject: DEMOLITION BID REQUEST: 0153668082 / 1133 FORT HENRY AVENUE / WV

Hi J.B.,


I am requesting your assistance in obtaining one bid from a **qualified** local general contractor as soon as possible for the demolition needed at the property listed below.

**Address:**

>   1133 FORT HENRY AVENUE
>   WHEELING, WV 26003


**Please e-mail the following items to the repair coordinator:**

>   ✓ *A bid for complete demolition of property and clearing of the land*
>
>   ✓ *General liability insurance or bond*
>
>   ✓ *Workers' compensation insurance (if applicable)*
>
>   ✓ *Form W-9*
>
>   ✓ *Contractor or business license (if applicable)*

Print

| Coordinator Contact Info | | | |
|---|---|---|---|
| First Name | Last Name | Office | Email |
| Yuge | Bi | 515-324-2513 | yuge.bi@wellsfargo.com |

Thanks,

Wes Barkley
REO Repair Coordinator
Premiere Asset Services | 8480 Stagecoach Circle | Frederick, MD 21701
MAC x3300-03C
Fax 1-855-694-0268

John.W.Barkley@wellsfargo.com | http://reo.wellsfargo.com/

This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.

GMR  121

# Terra Demolition LLC

Date: 05/16/2012

Customer: Jim Harris Realty                Home #:

Street: 451 Wagner St.                     Cell #:

City/State/Zip: Wheeling, WV 26003         Work #: 740-695-2117

Contractor hereby submits the following specifications: Complete Demolition at 1133 Fort Henry Ave, Wheeling, WV 26003 This demo can not be performed by equipment. This demo can only be done manually.

As stated above the specifications we propose to furnish material and labor for the sum of: Twenty Eight Thousand Five Hundred Dollars ($).28500.00

Payment schedule as follows: This demo must be prepaid

Any alteration or deviation from the above specifications involving extra costs will be executed only upon a written order and will become an extra charge over and above the proposed estimate. All agreements are subject to any strikes, accidents, or delays beyond the contractor's control.

Submitted by:   Kate Corbin – Terra Demolition Company LLC

This proposal may be withdrawn if not accepted within 5 days.

---

**Acceptance of Proposal**

As stated in the above specifications, the costs, materials and specifications are satisfactory and are hereby accepted. I authorized the contractor to perform the work as specified and payments will be made as summarize above.

---

Customer Signature: _____   Date: _____

101 North Zane
Martins Ferry, ohio
43935
(866)288-7118 Office
(740)281-0966 Fax

GMR  122



# Estimate



Ohio Rock Industries L.T.D
PO Box 135
Etna,Ohio
43018

www.ohiorockindustries.com
Office: 740-232-5633  Fax: 740-204-3202

| Estimate No. | Date |
|---|---|
| 193677 | 5/14/2012 |
| Territory: | |
| Salesperson: | |

**Bill To:**
Jim Harris Realty
128 South Marietta St
St.Clairsville, Ohio 43905

| Code | Description | Qty./Hours | Rate | Amount |
|---|---|---|---|---|
| Demo | Ohio Rock Industries will provied, the following | 1.00 | $24,280.00 | $24,280.00 |
| | * Any and all Federal and State permits | | | |
| | * All labor | | | |
| | * All equipment | | | |
| | * All trucking | | | |

Ohio Rock Industries will remove all of the existing structure from the property and haul all of the demolition material and debris to a licensed landfill. Ohio Rock will also provide clean topsoil for the foundation to be filled to the existing property level.Ohio Rock Industries will seed and straw the entire area.
Total cost $ 24280.00
Payments 50% Down $12140.00
The Balance When Completed $12140.00
Ohio Rock Industries L.T.D Guarantee 100%  All Work Too Customer Satisfaction

ALL WORK TO BE PERFORMED AT SAID ADDRESS 1133 FORT HENRY AVE.,
WHEELING, WV 26003

Estimate good through 05/26/2012

OHIO ROCK INDUSTRIES WILL NOT BE RESPONSIBLE FOR ANY AND ALL
HAZARDOUS MATERIALS

| SIGNATURE | DATE | | |
|---|---|---|---|
| | | Subtotal | $24,280.00 |
| | | Discount | 0.00% |
| | | Total | $24,280.00 |

GMR  123

Print                                                                                   Page 1 of 2

**From:** James Harris (jhre@msn.com)
**To:** panderson.hre@att.net;
**Date:** Tue, June 5, 2012 12:34:06 PM
**Cc:**
**Subject:** FW: ***WORK ORDER ISSUED*** 1133 FORT HENRY AVENUE / 0153668082B


*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517


From: Yuge.Bi@wellsfargo.com
To: jhre@msn.com; mriley@ohiorockindustries.com
CC: Angela.Mitts@wellsfargo.com
Date: Tue, 5 Jun 2012 11:54:02 -0400
Subject: ***WORK ORDER ISSUED*** 1133 FORT HENRY AVENUE / 0153668082B

Contractor- Ohio Rock Industries
You have been awarded the winning bid on this job in WHEELING, WV 26003. Attached below is the Work Order. Before starting
any work you must sign and return this form to the Repair Coordinator, Yuge Bi's attention, via email (copied above) or fax at 855-
694-0268, as well as provide the anticipated start date. Below, I have given you the contact information for our agent, James Harris.
Please reach out to the agent regarding the lock box combo and scheduling your work. If you have any questions during the
course of this job, please feel free to contact the Repair Coordinator, Yuge Bi. When the job is complete, please submit the final
invoice, after pictures and the clearance test (if applicable) to the Repair Coordinator, Yuge Bi.

Per our conversation over the phone, please send the deposit invoice directly to me via email, so we can have the work start as
soon as possible. Thank you.


Agent- James Harris

This communication is to inform you that the contractor, Ohio Rock Industries, indicated in the above attached Work Order, has
been awarded the job. Attached below is the agent sign-off form. You will need to complete this form and return to the Coordinator,
Yuge Bi, along with the start and completion date via email when the work is completed. The contractor is to send the final invoice
to us. It is not to be submitted to iAgent (COSS). I show your contact information as (740) 695-2117 and (740) 359-5094, plus the
email address above. If this is not adequate contact info, you MUST contact the contractor immediately.


Asset Manager- Angela

No action is required on your part. This email is to inform you that work will be starting, soon, on your property.


**Yuge Bi**
REO Repair Coordinator
Premiere Asset Services
Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328
MAC X2301-049
Email: Yuge.Bi@wellsfargo.com
Direct Phone: 515-324-2513
Fax number: 855-694-0268

www.pasreo.com
CONFIDENTIALITY NOTICE:  This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it
is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under
applicable law. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review,

Print

dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited.  Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

GMR  125

**Work Order for:**   **Ohio Rock Industries**   Date: 6/5/2012

| | |
|---|---|
| PAS Loan #: 0163668082 | **Before starting the work:** |
| Address: 1133 Fort Henry Ave/ WV | The contractor must sign the work order and email or fax it to 855-494-0268. Please address |
| PAS Rep. Yuge Bi | the email or the fax to the attention of the PAS representative that issued this work order. |
| | ◄Thank you |

**SCOPE:**

Contractor to complete work as scoped below not to exceed $24,280. The work is to be scheduled with the agent and completed as soon as possible but no later than 07/06/2012.

| INTERIOR | APPROVED AMOUNT | SCOPE/COMMENTS |
|---|---|---|
| 1. INTERIOR PAINT | | |
| 2. DRYWALL/REPAIRS | | |
| 3. DEMO WALL COVERINGS | | |
| 4. CARPET REPLACE | | |
| 5. CARPET REPAIR | | |
| 6. VINYL | | |
| 7. HARDWOOD | | |
| 8. SUB-FLOOR | | |
| 9. OTHER FLOORING | | |
| 10. CABINETS/HARDWARE | | |
| 11. COUNTERTOPS | | |
| 12. INTERIOR DOORS/TRIM | | |
| 13. RANGE/COOKTOP/OVEN | | |
| 14. VENT HOOD | | |
| 15. DISPOSAL | | |
| 16. DISHWASHER | | |
| 17. REFRIGERATOR | | |
| 18. WATER HEATER | | |
| 19. BATH ACCESSORIES | | |
| 20. PLUMBING FIXTURES | | |
| 21. PLUMBING LINES | | |
| 22. SHOWER/TUBS/ SURROUNDS | | |
| 23. HVAC | | |
| 24. ELECTRIC FIXTURES | | |
| 25. OUTLETS & SWITCHES | | |
| 26. SMOKE DETECTORS | | |
| 27. WIRING & BREAKERS | | |
| 28. REPAIR CLEAN-UP | | |
| OTHER: | | |
| OTHER: | | |
| **INTERIOR SUBTOTAL:** | $        - | |
| **EXTERIOR** | | |
| 29. ROOF REPAIR/REPLACE | | |
| 30. GUTTERS | | |
| 31. BRICK VENEER | | |
| 32. SIDING/TRIM REPAIR/REPLACE | | |
| 33. EXTERIOR PAINT | | |
| 34. POWER WASH | | |
| 35. WINDOW REPAIR/REPLACE | | |
| 36. EXT. DOORS&HARDWARE/TRIM | | |
| 37. GARAGE DOORS | | |
| 38. FENCE/GATE | | |
| 39. LANDSCAPING | | |
| 40. STRUCTURAL | | |
| 41. OTHER REPAIRS: | $24,280 | Remove structure, add clean topsoil, seed and straw |
| OTHER: | | |
| OTHER: | | |
| **EXTERIOR SUBTOTAL:** | $   24,280 | |
| **APPROVED BUDGET TOTAL:** | $   24,280 | |

*Terms & Conditions:*

Contractor shall install and complete all work in accordance with manufacturers' recommendations and local code requirements. Work shall be completed in a professional manner consistent with industry standards for residential construction. Contractor shall guarantee all work not covered by a manufacturer's warranty for 180 calendar days. All work covered by manufacturer's warranty shall be guaranteed for the entire warranty period. Contractor shall provide to the Repair Coordinator their invoice for the work and a Conditional Release of Lien in the amount of the invoice upon completion of the work. Contractor shall provide a certified Final Release of Lien to the Repair Coordinator within seven (7) days of final payment for the work, said release shall specifically identify all subcontractors utilized to perform the work and a statement that all subcontractors have been paid. All manufacturers' warranties shall be provided to the Repair Coordinator with the contractor's invoice for the work. Contractor acknowledges that "Time is of the Essence" and shall diligently execute the work to meet the scheduled completion date. Approved budget to include all materials, labor, permits, taxes and fees necessary to complete the scope of work in a professional manner.

CONTRACTOR ACCEPTANCE: __                                   DATE: _____

Print

**From:** James Harris (jhre@msn.com)
**To:** panderson.hre@att.net;
**Date:** Fri, August 31, 2012 12:32:27 PM
**Cc:**
**Subject:** FW: 1133 FORT HENRY AVENUE / 0153668082B

*Harris Real Estate*

Phone: 740-695-2117
Fax: 740-695-2517

From: Yuge.Bi@wellsfargo.com
To: jhre@msn.com
Date: Fri, 31 Aug 2012 11:55:41 -0400
Subject: 1133 FORT HENRY AVENUE / 0153668082B

Hello J.B.

Contractor has informed me that the demolition at this property is completed, would you please complete the sign off form and send it back to me? can you also send some after photos? Thank you J.B.

**Yuge Bi**
REO Repair Coordinator
Premiere Asset Services
Wells Fargo Home Mortgage | 1 Home Campus | Des Moines, IA  50328
MAC X2301-049
Email: Yuge.Bi@WellsFargo.com
Direct Phone: 515-324-2513
Fax number: 855-694-0268

www.pasreo.com
CONFIDENTIALITY NOTICE:  This electronic mail transmission and its attachments, are intended solely for the use of the individual or entity to which it is addressed and may contain confidential, privileged and/or exempt from disclosure information belonging to the sender which is protected under applicable law.  If you are not the intended recipient, you are hereby notified that you have received this transmittal in error and that any review, dissemination, disclosure, copying, or distribution of this transmittal is strictly prohibited.  Further, the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message and all its attachments, if any.

# NOTICE OF AGENCY RELATIONSHIP

When working with a real estate agent in buying or selling real estate, West Virginia Law requires that you be informed of whom the agent is representing in the transaction.

The agent may represent the seller, the buyer, or both.  The party represented by the agent is known as the agent's principal and as such, the agent owes the principal the duty of utmost care, integrity, honesty and loyalty.

Regardless of whom they represent, the agent has the following duties to both the buyer and the seller in any transaction:

- Diligent exercise of reasonable skill and care in the performance of the agent's duties.
- A duty of honest and fair dealing and good faith.
- Must offer all property without regard to race, color, religion, sex, ancestry, physical or mental handicap, national origin or familial status.
- Must promptly present all written offers to the owner.
- Must disclose all facts known to the agent materially affecting the value or desirability of the property.
- Provide copies of all contracts.

The agent is not obligated to reveal to either party any confidential information obtained from the other party which does not involve the affirmative duties set forth above.

Should you desire to have a real estate agent represent you as your agent, you should enter into a written contract that clearly establishes the obligations of both parties.  If you have any questions about the roles and responsibilities of a real estate agent, they can provide information upon your request.

In compliance with the Real Estate Brokers License Act of West Virginia, all parties are hereby notified that

(printed name of agent) _Tam Anderson_____ affiliated with

(firm name) _Harris Real Estate_____ is acting as agent of:

_____ The Seller, as listing agent or subagent.   _____ The Buyer, as the buyer's agent.
_____ Both Seller and Buyer, with the full knowledge and consent of both parties.

## CERTIFICATION

By signing below, the parties certify that they have read and understand the information contained in this disclosure and have been provided with signed copies prior to signing any contract.

| Seller | Date | Buyer | Date |
|---|---|---|---|
| | | X _____ | X 8/24/12 |
| Seller | Date | Buyer | Date |
| | | | |
| Seller | Date | Buyer | Date |

I certify that I have provided the above named individuals with a copy of this form prior to signing any contract.

Agent's Signature _Tam Anderson_____
Date _8-24-12_

*WV Real Estate Commission*
*1033 Quarrier Street, Suite 400*
*Charleston, WV 25301*
*(304) 348-3555*

GMR  092

**HARRIS REAL ESTATE**
**1025 SUITE 317 MAIN STREET**
**WHEELING WV 26003**
**304-233-3492 OFFICE**
**740-695-2517 FAX**



HANDLED WITH KNOWLEDGE AND INTEGRITY

Wheeling Board of Realtors
**Real Estate Purchase Contract**
It is recommended that all parties be represented by legal counsel

 

The undersigned Purchaser hereby offers and agrees to purchase from the Seller the following described property:

5 D Shady Street Wheeling WV 26003 Ohio

Legal Description: County **Ohio** Deed Book **703** , Page 398

District **10-Wheeling** Map# **W33** Parcel **0286 0000 0000**

The property shall include the land with all appurtenant rights, privileges and easements thereunto belonging, but subject to all legal highways, zoning ordinance, easements, restrictions and conditions of record.

(1) *PURCHASE PRICE*: The Purchaser agrees to pay and the Seller agrees to sell said premises for the sum of:
**Four Thousand Dollars** Dollars ($**4000.00** ).
Purchaser's obligations are contingent upon financing. Purchaser has obtained (N/A) or will obtain (N/A), written loan pre-qualification within N/A days. Purchaser shall apply for a **Cash** loan within N/A banking days for N/A % of the purchase price, and continue to make every reasonable effort to secure such loan. Failure to provide said loan pre-qualification will give the Seller the option to void the agreement.

(2) *FIXTURES AND EQUIPMENT*: The consideration shall include all buildings and fixtures delivered in their present condition, excepted herein, including without limitations such of the following as are now on the property: all windows/door shades, awnings, storms and screens, curtain/drapery rods and fixtures, TV antennas, garage door opener and controls, gas or electric heaters, water heater and softener (unless leased), incinerator, trash compactors, all heating, plumbing and bathroom fixtures, permanently attached lighting fixtures, affixed mirror, air conditioning units, humidifiers, all built-in appliances and accessories, door bells, chimes, fireplace grate and equipment, smoke detectors, all tacked down carpeting and floor coverings and all landscaping, and —

The following shall be excluded:

(3) *GENERAL PROVISIONS*: Purchaser agrees to purchase the real estate, improvements and fixtures in their present condition, except as herein expressly set forth, and acknowledge that he has examined the physical condition and character and size and signed this agreement as a result of said examination and not upon representations made by Seller, Broker, Co-Broker, or any agent or salesperson. This instrument contains the entire agreement between the parties and no representations, promises, provisions, terms, warranties or conditions or obligations whatsoever, expressed or implied, other than herein set forth, shall be binding upon Purchaser, Seller or Broker. The parties agree to hold the Broker or its agents or employees harmless from and against any liability for damage resulting from any misrepresentation by any party hereto. In compliance with fair housing laws, no party shall in any manner discriminate against any purchaser or purchasers because of race, creed, sex, national origin, handicap or familial status. Seller and Purchaser authorize Broker to disclose this Sales information to the Multiple Listing Service and to any multiple listing service to which Broker is a member and further authorize MLS to report this sale information to their MLS participants, affiliates and to those governmental agencies authorized to receive MLS information.

(4) *DEPOSIT*: The earnest money deposit in the sum of $**4000.00** in cash or by check delivered to **Harris Real Estate** listing Broker, shall be held in uncashed form until acceptance of this Agreement and then deposited in a non-interest bearing trust account. This deposit shall be held until closing. If no closing takes place, the Broker shall hold the earnest money until both Purchaser and Seller execute a written release of said earnest money. If the Purchaser and the Seller are unable to agree, the Broker shall continue to hold the earnest money in trust account until such time as the parties can agree or a court of competent jurisdiction shall order the earnest money disbursed. Upon closing the earnest money will be returned to the Purchaser.

(5) *EVIDENCE OF TITLE*: Purchaser shall furnish and pay for an EXAMINATION OF TITLE showing in the name of the Seller, good and merchantable title in fee simple free and clear of all liens and encumbrances excepting those specifically set forth in this contract, or those liens that are to be paid at closing. Merchantability of title shall be determined in accordance with the standards of Title Examination adopted by the West Virginia State Bar Association.

Seller Initial:_____ _____ Date:_____          X Buyer Initial:_____ _____ Date:10-8-12

Page 1 of 4

GMR 093

(6) *DEED:* Seller shall pay for and deliver to Purchaser a recordable and transferable general warranty deed or special warranty deed, if Seller is a fiduciary, conveying good and marketable title to the subject property, subject only to such exceptions, restrictions and easements of record. By executing the Deed, Seller is certifying that Seller is authorized to make this conveyance and that all parties who are required to be notified of this conveyance have been appropriately notified.

7) *TAXES, ASSESSMENTS AND RENTS:* Taxes, assessments and rents, if any, shall be pro-rated to the date of delivery of the deed for the subject premises. Seller shall pay transfer stamps.

(8) *CLOSING:* The closing or escrow shall be at a designated location, and all funds and documents necessary to the completion of this transaction shall be delivered to that office, on __11-6-2012__, or upon a mutually agreeable earlier date. This agreement will terminate on the closing date designated above subject to any extension agreed to in writing signed by the parties. Time is of the essence in all provisions of this contract.

(9) *POSSESSION:* Possession and occupancy of the premises shall be delivered in the same condition as at the date of acceptance of this contract, except for ordinary wear and tear, to the Purchaser on _____

(10) *DAMAGE OR DESTRUCTION OF PROPERTY:* Seller shall bear the risk of loss of the real estate and appurtenances until closing, provided that if any buildings or other improvements on the subject premises are damaged or destroyed prior to the delivery of the deed to the Purchaser, then the said Purchaser shall have the option of accepting the proceeds of any insurance payable as a result of such damage or destruction, not to exceed the contract price, and completing this contract, or of terminating this contract in which latter case all funds and documents shall be returned to the parties depositing them and this contract shall be null and void. If Purchaser does not make such election within fifteen (15) days after receiving notice of such damage or destruction, the Purchaser shall be presumed to have elected to complete the transaction.

(11) *INSPECTIONS:* Purchaser shall furnish at his own cost, an inspection by a licensed exterminator stating the property is free of infestation or damage by wood destroying insects. Any infestation shall be treated by Seller. Seller shall have a choice in the qualified company performing the treatment. If cost of correcting damage caused by infestation exceeds $ _____, the Seller may terminate this contract and all earnest money will be returned to the Buyer.

(12) *INSPECTION RIDER/WAIVER:* A Property Inspection Rider/Waiver is a part of this contract.

**IT IS FURTHER AGREED:**

_____

_____

_____

PURCHASER
Signature X _____

ADDRESS: 1111 Riley Road

TELEPHONE: 740-232-5633

DATE: _____

Print Name George-Michael Riley Barton Oh 43905
                                    SR

PURCHASER
Signature _____

Print Name _____

*DEPOSIT RECEIPT:* Receipt is hereby acknowledged as agent for the Seller ( ) Buyer ( ) of 1000 ᵉᵘ
The deposit of earnest money is subject to the terms of the within contract. The earnest money shall be deposited upon acceptance.

_Harris Real Estate_ , Broker By: _Pam Anderson_ , Agent Date: _____

**NOTICE**

**Fair Housing Statement** It is illegal, pursuant to the West Virginia Fair Housing Act, West Virginia Code 5-11A-5 and the Federal Fair Housing Law, 42 U.S.C.A. 3601, to refuse to sell, transfer, assign, rent, lease, sublease or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status as defined in West Virginias Code 5-11A-3, ancestry, military status, handicap as defined in that section, or national origin or to so discriminate in advertising the sale or rental of housing, in the financing of housing, or in the provision of real estate brokerage services. It is also illegal, for profit, to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry into the neighborhood of a person or persons belonging to one of the protected classes.

Page 2 of 4

GMR  094

**ACTION BY SELLER:** The under signed Seller has read and fully understands the foregoing offer and hereby:
(   ) accepts said offer and agrees to convey the real estate according to the above terms and conditions;
(   ) rejects said offer, or;
(   ) counteroffers according to the following modifications/additions by Seller which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____, at _____ o'clock (am) (pm):

_____

_____

_____

_____

| | | | |
|---|---|---|---|
| **SELLER** | **ADDRESS:** | **TELEPHONE :** | **DATE:** |
| Signature _____ | _____ | _____ | _____ |
| Print Name _____ | _____ | | |

**SOCIAL SECURITY NUMBER:** _____

| | | | |
|---|---|---|---|
| **SELLER** | **ADDRESS:** | **TELEPHONE** | **DATE:** |
| Signature _____ | _____ | _____ | _____ |
| Print Name _____ | _____ | | |

**SOCIAL SECURITY NUMBER:** _____

**ACTION BY PURCHASER:** The under signed Purchaser has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to purchase the real estate according to the above terms and conditions;
(   ) rejects said counteroffer, or;
(   ) counteroffers according to the following modifications/additions by Purchaser which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____, at _____ o'clock (am) (pm):

_____

_____

| | | |
|---|---|---|
| **PURCHASER** _____ | **PURCHASER** _____ | |
| Signature | Date | Signature | Date |

**ACTION BY SELLER:** The under signed Seller has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to convey the real estate according to the above terms and conditions;
(   ) rejects said counteroffer, or;
(   ) counteroffers according to the following modifications/additions by Seller which counteroffer shall become null and void if not accepted in writing on or before _____, 20_____, at _____ o'clock (am) (pm):

_____

_____

| | | |
|---|---|---|
| **SELLER** _____ | **SELLER** _____ | |
| Signature | Date | Signature | Date |

**ACTION BY PURCHASER:** The under signed Purchaser has read and fully understands the foregoing counteroffer and hereby:
(   ) accepts said counteroffer and agrees to purchase the real estate according to the above terms and conditions; OR
(   ) rejects said counteroffer.

| | | |
|---|---|---|
| **PURCHASER** _____ | **PURCHASER** _____ | |
| Signature | Date | Signature | Date |

GMR 095